Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq.*
Shane T. Prince, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**Pro hac vice application to be submitted.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND;<br>KAREN UMBERGER; and<br>SCOTT WILLITS,<br>For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and<br>VERIZON COMMUNICATIONS INC.<br><br>                              Defendants. | Case No. 1:21-cv-8592<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200**<br><br>**(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................- 1 -

II.   THE PARTIES ..................................................................................- 3 -

III.  JURISDICTION AND VENUE .......................................................- 4 -

IV.   FACTUAL ALLEGATIONS OF VERIZON'S ADMINISTRATIVE
      CHARGE SCHEME .........................................................................- 4 -

      A.    The Administrative Charge. ....................................................- 5 -

      B.    Verizon Fails to Disclose the Administrative Charge to Customers
            When They Sign Up. ...............................................................- 6 -

            1.    Verizon Fails to Disclose the Administrative Charge
                  In Retail Stores. ...........................................................- 7 -

            2.    Verizon Fails to Disclose the Administrative Charge
                  In Telesales or Online Chat Sales. ...............................- 8 -

            3.    Verizon Fails to Disclose the Administrative Charge
                  On Its Website Advertising. ..........................................- 8 -

      C.    Verizon Continues to Deceive Customers After They Sign Up. ....................- 10 -

      D.    Customers Cannot Cancel Without Penalty. ..........................- 15 -

V.    PLAINTIFFS' FACTUAL ALLEGATIONS ....................................- 18 -

      Plaintiff Teresa MacClelland .............................................................- 18 -

      Plaintiff Karen Umberger ..................................................................- 22 -

      Plaintiff Scott Willits .........................................................................- 26 -

VI.   CLASS ALLEGATIONS ....................................................................- 29 -

CAUSES OF ACTION ...................................................................................- 32 -

      COUNT I: Violation of the Consumers Legal Remedies Act ("CLRA")
      California Civil Code § 1750 *et seq.* ...............................................- 32 -

      COUNT II: Violation of California's False Advertising Law
      California Business and Professions Code § 17500 *et seq.* .................- 36 -

      COUNT III: Violation of California's Unfair Competition Law
      California Business and Professions Code § 17200 *et seq.* ...............- 39 -

      COUNT IV: Breach of the Implied Covenant of Good Faith and Fair Dealing ....- 43 -

PRAYER FOR RELIEF ................................................................................- 45 -

DEMAND FOR JURY TRIAL .....................................................................- 47 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiffs Teresa MacClelland, Karen Umberger, and Scott Willits, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc. (hereinafter, "Verizon" or "Defendants"):

# I.    <u>INTRODUCTION</u>

1.    This case challenges a bait-and-switch scheme perpetrated by Verizon against its wireless service customers. Verizon prominently advertises particular flat monthly rates for its post-paid wireless service plans. Then, after customers sign up, Verizon actually charges higher monthly rates than advertised and promised by padding the bill with an undisclosed so-called "Administrative Charge." The so-called Administrative Charge is simply a means for Verizon to charge more per month for the service itself without having to advertise the higher prices.

2.    Verizon first began sneaking the Administrative Charge into all of its post-paid wireless customers' bills in 2005, initially at a rate of $0.40 per month for each phone line. Since then, Verizon has repeatedly increased the amount of the Administrative Charge. The current amount of the Administrative Charge is $1.95 per month for each phone line—a nearly 5X increase from the original amount of the charge. Verizon has used the Administrative Charge as a revenue lever to covertly jack up its monthly service prices and to squeeze its existing subscribers for more cash whenever Verizon desires. To date, Verizon has improperly collected over $1 billion in additional charges from its California subscribers through its Administrative Charge scheme.

3.    The first time Verizon customers can possibly learn about the existence of the Administrative Charge, or its amount, is on their monthly billing statements, which they begin receiving only *after* they sign up for the service and are financially committed to their purchase and cannot cancel without penalty.

4.    Verizon then deliberately and affirmatively misrepresents the so-called Administrative Charge on its billing statements to further its scheme. Verizon excludes the Administrative Charge from the "Monthly charges" section, and instead puts it in the

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

"Surcharges" section where Verizon lumps it together with government costs. Even worse, Verizon explicitly and falsely states on its monthly bills that the Administrative Charge is a surcharge imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments." Thus, by Verizon's own design, the monthly billing statements serve to further Verizon's scheme and keep customers from realizing they are being overcharged.

5.     Notably, on a support page on its website, where it will not be viewed by customers prior to their purchases, Verizon gives a *different* definition of the Administrative Charge, claiming it is tied to various of Verizon's operating costs including telephone company interconnect charges and network facility and service fees—i.e., the basic costs of providing wireless service, which a reasonable consumer would expect to be included in the advertised price for the wireless service plan.

6.     Moreover, the Administrative Charge is *not*, in fact, tied to Verizon's costs such as interconnect charges and network facility fees. Verizon does not adjust the amount of the Administrative Charge based on changes to Verizon's <u>costs</u>. Rather, Verizon sets and increases the amount of the Administrative Charge based on its internal <u>revenue</u> targets. This is corroborated by the fact that Verizon has more than doubled the amount of the monthly Administrative Charge since 2015 (from $0.95 to $1.95), while during that same time period, such costs have actually significantly *decreased* (like interconnection costs). Verizon simply uses the Administrative Charge as a revenue lever to covertly jack up its monthly service prices and increase its revenues whenever it desires.

7.     Meanwhile, Verizon's misrepresentations on its bills that the Administrative Charge is imposed on subscribers to recover the costs billed to Verizon by the government are false statements of material fact intended to discourage customers who may discover the Administrative Charge from questioning the charge.

8.     In all events, Verizon should clearly and accurately state the true monthly prices for its post-paid wireless service plans in its price representations and advertising. Verizon has failed to do so, and continues to fail to do so.

9.     Plaintiffs, by this action, seek a public injunction for the benefit of the general

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

public to: (1) enjoin Verizon from falsely advertising the prices of its wireless service plans to, and concealing the true prices of its wireless service plans from, members of the general public; (2) enjoin Verizon from advertising or quoting a wireless service plan price to members of the general public if that price does not include applicable discretionary monthly service fees or charges such as the Administrative Charge; and (3) enjoin Verizon from representing or stating to members of the public that the Administrative Charge is a tax, a charge imposed to recover costs billed to Verizon by the government, a pass-through government cost, a government or regulatory fee, or a charge over which Verizon has no control.

10.     Plaintiffs further seek, on behalf of themselves and a class of all similarly situated California consumers, restitution and/or damages, pre- and post-judgment interest, and permanent private injunctive relief. Plaintiffs also seek attorneys' fees and costs.

11.     To be clear, Plaintiffs are *not* seeking to regulate the existence or amount of the Administrative Charge. Rather, Plaintiffs want Verizon to include the amount of the Administrative Charge in the wireless service plan prices it advertises to the general public, and to honestly and adequately disclose the Administrative Charge and its true nature and basis in Verizon's billing statements and communications with subscribers.

## II.     **THE PARTIES**

12.     Plaintiff Teresa MacClelland is a citizen and resident of Eureka, California.

13.     Plaintiff Karen Umberger is a citizen and resident of Eureka, California.

14.     Plaintiff Scott Willits is a citizen and resident of Eureka, California.

15.     Defendant Cellco Partnership d/b/a Verizon Wireless is a wholly-owned subsidiary of Verizon Communications Inc., and is chartered under the laws of Delaware, with its principal place of operations and nerve center in New Jersey.

16.     Defendant Verizon Communications Inc. is chartered under the laws of Delaware, with its principal place of operations and nerve center in New Jersey.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

III.   **JURISDICTION AND VENUE**

17.   **Subject Matter Jurisdiction**. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendants.

18.   **Personal Jurisdiction**. This Court has personal jurisdiction over Verizon because, without limitation, Verizon: (1) has purposely availed itself of the privileges of conducting business activities in California; (2) currently maintains systematic and continuous business contacts with California including marketing, selling, and issuing wireless services to Plaintiffs and other California consumers; and (3) maintains offices and retail locations throughout California. Verizon has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

19.   **Venue**. Venue is proper pursuant to 28 U.S.C. §1391 because each Plaintiff resides in this District; many of the acts and transactions giving rise to this action occurred in this District; Verizon is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through distribution and sale of its services in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

20.   **Intra-District Assignment**. This action is properly assigned to the Eureka–McKinleyville Division, where all Plaintiffs reside.

IV.   **FACTUAL ALLEGATIONS OF VERIZON'S ADMINISTRATIVE CHARGE SCHEME**

21.   Verizon falsely advertises its wireless services at lower monthly rates than it actually charges customers by not disclosing, and not including in the advertised price, a so-called "Administrative Charge" which Verizon imposes on all post-paid wireless service customers each month.

22.   Verizon uses the Administrative Charge to (1) charge more per month for the service itself without having to advertise the higher prices, and (2) as a way to covertly jack up

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the rates of its existing subscribers to extract additional revenue from its subscribers whenever it desires.

23.     Verizon continues to perpetrate this deceptive fee scheme even after the customer signs up. Verizon makes affirmative misrepresentations on its bills that the Administrative Charge is to recover the costs billed to Verizon by the government in order to discourage customers who may discover the Administrative Charge from questioning the charge. And if a customer who happens to notice the Administrative Charge contacts Verizon via phone, web chat or at a Verizon store to inquire about the charge, Verizon agents falsely tell the customer that the Administrative Charge is a tax or a government fee over which Verizon has no control.

### A.     The Administrative Charge.

24.     The Administrative Charge is a uniform, per-phone line flat charge that Verizon adds to the monthly bills of all Verizon post-paid wireless service customers across the country. Verizon unilaterally sets the amount of the Administrative Charge at its sole discretion.

25.     Verizon first began imposing the Administrative Charge in September 2005, at an initial rate of $0.40 per month per phone line. The charge was added to the bills of all post-paid wireless customers, including customers who had signed up for the services well before the Administrative Charge even existed. Verizon increased the Administrative Charge to $0.70 per month per line in starting in March 2007. Until December 2015, the Administrative Charge remained under a dollar per month per phone line. In December 2015, Verizon raised the Administrative Charge from $0.95 to $1.23 per month per phone line. Verizon increased the Administrative Charge to $1.78 per month per phone line starting in August 2019. Verizon then raised the Administrative Charge to the current rate of $1.95 per month per phone line starting in August 2020. Notably, the Administrative Charge has *more than doubled* since December 2015, from $0.95 to $1.95 per month per phone line.

