Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
Che Corrington (*pro hac vice* submitted)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com
Email: che@hattislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND; KAREN UMBERGER; SCOTT WILLITS; MICHAEL BRANOM; MOLLY BROWN; MICHAEL CARNEY; TIM FRASCH; PATRICIA GAGAN; ANNA GUTIERREZ; LINDA JENKINS; AUGUSTUS JOHNSON; WILLIAM KAUPELIS; MARILYN KAYE; JANETTE LISNER; WILLIAM ERIC LOUGH; DAVID MASSARO; LOUISE MONSOUR; DARLEEN PEREZ; GABRIELLE POZZUOLI; VALERIE REED; BRUCE SCHRAMM; KERRY SHOWALTER; JOHN ST.JARRE; GLORIA STERN; EDNA TOY; TERESA TOY; and VANESSA WEST; For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated, | Case No. 3:21-cv-08592-EMC **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** <u>Hearing</u> Date: May 12, 2022 Time: 1:30 p.m. Judge: Hon. Edward M. Chen Courtroom: 5 |
| Plaintiffs, | |
| v. | |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC., | |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................- 1 -

PROCEDURAL AND FACTUAL HISTORY ....................................................- 5 -

ARGUMENT ........................................................................................................- 6 -

I.    THE COURT SHOULD APPLY THE VERSION OF THE CUSTOMER
AGREEMENT DATED OCTOBER 20, 2021. ..............................................- 6 -

II.   VERIZON'S ARBITRATION AGREEMENT IS PERMEATED BY
UNCONSCIONABILITY AND CANNOT BE ENFORCED. .......................- 9 -

    A.    The Arbitration Agreement Is Procedurally Unconscionable Because
It Is A Contract of Adhesion. .................................................................- 10 -

    B.    Multiple, Interconnected Provisions Regarding Dispute Resolution
Are Substantively Unconscionable.........................................................- 10 -

        1.    The 180-Day Contractual Statute of Limitations is Unconscionable..........- 11 -

        2.    The Pre-Dispute Jury Trial Waiver is Unconscionable...............................- 13 -

        3.    The Punitive Damages Waiver is Unconscionable. .....................................- 13 -

        4.    The Public Injunctive Relief Waiver is Unconscionable. ...........................- 14 -

        5.    The Exculpatory Clause & Its Discovery Limitation are Unconscionable. - 16 -

        6.    The Mass Arbitration Provision is Unconscionable....................................- 17 -

            a.    The mass arbitration provision forces Plaintiffs to suffer an
unreasonable delay before they can file their claims. .........................- 17 -

            b.    The mass arbitration provision is a direct assault on
Plaintiffs' right to their choice of counsel. .........................................- 19 -

            c.    The mass arbitration provision lacks mutuality—only
Plaintiffs are punished for their choice of counsel. .............................- 20 -

            d.    The mass arbitration provision directly interferes with the
legal practices of law firms that oppose Verizon. ..............................- 22 -

    C.    The Court Should Refuse To Enforce Verizon's Arbitration Agreement............- 23 -

        1.    The Arbitration Agreement is Permeated by Unconscionability. ...............- 23 -

        2.    Verizon Drafted the Unconscionable Provisions in Bad Faith....................- 24 -

        3.    The Unconscionable Provisions Cannot be Severed. ...................................- 25 -

CONCLUSION ...................................................................................................- 25 -

# TABLE OF AUTHORITIES

**CASES**                                               **PAGE(S)**

*Abernathy v. DoorDash, Inc.,*
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ............................................................. 2

*Ajamian v. CantorCO2e, L.P.,*
    203 Cal. App. 4th 771 (2012) ....................................................................... 14

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
    24 Cal. 4th 83 (2000) ........................................................................... passim

*Baxter v. Genworth N. Am. Corp.,*
    16 Cal. App. 5th 713 (2017) .......................................................................... 12

*Blair v. Rent-A-Center, Inc.,*
    928 F.3d 819 (9th Cir. 2019) ......................................................................... 14

*Brown v. Dow Chem. Co.,*
    2019 WL 484211 (N.D. Cal. Feb. 7, 2019) ........................................................ 12

*Cottrell v. AT&T Inc.,*
    2021 WL 4963246 (9th Cir. Oct. 26, 2021) ....................................................... 15

*Davis v. Kozak,*
    53 Cal. App. 5th 897 (2020) .......................................................................... 17

*Delisle v. Speedy Cash,*
    2019 WL 2423090 (S.D. Cal. June 10, 2019) .................................................... 15

*Doctor's Associates, Inc. v. Casarotto,*
    517 U.S. 681 (1996) ................................................................................... 9

*Dougherty v. Roseville Heritage Partners,*
    47 Cal. App. 5th 93 (2020) ...................................................................... 13, 14

*Durruthy v. Charter Communications, LLC,*
    2020 WL 6871048 (S.D. Cal. Nov. 23, 2020) .................................................. 1, 13

*Ellis v. U.S. Sec. Assocs.,*
    224 Cal. App. 4th 1213 (2014) ...................................................................... 12

*Fallis v. Dep't of Motor Vehicles,*
    264 Cal. App. 2d 373 (1968) ......................................................................... 20

*Grafton Partners v. Superior Ct.,*
    36 Cal. 4th 944 (2005) ................................................................................ 25

*Harper v. Ultimo,*
    113 Cal. App. 4th 1402 (2003) ........................................................................... 14

*Health Net of Cal., Inc. v. Dep't of Health Servs.,*
    113 Cal. App. 4th 224 (2003) ............................................................................. 18

*Hermosillo v. Davey Tree Surgery Co.,*
    2018 WL 3417505 (N.D. Cal. July 13, 2018) ................................................... 12

*Hodges v. Comcast Cable Communications, LLC,*
    21 F.4th 535 (9th Cir. 2021) .............................................................................. 15

*Jackson v. S.A.W. Entertainment Limited,*
    629 F. Supp. 2d 1018 (N.D. Cal. 2009) ....................................................... passim

*Lange v. Monster Energy Co.,*
    46 Cal. App. 5th 436 (2020) ......................................................................... 13, 14

*Lim v. TForce Logistics, LLC,*
    8 F.4th 992 (9th Cir. 2021) ............................................................. 10, 23, 24, 25

*Lyons v. NBCUniversal Media, LLC,*
    2019 WL 6703396 (C.D. Cal. Sept. 27, 2019) ................................................. 15

*Martinez v. Master Protection Corp.,*
    118 Cal. App. 4th 107 (2004) ...................................................................... 12, 25

*McArdle v. AT&T Mobility LLC,*
    2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) ...................................................... 1

*McArdle v. AT&T Mobility LLC,*
    772 F. App'x 575 (9th Cir. 2019) ..................................................................... 15

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017) .............................................................................. 14, 15, 25

*McQuirk v. Donnelley,*
    189 F.3d 793 (9th Cir. 1999) ............................................................................ 16

*Newton v. Am. Debt Servs., Inc.,*
    549 F. App'x 692 (9th Cir. 2013) ................................................................ 13, 19

*Newton v. American Debt Services, Inc.,*
    854 F. Supp. 2d 712 (N.D. Cal. 2012) .................................................. 1, 2, 14, 23

*Nyulassy v. Lockheed Martin Corp.,*
    120 Cal. App. 4th 1267 (2004) ......................................................................... 12

*OTO, L.L.C. v. Kho,*
   8 Cal. 5th 111 (2019) ............................................................................... 9, 10

*Pokorny v. Quixtar, Inc.,*
   601 F.3d 987 (9th Cir. 2010) .................................................................. passim

*Roa v. Lodi Med. Group, Inc.,*
   37 Cal. 3d 920 (1985) ...................................................................................... 20

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.,*
   32 Cal. App. 4th 985 (1995) ............................................................................ 16