26.     To date, Verizon has improperly collected over $1 billion in additional charges from its California subscribers through its Administrative Charge scheme.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

B.    __Verizon Fails to Disclose the Administrative Charge to Customers When__
      __They Sign Up.__

27.    At all relevant times, Verizon has aggressively advertised its post-paid wireless service plans through pervasive marketing directed at the consuming public in California and throughout the United States, including via high-profile television, radio, and online advertisements, and on its website and through materials at its numerous corporate-owned retail stores and the stores of third party retailers (e.g., Costco, Best Buy, the Apple Store, and independent "Verizon Authorized Retailers") where customers can sign up for Verizon wireless services.

28.    In all of these locations and through all of these channels, Verizon consistently and prominently advertises particular flat monthly prices for its post-paid wireless service plans, without disclosing or including the Administrative Charge in the advertised price. Neither the existence nor amount of the Administrative Charge (let alone its true nature or basis) is disclosed to customers prior to or at the time they sign up for Verizon's service plans.

29.    By way of example only, Verizon ran three broad-scale national television advertisements in 2019, 2020, and 2021 that promoted the price for its post-paid wireless service plans as $35 per line per month per line when purchasing four lines.[1] The flat monthly rate was prominently featured in the advertisements. There was *no asterisk* next to the advertised price, and the only disclosure language was the phrase "Plus taxes and fees," below the monthly rate. The advertisements did not mention the Administrative Charge or what the additional "fees" were or their amounts. Nor were the viewers directed anywhere to learn about the additional "fees."

30.    As another example, Verizon ran similar broad-scale national television advertisements in 2017 and 2018 that promoted the price for its post-paid wireless service plans as $40 per line per month per line when purchasing four lines.[2] These ads, too, had no asterisk

---

[1] The 2021 ad can be viewed at: https://www.youtube.com/watch?v=O9Bh4EJPOKA.
The 2020 ad can be viewed at: https://www.youtube.com/watch?v=LFP9zmeS75I.
The 2019 ad can be viewed at: https://www.youtube.com/watch?v=jGBgLCFFVQA.

[2] The 2018 ad can be viewed at: https://www.ispot.tv/ad/dogb/verizon-unlimited-plans-huge-news-ft-thomas-middleditch.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

next to the advertised price, and the only disclosure language was the phrase "Plus taxes and fees," below the monthly rate. The advertisements did not mention the Administrative Charge or what the additional "fees" were or their amounts. Nor were the viewers directed anywhere to learn about the additional "fees."

31.     The phrase "Plus taxes and fees" does not constitute an adequate disclosure of the Administrative Charge by Verizon, and is understood by the reasonable consumer to refer to legitimate taxes and government fees passed on by Verizon to its customers. (Meanwhile, on the customer bill, Verizon labels the Administrative Charge as a "Surcharge" next to government-related surcharges, and not as a "fee".) Moreover, the Administrative Charge is, in fact, simply a disguised double-charge for the service itself.

>           **1.      Verizon Fails to Disclose the Administrative Charge In Retail Stores.**

32.     For years, when a consumer shops for a wireless service plan at a Verizon corporate-owned store, the consumer is presented with the advertised and quoted monthly service plan prices, and nothing is disclosed to the consumer about the existence of the Administrative Charge. The Verizon stores use a uniform sales process in which a sales representative utilizes a proprietary sales application on an in-store iPad. Verizon does not disclose the Administrative Charge *anywhere* during this in-store sign-up process. Verizon agents only tell customers the monthly plan price during this process (e.g., the "$80/month Unlimited plan"), and never mention the $1.95 per-line so-called "Administrative Charge." Customers and prospective customers are not given the option to view the total monthly charges on the in-store iPad sales application, and sales agents are unaware of (or are trained to pretend to be unaware of) details beyond the fact that *taxes* will be charged on top of the advertised monthly service plan price.

33.     In fact, the first time consumers can possibly learn about the existence of the Administrative Charge, or its amount, is on their monthly billing statement *after* signing up— but consumers are not provided access to the billing statement until at least one week after they

---

The 2017 ad can be viewed at: https://www.youtube.com/watch?v=41lGIXfLfjo.

**HATTIS & LUKACS**
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   sign up for the service and are financially committed to their purchase.

2        34.     Customers may also sign up for Verizon wireless service plans at certain

3   authorized third-party retail stores such as Best Buy, Apple, Walmart, Costco, and

4   independently-owned "Verizon Authorized Retailers." The customer experience in these stores

5   is, in all material respects pertinent to this action, the same as in Verizon corporate-owned

6   stores. Thus, if a consumer shops for a Verizon wireless service plan at a third-party retailer,

7   the consumer is presented with the advertised and quoted monthly service plan prices, and

8   nothing is disclosed to the customer about the Administrative Charge. At these stores, like at

9   the Verizon corporate-owned stores, the customer purchase process is conducted through a

10  tablet or other electronic display, the relevant content of which is determined by Verizon and

11  does not include a disclosure of the Administrative Charge. The pricing information and

12  disclosures which are provided to customers in third-party stores are provided to the third-party

13  retailers by Verizon.

14                    **2.    Verizon Fails to Disclose the Administrative Charge In Telesales or
15                            Online Chat Sales.**

16       35.     Likewise, Verizon sales and customer service agents have been trained for

17  years, as a matter of company policy, to present consumers with the advertised flat monthly

18  prices for its service plans without disclosing the Administrative Charge. If a potential

19  customer calls Verizon's customer sales agents, or reaches out via web chat, and asks what if

20  any other monthly charges will be added, the agents as a matter of company policy falsely say

21  that the only additions to the advertised prices (besides subscriptions to extra services or

22  features) are taxes or government fees that are out of Verizon's control.

23                    **3.    Verizon Fails to Disclose the Administrative Charge On Its Website
24                            Advertising.**

25       36.     Likewise, for years, Verizon's consumer website has advertised its post-paid

26  wireless service plans by prominently featuring flat monthly prices for its service plans, and not

27  disclosing the Administrative Charge.

28       37.     For example, when this case was filed, Verizon's website listed five post-paid

---

CLASS ACTION COMPLAINT

- 8 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

wireless plan options under its post-paid "Unlimited" plans, and a configurator which showed

different prices per line for each plan depending on how many lines (between one and four) the

consumer selected.  See the screenshot of the Verizon website taken on October 31, 2021 at

**Figure 1** below:

**Figure 1**



# It's Unlimited built right.

Only pay for what you need and get more of
the entertainment you want. Choose your
Unlimited plans to mix, match and save.

| **How many lines do you need?** | **Start Unlimited** | **Play More Unlimited** | **Do More Unlimited** | **Get More Unlimited** | **Just Kids** |
|---|---|---|---|---|---|
| ⊖ **4** ⊕ | Get started with unlimited talk, text and data and never worry about overage charges again. | Our best plan for streaming, with tons of shows, movies and sports and premium network access—all included. | When productivity is your top priority, get it all done with premium data and a discount on a connected device plan. | Experience our ultimate in performance on our best plan with extra features, including more music and entertainment. | Manage screen time, filter content, track location and get Unlimited data on your kid's first phone, so you get peace of mind. |
| Prices include $10/mo savings per line, when you sign up for paper-free billing and Auto Pay. | **$35** Per line per month. Plus taxes & fees. | **$45** Per line per month. Plus taxes & fees. | **$45** Per line per month. Plus taxes & fees. | **$55** Per line per month. Plus taxes & fees. | **$35** Per line per month. Plus taxes & fees. Requires 1 line on Unlimited. |

Overview | Compare

38.     Each of these options is presented as having a flat rate per month. The price does

not have an asterisk and the only disclosure language is below the price, stating: "Plus taxes &

fees." Customers can click a link directly under those advertised prices to sign up for those

services. Neither the existence nor the amount of the Administrative Charge (which is in fact an

additional $1.95 per month per line, e.g., $7.80 per month for four lines) is disclosed, even

though Verizon intends to charge the Administrative Charge and knows its exact amount.

39.     The "Plus taxes and fees" language does not constitute an adequate disclosure

because a reasonable consumer would understand "taxes and fees" to mean legitimate taxes and

government fees passed on by Verizon to its customers (as opposed to a disguised double-

charge for the service itself). In fact, throughout the order process and on the final order page,

Verizon displays a line item charge called "Taxes and government fees"; the line item can be

expanded (by clicking a "+" sign) to display a list of the component (and legitimate) taxes and

government fees. Thus, a reasonable consumer would assume and understand that *those* are the

taxes and fees to which the phrase "Plus taxes & fees" in Verizon's ads refers. (Notably, on the

customer bill itself, Verizon labels the Administrative Charge not as a "fee," but rather, as a "Surcharge.") Meanwhile, throughout the online purchase process, Verizon has no line item which contains or includes the Administrative Charge, and Verizon never includes the amount of the Administrative Charge in the presented and quoted monthly "Total" price.

### C. **Verizon Continues to Deceive Customers After They Sign Up.**

40.     Verizon continues to deceive customers about the Administrative Charge and the true monthly price of the services, even after they have signed up for the services.

41.     The first time Verizon customers can possibly learn about the existence of the Administrative Charge, or its amount, is on their monthly billing statement, which they do not receive access to until at least one week *after* they sign up for the service and are financially committed to their purchase.

42.     Moreover, Verizon's billing statements do not constitute even a belated disclosure. Instead, Verizon deliberately and affirmatively misrepresents the so-called Administrative Charge on its billing statements to further its scheme.

43.     Verizon excludes the Administrative Charge from the "Monthly charges" section, and instead puts it in the "Surcharges" section where Verizon lumps it together with government costs. Even worse, Verizon explicitly and falsely states on its monthly bills that the Administrative Charge is imposed to recover costs billed to Verizon by the government. Thus, by Verizon's own design, the printed monthly statements serve to further Verizon's scheme and keep customers from realizing they are being overcharged.

44.     Below (**Figure 2**) is an image of the first page of Plaintiff Scott Willits' August 2021 billing statement, where Verizon declares, like it does on every monthly billing statement, that "Surcharges" (which is how it labels the Administrative Charge) are to "cover the costs that are billed to us by federal, state or local governments." A red box is added to the bill image below to highlight the relevant text:

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 2**



# Your August bill is $134.15

It's due on Aug 25, 2021.You have Auto
Pay scheduled for Aug 22, 2021.