*Sonic-Calabasas A, Inc. v. Moreno,*
   57 Cal. 4th 1109 (2013) ................................................................. 2, 11, 15, 16

*Subcontracting Concepts (CT), LLC v. De Melo,*
   34 Cal. App. 5th 201 (2019) ............................................................................ 14

*Ting v. AT&T,*
   319 F.3d 1126 (9th Cir. 2003) ............................................................. 10, 19, 21

*Vasquez v. Cebridge Telecom CA, LLC,*
   2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) ................................................... 15

*Wherry v. Award, Inc.,*
   192 Cal. App. 4th 1242 (2011) .................................................................. 12, 25

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.,*
   485 F. Supp. 3d 1168 (N.D. Cal. 2020) ........................................................... 23

*Yeomans v. World Fin. Grp. Ins. Agency, LLC.,*
   2021 WL 5356537 (9th Cir. Nov. 17, 2021) .................................................... 22

**STATUTES**

9 U.S.C. § 2 ......................................................................................................... 9

Cal. Bus. & Prof. Code § 17208 ......................................................................... 12

Cal. Civ. Code § 1668 .................................................................................. 16, 18

Cal. Civ. Code § 1780 ......................................................................................... 14

Cal. Civ. Code § 1783 ......................................................................................... 11

Cal. Civ. Proc. Code § 1282.4 ............................................................................ 20

Cal. Civ. Proc. Code § 338 ................................................................................. 12

**OTHER**

A. Robert, "Amazon drops arbitration requirement after facing over 75,000 demands," ABA
   JOURNAL, June 2, 2021 ................................................................................. - 5 -

I. Spezzamonte, "Justices Hesitant To Consider PAGA Suits As Class Actions," LAW360
   (March 30, 2022) ............................................................................................ - 16 -

# INTRODUCTION

Defendants Cellco Partnership and Verizon Communications Inc. (collectively, "Verizon") are attempting to compel arbitration based upon an adhesive Customer Agreement that is so permeated with unconscionability that it is unenforceable under California law.

The operative Customer Agreement dated October 20, 2021—which the Court can find at **Exhibit G** to the Declaration of Daniel M. Hattis—shocks the conscience with both the number of unconscionable provisions and the degree to which the provisions unfairly benefit Verizon at the expense of its customers.

The Customer Agreement contains multiple interconnected provisions that courts— including this Court—have held to be unconscionable. Although the California consumer protection statutes under which Plaintiffs are suing have limitations periods of three to four years, the Customer Agreement unconscionably shortens the Plaintiffs' applicable limitations period to 180 days—without a corresponding shortening of the limitations period applicable to Verizon's claims. *See Jackson v. S.A.W. Entertainment Limited*, 629 F. Supp. 2d 1018, 1027 (N.D. Cal. 2009) (Chen, J.) (finding 180-day contractual limitations period unconscionable). The Customer Agreement unconscionably waives Plaintiffs' right to demand a jury trial in the event that this Court does not compel arbitration. *See Durruthy v. Charter Communications, LLC*, 2020 WL 6871048, *12 (S.D. Cal. Nov. 23, 2020) (holding pre-dispute jury waiver to be unconscionable). The Customer Agreement unconscionably prevents Plaintiffs from seeking punitive damages in arbitration, even though Plaintiffs have a right to seek punitive damages for their claims under the Consumers Legal Remedies Act. *See Newton v. American Debt Services, Inc.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (Chen, J.) (contractual waiver of statutory punitive damages held unconscionable), *aff'd*, 549 F. App'x 692 (9th Cir. 2013). While Plaintiffs seek a public injunction to protect the general public from Verizon's false advertising in the future (First Amended Complaint, Prayer, ¶ A (Dkt. No. 10)), the Customer Agreement unlawfully prohibits Plaintiffs from seeking public injunctive relief in any forum. *See McArdle v. AT&T Mobility LLC*, 2017 WL 4354998, *1 (N.D. Cal. Oct. 2, 2017), *aff'd*, 772 F. App'x 575 (9th Cir. 2019) (finding materially identical provision to be unlawful). The

Customer Agreement contains an exculpatory clause that unconscionably limits discovery. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 120 (2000).

These unconscionable provisions sufficiently permeate the Customer Agreement to require this Court to disregard the dispute resolution terms in their entirety. These interconnected provisions work together to create "a systematic attempt . . . to gain an unfair advantage over their customers by remitting disputes to an inferior forum." *Newton*, 854 F. Supp. 2d at 733.

### *And all that is just for starters.*

As of April 22, 2021, Verizon inserted into the Customer Agreement a provision that addresses what is sometimes called "mass arbitration," i.e., the filing of separate arbitration demands on behalf of hundreds or thousands of claimants alleging similar claims against the same defendant.[1] There is nothing unlawful, unethical or unfair about mass arbitration; in fact, it is the logical culmination of the legal positions that the corporate defense bar has taken for decades as its members obtained an ever-expanding interpretation of the Federal Arbitration Act with the justification that large numbers of aggrieved consumers could always file large numbers of individual arbitration demands. Yet, when consumers call their bluff and do exactly that, corporate defendants scramble to avoid a reckoning. *See, e.g., Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067-1068 (N.D. Cal. 2020) (Alsup, J.) ("the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches . . . . This hypocrisy will not be blessed").

Verizon's tack was to insert into the Customer Agreement a laughably unconscionable provision that prevents a consumer from even ***filing*** a demand for arbitration if the consumer is

---

[1]    *Compare* Customer Agreement, dated June 30, 2020, without mass arbitration provision (Declaration of Lacy Kennedy IV, Exhibit 31 (Dkt. No. 21-31), pp. 8-10) *with* Customer Agreement, dated April 22, 2021, containing mass arbitration provision (Kennedy Decl., Exhibit 30 (Dkt. No. 21-30), p. 8).

represented by a law firm that already represents more than 24 consumers who made similar demands. *See* Customer Agreement, dated Oct. 20, 2021, at p. 7, ¶ 6 (Hattis Decl., Ex. G). If the consumer wants to maintain her choice of counsel, she is required by the Agreement to wait on filing her demand until other arbitrations are adjudicated in batches of 10.

The one-sidedness and unfairness of the provision are obvious on its face. While the Customer Agreement creates a barrier to a consumer retaining her counsel of choice and expeditiously filing her demand, the Customer Agreement imposes no reciprocal restriction on Verizon. Instead, Verizon is free to retain one law firm to immediately commence Verizon's defense against all incoming arbitration demands. The Customer Agreement allows Verizon and its one chosen law firm to reap the informational advantages of being repeat players while denying that possibility to consumers and their counsel. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (mutuality is the "paramount consideration" when assessing unconscionability).

As written, the mass arbitration provision is a direct attempt by Verizon to interfere with its customers' attorney-client relationships. Verizon is literally telling its customers who they can and cannot retain as counsel if they want to promptly file demands for arbitration. The provision also places a law firm representing 25 or more consumers in the untenably conflicted position of having to choose among its clients by deciding which clients are assigned to which batches of 10 demands.

As a practical matter, the mass arbitration provision is a *de facto* exculpation clause; many consumers who abide by the rules laid out in the Customer Agreement can find themselves with no claim to pursue because of the passage of time and the potential operation of time bars such as the statute of limitation or the doctrine of laches. The Customer Agreement specifies arbitration before the American Arbitration Association,[2] and the average AAA consumer arbitration requires 6.9 months to conclude.[3] Thus, as each batch of 10 arbitrations

---

[2]     Customer Agreement, dated Oct. 20, 2021, at p. 6, ¶¶ 1, 2 (Hattis Decl., Ex. G).

[3]     AAA Consumer Arbitration Fact Sheet (https://go.adr.org/consumer-arbitration). All Plaintiffs would opt for AAA arbitration if this Court compelled arbitration.

proceeds, all of the remaining claimants who are represented by the same law firm would be required to wait as memories fade, documents are lost or forgotten, and time bars tick away.