**4 GB** of 4 GB used in this bill
**1.41 GB** of 1.41 GB extra used in this bill
**0.11 GB** data overage used in this bill
**0.89 GB** carried over to your next bill

| | |
|---|---|
| Account charges | $65.00 |
| **Scott Willits** 707- | $23.05 |
| **Scott Willits** 707- | $23.05 |
| **Scott Willits** 707- | $23.05 |
| | $134.15 |

**Balance forward from last bill**

| | |
|---|---|
| Previous balance (through Jul 2) | $119.15 |
| Payment received - Thank you (Jul 22) | -$119.15 |
| **Total balance forward** | $0.00 |

Your August bill is $15.00 higher than last month's. Your August bill of $134.15 is due on Aug 25, 2021. You can see a full breakdown of all this month's charges on go.vzw.com/mybill.

**Good to know**

**Account charges**

These apply to your entire account. Account charges may include Add-ons, such as device protection, Services, such as call blocking, or Late Fees for past due balances. They are separate from charges per line or device.

**Check your online bill for all surcharges, taxes and gov fees**

The total amount due for this month includes surcharges of **$7.83** and taxes and gov fees of **$1.32**. For an itemized list of taxes, fees and surcharges visit go.vzw.com/mybill.

**Surcharges**

These cover the costs that are billed to us by federal, state or local governments so we can continue to provide you with the best service. See the full breakdown on go.vzw.com/mybill.

45.      Below (**Figure 3**) is the third page of Mr. Willits' same August 2021 bill, where Verizon labels the so-called Administrative Charge as being such a "Surcharge," i.e., a charge imposed on subscribers to recover costs billed to Verizon by the government. A red box is added to highlight the Administrative Charge:

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 3**

| Account Charges | | $65.00 |
| --- | --- | --- |

0.89 GB of unused data will carry over to next month (Aug 3 - Sep 2)

Unused Carryover data from last month expired August 2.

You'll be charged a late fee when you don't pay your bill on time. The amount is the greater of $5 or 1.5% of the unpaid balance, or as allowed by law in the state of your billing address.

| One-time charges and credits | $15.00 |
| --- | --- |
| Data Overage - 1 Additional GB At $15/GB | $15.00 |

| Monthly charges and credits | $50.00 |
| --- | --- |
| The new Verizon Plan Medium 4 GB (Aug 3 - Sep 2)<br>4 GB  Shared Data,  Carryover Data, Unlimited Talk and Text | $50.00 |

| Shared data usage | Used/Allowance |
| --- | --- |
| All shared lines | 5.52 / 5.41 GB |

| Types of data you used | Used/Allowance |
| --- | --- |
| The new Verizon Plan Medium 4 GB | 4 / 4 GB |
| Carryover from last month (Jul 3 - Aug 2) | 1.41 / 1.41 GB |
| Overage | 0.11 / 1 GB |

| Scott Willits | | $23.05 |
| --- | --- | --- |

707-███████

SAMSUNG GALAXY S7 BLACK 32GB

| Monthly charges and credits | $20.00 |
| --- | --- |
| Smartphone Line Access (Aug 3 - Sep 2) | $20.00 |

| Surcharges | $2.61 |
| --- | --- |
| Fed Universal Service Charge | $0.45 |
| Regulatory Charge | $0.21 |
| Administrative Charge | $1.95 |

| Taxes and gov fees | $0.44 |
| --- | --- |
| CA State 911 Surcharge | $0.30 |
| CA Teleconnect Fund Surchg | $0.01 |
| CA State High Cost Fund (A) | $0.01 |

46.     As reflected above, Verizon excludes the Administrative Charge from the "Monthly charges and credits" section. Verizon instead disguises the Administrative Charge by putting it in the "Surcharges" section where it is lumped together with true government costs billed to Verizon such as the "Federal Universal Service Charge" and the "Regulatory Charge."

47.     Verizon's labeling and description of the Administrative Charge as a

"Surcharge" imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments" is a false statement of material fact intended to fool its subscribers.

48.    Notably, on a support page on its website, Verizon gives a *different* definition of the Administrative Charge, claiming it is charged to "defray" "charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers" (i.e., interconnect charges) and "fees and assessments on our network facilities and services." But interconnect charges and network facility and service fees are the basic costs of providing wireless service, which a reasonable consumer would expect to be included in the advertised price for the wireless service plan. To the extent that some part of the Administrative Charge is used to defray an actual cost imposed on Verizon by a government, that part is minuscule and immaterial.

49.    Moreover, the Administrative Charge is *not*, in fact, tied to Verizon's costs such as interconnect charges and network facility and service fees. Verizon does not adjust the amount of the Administrative Charge based on changes to Verizon's <u>costs</u>. Rather, Verizon sets and increases the amount of the Administrative Charge based on its internal <u>revenue</u> targets. This is corroborated by the fact that Verizon has more than doubled the amount of the monthly Administrative Charge since 2015 (from $0.95 to $1.95), while during that same time period, such costs have actually significantly *decreased* (like interconnection costs). Verizon uses the Administrative Charge as a revenue lever to covertly jack up its monthly service prices and to squeeze its existing subscribers for more cash whenever Verizon desires.

50.    Verizon's affirmative misrepresentation on its bills that the Administrative Charge is imposed to recover the costs billed to Verizon by the government is intended to discourage customers who might discover the Administrative Charge from questioning the charge or complaining to Verizon.

51.    Meanwhile, many, if not most, customers will not read the monthly billing statements described above at all because most of Verizon's customers are signed up for electronic billing and "Auto Pay" (automatic payments). Verizon automatically signs up its customers for electronic billing; according to Verizon, "Paper-free billing is turned on for all of

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

our new mobile customers" by default.[3]  Thus, the overwhelming majority of Verizon's customers do not receive printed bills, and instead only receive emails informing them of just the total dollar amount of the bill.

52.     Verizon convinces most of its customers to also sign up for Auto Pay, by threatening to charge $10 more per line (above the advertised service plan price) to those who refuse to enroll in Auto Pay.[4] By signing customers up for Auto Pay, where the bill is paid automatically with no action or review by the customer, Verizon further discourages customers from examining their monthly bill.

53.     As a result, most customers will not look beyond Verizon's billing email notifications. However, these email notifications do not contain any disclosure of the Administrative Charge or increases thereto whatsoever, let alone describe its true nature or basis. And, because Verizon has increased the Administrative Charge by less than a dollar each time, if a customer noticed that his or her bill was slightly higher than the previous month, the customer would reasonably assume that the increase was a result of legitimate taxes and other government-related charges, which customers understand can vary month-to-month.

54.     Even if a customer took actions to view the electronic version of the bill on the My Verizon app or website (e.g., by clicking on the Verizon billing notification email and logging in), the My Verizon billing center is further designed to hide the Administrative Charge. The default view for the Verizon bill on the My Verizon app or website includes only the total monthly charge, and does not include any more detail or line items.

55.     Further, if a customer happens to notice the Administrative Charge and contacts Verizon via phone or web chat or at a Verizon store to inquire about the charge, Verizon agents falsely tell the customer that the Administrative Charge is a tax or government fee that is outside of Verizon's control.

---

[3] See Verizon's website at https://www.verizon.com/support/view-bill-online-faqs/, last accessed on October 31, 2021.

[4] E.g., see **Figure 1**, above. On the left side of the screenshot of the advertised Verizon service plan offerings and prices, Verizon states: "Prices include $10/mo savings per line, when you sign up for paper-free billing and Auto Pay."

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**D.    Customers Cannot Cancel Without Penalty.**

56.    Even if customers realize that their actual total monthly bill is higher than promised when they receive their monthly billing notice or view their statement, they cannot simply back out of the deal without penalty, even if they notice the overcharge on their very first bill.[5]

First, when customers sign up they pay a one-time activation fee of $35.00 that is refundable for only three days—well before they receive access to their first monthly bill, which does not occur until more than a week after they sign up.

Second, customers who signed up for a two-year service commitment (the majority of customers until at least 2016) are charged an early termination fee of up to $350 if they cancel their service more than 14 days after purchase (again, the customers cannot even receive notice of their first billing statement until at least a week after signing up). And, even if a person managed to cancel his or her service within the 14-day period (which required returning all purchased equipment in that time period), the customer *still* was required to pay for his or her service through the date of cancellation.

Third, many customers purchase devices (such as new phones) with their service plans; indeed, Verizon markets devices and wireless service plans in bundles. The devices can only be returned to Verizon within the first 30 days after purchase. If customers return a device within 30 days of purchase, they still must pay a $50 restocking fee. If they wait longer than 30 days, it is too late, and they are on the hook for the full purchase price of the device.

Fourth, since approximately 2013, Verizon has offered installment plans to pay for new devices that are tied to customers' service plans. Instead of a one-year or two-year service commitment, many Verizon wireless customers today ostensibly have a month-to-month service plan but sign 24-month or 30-month installment agreements with Verizon under which customers pay for their mobile phone (i.e., the device) in monthly installments. For example, a customer would pay, for an $800 phone, an equipment "installment" charge of $33.33 on each

---

[5] *See* Verizon's description of its return policy at https://www.verizon.com/support/return-policy, last accessed on October 31, 2021.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

monthly Verizon bill for 24 months. If a customer cancels his or her service plan any time before the installment plan is paid off, the full outstanding balance of the device becomes due immediately in a single balloon payment. Even if the customer noticed the Administrative Charge on his or her very first monthly statement (despite Verizon's efforts to disguise it and falsely describe it as a government cost), and the customer thereby immediately chooses to cancel her service, Verizon will demand that the customer immediately pay the entire remaining $800 balance all at once. (If the customer returns the device within the 30-day return deadline, the customer must still pay the restocking fee mentioned above.) In this way the installment plan balloon payment is similar to an early termination fee, creating a large immediate cost to cancelling the Verizon service plan once customers learn the actual monthly prices of their plans are higher than advertised.

57.     The activation fee, restocking fee, early termination fee, and installment balloon payment all function as ways to penalize and deter customers from cancelling after signing up, and Verizon's policies (including the cancellation/return periods and how they relate to the timing of the billing statements) are deliberately and knowingly designed by Verizon to lock customers in if and when they deduce that they are being charged more per month than advertised.