The harms caused by the Customer Agreement's insistence on delay are concrete, not hypothetical. If this Court compels arbitration, why should Plaintiffs' counsel be involuntarily put in the position of having to decide which of the 27 Plaintiffs should file their demands for arbitration first and which ones should wait as one or two batches of 10 are arbitrated first? If this Court compels arbitration, all 27 Plaintiffs want their demands for arbitration filed immediately. Hattis Decl., ¶ 5.

**Moreover, Plaintiffs' counsel has been retained by a current total of 2,685 Verizon customers who live in states other than California or New Jersey and who want to promptly file arbitration demands against Verizon under the laws of their states**. *See* Hattis Decl., ¶¶ 3–4.[4] Under the terms of the Customer Agreement, it would take approximately **156 years** to resolve all of these clients' claims. If the client list were only 100 consumers long, prosecuting all of their demands would still take more than 5 years—longer than the 3- and 4-year limitations periods that generally apply to consumer protection claims and far longer than Verizon's unconscionable 180-day contractual limitations period. Moreover, there are only a handful of law firms in the country with experience or interest in filing mass arbitrations; if each law firm were restricted to 24 or fewer clients, the number of consumers demanding arbitration against Verizon would quickly exceed the number of law firms willing and able to represent them. *See* Hattis Decl., ¶ 7–8. As a practical reality, the Customer Agreement would force consumers who want to be represented by counsel to instead arbitrate *pro se*.

Verizon's attempt to force its customers to choose between experienced counsel of their preference, on the one hand, and a promptly and timely filed claim, on the other, is unconscionable. When the mass arbitration provision is considered in conjunction with the other unconscionable provisions, there is no question that the Customer Agreement is

---

[4] The clients in California and New Jersey are seeking to have the Customer Agreement declared unconscionable and unenforceable. Hattis Decl., ¶ 3. *See* footnote 6, *infra* (discussing New Jersey litigation). The clients in the other 48 states are seeking to immediately demand arbitration. *Ibid.*

permeated with unconscionability, that the Court should deny Verizon's Motion To Compel Arbitration, and that Plaintiffs' claims should proceed in this Court.

On Reply, Verizon will presumably envision a parade of horribles that may occur if consumer-side law firms are allowed to represent more than 24 clients who simultaneously file similar demands for arbitration. **The solution is simple: Rule 23.** The procedural rules of class actions protect both plaintiffs and defendants and allow multitudinous claims to be adjudicated in a single, efficient action. Amazon.com—no shrinking violet—realized that arbitration clauses were more trouble than they were worth and now prefers to be sued in court.[5] Verizon should do the same. Verizon should withdraw with prejudice its Motion To Compel Arbitration and allow the claims of Plaintiffs and the proposed Class to proceed as a class action. If Verizon is unwilling to do so, then this Court should deny the Motion To Compel Arbitration.

## PROCEDURAL AND FACTUAL HISTORY

On November 3, 2021, Plaintiffs Teresa MacClelland, Karen Umberger and Scott Willits filed this action in this Court. Dkt. No. 1. On December 31, 2021, Plaintiffs filed the operative First Amended Complaint ("FAC"), adding 24 additional Plaintiffs. Dkt. No. 10. (Unless otherwise indicated, the term "Plaintiffs" refers to the 27 plaintiffs named in the FAC.)

Plaintiffs allege that Verizon has engaged, and continues to engage, in a pervasive false advertising scheme, whereby Verizon advertises flat monthly rates for its wireless service plans but then charges higher rates via a disguised and fabricated extra service charge on the bill, which Verizon calls the "Administrative Charge." FAC, ¶ 1 (Dkt. No. 10).

Plaintiffs allege four claims: (1) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) breach of the implied covenant of good faith and fair dealing. FAC, ¶¶ 511–578 (Dkt. No. 10).

Plaintiffs pursue their claims on behalf of themselves and also on behalf of a proposed

---

[5]     A. Robert, "Amazon drops arbitration requirement after facing over 75,000 demands," ABA JOURNAL, June 2, 2021.

class of California consumers, defined as: "All individual consumers in California who currently subscribe or formerly subscribed to a postpaid wireless service plan from Verizon and were charged what Verizon labeled an 'Administrative Charge' within the applicable statutes of limitations." FAC, ¶ 501 (Dkt. No. 10.)

In their capacity as individuals and private attorneys general, Plaintiffs pray for public injunctive relief prohibiting Verizon from falsely advertising the prices of its wireless service plans to the general public. *See* FAC, Prayer, ¶ A (Dkt. No. 10). In their capacity as named plaintiffs seeking to represent a putative class, Plaintiffs pray separately for private injunctive relief and monetary relief, among other remedies. *See* FAC, Prayer, ¶¶ B, C (Dkt. No. 10).[6]

On March 4, 2022, Verizon moved to compel arbitration of all 27 Plaintiffs' claims based on arbitration agreements in thirteen versions of its Customer Agreement. Dkt. No. 20.

## ARGUMENT

### I. THE COURT SHOULD APPLY THE VERSION OF THE CUSTOMER AGREEMENT DATED OCTOBER 20, 2021.

In its Motion, Verizon contends that different versions of the Customer Agreement apply to different Plaintiffs. *See* Mot. 8:9–9:2 & n. 1 & 2 (Dkt. No. 20).[7] In total, Verizon asks this Court to enforce 13 different versions of the Customer Agreement against 13 groups of Plaintiffs, based on what appears to be the date on which each Plaintiff most recently signed up for a new Verizon product or service and thereby most recently affirmatively assented (usually by e-signature) to a version of the Customer Agreement. *See* Declaration of Lacy Kennedy, IV at ¶¶ 17–33 (Dkt. No. 21).

There is no need for the Court to engage in such a needlessly complicated endeavor. **By operation of law and by its own plain language, the version of the Customer Agreement**

---

[6]      A similar case is pending in New Jersey state court, with a class limited to New Jersey citizens. *Achey v. Cellco Partnership d/b/a Verizon Wireless*, Case No. MID-L-000160-22 (Superior Court of New Jersey, Middlesex County, Law Division). The undersigned counsel are co-counsel on behalf of the plaintiffs in the New Jersey action.

[7]      Each page number citation to a document filed in this case is to the blue PACER page number in the upper right-hand corner.

**that is dated October 20, 2021, is the version that applies to the Plaintiffs and the proposed Class.** (A copy of the version dated October 20, 2021, is provided to the Court as **Exhibit G** to the Declaration of Daniel M. Hattis. Unless stated otherwise, all references in this Opposition to the Customer Agreement will be to the **Exhibit G** version.)

Regardless of which version of the Customer Agreement a Plaintiff initially signed, pursuant to Verizon's consistent language the next version of the Customer Agreement always superseded and supplanted the prior version as long as the Plaintiff continued to use Verizon services and the Plaintiff received notice of the new version. All 13 versions of the Customer Agreement provided by Verizon Wireless in support of its Motion contain a section heading in bold text that reads, "Can Verizon [or Verizon Wireless] change this Agreement or my Service?" and contain language in the body of the agreement that reads, "If you use your Service after the change takes effect, that means you're accepting the change."[8]

It is undisputed that each Plaintiff maintained continuous use of Verizon services since affirmatively assenting to an earlier version of the Customer Agreement, and Verizon provided notice to each Plaintiff in its October and/or November 2021 invoices that it would be supplanting the prior version of the Customer Agreement with the version dated October 20, 2021.[9] Consequently, pursuant to the express language of the Customer Agreement, each Plaintiff's relationship with Verizon is governed by the October 20, 2021 Customer Agreement—to the exclusion of all prior versions. *See also* Cal. Civ. Code § 1530 ("Novation is the substitution of a new obligation for an existing one.").