58.     Because both the initial amount of the Administrative Charge was less than a dollar and each of the subsequent increases to the Administrative Charge have been by less than one dollar each, Verizon knows that customers are unlikely to notice the increased charge on the total price of their monthly bills. Given that taxes and other government-related charges can already vary by amounts smaller than one dollar from month to month, Verizon knows that customers reasonably expect small changes in the total amount billed each month and will not be able to tell that Verizon imposed or increased the Administrative Charge simply by comparing the total amount billed that month to the total billed in the prior month or months.

59.     Moreover, Verizon discourages customers from reviewing their billing statements each month by automatically enrolling them in electronic (paperless) billing and by convincing customers to enroll in Auto Pay (by threatening to charge $10 more per line to those

CLASS ACTION COMPLAINT

- 16 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  who refuse to enroll in Auto Pay). Thus, most customers will likely only ever see the total

2  monthly price without reviewing the cost breakdown—allowing small increases to the

3  Administrative Charge to go unnoticed.

4        60.     Each time Verizon has increased the Administrative Charge, Verizon has hidden

5  the increase by providing no disclosure or language whatsoever anywhere on the first billing

6  statement containing that increase. Even a customer who noticed the higher total charge and

7  who then examined the full billing statement would have zero notice that Verizon had increased

8  the charge, or why the customer's monthly total charge might be higher than the prior month's

9  total.

10        61.     The only place Verizon mentions to existing customers that it plans to increase

11  the Administrative Charge is on the full version of the monthly billing statement the month

12  *before* it is actually raised, and even then, each time the Administrative Charge was increased,

13  Verizon buried that inadequate "disclosure" at the very end of the customer's bill, among a mix

14  of information and notices unrelated to price increases.

15        62.     For example, before Verizon increased the Administrative Charge to its current

16  rate of $1.95 per month in August 2020, Verizon buried mention of the upcoming increase at

17  the very end of the bill for the *prior* month, eleven paragraphs into a seldom-read section titled

18  "Additional Information." The first ten paragraphs preceding it were standard paragraphs found

19  in nearly every monthly bill, and covered arcane topics like "Customer Proprietary Network

20  Information (CPNI)" and topics irrelevant to most customers, like "Bankruptcy Information."

21  Neither the title of this section nor the first ten paragraphs would alert customers that a *price*

22  *increase* would be announced below in the eleventh paragraph.

23        63.     Even if customers noticed that Verizon imposed or increased the Administrative

24  Charge, they would have to pay penalties at that point if they wanted to cancel their Verizon

25  service after learning of the charge or of a charge increase, as alleged herein. Verizon has

26  drafted its contractual terms regarding cancellation fees and the like so that there are no

27  exceptions, meaning these cancellation fees and similar costs would apply no matter how high

28  Verizon chose to unilaterally increase the Administrative Charge.

64.     Further, as described above in Section IV(C), after customers are signed up Verizon makes affirmative misrepresentations on its bills that the Administrative Charge is imposed to recover costs billed by the government, in order to discourage customers from complaining or cancelling service.

65.     Regardless, Verizon should be including the amount of the Administrative Charge as part of the advertised monthly price for its service plans, which as discussed herein it has never done and still does not do. Verizon's failure to do so, in and of itself, constitutes an unfair and deceptive practice that is actionable under the claims pled herein. Verizon uses the Administrative Charge to charge more than advertised for its services, and as a lever to covertly and improperly raise additional cash from its existing customers at Verizon's desire.

66.     To be clear, Plaintiffs are *not* seeking to regulate the existence or amount of the Administrative Charge. Rather, Plaintiffs want Verizon to include the amount of the Administrative Charge in the wireless service plan prices it advertises to the general public, and to honestly and adequately disclose the Administrative Charge and its true nature and basis in Verizon's billing statements and communications with subscribers.

## V.     PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Teresa MacClelland**

67.     Plaintiff Teresa MacClelland is, and at all relevant times has been, a citizen and resident of Eureka, California.

68.     Ms. MacClelland has been a continuous Verizon post-paid wireless customer since at least 2008.  She initially signed up on or about 2008 for Verizon post-paid wireless service for her family in a Verizon corporate-owned store located in Eureka, California. She signed up for two-year service contracts for four phones for herself, her husband, and her two children. She also purchased four new phones along with the service contracts, as part of a bundle.

69.     When Ms. MacClelland purchased her wireless service plan for the four phone lines, Verizon prominently advertised and quoted, to Ms. MacClelland and the public, that the plan would cost a particular monthly price. Verizon did not disclose to Ms. MacClelland, at any

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    time before or when she signed up, that Verizon would charge her the Administrative Charge
2    on top of the advertised and promised monthly price.

3        70.    Verizon charged Ms. MacClelland an Administrative Charge of $0.70 per month
4    per line beginning on her first bill.  Ms. MacClelland did not receive notice or adequate notice
5    that the Administrative Charge would be charged or regarding the true nature or basis of the
6    charge.

7        71.    Verizon has continued to charge Ms. MacClelland an Administrative Charge on
8    each of her four phone lines every month from 2008 through the present.

9        72.    During that time, Verizon has increased the amount of the Administrative
10   Charge charged to Ms. MacClelland several times. Until December 2015, the Administrative
11   Charge remained under a dollar per month. In December 2015, Verizon increased the
12   Administrative Charge from $0.95 to $1.23 per line each month (totaling $4.92 per month for
13   all four phone lines). In August 2019, Verizon raised the Administrative Charge to $1.78 per
14   line each month (totaling $7.12 per month for all four phone lines). In August 2020, Verizon
15   once again increased the Administrative Charge, this time to $1.95 per line each month
16   (totaling $7.80 per month for all four phone lines), which is the current amount as of this filing.

17       73.    Through its imposition of the Administrative Charge, Verizon has for 13 years
18   charged Ms. McClelland a higher price for her service plans each month than Verizon
19   advertised and that she was promised and expected to pay.

20       74.    Since 2008, Ms. MacClelland has changed her Verizon service plan for the four
21   phone lines a few times. Ms. MacClelland has also purchased approximately a dozen or so
22   mobile phones over the years from Verizon for the four phone lines, typically once every
23   couple of years. Prior to 2014, Ms. McClelland would commit to 2-year service contracts to
24   Verizon each time she purchased a mobile phone. On or after 2014, Ms. MacClelland typically
25   purchased new phones from Verizon on 24-payment device installment plans. Ms. MacClelland
26   last updated her wireless service plan on or around 2016, at the same time that she also
27   purchased two Google Pixel 1 phones on 24-payment device installment plans. On or about
28   2019, Ms. MacClelland replaced her Google Pixel 1 phones with new Google Pixel 3 phones,

CLASS ACTION COMPLAINT

- 19 -

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   purchasing them on 24-payment device installment plans, but she did not update her service

2   plan at that time.

3          75.     Each and every time since 2008 that Ms. MacClelland changed her wireless

4   service plan or purchased a new mobile phone, she did so in person at the Verizon corporate-

5   owned store located in Eureka, California.

6          76.     Each and every time that Ms. MacClelland changed her wireless service plan,

7   Verizon prominently advertised and quoted, to Ms. MacClelland and the public, a particular

8   monthly price for the wireless service plan, and did not disclose the Administrative Charge.

9   The price that Verizon quoted and stated to Ms. MacClelland did not include the

10  Administrative Charge, nor did it reflect the true total amount she would be charged each

11  month (inclusive of the Administrative Charge, which Verizon charged on each of her lines).

12  Nor did Verizon disclose that the total price, inclusive of the Administrative Charge, would or

13  might increase as a result of increases to the Administrative Charge. Likewise, each time that

14  Ms. MacClelland purchased a new mobile phone from Verizon, at no point before or during the

15  process was the Administrative Charge disclosed to her.

16         77.     In particular, since approximately 2015 or so, each time Ms. MacClelland

17  visited the Verizon store in Eureka to change or update her wireless service plan, a Verizon

18  salesperson utilized a proprietary sales process on an iPad. During this in-store process,

19  Verizon represented the monthly price she would pay for the service, and Ms. MacClelland

20  reasonably relied upon that representation. During this process, Verizon never disclosed the

21  existence of, let alone the amount of, the Administrative Charge. The monthly price that

22  Verizon quoted and represented did not include the Administrative Charge, nor did it reflect the

23  true total amount she would be charged each month (inclusive of the Administrative Charge).

24         78.     For many years, Ms. MacClelland has been signed up for electronic billing, as

25  Verizon encouraged her to do. Each month, Ms. MacClelland receives an email notification

26  from Verizon informing her that her monthly service bill is ready and stating only the total

27  dollar amount of the bill. Ms. MacClelland then clicks on a link on the email to log into her My

28  Verizon account to pay the bill. As alleged above, like the Verizon monthly billing statements,

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   Verizon's electronic billing and the My Verizon online billing center and payment process are

2   deliberately designed in a manner to hide and disguise the Administrative Charge. Verizon's

3   monthly electronic billing process and monthly statements did not inform or adequately

4   disclose to Ms. MacClelland that Verizon was adding an Administrative Charge to her bill each

5   month or disclose the true nature or basis of the charge.

6      79.   Ms. MacClelland did not learn of the Administrative Charge's existence until it

7   was brought to her attention by her counsel in August 2021.

8      80.   When Ms. MacClelland agreed to purchase her Verizon service plans, she was

9   relying on Verizon's prominent representations, in each instance, regarding the monthly price

10   of the service plans. Ms. MacClelland did not expect (and she was never told) that Verizon

11   would actually charge her a so-called Administrative Charge on top of the advertised service

12   plan price or that the true price of the services would include an additional Administrative

13   Charge for each phone line which Verizon could and would increase at its desire. That

14   information would have been material to her. Had she known that information she would not

15   have been willing to pay as much for her plans and would have acted differently.

16      81.   Ms. MacClelland has a legal right to rely now, and in the future, on the

17   truthfulness and accuracy of Verizon's representations and advertisements regarding its

18   wireless service plan prices. Ms. MacClelland believes that she was given the services Verizon

19   promised her—just not at the price Verizon promised and advertised to her.