Pursuant to Verizon's own terms, the dispute resolution provisions of a Customer

---

[8]     *See* Kennedy Decl., Exhibits 30 (Dkt. No. 21-30, p. 3), 31 (Dkt. No. 21-31, p. 4), 32 (Dkt. No. 21-32, p. 4), 33 (Dkt. No. 21-33, p. 3), 34 (Dkt. No. 21-34, p. 3), 35 (Dkt. No. 21-35, p. 4), 36 (Dkt. No. 21-36, p. 4), 37 (Dkt. No. 21-37, p. 4), 38 (Dkt. No. 21-38, p. 4), 39 (Dkt. No. 21-39, p. 4), 40 (Dkt. No. 21-40, p. 5), 41 (Dkt. No. 21-41, p. 5), 42 (Dkt. No. 21-42, p. 4).

[9]     Verizon promises that, in the event of changes to the Customer Agreement, Verizon will "provide notice first, including written notice if you have Postpay Service." *See, e.g.,* Customer Agreement, dated April 22, 2021 (Kennedy Decl., Ex. 30, p. 3 (Dkt. No. 21-30)). In the October 2021 and/or November 2021 invoices that Verizon sent to each Plaintiff, Verizon provided written notice that the version of the Customer Agreement dated October 20, 2021, would be going into effect. *See* Verizon Invoices sent to Plaintiff Massaro and Plaintiff Johnson (Hattis Decl., ¶ 13, Exs. C and D, respectively).

Agreement become fixed and immutable once a dispute arises. The Customer Agreement dated October 20, 2021, reads, "if we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change." This language appears in every version of the Customer Agreement submitted by Verizon in support of its Motion. *See* footnote 8, *supra*.[10]

The dispute at bar arose on November 10, 2021—the day on which Verizon received a demand letter by the original three Plaintiffs (Mss. MacClelland and Umberger and Mr. Willits) that described their claims and this dispute. *See* Letter from D.M. Hattis to R. Dunne and CT Corp. (Hattis Decl., Ex. E). A week prior to that, the original three Plaintiffs filed the Complaint in this action.

Consequently, the version of the Customer Agreement that was in effect on November 10, 2021, governs the Plaintiffs' and Class's relationship with Verizon, and that version is the one dated October 20, 2021.[11]

To be clear: In this Opposition, Plaintiffs do not contest Verizon's factual assertion that they assented to a Customer Agreement, nor do Plaintiffs contest Verizon's legal argument that Plaintiffs' claims fall within the scope of the Customer Agreement's arbitration clause. Plaintiffs' position is that the dispute resolution provisions of the operative Customer Agreement dated October 20, 2021, are permeated with unconscionability and cannot be enforced by this Court.

---

[10]    The contractual language specifying that "changes will not affect the resolution of any disputes that arose before such change" appears to be a backhanded acknowledgement by Verizon that any such attempted amendment would be a breach of the implied covenant of good faith and fair dealing. "[T]he implied covenant of good faith and fair dealing prohibits a party from making unilateral changes to an arbitration agreement that apply retroactively to accrued or known claims[.]" *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 [collecting cases] [cleaned up].

In addition, a defendant's attempt to amend itself out of a pending class action is improper. *See In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"); *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, *4 (S.D. Cal. Mar. 8, 2012) (invalidating "improper attempt to alter the pre-existing arbitration agreement").

[11]    The October 20, 2021 version is also the same version that was posted on Verizon's website on the date Verizon was served with the First Amended Complaint, on January 19, 2022.

## II. VERIZON'S ARBITRATION AGREEMENT IS PERMEATED BY UNCONSCIONABILITY AND CANNOT BE ENFORCED.

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

California's law of unconscionability applies to Plaintiffs' claims. The Customer Agreement states that, to the extent that state law is implicated, "this agreement and any disputes covered by it are governed by . . . the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state." Customer Agreement, dated Oct. 21, 2021, p. 8 (Hattis Decl., Ex. G). At the time each Plaintiff accepted the Customer Agreement, each had a phone number in their account with a California area code. *See, e.g.*, FAC ¶¶ 15–41 (Dkt. No. 10); Hattis Decl., ¶ 9.

Under California law, a "contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. Under this standard, the unconscionability doctrine has both a procedural and a substantive element. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (internal citations and quotation marks omitted). While both procedural and substantive unconscionability must be present, "they need not be present to the same degree." *Id*. Accordingly, this Court must only find some degree of procedural unconscionability before turning to substantive unconscionability. "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all

relevant circumstances, that a court should withhold enforcement." *Id.* at 126.

Verizon's arbitration agreement contains both elements of unconscionability—it is procedurally unconscionable because it is a contract of adhesion, and it is substantively unconscionable because it contains multiple, interconnected unconscionable provisions. Moreover, Verizon's unconscionable provisions skew the odds so egregiously in Verizon's favor, and so egregiously strip consumers of numerous unwaivable rights, that the Customer Agreement is permeated with unconscionability and cannot be enforced.

## A. The Arbitration Agreement Is Procedurally Unconscionable Because It Is A Contract of Adhesion.

"A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003).

Verizon's arbitration agreement is a contract of adhesion. Verizon "offered its terms on a take-it-or-leave-it basis" without "opportunity for negotiation, modification, or waiver." *Ting*, 319 F.3d at 1149. Verizon itself explains that each Plaintiff was required to accept Verizon's Customer Agreement "in order to activate his or her wireless service." Mot. 8:1-2 (Dkt. No. 20); Kennedy Decl. ¶¶ 3–4 (Dkt. No. 21). If a Plaintiff disliked an amendment to the Customer Agreement, the Plaintiff's only option was to discontinue service without an early termination fee. Customer Agr., dated Oct. 20, 2021, p. 2 (Hattis Decl., Ex. G). Because the agreement is a contract of adhesion, it is procedurally unconscionable.

## B. Multiple, Interconnected Provisions Regarding Dispute Resolution Are Substantively Unconscionable.

"Substantive unconscionability examines the fairness of a contract's terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (quoting *OTO, L.L.C.*, 8 Cal. 5th at 129). A provision is unconscionable if it is "unreasonably favorable to the more powerful party." *Id.* at 1002. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided."

*Id.* A provision is also unconscionable if it would "deter" or have a "chilling effect" on potential litigants enforcing their rights (*Id.* at 1004–05), or if the provision "contravene[s] the public interest or public policy" (*Sonic*, 57 Cal. 4th at 1145).

At bottom, an agreement is unconscionable if it "impose[s] a system of arbitration on [a consumer] that seeks to maximize the advantages and minimize the disadvantages of arbitration for itself at the [consumer's] expense." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 120 (2000).

Verizon's Customer Agreement contains the following unconscionable provisions: (1) a 180-day contractual statute of limitations; (2) a pre-dispute jury trial waiver; (3) a punitive damages waiver; (4) a public injunctive relief waiver; (5) an exculpatory clause with unreasonable discovery limits; and (6) a mass arbitration provision.

### 1. The 180-Day Contractual Statute of Limitations is Unconscionable.

The Customer Agreement contains a 180-day contractual statute of limitations for all disputes related to charges on a customer's bill. The provision requires a customer to notify Verizon of a dispute within 180 days of receiving a bill; otherwise, the customer waives her right to bring an arbitration:

> If you're a Postpay customer, you can dispute your bill within 180 days of receiving it . . . . You may call us to dispute charges on your bill or any service(s) for which you were billed, but if you wish to preserve your right to bring an arbitration or small claims case regarding such dispute, you must write to us at the customer service address on your bill, or send us a completed notice of dispute form (available at verizon.com), within the 180-day period mentioned above. If you do not notify us in writing of such dispute within the 180-day period, you will have waived your right to dispute the bill or such service(s) and to bring an arbitration or small claims case regarding any such dispute.