20      82.   Ms. MacClelland remains a Verizon post-paid wireless customer as of this

21   filing. Ms. MacClelland does not have feasible options other than Verizon for good wireless

22   service coverage in her geographic area in Eureka, California. Ms. MacClelland desires and

23   intends to sign up for different Verizon post-paid wireless service plans and Verizon device

24   installment plans in the future. However, Ms. MacClelland wants to be confident that the

25   advertised and quoted price for Verizon's service plans is the true and full price for the services

26   (i.e., that it includes all applicable discretionary monthly service charges such as the

27   Administrative Charge). And, if Verizon introduces any new or invented discretionary monthly

28   service charge (like it did with the Administrative Charge), Ms. MacClelland wants to be

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    confident that Verizon will include the amount of that service charge in the advertised and

2    quoted service plan price. Ms. MacClelland will be harmed if, in the future, she is left to guess

3    as to whether Verizon's representations are accurate and whether there are omissions of

4    material facts regarding the wireless service plans being advertised and represented to her.

5    **Plaintiff Karen Umberger**

6        83.    Plaintiff Karen Umberger is, and at all relevant times has been, a citizen and

7    resident of Eureka, California.

8        84.    Ms. Umberger has been a continuous Verizon post-paid wireless customer since

9    at least 2007. She initially signed up on or about 2007 for Verizon post-paid wireless service

10   for at least two phone lines in a Verizon store located in Fortuna, California. She signed up for

11   two-year service contracts for the phone lines. She also purchased new phones for each line

12   along with the service contracts, as part of a bundle.

13       85.    When Ms. Umberger purchased her wireless service plan for the phone lines,

14   Verizon prominently advertised and quoted, to Ms. Umberger and the public, that the plan

15   would cost a particular monthly price. Verizon did not disclose to Ms. Umberger, at any time

16   before or when she signed up, that Verizon would charge her the Administrative Charge on top

17   of the advertised and promised monthly price.

18       86.    Verizon charged Ms. Umberger an Administrative Charge beginning on her very

19   first bill. Ms. Umberger did not receive notice or adequate notice that the Administrative

20   Charge would be charged or regarding the true nature or basis of the charge.

21       87.    Verizon has continued to charge Ms. Umberger an Administrative Charge every

22   month from 2007 through the present.

23       88.    During that time, Verizon has increased the amount of the Administrative

24   Charge charged to Ms. Umberger several times. Until December 2015, the Administrative

25   Charge remained under a dollar per month. In December 2015, Verizon increased the

26   Administrative Charge from $0.95 to $1.23 per line each month. In August 2019, Verizon

27   raised the Administrative Charge to $1.78 per line each month. In August 2020, Verizon

28   increased the Administrative Charge to $1.95 per line each month, which is the current amount

CLASS ACTION COMPLAINT

- 22 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   as of this filing.

2       89.     Through its imposition of the Administrative Charge, Verizon has for 14 years

3   charged Ms. Umberger a higher price for her service plans each month than Verizon advertised

4   and that she was promised and expected to pay.

5       90.     Since 2007, Ms. Umberger has changed her Verizon plan a few times. Ms.

6   Umberger has also purchased several mobile phones over the years from Verizon, typically

7   once every couple of years for each phone line. Prior to 2014, Ms. Umberger would commit to

8   2-year service contracts to Verizon each time she purchased a mobile phone. On or after 2014,

9   Ms. Umberger typically purchased new phones from Verizon on 24-payment device installment

10  plans. For most of this period, Ms. Umberger has had multiple phone lines on each of her

11  Verizon service plans. More recently, since approximately 2016, Ms. Umberger has had a

12  single phone line with Verizon.

13      91.     Nearly every time since 2007 that Ms. Umberger changed her wireless service

14  plan or purchased a new mobile phone, she did so in person at the Verizon corporate-owned

15  store located in Eureka, California. The only exception that she can recall was in 2021 when

16  she did so over the phone with a Verizon telephone agent.

17      92.     Each and every time that Ms. Umberger changed her wireless service plan,

18  Verizon prominently advertised and quoted, to Ms. Umberger and the public, a particular

19  monthly price for the wireless service plan, and did not disclose the Administrative Charge.

20  The price that Verizon quoted and stated did not include the Administrative Charge, nor did it

21  reflect the true total amount she would be charged each month (inclusive of the Administrative

22  Charge, which Verizon charged on each of her lines). Nor did Verizon disclose that the total

23  price, inclusive of the Administrative Charge, would or might increase as a result of increases

24  to the Administrative Charge. Likewise, each time that Ms. Umberger purchased a new mobile

25  phone from Verizon, at no point before or during the process was the Administrative Charge

26  disclosed to her.

27      93.     In particular, since approximately 2015 or so, each time Ms. Umberger visited

28  the Verizon store in Eureka to change or update her wireless service plan, a Verizon

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

salesperson utilized a proprietary sales process on an iPad. During this in-store process, Verizon represented the monthly price she would pay for the service, and Ms. Umberger reasonably relied upon that representation. During this process, Verizon never disclosed the existence of, let alone the amount of, the Administrative Charge. The monthly price that Verizon quoted and represented did not include the Administrative Charge, nor did it reflect the true total amount she would be charged each month (inclusive of the Administrative Charge).

94.     Ms. Umberger has been signed up for electronic billing and Auto Pay for at least the past ten years, as Verizon encouraged her to do. Through this billing process, Ms. Umberger receives a monthly Verizon billing email which states her bill total and informs her that her bill will be automatically paid by the payment due date because she has Auto Pay. Verizon's Auto Pay feature discourages customers from reviewing their monthly bill. Meanwhile, as alleged above, the monthly billing statement and the My Verizon online billing center are deliberately designed in a manner to hide and disguise the Administrative Charge. Verizon's monthly electronic billing process and monthly statements did not inform or adequately disclose to Ms. Umberger that Verizon was adding an Administrative Charge to her bill each month or disclose the true nature or basis of the charge.

95.     Ms. Umberger did not learn of the Administrative Charge's existence until it was brought to her attention by her counsel in August 2021.

96.     In or around late September 2021, Ms. Umberger's iPhone 8 stopped working correctly and she called Verizon to purchase a new mobile phone. The telephone agent she spoke to sold her a new iPhone on a 24-month installment plan, and told Ms. Umberger that she also needed to change her service plan to one of Verizon's new "Unlimited" plans, which Ms. Umberger did. The telephone agent never disclosed the Administrative Charge, and the monthly price for the "Unlimited" plan that the agent quoted and represented did not include the Administrative Charge, nor did it reflect the true total amount Ms. Umberger would be charged each month (inclusive of the Administrative Charge) under the new service plan. If Ms. Umberger were to cancel her Verizon wireless service before the installment payments for the new iPhone are complete, she would have to pay the full remaining balance immediately in

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

a single balloon payment.

97.     When Ms. Umberger agreed to purchase her Verizon service plans, she was relying on Verizon's prominent representations, in each instance, regarding the monthly price of the service plans. Ms. Umberger did not expect (and she was never told) that Verizon would actually charge her a so-called Administrative Charge on top of the advertised service plan price or that the true price of the services would include an additional Administrative Charge for each phone line which Verizon could and would increase at its desire. That information would have been material to her. Had she known that information she would not have been willing to pay as much for her plans and would have acted differently.

98.     Ms. Umberger has a legal right to rely now, and in the future, on the truthfulness and accuracy of Verizon's representations and advertisements regarding its wireless service plan prices. Ms. Umberger believes that she was given the services Verizon promised her—just not at the price Verizon promised and advertised to her.

99.     Ms. Umberger remains a Verizon post-paid wireless customer as of this filing. Ms. Umberger does not have feasible options other than Verizon for good wireless service coverage in her geographic area in Eureka, California. Ms. Umberger desires and intends to sign up for different Verizon post-paid wireless service plans and Verizon device installment plans in the future. However, Ms. Umberger wants to be confident that the advertised and quoted price for Verizon's service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges such as the Administrative Charge). And, if Verizon introduces any new or invented discretionary monthly service charge (like it did with the Administrative Charge), Ms. Umberger wants to be confident that Verizon will include the amount of that service charge in the advertised and quoted service plan price. Ms. Umberger will be harmed if, in the future, she is left to guess as to whether Verizon's representations are accurate and whether there are omissions of material facts regarding the wireless service plans being advertised and represented to her.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Plaintiff Scott Willits**

100.    Plaintiff Scott Willits is, and at all relevant times has been, a citizen and resident of Eureka, California.

101.    Mr. Willits has been a continuous Verizon post-paid wireless customer since at least 2012. On or about 2012, Mr. Willits first signed up with Verizon for a post-paid wireless service plan for three phone lines at a kiosk at his local Costco store. When he signed up, he agreed to a two-year service contract. He also purchased two new phones—one for him and one for his wife—along with the service contract, as part of a bundle.

102.    To sign up for the service plan and the three phone lines, Mr. Willits completed a Verizon-created process at the Costco store. When Mr. Willits purchased the wireless service plan, Verizon prominently advertised and quoted, to Mr. Willits and the public, that the plan would cost a particular monthly price. During this Verizon-created process at the Costco store, Verizon represented the monthly price he would pay for the service, and Mr. Willits reasonably relied upon that representation. During this process, Verizon never disclosed the existence of, let alone the amount of, the Administrative Charge. The monthly price that Verizon quoted and represented did not include the Administrative Charge, nor did it reflect the true total amount he would be charged each month (inclusive of the Administrative Charge). Nor did Verizon disclose that the total monthly price, inclusive of the Administrative Charge, would or might increase as a result of increases to the Administrative Charge.

103.    Mr. Willits's first Verizon bill included an Administrative Charge for each of his three phone lines. Verizon has continued to charge Mr. Willits an Administrative Charge each month for all three phone lines from 2012 to the present. Initially, the Administrative Charge for each phone line was less than a dollar per month. However, in December 2015, Verizon increased the Administrative Charge from $0.95 to $1.23 per line each month (totaling $3.69 a month for all three phone lines). In August 2019, Verizon raised the Administrative Charge to $1.78 per line each month (totaling $5.34 a month for all three phone lines). In August 2020, Verizon increased the Administrative Charge to $1.95 per line each month (totaling $5.85 a month for all three phone lines), which is the current amount as of this filing.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

104.    Through its imposition of the Administrative Charge, Verizon has for 9 years charged Mr. Willits a higher price for his service plans each month than Verizon advertised and that he was promised and expected to pay.