Customer Agr., dated Oct. 20, 2021, p. 4 (Hattis Decl., Ex. G).[12]

The 180-day contractual statute of limitations is unconscionable for three reasons. **First,** the provision significantly shortens the limitations period on Plaintiffs' CLRA, FAL and UCL claims, which range from 3 to 4 years. *See* Cal. Civ. Code § 1783 (3 years for CLRA); Cal.

---

[12] Portions of the Customer Agreement are cast in capital letters and/or in bold. For ease of reading, capitalized provisions quoted in this Opposition are re-cast using the standard rules of capitalization, and all original bold emphasis has been removed, unless stated otherwise.

Civ. Proc. Code § 338(a) (3 years for FAL); Cal. Bus. & Prof. Code § 17208 (4 years for UCL).

**Second**, the plain language of this provision appears to waive a customer's use of the discovery rule for hidden harms or fraud—such as the claims asserted by Plaintiffs. **Third**, the provision lacks mutuality—only a consumer's claim is subject to the 180-day limitations period; there is no such limitations period for any of Verizon's claims.

"Contractual agreements to shorten the statute of limitations period are generally disfavored because they 'derogate' statutory intent." *Jackson v. S.A.W. Entertainment Limited.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009) (Chen, J.) (citation omitted). A statute of limitations provision is unconscionable when "the period fixed is so unreasonable so as to show imposition or undue advantage in some way." *Id.* (cleaned up). Numerous courts, including this Court, have held that a 180-day or 6-month contractual statute of limitations is unconscionable when it "significantly shortens" the limitations period for the plaintiff's claims. *See id.* (holding that a 6-month statute of limitations provision was substantively unconscionable where the plaintiff's claims had a 3- and 4-year limitations period); *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1249 (2011) (180-day statute of limitations provision was substantively unconscionable where plaintiff's claim had a one-year limitations period).[13]

Verizon's provision is more egregious than the ones in the above cases because it also lacks mutuality. The provision only applies to a customer's claim related to her service or charges on the bill; none of Verizon's claims are affected. *See Jackson*, 629 F. Supp. 2d at 1028 n.6 ("Of course, a statute of limitations provision that would apply unilaterally to an employee, but not the employer, would more than likely be substantively unconscionable.").[14]

---

[13]    *See also Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 117 (2004) (same); *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1225 (2014) (same); *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (2004) (same); *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 731–32 (2017) (one-year statute of limitations provision was substantively unconscionable where the plaintiff's claim had a three-year limitations period); *Brown v. Dow Chem. Co.*, 2019 WL 484211, at *4 (N.D. Cal. Feb. 7, 2019) (300-day statute of limitations provision was substantively unconscionable where the plaintiff's claims had a two- and four-year limitations period); *Hermosillo v. Davey Tree Surgery Co.*, 2018 WL 3417505, at *18 (N.D. Cal. July 13, 2018) (collecting cases).

[14]    Although the statute of limitations and damages limitation provisions are outside of the arbitration clause, they may still be considered when determining unconscionability of the

## 2. The Pre-Dispute Jury Trial Waiver is Unconscionable.

The Customer Agreement contains the following pre-dispute jury trial waiver:

> If for any reason a claim proceeds in court rather than through arbitration, you and Verizon agree that there will not be a jury trial. You and Verizon unconditionally waive any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this agreement in any way.

Customer Agr., dated Oct. 20, 2021, p. 8, ¶ 9 (Hattis Decl., Ex. G).

"[A]rbitration agreements are substantively unconscionable if they 'require plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law.'" *Durruthy v. Charter Communications, LLC*, 2020 WL 6871048, *12 (S.D. Cal. Nov. 23, 2020) (quoting *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 107 (2020)); *see also Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452 (2020).

The above cases involved pre-dispute jury trial waivers that were materially identical to Verizon's waiver. *See, e.g., Lange*, 46 Cal. App. 5th at 451 (in which the waiver read "in the event that any controversy or claim is determined in a court of law, both you and the Company hereby irrevocably waive any and all rights to trial by jury in any legal proceeding arising out of or relating to this Agreement"). Verizon's waiver is likewise unconscionable.

## 3. The Punitive Damages Waiver is Unconscionable.

Verizon's agreement contains the following damages limitation provision, which includes a waiver of the right to seek punitive damages:

> You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive.

Customer Agr., dated Oct. 20, 2021, p. 5 (Hattis Decl., Ex. G).

Verizon's damages limitation provision is unconscionable because it prohibits punitive

---

arbitration agreement. *See Newton v. Am. Debt Servs., Inc.*, 549 F. App'x 692, 694 n.3 (9th Cir. 2013) ("That the damages limitation and fee shifting provisions were located outside of the specific arbitration clause does not mean those provisions cannot be considered when determining unconscionability of the arbitration agreement."); *Jackson*, 629 F. Supp. 2d at 1025 n.3 (Chen, J.) (holding that an arbitration agreement was unconscionable based, in part, on a contractual statute of limitations that was outside of the arbitration clause); *see also Lim*, 8 F.4th at 1005 (9th Cir. 2021) (finding a delegation clause unconscionable based on three unconscionable provisions that were outside of the delegation clause).

damages, which are available under the CLRA. *See* Cal. Civ. Code § 1780(a)(4).[15]

"[A]n arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz*, 24 Cal. 4th at 103. The *Armendariz* court explained that when parties agree to arbitrate statutory claims, this "implicitly incorporates the substantive and remedial provisions of the statute so that parties to the arbitration would be able to vindicate their statutory cause of action in the arbitral forum." *Id.* (quotation marks omitted).

Numerous courts, including this Court, have held that a provision prohibiting punitive damages was substantively unconscionable when punitive damages was an available statutory remedy. *See Newton*, 854 F. Supp. 2d at 725; *Lange*, 46 Cal. App. 5th at 449 (finding a waiver of punitive damages "substantively unconscionable regardless of its mutuality"); *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 106, 260 (2020) (same); *Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal. App. 5th 201, 213 (2019) (same); *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 799 (2012) (same); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407–08 (2003) (same; collecting cases).

### 4. The Public Injunctive Relief Waiver is Unconscionable.

The Customer Agreement contains the following public injunctive relief waiver:

> Notwithstanding any other provision of this agreement, the arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.

Customer Agr., dated Oct. 20, 2021, p. 6, ¶ 3 (Hattis Decl., Ex. G).

An agreement to waive the right to seek public injunctive relief in any forum is contrary to California public policy and unenforceable under California law. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 963 (2017); *accord Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 822, 824 (9th Cir. 2019). Verizon's Customer Agreement requires the parties to "resolve disputes only by arbitration" and then limits the award of any injunctive relief to "the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's

---

[15]    While preparing this Opposition, Plaintiffs' counsel discovered that the First Amended Complaint inadvertently omitted a specific prayer for punitive damages in the 124-page filing. Plaintiffs respectfully request leave to amend solely to add the prayer for punitive damages.

individual claim." The Ninth Circuit has twice held that this identical language prevents the plaintiff from seeking public injunctive relief in any forum. *See Cottrell v. AT&T Inc.*, 2021 WL 4963246 (9th Cir. Oct. 26, 2021); *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019). In fact, Verizon does not contest that its agreement violates *McGill*; instead, it merely asks the Court to sever the public injunction remedy from arbitration (*see* Mot. 15–16)—which this Court should not do for reasons explained below.

Verizon also asserts that Plaintiffs are not seeking true public injunctive relief. *See* Mot. 15–16. Verizon is wrong. Plaintiffs seek the "paradigmatic example" of public injunctive relief: to enjoin Verizon from falsely advertising its wireless service plans to the general public via public injunctions available under the UCL, FAL and CLRA. *See* FAC, Prayer, ¶ A(1)-(3); *see also Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (explaining that the "paradigmatic example" of public injunctive relief is an injunction against false advertising). In fact, this Court recently rejected the same defense argument in *Vasquez v. Cebridge Telecom CA, LLC*, 2021 WL 5113217, *7 (N.D. Cal. Nov. 3, 2021) (Chen, J.).