105.    In 2014, Mr. Willits went back to the Verizon kiosk at his local Costco to purchase two new Samsung Galaxy S5 phones and to update his service plan. When he purchased the phones and updated his plan, he agreed to a two-year service contract for each phone. Again, when Mr. Willits purchased the wireless service plan pursuant to a Verizon-created process at the Costco store, Verizon prominently advertised and quoted, to Mr. Willits and the public, that the plan would cost a particular monthly price. Again, during this process, Verizon never disclosed the existence of, let alone the amount of, the Administrative Charge. Again, the monthly price that Verizon quoted and represented did not include the Administrative Charge, nor did it reflect the true total amount he would be charged each month (inclusive of the Administrative Charge). Again, Verizon did not disclose that the total monthly price, inclusive of the Administrative Charge, would or might increase as a result of increases to the Administrative Charge—and in fact Verizon did increase the Administrative Charge in the middle of his supposedly fixed-rate contract, in December 2015, from $0.95 to $1.23 per month per line.

106.    In 2016, Mr. Willits went back to the Verizon kiosk at his local Costco to purchase a new phone and to update his service plan. Mr. Willits purchased a new Samsung Galaxy S7 on a 24-payment device installment plan. Again, when Mr. Willits updated his wireless service plan pursuant to a Verizon-created process at the Costco store, Verizon prominently advertised and quoted, to Mr. Willits and the public, that the plan would cost a particular monthly price. Again, during this process, Verizon never disclosed the existence of, let alone the amount of, the Administrative Charge. Again, the monthly price that Verizon quoted and represented did not include the Administrative Charge, nor did it reflect the true total amount he would be charged each month (inclusive of the Administrative Charge).

107.    Mr. Willits has been signed up for electronic billing and Auto Pay for at least the past four years, as Verizon encouraged him to do. Through this billing process, Mr. Willits

1    receives a monthly Verizon billing email which states his bill total and informs him that his bill

2    will be automatically paid by the payment due date because he has Auto Pay. Verizon's Auto

3    Pay feature discourages customers from reviewing their monthly bill. Meanwhile, as alleged

4    above, the monthly billing statement and the My Verizon online billing center are deliberately

5    designed in a manner to hide and disguise the Administrative Charge. Verizon's monthly

6    electronic billing process and monthly statements did not inform or adequately disclose to Mr.

7    Willits that Verizon was adding an Administrative Charge to his bill each month or disclose the

8    true nature or basis of the charge.

9         108.    Mr. Willits did not learn of the Administrative Charge's existence until it was

10   brought to his attention by his counsel in August 2021.

11        109.    When Mr. Willits agreed to purchase his Verizon service plans, he was relying

12   on Verizon's prominent representations, in each instance, regarding the monthly price of the

13   service plans. Mr. Willits did not expect (and he was never told) that Verizon would actually

14   charge him a so-called Administrative Charge on top of the advertised service plan price or that

15   the true price of the services would include an additional Administrative Charge which Verizon

16   could and would increase at its desire. That information would have been material to him. Had

17   he known that information he would not have been willing to pay as much for his plans and

18   would have acted differently.

19        110.    Mr. Willits has a legal right to rely now, and in the future, on the truthfulness

20   and accuracy of Verizon's representations and advertisements regarding its wireless service

21   plan prices. Mr. Willits believes that he was given the services Verizon promised him—just not

22   at the price Verizon promised and advertised to him.

23        111.    Mr. Willits remains a Verizon post-paid wireless customer as of this filing. Mr.

24   Willits does not have feasible options other than Verizon for good wireless service coverage in

25   his geographic area in Eureka, California. Mr. Willits desires and intends to sign up for

26   different Verizon post-paid wireless service plans and Verizon device installment plans in the

27   future. However, Mr. Willits wants to be confident that the advertised and quoted price for

28   Verizon's service plans is the true and full price for the services (i.e., that it includes all

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  applicable discretionary monthly service charges such as the Administrative Charge). And, if

2  Verizon introduces any new or invented discretionary monthly service charge (like it did with

3  the Administrative Charge), Mr. Willits wants to be confident that Verizon will include the

4  amount of that service charge in the advertised and quoted service plan price. Mr. Willits will

5  be harmed if, in the future, he is left to guess as to whether Verizon's representations are

6  accurate and whether there are omissions of material facts regarding the wireless service plans

7  being advertised and represented to him.

8  **VI.    CLASS ALLEGATIONS**

9        112.    Plaintiffs bring this lawsuit on behalf of themselves, and all others similarly

10  situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

11        113.    Plaintiffs seek to represent the following Class:

12        **All individual consumers in California who currently subscribe
       or formerly subscribed to a post-paid wireless service plan from
13        Verizon and were charged what Verizon labeled an
       "Administrative Charge" within the applicable statutes of
14        limitations.**

15        114.    Specifically excluded from the Class are Verizon and any entities in which

16  Verizon has a controlling interest, Verizon's agents and employees, the bench officers to whom

17  this civil action is assigned, and the members of each bench officer's staff and immediate

18  family.

19        115.    *Numerosity*. The members of the Class are so numerous that joinder of all

20  members would be impracticable. Plaintiffs do not know the exact number of Class members

21  prior to discovery. However, there are at least one million Class members. The exact number

22  and identities of Class members are contained in Verizon's records and can be easily

23  ascertained from those records.

24        116.    *Commonality and Predominance*. This action involves multiple common

25  questions which are capable of generating class-wide answers that will drive the resolution of

26  this case. These common questions predominate over any questions affecting individual Class

27  members, if any. These common questions include, but are not limited to, the following:

28        a.        Whether Verizon employs a uniform policy of charging the

---

CLASS ACTION COMPLAINT

- 29 -

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    Administrative Charge to its California customers;

2                    b.      Whether Verizon adequately and accurately disclosed the existence of

3    the Administrative Charge, its nature or basis, or its amount, to Plaintiffs and the Class;

4                    c.      What is the nature or purpose of the Administrative Charge;

5                    d.      Whether Verizon's descriptions of the Administrative Charge are false

6    and/or misleading;

7                    e.      Whether and to what extent the Administrative Charge is a surcharge

8    imposed on subscribers to "cover the costs that are billed to us by federal, state or local

9    governments,"

10                   f.      Whether the Administrative Charge and the true price of Verizon's post-

11   paid wireless services are material information, such that a reasonable consumer would find

12   that information important to the consumer's purchase decision;

13                   g.      Why does Verizon not include the amount of the Administrative Charge

14   in the advertised and quoted service plan price;

15                   h.      Why does Verizon not disclose the existence or amount of the

16   Administrative Charge when signing up consumers for its wireless service plans;

17                   i.      Why does Verizon not include the amount of the Administrative Charge

18   in the total monthly service price quoted to consumers during the sign-up process for its

19   wireless service plans;

20                   j.      Whether Verizon's policy and practice of advertising and quoting the

21   monthly prices of its wireless service plans without including the amount of the Administrative

22   Charge is false, deceptive, or misleading;

23                   k.      Whether a reasonable consumer is likely to be deceived by Verizon's

24   conduct and omissions alleged herein;

25                   l.      Whether Verizon's misrepresentations and misconduct alleged herein

26   violate California Civil Code § 1750 *et seq.* (CLRA), California Business & Professions Code §

27   17500 *et seq.* (FAL), and California Business & Professions Code § 17200 *et seq.* (UCL); and

28                   m.      Whether Verizon has violated the covenant of good faith and fair

CLASS ACTION COMPLAINT                                    - 30 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

dealing, implied in its form contracts with Plaintiffs and the Class, by imposing and increasing the Administrative Charge in the manner alleged herein.

117.   *Typicality*. Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Verizon's standard practices and schemes, bring the same claims, and face the same potential defenses.

118.   *Adequacy*. Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

119.   *Superiority*. A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Verizon's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

120.   By its conduct and omissions alleged herein, Verizon has acted and refused to act on grounds that apply generally to the Class, such that final private injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

121.   The nature of Verizon's misconduct is non-obvious and/or intentionally obscured from public view, and neither Plaintiffs nor the members of the Class could have, through the use of reasonable diligence, learned of the accrual of their claims against Verizon at an earlier time. This Court should, at the appropriate time, apply the discovery rule to extend any applicable limitations period (and the corresponding class period) to the date on which

CLASS ACTION COMPLAINT

- 31 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    Verizon first began charging the Administrative Charge.

2        122.    Verizon is primarily engaged in the business of selling services. Each cause of

3    action brought by Plaintiffs against Verizon in this Complaint arises from and is limited to

4    statements or conduct by Verizon that consist of representations of fact about Verizon's

5    business operations or services that is or was made for the purpose of obtaining approval for,

6    promoting, or securing sales of or commercial transactions in, Verizon's services or the

7    statement is or was made in the course of delivering Verizon's services. Each cause of action

8    brought by Plaintiffs against Verizon in this Complaint arises from and is limited to statements

9    or conduct by Verizon for which the intended audience is an actual or potential buyer or

10   customer, or a person likely to repeat the statements to, or otherwise influence, an actual or

11   potential buyer or customer.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq.***

15       123.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged

16   herein.

17       124.    Each Plaintiff brings this claim in his or her individual capacity, in his or her

18   capacity as a private attorney general seeking the imposition of public injunctive relief to

19   protect the general public, and as a representative of the Class.

20       125.    Defendants are each a "person," as defined by Cal. Civ. Code § 1761(c).

21       126.    Plaintiffs and Class members are each "consumers," as defined by Cal. Civ.

22   Code §1761(d).

23       127.    The wireless service plans that Verizon marketed and sold are "services," as

24   defined as defined by Cal. Civ. Code § 1761(b).

25       128.    The purchases of Verizon's wireless service plans by Plaintiffs and Class

26   members are "transactions," as defined by Cal. Civ. Code § 1761(e).

27       129.    Plaintiffs and Class members purchased Verizon's wireless service plans for

28   personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

---

CLASS ACTION COMPLAINT

- 32 -

130.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Humboldt County, which is within this federal judicial district. Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

131.    By its conduct and omissions alleged herein, Verizon has committed unlawful methods, acts or practices, including without limitation by:

a.    Misrepresenting the prices of Verizon's wireless service plans and concealing the true prices of its wireless service plans;

b.    Misrepresenting the prices of Verizon's wireless service plans by advertising or quoting prices that do not include the monthly Administrative Charge;

c.    Failing to disclose the existence or amount of the Administrative Charge when consumers sign up for Verizon's wireless service plans;

d.    Failing to *ever* adequately or accurately disclose the existence of the Administrative Charge, its nature, or its amount to its subscribers;

e.    Increasing the Administrative Charge on existing customers without notice or adequate notice, including in the middle of promised fixed-rate customer contracts;

f.    Misrepresenting the nature of the Administrative Charge, including by representing or indicating that the Administrative Charge is a tax, a charge imposed to recover costs billed to Verizon by the government, a pass-through government cost, a government or regulatory fee, or a charge over which Verizon has no control; and

g.    Falsely stating on the customer bill that the Administrative Charge is a surcharge imposed to "cover the costs that are billed to us by federal, state or local governments."