In *McGill*, the court held that the public injunctive relief waiver was unenforceable because it was contrary to public policy. *See* 2 Cal. 5th at 963. A provision can be unconscionable if it is contrary to public policy. *See Sonic-Calabasas A, Inc.* 57 Cal. 4th at 1145. Accordingly, courts have held that a public injunctive relief waiver is unconscionable. *See Lyons v. NBCUniversal Media, LLC*, 2019 WL 6703396, *1 (C.D. Cal. Sept. 27, 2019) (holding that the arbitration agreement was "substantively unconscionable [in part] because . . . it restricts Plaintiffs' ability to bring a claim for public injunctive relief in any forum"); *Delisle v. Speedy Cash*, 2019 WL 2423090, at *5 (S.D. Cal. June 10, 2019) (explaining how a public injunctive relief waiver is the type of mandatory waiver of a non-waivable statutory right that courts view as inherently suspect, since they present "the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable").[16]

---

[16]     On December 15, 2021, the U.S. Supreme Court granted certiorari in the case of *Moriana v. Viking River Cruises, Inc.*, 2020 WL 5584508 (Cal. Ct. App. Sept. 18, 2020), a decision which held that the Labor Code Private Attorneys General Act was not preempted by recent Supreme Court decisions regarding the Federal Arbitration Act. The corporate defense

## 5. The Exculpatory Clause and Its Discovery Limitation are Unconscionable.

The Customer Agreement contains the following unlawful provision:

> This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement.

Customer Agr., dated Oct. 20, 2021, p. 8 (Hattis Decl., Ex. G).

This provision purports to exculpate Verizon from the misleading representations made in its advertisements or by its sales or customer service representatives, and an exculpatory clause is by definition unconscionable. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . or violation of law . . . are against the policy of the law."); *McQuirk v. Donnelley*, 189 F.3d 793, 796–97 & n. 5 (9th Cir. 1999) (§ 1668 invalidates "contractual release of future liability for fraud and other intentional wrongs") (collecting cases); *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 994, 996 (1995) (holding that provision stating that "no representations were made by the parties except as set forth in the agreement" was unlawful exculpatory clause); *see also Sonic-Calabasas A, Inc*, 57 Cal. 4th at 1136 (exculpatory clauses unconscionable).

The provision also unconscionably limits a consumer's right to adequate discovery in arbitration by commanding that a consumer "cannot rely" upon (and therefore cannot discover) the very documents and statements that formed the basis of the false advertising or fraud. *See Armendariz*, 24 Cal. 4th at 106 (a court must balance the "desirable simplicity" of limiting discovery with the plaintiffs' need for discovery "sufficient to adequately arbitrate their

---

bar immediately became exercised about the grant of certiorari, convinced that the high court's decision would be a kill shot to the heart of the *McGill* rule.

The oral arguments in *Viking River Cruises* have been held, and, based on the substance and tenor of the justices' questions, the decision will not be the *McGill* slayer so fervently desired. *See* I. Spezzamonte, "Justices Hesitant To Consider PAGA Suits As Class Actions," LAW360 (March 30, 2022) ("The U.S. Supreme Court on Wednesday seemed doubtful about embracing Viking River Cruises' vision that suits brought under California's Private Attorneys General Act are comparable to class actions and can't escape arbitration, as several justices focused on the different features of those lawsuits.").

statutory claim, including access to essential documents and witnesses"); *Davis v. Kozak*, 53 Cal. App. 5th 897, 910 (2020) ("Adequate discovery is indispensable for the vindication of statutory claims, and the denial of adequate discovery in arbitration proceedings leads to the de facto frustration of statutory rights.") (internal citation omitted).

### 6. The Mass Arbitration Provision is Unconscionable.

The Customer Agreement contains the following mass arbitration provision:

> If 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims, and counsel for the Verizon Wireless customers bringing the claims are the same or coordinated for these customers, the claims shall proceed in arbitration in a coordinated proceeding. Counsel for the Verizon Wireless customers and counsel for Verizon Wireless shall each select five cases to proceed first in arbitration in a bellwether proceeding. The remaining cases shall not be filed in arbitration until the first ten have been resolved. If the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding, each side may select another five cases to proceed to arbitration for a second bellwether proceeding. This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration. A court will have authority to enforce this clause and, if necessary, to enjoin the mass filing of arbitration demands against Verizon.

Customer Agr., dated Oct. 20, 2021, p. 7, ¶ 6 (Hattis Decl., Ex. G).

Verizon's mass arbitration provision contains all the hallmarks of unconscionability: It is overly harsh, unduly oppressive, and unfairly one-sided; it lacks mutuality; it would deter potential litigants from enforcing their rights; it contravenes public policy; and it interferes with consumers' constitutional right to their choice of counsel.

### a. The mass arbitration provision forces Plaintiffs to suffer an unreasonable delay before they can file their claims.

***Plaintiffs' counsel currently represents 2,712 Verizon customers around the country, including Plaintiffs.*** *See* Hattis Decl., ¶ 3. If enforced, the mass arbitration provision would consign Plaintiffs and the overwhelming majority of the other 2,712 customers to an unreasonable delay before their claims can be filed. The provision only permits 10 individuals to file their demands for arbitration at a time. And only after the first set of 10 arbitrations are resolved can another set of 10 be filed. This means there would need to be 272 sets of 10 arbitrations to resolve the claims of all 2,712 Verizon customers who have retained Hattis & Lukacs. Following this process, it would take approximately **156 years** to resolve the claims of

all 2,712 Verizon customers, given that the average arbitration takes 6.9 months to complete.[17]

Meanwhile, because a person **cannot even file a demand for arbitration** until her set of 10 has come up, the vast majority of the 2,712 customers are in danger of losing their claims to statutes of limitation and the other vicissitudes of time. Indeed, **at the same time** Verizon amended its Customer Agreement to add the mass arbitration provision, Verizon added another provision now giving itself the power to raise a statute of limitations defense in arbitration: "The same defenses are also available to both parties as would be available in court, including any applicable statute of limitations."[18] It is no coincidence that these two simultaneously added provisions work in tandem—one involuntarily forces consumers to lose their claims to the statute of limitations, while the other gives Verizon the power to extinguish those claims in arbitration using a statute of limitations defense.

An arbitration process that forces consumers to wait 100 years to file their claims is substantively unconscionable for numerous reasons: it is overly harsh, unduly oppressive, and would clearly deter potential litigants from enforcing their rights. Moreover, Verizon's ability to extinguish consumers' claims using the statute of limitations would effectively exempt Verizon from liability for its own statutory violations—a result that profoundly offends public policy. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . or violation of law . . . are against the policy of the law."); *see also Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal. App. 4th 224, 234 (2003) ("a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law") (emphasis omitted).[19]

---

[17]    The American Arbitration Association ("AAA") Consumer Arbitration Fact Sheet cites the 2009 Searle Civil Justice Institute Study, which places the average disposition time (from filing to final award) at 6.9 months. *See* https://go.adr.org/consumer-arbitration.

[18]    *Compare* Customer Agreement, dated June 30, 2020, without mass arbitration provision (Kennedy Decl., Exhibit 31, pp. 8-10) *with* Customer Agreement, dated April 22, 2021, containing mass arbitration provision (Kennedy Decl., Exhibit 30, p. 8) (establishing that Verizon added mass arbitration provision and limitations provision at same time).