132.    The unlawful methods, acts or practices alleged herein to have been undertaken by Verizon were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Verizon did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

133.    Verizon's conduct alleged herein has violated the CLRA in multiple respects,

including, but not limited to, the following:

        a.     Verizon represented that its wireless service plans had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

        b.     Verizon advertised its wireless service plans with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

        c.     Verizon misrepresented that its wireless service plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

        d.     Verizon inserted unconscionable provisions in its consumer agreements, including, but not limited to, an arbitration clause which waives the right to seek public injunctive relief in any forum and which impairs the ability of customers to enforce their legal rights, in violation of California law (Cal. Civ. Code § 1770(a)(19)).

134.    With respect to any omissions, Verizon at all relevant times had a duty to disclose the information in question because, inter alia: (a) Verizon had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Verizon concealed material information from Plaintiffs and Class members; and (c) Verizon made partial representations, including regarding the monthly rate of its wireless service plans, which were false and misleading absent the omitted information.

135.    Verizon's misrepresentations deceive and have a tendency to deceive the general public.

136.    Verizon's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

137.    Plaintiffs and Class members reasonably relied on Verizon's material misrepresentations, and would not have purchased, or would have paid less money for, Verizon's wireless service plans had they known the truth.

138.    As a direct and proximate result of Verizon's violations of the CLRA, Plaintiffs and Class members have been damaged and have lost money or property in the amount of the

CLASS ACTION COMPLAINT        - 34 -        HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   Administrative Charges they have been charged and paid. Moreover, Verizon continues to

2   charge Plaintiffs and Class members the Administrative Charge and may continue to increase

3   its service prices via increases to the Administrative Charge.

4        139.    Verizon's conduct alleged herein caused substantial injury to Plaintiffs, Class

5   members, and the general public.

6        140.    Verizon's conduct is ongoing and is likely to continue and recur absent a

7   permanent injunction. Accordingly, Plaintiffs seek an order enjoining Verizon from committing

8   such practices.

9        141.    Plaintiffs lack an adequate remedy at law to prevent Verizon's continued

10  unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the

11  truthfulness and accuracy of Verizon's representations and advertisements regarding its

12  wireless service plan prices. Plaintiffs desire and intend to sign up for different Verizon post-

13  paid wireless service plans and Verizon device installment plans in the future.

14       142.    Monetary damages are not an adequate remedy at law for *future* harm for the

15  following reasons.  First, damages are not an adequate remedy for future harm because they

16  will not prevent Verizon from continuing its unlawful conduct. Second, damages for future

17  harm cannot be calculated with certainty and thus cannot be awarded. For example, it is

18  impossible to know: (1) how many wireless service lines Plaintiffs may want or need in the

19  future (including for phones, computer tablets, or wireless hot spots); (2) what Verizon's future

20  per-line Administrative Charge will be (given that Verizon has increased the Administrative

21  Charge three times since 2015, doubling it from $0.95 to $1.95 thus far); or (3) how many

22  months Plaintiffs would continue to subscribe to Verizon but for the unlawful conduct. Because

23  these factors are unknown, damages are impossible to calculate and cannot be awarded for

24  future harm. Third, injunctive relief is necessary (and monetary damages do not provide a

25  plain, adequate and complete remedy) because, without forward-looking injunctive relief

26  enjoining the unlawful practices, the courts would be flooded with future lawsuits by the

27  general public, the Class members, and the Plaintiffs for future violations of the law by

28  Verizon.

CLASS ACTION COMPLAINT                              - 35 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

143.     Plaintiffs, on behalf of themselves and as private attorneys general, seek public injunctive relief under the CLRA to protect the general public from Verizon's false advertisements and omissions. Specifically, Plaintiffs seek a permanent public injunction against Verizon under the CLRA as follows: (1) enjoin Verizon from falsely advertising the prices of its wireless service plans to, and concealing the true prices of its wireless service plans from, members of the general public; (2) enjoin Verizon from advertising or quoting a wireless service plan price to members of the general public if that price does not include applicable discretionary monthly service fees or charges such as the Administrative Charge; and (3) enjoin Verizon from representing or stating to members of the public that the Administrative Charge is a tax, a charge imposed to recover costs billed to Verizon by the government, a pass-through government cost, a government or regulatory fee, or a charge over which Verizon has no control.

144.     Plaintiffs do not currently seek damages in this Complaint under the CLRA.

145.     In accordance with California Civil Code § 1782(a), Plaintiffs, through counsel, served Verizon with notice of its CLRA violations by USPS certified mail, return receipt requested, on November 3, 2021.

146.     If Verizon fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiffs' notification letter, Plaintiffs will amend or seek leave to amend this Complaint to pray for compensatory and punitive damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

## COUNT II
### Violation of California's False Advertising Law
### California Business and Professions Code § 17500 *et seq*.

147.     Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

148.     Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

149.     By its conduct alleged herein, Verizon has committed acts of untrue and

CLASS ACTION COMPLAINT

- 36 -

HATTIS & LUKACS
400 108ᵗʰ Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

misleading advertising, as defined by and in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL"). These acts include but are not limited to:

      a.     Misrepresenting the prices of Verizon's wireless service plans and concealing the true prices of its wireless service plans in its advertising;

      b.     Misrepresenting the prices of Verizon's wireless service plans by advertising or quoting prices in its advertising that do not include the monthly Administrative Charge; and

      c.     Failing to disclose the existence or amount of the Administrative Charge in its advertising when consumers sign up for Verizon's wireless service plans.

150.     Verizon committed such violations of the FAL with actual knowledge that its advertising was misleading, or Verizon, in the exercise of reasonable care, should have known that its advertising was misleading.

151.     Verizon's misrepresentations deceive and have a tendency to deceive the general public.

152.     Verizon intentionally deceived Plaintiffs and Class members, and continues to deceive the public.

153.     Verizon's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

154.     Plaintiffs and Class members reasonably relied on Verizon's material misrepresentations, and would not have purchased, or would have paid less money for, Verizon's wireless service plans had they known the truth.

155.     By its conduct and omissions alleged herein, Verizon received more money from Plaintiffs and Class members than it should have received, including the excess Administrative Charges that Verizon charged Plaintiffs and the Class on top of the advertised prices for the service plans, and that money is subject to restitution.

156.     By its conduct and omissions alleged herein, Verizon caused the demand for its

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1   post-paid wireless service plans to be artificially increased and caused all customers of those

2   plans, including Plaintiffs and the Class, to pay premiums to Verizon.

3       157.    As a direct and proximate result of Verizon's violations of the FAL, Plaintiffs

4   and Class members have been harmed and lost money.

5       158.    Verizon's conduct has caused substantial injury to Plaintiffs, Class members,

6   and the general public.

7       159.    Verizon's conduct is ongoing and is likely to continue and recur absent a

8   permanent injunction. Accordingly, Plaintiffs seek an order enjoining Verizon from committing

9   such practices.

10      160.    Plaintiffs lack an adequate remedy at law to prevent Verizon's continued

11  unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the

12  truthfulness and accuracy of Verizon's representations and advertisements regarding its

13  wireless service plan prices. Plaintiffs desire and intend to sign up for different Verizon post-

14  paid wireless service plans and Verizon device installment plans in the future.

15      161.    Monetary damages are not an adequate remedy at law for *future* harm for the

16  following reasons.  First, damages are not an adequate remedy for future harm because they

17  will not prevent Verizon from continuing its unlawful conduct. Second, damages for future

18  harm cannot be calculated with certainty and thus cannot be awarded. For example, it is

19  impossible to know: (1) how many wireless service lines Plaintiffs may want or need in the

20  future (including for phones, computer tablets, or wireless hot spots); (2) what Verizon's future

21  per-line Administrative Charge will be (given that Verizon has increased the Administrative

22  Charge three times since 2015, doubling it from $0.95 to $1.95 thus far); or (3) how many

23  months Plaintiffs would continue to subscribe to Verizon but for the unlawful conduct. Because

24  these factors are unknown, damages are impossible to calculate and cannot be awarded for

25  future harm. Third, injunctive relief is necessary (and monetary damages do not provide a

26  plain, adequate and complete remedy) because, without forward-looking injunctive relief

27  enjoining the unlawful practices, the courts would be flooded with future lawsuits by the

28  general public, the Class members, and the Plaintiffs for future violations of the law by

---

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    Verizon.

2    162.    Plaintiffs, on behalf of themselves and as private attorneys general, seek public

3    injunctive relief under the FAL to protect the general public from Verizon's false advertising.

4    Specifically, Plaintiffs seek a permanent public injunction against Verizon under the FAL as

5    follows: (1) enjoin Verizon from falsely advertising the prices of its wireless service plans to,

6    and concealing the true prices of its wireless service plans from, members of the general public;

7    (2) enjoin Verizon from advertising or quoting a wireless service plan price to members of the

8    general public if that price does not include applicable discretionary monthly service fees or

9    charges such as the Administrative Charge; and (3) enjoin Verizon from representing or stating

10   to members of the public that the Administrative Charge is a tax, a charge imposed to recover

11   costs billed to Verizon by the government, a pass-through government cost, a government or

12   regulatory fee, or a charge over which Verizon has no control.

13   163.    Plaintiffs further seek an order granting restitution to Plaintiffs and Class

14   members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees

15   and costs under Cal. Code Civ. Proc. § 1021.5.

16   **COUNT III**
**Violation of California's Unfair Competition Law**
17   **California Business and Professions Code § 17200 *et seq.***

18   164.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged

19   herein.

20   165.    Each Plaintiff brings this claim in his or her individual capacity, in his or her

21   capacity as a private attorney general seeking the imposition of public injunctive relief to

22   protect the general public, and as a representative of the Class.

23   166.    California Business & Professions Code § 17200, *et seq.*, also known as

24   California's Unfair Competition Law (UCL), prohibits any unfair, unlawful, or fraudulent

25   business practice.