[19]    **The Customer Agreement describes the sets-of-10 arbitrations as "bellwether" proceedings, but they are not.** Bellwether proceedings are sometimes utilized in mass tort litigation as a way for litigants to test the plaintiffs' theories and as a way to potentially help resolve all of the pending cases. However, bellwether proceedings are different from Verizon's

**b.** **The mass arbitration provision is a direct assault on Plaintiffs' right to their choice of counsel.**

The mass arbitration provision is triggered when 25 customers choose the same counsel. If enforced, the provision thus forces an unfair choice onto the 27 Plaintiffs (and other Verizon customers represented by Plaintiffs' counsel): Either give up their choice of counsel or take the risk that a time bar will extinguish their claim.

An arbitration agreement cannot be used as a tool of oppression. "[P]arties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights." *Newton v. Am. Debt Servs., Inc.*, 549 F. App'x 692, 694 (9th Cir. 2013) (quoting *Ting*, 319 F.3d at 1151). A "basic procedural protection" is allowing consumers to file their claims and have them resolved in a reasonable time *without* needing to sacrifice their choice of counsel to do so.

The California Supreme Court has emphasized that "private arbitration systems [must] resolve disputes not only with speed and economy but also with fairness." *Armendariz*, 24 Cal. 4th at 115. Verizon cannot force consumers to choose either speed or fairness—both are required. It is unconscionable to require consumers to give up their choice of counsel "to avoid the unfairness" created by Verizon's agreement. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1003–04 (9th Cir. 2010) (provision is unconscionable when it forces plaintiff to make an "unpalatable choice" in order "to avoid the unfairness" created by the provision).

---

mass arbitration process in two significant ways. **First**, bellwether proceedings do *not* prohibit plaintiffs from filing their claims; thus, the plaintiffs are not losing their claims to time while they wait for the bellwether proceedings to be completed. **Second**, after the bellwether proceedings are completed, all of the remaining plaintiffs are free to move forward with their claims if the cases cannot be resolved; this incentivizes a defendant who loses the bellwether proceedings to settle and avoid needlessly litigating thousands of more claims that it is likely to lose.

Here, Verizon has *zero* incentive to resolve any of the remaining claims even if it loses every single arbitration. In fact, settling the remaining claims would be a horrible business decision by Verizon. At roughly 20 arbitrations a year and with business-side filing and arbitration fees of $3,300 per case in mass arbitrations, even if Verizon loses every single one, it will still only have to pay $66,000 a year for the arbitration fees, plus a few thousand dollars in damages, as well as attorneys' fees. If this is all Verizon has to ever pay each year, why would Verizon voluntarily settle thousands of claims for potentially millions of dollars? Bellwether proceedings only work because both parties have an incentive to settle if they lose. **Here, Verizon "wins" even it if loses again and again.**

This unconscionable choice is all the more abhorrent in light of the fact that the right to be represented by an attorney in an arbitration proceeding is expressly found in the California Arbitration Act. *See* Cal. Civ. Proc. Code § 1282.4(a). In addition, consumers enjoy the right under the California constitution to be represented by their choice of retained counsel in "any adversary proceeding in which the adversary party has the benefit of or the right to counsel," including civil proceedings. *Fallis v. Dep't of Motor Vehicles*, 264 Cal. App. 2d 373, 383 (1968) (citation omitted); *Roa v. Lodi Med. Group, Inc.*, 37 Cal. 3d 920, 925 (1985) ("our cases have long recognized that the constitutional due process guarantee" grants the "right to be represented by retained counsel in civil actions"). Verizon cannot coerce its customers into waiving the right to counsel of their choice under threat of losing their claims entirely.[20]

### c. The mass arbitration provision lacks mutuality—only Plaintiffs are punished for their choice of counsel.

The mass arbitration provision lacks mutuality, which is the "paramount" consideration when assessing substantive unconscionability. *See Pokorny*, 601 F.3d at 997. While the provision punishes Plaintiffs and other clients of the same law firm for their choice of counsel (through delay and the loss of claims to time), there is no corresponding punishment to Verizon, which may freely retain the same law firm to represent it in thousands of arbitrations.

---

[20]    Verizon's law firm, Quinn Emanuel Urquhart & Sullivan LLP, appears to share Plaintiffs' concerns about grouping batched arbitrations by using the identity of the claimants' counsel and about contractual remedy limitations. In the pending case of *Heckman v. Live Nation Entertainment, Inc.*, Case No. 2:22-cv-00047 (C.D. Cal.) (Wu, J.), Quinn Emanuel represents the plaintiffs in a co-counsel arrangement with Keller Lenkner LLC, a law firm known as an innovator of the mass arbitration concept. *See* Complaint, *Heckman v. Live Nation Entertainment, Inc.* (Hattis Decl., Ex. F).
In the *Heckman* Complaint, Quinn Emanuel criticizes the mass arbitration provisions in Live Nation's Terms of Use on the grounds that "the consumer has no choice but to submit to batched arbitration proceedings" and that arbitration provider New Era ADR "will group their cases together for any reason it deems appropriate, including the consumers' counsel of choice." Comp., ¶ 4 (Hattis Decl., Ex. F). Quinn Emanuel also criticizes the agreement's limitation of remedies, stating "even if the consumers have a statutory right to attorneys' fees and costs, the New Era agreement strips that right away, leaving it up to the unfairly chosen decisionmaker's discretion to award those fees and costs 'as necessary.'" *Ibid.*, ¶ 5.
Quinn Emanuel concludes: "The New Era agreement skews the odds so egregiously in Defendant's favor through its defense-biased provisions, and is imposed in such a procedurally unfair manner, that it is permeated with unconscionability . . . ." *Ibid.*, ¶ 5. ***Exactly!***
It will be interesting to watch Quinn Emanuel make two conflicting arguments in two separate courts.

Moreover, if these consumers wish to avoid this punishment by forgoing legal representation, Verizon can and will continue using the same law firm of its choice, requiring the now *pro se* consumer to arbitrate against Verizon's team of experienced lawyers. This is the epitome of "unfairly one-sided."

The asymmetrical restriction on access to counsel also creates an asymmetry of information. Verizon can freely enjoy all the advantageous of being a "repeat player" in arbitration by choosing the same counsel with extensive arbitration experience for every arbitration. But the same is not possible for Verizon's customers. At best, consumers who want to avoid a delay must each find a plaintiff-side law firm that is both willing to represent them *and* is not already representing 24 other Verizon customers. Even if this were somehow possible, this would still force most consumers to retain a relatively inexperienced plaintiff-side firm. Realistically, of course, there are only a few dozen firms in the country that have significant plaintiff-side consumer protection experience (and even fewer with arbitration experience). *See* Hattis Decl., ¶¶ 7–8. Even if every one of these firms agreed to represent 24 Verizon customers, this would not even cover the 2,712 Verizon customers that are currently represented by Plaintiffs' counsel—let alone the tens of millions of other Verizon customers who have similar claims. Thus, the only realistic way a consumer can avoid a delay would be to arbitrate *pro se* against Verizon's team of Ivy League attorneys on these complex issues of consumer statutory fraud. In either case, the end result is the same—Verizon will have an enormous and inequitable advantage against the consumer by being a repeat player when the consumer or her counsel will not be.

The California Supreme Court has expressed concerns about the unfair advantages of being a repeat player in arbitration. *See Armendariz*, 24 Cal. 4th at 115 ("Various studies show that arbitration is advantageous to employers . . . because it reduces the size of the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the arbitration system."). The Ninth Circuit has recognized this unfair advantage and has found a provision unconscionably one-sided when it prevents plaintiffs from "mitigat[ing] the advantages inherent in being a repeat player." *Ting*, 319 F.3d at 1152; *see also Pokorny,* 601 F.3d at 1002.

*Ting* and *Pokorny* were decided in the context of a confidentiality provision that handicapped "the Plaintiffs' ability to investigate their claims and engage in meaningful discovery," while doing nothing to prevent the defendant from using its continuous involvement in arbitration "to accumulate a wealth of knowledge on how to arbitrate future claims." *Pokorny*, 601 F.3d at 1002. Verizon's mass arbitration provision produces the same unconscionably one-sided result as a confidentiality provision, but far worse. In *Ting* and *Pokorny*, it was still theoretically possible to mitigate the advantages in being a repeat player if all the consumers hired the same counsel. Verizon has closed that door completely.