26   167.    Verizon has violated the UCL by engaging in the following ***unlawful*** business

27   acts and practices:

28   a.    Making material misrepresentations in violation of Cal. Civ. Code §§

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1770(a)(5), (9) and (16) (the CLRA);

      b.     Inserting unconscionable provisions in its consumer agreements in violation of Cal. Civ. Code § 1770(a)(19) (the CLRA), including, but not limited to, an arbitration clause which waives the right to seek public injunctive relief in any forum and which impairs the ability of customers to enforce their legal rights, in violation of California law;

      c.     Making material misrepresentations in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL); and

      d.     Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710.

      168.     Verizon has violated the UCL by engaging in the following ***unfair*** and ***fraudulent*** business acts and practices:

      a.     Misrepresenting the prices of Verizon's wireless service plans and concealing the true prices of its wireless service plans;

      b.     Misrepresenting the prices of Verizon's wireless service plans by advertising or quoting prices that do not include the monthly Administrative Charge;

      c.     Failing to disclose the existence or amount of the Administrative Charge when consumers sign up for Verizon's wireless service plans;

      d.     Failing to *ever* adequately or accurately disclose the existence of the Administrative Charge, its nature, or its amount to its subscribers;

      e.     Increasing the Administrative Charge on existing customers without notice or adequate notice, including in the middle of promised fixed-rate customer contracts;

      f.     Misrepresenting the nature of the Administrative Charge, including by representing or indicating that the Administrative Charge is a tax, a charge imposed to recover costs billed to Verizon by the government, a pass-through government cost, a government or regulatory fee, or a charge over which Verizon has no control; and

      g.     Falsely stating on the customer bill that the Administrative Charge is a surcharge imposed to "cover the costs that are billed to us by federal, state or local governments."

- 40 -

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

169.    Verizon's misrepresentations were likely to mislead reasonable consumers.

170.    Verizon's misrepresentations deceive and have a tendency to deceive the general public.

171.    Verizon's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

172.    Verizon intentionally deceived Plaintiffs and Class members, and continues to deceive the public.

173.    Plaintiffs and Class members reasonably relied on Verizon's material misrepresentations, and would not have purchased, or would have paid less money for, Verizon's wireless service plans had they known the truth.

174.    By its conduct alleged herein, Verizon received more money from Plaintiffs and Class members than it should have received, including the excess Administrative Charges that Verizon charged Plaintiffs and the Class on top of the advertised prices for the service plans, and that money is subject to restitution.

175.    As a direct and proximate result of Verizon's unfair, unlawful, and fraudulent conduct, Plaintiffs and Class members lost money.

176.    Verizon's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs, Class members, and the general public. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Verizon's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, Verizon has improperly extracted hundreds of millions of dollars from the Class. There is no utility to Verizon's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Verizon's conduct alleged herein.

177.    Verizon's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Verizon from committing such practices.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

178.     Plaintiffs lack an adequate remedy at law to prevent Verizon's continued unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the truthfulness and accuracy of Verizon's representations and advertisements regarding its wireless service plan prices. Plaintiffs desire and intend to sign up for different Verizon post-paid wireless service plans and Verizon device installment plans in the future.

179.     Monetary damages are not an adequate remedy at law for *future* harm for the following reasons.  <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent Verizon from continuing its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know: (1) how many wireless service lines Plaintiffs may want or need in the future (including for phones, computer tablets, or wireless hot spots); (2) what Verizon's future per-line Administrative Charge will be (given that Verizon has increased the Administrative Charge three times since 2015, doubling it from $0.95 to $1.95 thus far); or (3) how many months Plaintiffs would continue to subscribe to Verizon but for the unlawful conduct. Because these factors are unknown, damages are impossible to calculate and cannot be awarded for future harm. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by the general public, the Class members, and the Plaintiffs for future violations of the law by Verizon.

180.     Plaintiffs, on behalf of themselves and as private attorneys general, seek public injunctive relief under the UCL to protect the general public from Verizon's false advertising. Specifically, Plaintiffs seek a permanent public injunction against Verizon under the UCL as follows: (1) enjoin Verizon from falsely advertising the prices of its wireless service plans to, and concealing the true prices of its wireless service plans from, members of the general public; (2) enjoin Verizon from advertising or quoting a wireless service plan price to members of the general public if that price does not include applicable discretionary monthly service fees or charges such as the Administrative Charge; and (3) enjoin Verizon from representing or stating

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

to members of the public that the Administrative Charge is a tax, a charge imposed to recover costs billed to Verizon by the government, a pass-through government cost, a government or regulatory fee, or a charge over which Verizon has no control.

181.    Plaintiffs further seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing

182.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

183.    Plaintiffs allege this cause of action in the alternative.

184.    To the extent any applicable contract could be read as granting Verizon discretion to impose and/or increase the Administrative Charge—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

185.    Verizon has violated the covenant of good faith and fair dealing by its conduct alleged herein.

186.    Verizon has abused any discretion it purportedly had under any applicable contract to impose or increase the Administrative Charge. For example:

a.    Verizon imposed and has increased the Administrative Charge as a covert way to increase customers' monthly rates without having to advertise such higher rates;

b.    Verizon has increased the Administrative Charge to covertly and improperly squeeze additional cash from existing subscribers at Verizon's desire;

c.    Verizon lists the Administrative Charge on the bill next to actual government costs, and Verizon explicitly and falsely describes the Administrative Charge as a surcharge imposed to cover costs billed to Verizon by the government, in order to discourage its customers from questioning the charge; and

d.    If a customer happens to notice the Administrative Charge and contacts

CLASS ACTION COMPLAINT

- 43 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Verizon via phone or web chat or at a Verizon store to inquire about the charge, Verizon agents falsely tell the customer that the Administrative Charge is a tax or government fee outside of Verizon's control.

187.    Verizon meanwhile utilizes the activation fee, restocking fee, early termination fee, and installment balloon payment as ways to penalize and discourage customers from freely cancelling their services if they learn that Verizon has charged them more than promised for its services via imposition of, and/or increases to, the Administrative Charge. And Verizon's policies (including the cancellation/return periods and how they relate to the timing of the billing statements) are deliberately and knowingly designed by Verizon to lock customers in if and when they deduce that they are being charged more per month than promised.

188.    Verizon's imposition and increasing of the Administrative Charges defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. Verizon's conduct and actions alleged herein were done in bad faith.

189.    Verizon's conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Class members the full benefit of their bargains with Verizon.

190.    Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with Verizon. There is no legitimate excuse or defense for Verizon's conduct.

191.    Any attempts by Verizon to defend its overcharging through reliance on supposed contractual provisions will be without merit. Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and are unenforceable in light of the deceptive and hidden nature of Verizon's misconduct, among other reasons. Any such provisions, if any, would not excuse Verizon's abuses of discretion or otherwise preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and fair dealing.

192.    Plaintiffs and members of the Class sustained damages as a result of Verizon's

CLASS ACTION COMPLAINT
- 44 -
**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  breaches of the covenant of good faith and fair dealing. Plaintiffs seek damages in the amount
2  of the Administrative Charges paid by Plaintiffs and the Class members.

3

4                                      **PRAYER FOR RELIEF**

5  **Public Injunctive Relief:**

6       A.     In order to prevent injury to the general public, Plaintiffs individually, and as
7  private attorneys general, request that the Court enter a public injunction against Verizon under
8  the CLRA, FAL, and UCL as follows:

9            1.     Permanently enjoin Verizon from falsely advertising the prices of its
10  wireless service plans to, and concealing the true prices of its wireless service plans from,
11  members of the general public;

12            2.     Permanently enjoin Verizon from advertising or quoting a wireless
13  service plan price to members of the general public if that price does not include applicable
14  discretionary monthly service fees or charges such as the Administrative Charge;

15            3.     Permanently enjoin Verizon, including Verizon's sales and customer
16  service agents, from representing or stating to members of the general public that the
17  Administrative Charge is any of the following: (a) a tax; (b) a charge imposed to recover costs
18  billed to Verizon by federal, state or local governments; (c) a pass-through government cost;
19  (d) a government or regulatory fee; or (e) a charge over which Verizon has no control; and

20            4.     Retain jurisdiction to monitor Verizon's compliance with the permanent
21  public injunctive relief requested hereinabove.

22  **Individual And Class Relief:**

23       B.     On behalf of themselves and the proposed Class, Plaintiffs request that the Court
24  order relief and enter judgment against Verizon as follows:

25            1.     Declare this action to be a proper class action, certify the proposed Class,
26  and appoint Plaintiffs and their counsel to represent the Class;

27            2.     Order disgorgement and/or restitution, including, without limitation,
28  disgorgement of all revenues, profits and/or unjust enrichment that Verizon obtained, directly

CLASS ACTION COMPLAINT                          - 45 -

1     or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged

2     herein;

3             3.     Order Verizon to pay damages to Plaintiffs and the Class for breach of

4     the implied covenant of good faith and fair dealing, in the amount of the Administrative

5     Charges paid by Plaintiffs and the Class;

6             4.     Order the following Private Injunctive Relief:

7             a.     Order Verizon to adequately and accurately disclose to its

8     *subscribers* the existence of the Administrative Charge, its true nature or basis, and its amount;

9             b.     Permanently enjoin Verizon from misrepresenting the nature of

10     the Administrative Charge on its *customer bills*, including by: (a) stating it is a surcharge

11     imposed to "cover the costs that are billed to us by federal, state or local governments"; (b)

12     grouping the Administrative Charge on the bill together with actual government costs or taxes

13     billed to Verizon; and (c) failing to include the Administrative Charge or its amount in the

14     "Monthly charges and credits" section of the bill; and

15             5.     Retain jurisdiction to monitor Verizon's compliance with the permanent

16     private injunctive relief requested hereinabove (Prayer, ¶¶ B(4)).

17     **<u>Other Relief:</u>**

18         C.     On behalf of themselves and the proposed Class, and in their capacities as

19     private attorneys general, Plaintiffs request that the Court order relief as follows:

20             1.     Order Verizon to pay attorneys' fees, costs, and pre-judgment and post-

21     judgment interest to the extent allowed by law; and

22             2.     Grant such other relief as this Court deems just and proper.

23

24

25

26

27

28

---

CLASS ACTION COMPLAINT

- 46 -

## DEMAND FOR JURY TRIAL

Each Plaintiff, individually, as a private attorney general to protect the general public, and as a class representative on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED this 3rd day of November, 2021.

Presented by:

HATTIS & LUKACS

By: _____
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq.*
Shane T. Prince, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

*\*Pro hac vice application to be submitted.*

CLASS ACTION COMPLAINT

- 47 -

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com