> **d.** **The mass arbitration provision directly interferes with the legal practices of law firms that oppose Verizon.**

Verizon's mass arbitration provision acts as a two-pronged attack—first, punishing consumers who attempt to be represented by experienced counsel (as detailed above) and, second, discouraging experienced counsel from representing the consumers. **First**, the provision places a law firm with 25 or more Verizon clients in the untenable position of having to decide which clients' demands should move forward quickly and which clients' demands should wait until a later set of 10. In other words, Verizon is literally injecting a conflict of interest into the relationship between consumers and their counsel. **Second**, the provision opens up a law firm to substantial risk of malpractice by preventing the firm from filing their clients' claims before the statute of limitations run. Creating conflicts of interest and risks of malpractice can only be seen as a direct interference in the practice of any law firm that would consider representing Verizon customers.

By discouraging law firms from representing Verizon customers, the provision also acts as an unconscionable exculpatory clause. **First**, it would "deter individuals from enforcing their rights under California law." *Yeomans v. World Fin. Grp. Ins. Agency, LLC.*, 2021 WL 5356537, *1 (9th Cir. Nov. 17, 2021). Without legal counsel, few, if any, customers will be willing to arbitrate against Verizon's team of attorneys—especially not when the actual damages are a few hundred dollars at most. **Second**, most individuals will "not sue because they are unaware that their legal rights have been violated." *Jackson*, 629 F. Supp. 2d at 1027.

By its nature, fraudulent conduct is not easily discovered by lay consumers. Without law firms investigating Verizon's fraud and bringing it to light, consumers will have no idea that their rights have been violated to even consider bringing an arbitration.

### C. The Court Should Refuse To Enforce Verizon's Arbitration Agreement.

The Court can and should refuse to enforce Verizon's arbitration agreement on two independent grounds: First, the agreement is permeated by unconscionability; and second, most, if not all, of the unlawful provisions were drafted in bad faith. *See Lim*, 8 F.4th at 1005–06 (explaining these two grounds for not enforcing an arbitration agreement).

#### 1. The Arbitration Agreement is Permeated by Unconscionability.

An arbitration agreement is permeated by unconscionability when it contains multiple unconscionable provisions such that it indicates "a systematic effort to impose arbitration on [the consumer] not simply as an alternative to litigation, but as an inferior forum that works to the [company's] advantage." *Armendariz*, 24 Cal. 4th at 124.

This Court has refused to enforce arbitration agreements where the numerous unlawful provisions demonstrated "a systematic attempt by [Defendants] to gain an unfair advantage over their customers by remitting disputes to an inferior forum." *Newton*, 854 F. Supp. 2d at 733, *aff'd*, 549 F. App'x 692 (9th Cir. 2013).[21]

Here, Verizon's numerous unconscionable provisions leave no doubt that Verizon is trying to impose arbitration as an "inferior forum" that works to Verizon's advantage. For example, **four of the provisions work together to eliminate nearly all legal liability for Verizon's unlawful conduct: the statute of limitations provision, damages limitation provision, the public injunctive relief waiver, and the exculpatory clause limiting discovery.**

The statute of limitations provision cuts consumer protection claims from three to four

---

[21] *See also Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1190 (N.D. Cal. 2020) (Chen, J.), *aff'd*, 2021 WL 5356537 (9th Cir. Nov. 17, 2021) (refusing to enforce an arbitration agreement with "multiple substantively unconscionable provisions that [were] designed to confer an unfair unilateral advantage to Defendants, which serve[d] to chill attempts by would-be plaintiffs to vindicate their rights"); *Jackson*, 629 F. Supp. 2d at 1031.

years down to a mere six months, and also appears to waive a customer's use of the discovery

rule for hidden harms or fraud such as the claims asserted by Plaintiffs.[22] The damages

limitation provision then whittles down what little is left of the relief by prohibiting all forms of

statutory damages except direct damages. The public injunctive relief waiver then allows

Verizon to continue its unlawful conduct with impunity. And the claimant is somehow

supposed to prevail in arbitration when the Customer Agreement literally says she "can't rely"

on Verizon's unlawful representations. **And then, on top of all that, there is the mass**

**arbitration provision, which would force Plaintiffs and the vast majority of the other**

**2,712 represented Verizon customers to wait years or decades before filing claims or to**

**forego experienced counsel or to forego counsel altogether.** *Verizon drafted a liability*

*shield, not an arbitration clause.*

### 2. Verizon Drafted the Unconscionable Provisions in Bad Faith.

The Court should also not sever unlawful provisions if they were "drafted in bad

faith because severing such a term and enforcing the arbitration provision would encourage

drafters to overreach." *Lim*, 8 F.4th at 1005–06. The Ninth Circuit explained that a company

would "not be deterred from routinely inserting a deliberately illegal clause into the arbitration

agreements . . . if it knows that the worst penalty for such illegality is the severance of the

clause." *Id.* at 1006 (quoting *Armendariz*, 24 Cal. 4th at 125 n.13). Severing unlawful

provisions that were drafted in bad faith would allow a company "to draft one-sided agreements

and then whittle down to the least-offensive agreement if faced with litigation, rather than

drafting fair agreements in the first instance." *Id.* at 1006.

An unlawful provision is considered "drafted in bad faith" when "the state of the law

with respect to [the unlawful provision] was sufficiently clear at the time the arbitration

agreement was signed." *Armendariz*, 24 Cal. 4th at 125 n.13. The operative version of

---

[22] This is particularly egregious here where the damages are incurred each month from the Administrative Charge; thus, the provision is essentially an exculpatory clause used to curtail up to 42 months of additional damages that otherwise would be available to consumers under the consumer protection laws. Additionally, damages could go back even further because the discovery rule may apply given that Plaintiffs' claims involve a hidden fraud.

Verizon's Customer Agreement went into effect on October 20, 2021. By October 20, 2021, several of Verizon's unlawful provisions had been clearly illegal for years, if not decades.

The California Supreme Court held that limiting statutory remedies, such as punitive damages, was unlawful 22 years ago in *Armendariz*, 24 Cal. 4th at 103—the same decision in which it mandated adequate discovery in arbitration. The California Supreme Court held that a pre-dispute jury trial waiver was unlawful 17 years ago in *Grafton Partners v. Superior Ct.*, 36 Cal. 4th 944 (2005). For the last two decades, California courts have repeatedly held that a 180-day statute of limitations provision is unconscionable when applied to statutory claims that have limitation periods of one year or longer. *See*, *e.g.*, *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1249 (2011); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 117 (2004). The California Supreme Court held that a public injunctive relief waiver was unlawful 5 years ago in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).

### 3. The Unconscionable Provisions Cannot be Severed.

Verizon will likely ask the Court to sever any unlawful provisions using the severability clause in the Customer Agreement. However, the existence of a severability clause does not change the calculus. When an agreement is permeated by unconscionability or the provisions were drafted in bad faith, a court will not sever the unlawful provisions regardless of a severability clause. *Jackson*, 629 F. Supp. 2d at 1030 (refusing to apply the severability clause to save an agreement permeated by unconscionability); *Lim*, 8 F.4th 992 at 1005 (refusing to sever unconscionable provisions notwithstanding the severability clause).

### **CONCLUSION**

For the reasons stated, Verizon's motion to compel arbitration should be denied in its entirety.

Dated: April 1, 2022        Respectfully submitted,

HATTIS & LUKACS

By: */s/ Daniel M. Hattis*
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)

Che Corrington (*pro hac vice* submitted)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com
Email: che@hattislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*