QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Crystal Nix-Hines (Bar No. 326971)
  (crystalnixhines@quinnemanuel.com)
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  Marina Lev (Bar No. 321647)
  (marinalev@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

  Cristina Henriquez (Bar No. 317445)
  (cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5000

Attorneys for Defendants
VERIZON WIRELESS and VERIZON COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND; KAREN UMBERGER; SCOTT WILLITS; MICHAEL BRANOM; MOLLY BROWN; MICHAEL CARNEY; TIM FRASCH; PATRICIA GAGAN; ANNA GUTIERREZ; LINDA JENKINS; AUGUSTUS JOHNSON; WILLIAM KAUPELIS; MARILYN KAYE; JANETTE LISNER; WILLIAM ERIC LOUGH; DAVID MASSARO; LOUISE MONSOUR; DARLEEN PEREZ; GABRIELLE POZZUOLI; VALERIE REED; BRUCE SCHRAMM; KERRY SHOWALTER; JOHN ST. JARRE; GLORIA STERN; EDNA TOY; TERESA TOY; and VANESSA WEST; For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated,<br>             Plaintiffs,<br>   vs.<br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC.,<br><br>             Defendants. | CASE No. 3:21-cv-08592-EMC<br><br>**VERIZON'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:     May 12, 2022<br>Time:    1:30 p.m.<br>Judge:   Hon. Edward M. Chen<br>Courtroom: 5 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ....................................................................................................................................1

I. THE PARTIES EXPRESSLY DELEGATED ARBITRABILITY CHALLENGES TO THE ARBITRATOR ..................................................................................................1

    A. The Parties Agreed to Delegate the Interpretation of the Customer Agreement to the Arbitrator .............................................................................2

    B. Plaintiffs' Unconscionability Challenges Are Unsupportable ...................4

        1. *Plaintiffs' procedural and substantive unconscionability arguments are invalid* .................................................................4

        2. *The unconscionability case law Plaintiffs cite is inapposite* ........10

II. THE MASS ARBITRATION PROVISION IS RESERVED FOR THE ARBITRATOR, AND IN ANY EVENT IS ENFORCEABLE ..........................................12

III. A STAY OF PROCEEDINGS IS WARRANTED ...............................................................14

CONCLUSION .................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .................................................................................................... 5, 11

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................................ 4

*Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*,
  2021 WL 5758890 (N.D. Cal. Dec. 3, 2021) .................................................................... 14

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ............................................................................................ 3

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) ................................................................................................. 9

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ............................................................................ 10

*Chandler v. TA Operating LLC*,
  2022 WL 597581 (E.D. Cal. Feb. 28, 2022) ...................................................................... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ............................................................................................ 2

*Clifford v. Quest Software Inc.*,
  38 Cal. App. 5th 745 (2019) ............................................................................................... 8

*Ellis v. U.S. Sec. Assocs.*,
  224 Cal. App. 4th 1213 (2014) ........................................................................................... 6

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ........................................................................................................ 2

*Gavrilovic v. T-Mobile USA, Inc.*,
  2022 WL 1086136 (E.D. Mich. Mar. 25, 2022), *adopted*
  2022 WL 1085674 (E.D. Mich. Apr. 11, 2022). ................................................................. 4

*Grabowski v. Robinson*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011) ............................................................................ 10

*Grafton Partners v. Superior Ct.*,
  36 Cal. 4th 944 (2005) ........................................................................................................ 7

*Hodges v. Comcast Cable Commc'ns*,
  21 F.4th 535 (9th Cir. 2021) ............................................................................................. 13

*Johnson v. JP Morgan Chase Bank, N.A.*,
  2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ............................................................... 8, 9

*Laughlin v. Vmware, Inc.*,
    2012 WL 298230 (N.D. Cal. 2012) ................................................................................. 9

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021) ............................................................................................ 11

*Lucas v. Gund, Inc.*,
    450 F. Supp. 2d 1125 (C.D. Cal. 2006) ......................................................................... 10

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017) ...................................................................................................... 8

*McGill v. Citibank, NA.*,
    393 P.3d 84 (2017) ........................................................................................................ 14

*McLellan v. Fitbit, Inc.*,
    2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ................................................................. 3

*Mariana v. Viking River Cruises, Inc.*,
    No. 27 B297327 (Cal. Ct. App.) ................................................................................... 14

*Moreno v. Sanchez*,
    106 Cal. App. 4th 1415 (2003) ....................................................................................... 6

*Newton v. Am. Debt Servs., Inc.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012) .......................................................................... 11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ......................................................................................... 3

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) .................................................................................................... 10

*Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*,
    69 Cal. 2d 33 (1968) ....................................................................................................... 7

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ......................................................................................... 12

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ......................................................................................... 4

*Price v. Apple, Inc.*,
    2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .................................................................. 4

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ........................................................................................................ 2

*Southerland v. Corp. Transit of Am.*,
    2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) ............................................................. 8

*Sponheim v. Citibank, N.A.*,
    2019 WL 2498938 at *5 (C.D. Cal. June 10, 2019) ....................................................... 8

*Stacy v. Brinker Rest. Corp.*,
    2012 WL 5186975 (E.D. Cal. Oct. 18, 2012), *adopted*,
    2012 WL 5499449 (E.D. Cal. Nov. 13, 2012) .................................................................. 10

*Stout v. Grubhub*,
    2021 WL 5758889 (N.D. Cal. Dec. 3, 2021) .................................................................. 9, 14

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................................................ 11

*Wherry v. Award, Inc.*,
    192 Cal. App. 4th 1242 (2011) ............................................................................................ 11

*Wright v. Sirius XM Radio Inc.*,
    2017 WL 4676580 at *9-10 (C.D. Cal. June 1, 2017) ......................................................... 8

**Statutory Authorities**

Cal. Civ. Code § 1668 .................................................................................................................... 7

**Rules and Regulations**

Fed. R. Civ. P. 23 ......................................................................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs concede they entered into valid customer agreements with Verizon ("Customer Agreements"), and that their claims fall within an arbitration clause that unequivocally precludes class arbitrations. (ECF No. 29 ("Opp."), at 8.) Recognizing their inability to avoid the obligation to arbitrate, Plaintiffs attack the Customer Agreement as "permeated with unconscionability," and contend the Court must therefore disregard the agreement completely. This challenge is misdirected. First, many of the provisions of the Customer Agreement that Plaintiffs decry as unconscionable are outside the arbitration clause and therefore presumptively delegated to the arbitrator. Second, the arbitration clause incorporates the AAA rules, which constitutes clear and unmistakable evidence that the parties also intended to delegate challenges to arbitrability to the arbitrator. Consequently the issues Plaintiffs raise must be determined in the context of arbitration.

Even if the issues Plaintiffs raise were delegated to this Court, numerous courts have rejected the very same unconscionability arguments Plaintiffs assert here. And their efforts to circumvent the arbitration agreement by using public injunctive relief as a shield are similarly unavailing.

Plaintiffs further ask this Court to look beyond their suit and to consider thousands of unnamed Verizon Wireless customers purportedly also retained by Plaintiffs' counsel but who have yet to file any action in this Court or elsewhere. Theoretical issues facing individuals not before this Court cannot serve as the basis for an unconscionability challenge.

Plaintiffs have not identified any supportable reason to avoid arbitrating their claims in the forum to which they expressly agreed.

## ARGUMENT

### I. THE PARTIES EXPRESSLY DELEGATED ARBITRABILITY CHALLENGES TO THE ARBITRATOR

All of Plaintiffs' challenges to the enforceability of the Customer Agreement are raised improperly with this Court because the parties agreed to delegate them to the arbitrator. Most of

Plaintiffs' concerns lie with contractual language outside the arbitration clause, and are therefore clearly delegated to the arbitrator. The parties also expressly incorporated the AAA rules into their arbitration clause, thereby delegating arbitrability challenges to the arbitrator as well. Thus, any gateway challenges to enforceability are exclusively for the arbitrator to consider.[1]

### A. **The Parties Agreed to Delegate the Interpretation of the Customer Agreement to the Arbitrator**

The FAA requires arbitration where: (1) a valid agreement to arbitrate exists; and (2) the claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, Plaintiffs concede those conditions are met. Opp. at 9 ("To be clear: In this Opposition, Plaintiffs do not contest Verizon's factual assertion that they assented to a Customer Agreement, nor do Plaintiffs contest Verizon's legal argument that Plaintiffs' claims fall within the scope of the Customer Agreement's arbitration clause.").

Recognizing their inability to avoid the obligation to arbitrate, Plaintiffs instead attack the Customer Agreement as unconscionable and ask this Court to therefore disregard the dispute resolution procedure agreed upon by the parties. Importantly, many of the provisions Plaintiffs claim are unconscionable—including the 180-day statute of limitations, the pre-dispute jury waiver, the punitive damages waiver, and the purported exculpatory clause—are fundamentally challenges to the enforceability of the Customer Agreement itself, not the arbitration clause, and are therefore delegated to the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967) ("with respect to a mater within the jurisdiction of the federal courts save

---

[1] The Customer Agreement reserves the enforceability and interpretation of one, discrete provision concerning class arbitrations for a court. *See* ECF No. 30-7 (Exhibit G) at ECF p.7, § 3 ("THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. . . . ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR."). Plaintiffs do not challenge this provision, and no other provision of the Customer Agreement contains this carve-out. The Supreme Court has upheld class waivers in arbitration agreements. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent.").

for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.'") (internal citation omitted).

Second, even Plaintiffs unconscionability challenges to the arbitration clause itself—including the waiver of public injunction relief and Verizon's collective arbitration process—were delegated to the arbitrator through the parties' incorporation of the AAA Rules within their arbitration clause. "Incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Oracle Am. Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1974 (9th Cir. 2013); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017) (holding this delegation applies to non-sophisticated parties and consumer contracts).

Paragraph (2) of dispute resolution section of the Customer Agreement specifies that "FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY." AAA Consumer Arbitration Rule 14(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[2] In fact the only provision of the Customer Agreement delegated to the Court is the "enforceability or interpretation" of the ban on class or collective arbitrations (*see* footnote 1). This is a limited, discrete carve-out to the powers of the arbitrator, demonstrating that the parties intended to delegate this authority, and only this authority, to the court. That the enforceability or interpretation of this one provision is reserved for a court does not alter that the validity or enforceability of the agreement as a whole must be determined, pursuant to its own terms, by an arbitrator. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075-76 (9th Cir. 2013) (carve-out to arbitration agreement whereby certain claims were to be decided by a court did not

---

[2]  *See* https://adr.org/sites/default/files/Consumer%20Rules.pdf.

negate arbitration agreement's delegation of arbitrability questions—including scope of carve-out—to the arbitrator).

### B. **Plaintiffs' Unconscionability Challenges Are Unsupportable**

Because Plaintiffs' scattershot unconscionability challenges address the overall enforceability of the Customer Agreement—a question reserved for the arbitrator—the Court need not and should not substantively address them. In any case, none of Plaintiffs' arguments provide any basis to avoid Plaintiffs' arbitration commitments, regardless of the forum in which they are levied.

Many of Plaintiffs unconscionability challenges raise theoretical arguments about the impact of the application of Verizon's Customer Agreement to thousands of unnamed customers purportedly also represented by Plaintiffs' counsel. Theoretical issues raised by unnamed individuals who are not before this Court cannot be the basis for an unconscionability challenge.

#### 1. *Plaintiffs' procedural and substantive unconscionability arguments are invalid*

Plaintiffs assert that the Customer Agreement is both procedurally and substantively unconscionable, warranting invalidation of the arbitration requirement. Both assertions are meritless. With respect to procedural unconscionability, it is long-settled that the non-negotiable nature of consumer contracts does not, as Plaintiffs assert, automatically or necessarily render them procedurally unconscionable. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011) (enforcing arbitration provision in an adhesion contract, noting "the times in which consumer contracts were anything other than adhesive are long past"); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) ("the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable"); *Gavrilovic v. T-Mobile USA, Inc.*, 2022 WL 1086136, at *5 (E.D. Mich. Mar. 25, 2022) (no procedural unconscionability where plaintiff "had the option to select other wireless providers," which would constitute "an alternative source with which [plaintiff] could contract," "including but not limited to AT&T, Verizon, and U.S. Cellular"), *adopted* 2022 WL 1085674 (E.D. Mich. Apr. 11, 2022).

Moreover, Plaintiffs sole argument in support of procedural unconscionability is that the Customer Agreement is a contract of adhesion, and as Plaintiffs concede, an unconscionability determination requires both procedural *and* substantive unconscionability. *Price v. Apple, Inc.*, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022) (finding plaintiff's claims failed where they did not sufficiently allege substantive unconscionability for an adhesion contract), *relying on Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) ("Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. Procedural and substantive unconscionability need not be present in equal amounts. The two are evaluated on a 'sliding scale,' which means that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa."). Substantive unconscionability, for its part, "requires proof that the inequity of the term is so extreme as to shock the conscience." *Id*. at 7 (finding, among other things, that plaintiff's "waiver of the right to participate in a class action likewise does not shock the conscience") (internal quotations omitted). Plaintiffs cannot satisfy this standard. Indeed, their assertion that the Customer Agreement is substantively unconscionable misapprehends both the Agreement and judicial precedent regarding such terms in analogous cases.

### (i) The 180-Day-Notice Provision Is Not Unconscionable

Plaintiffs first contend the 180-day notice provision in the Customer Agreement is unconscionable. However, this provision merely defines the period in which any would-be plaintiff must *notify* Verizon of the relevant dispute:

> IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZON.COM), WITHIN THE 180-DAY PERIOD MENTIONED ABOVE.

ECF No. 30-7 (Exhibit G) at ECF p.5. Providing notice is not the same as commencing a lawsuit, and thus the 180-day-notice requirement is not properly understood as a modification of the statute

of limitations.[3]  Moreover, given that the Plaintiffs have paid the challenged Administrative Charge monthly and "through the present," this six-month window to notify Verizon effectively restarts every month, making any alarmist claim about an unfairly shortened statute of limitations window illusory.

Moreover, even if the notice provision could be understood to modify the applicable statute of limitations, Plaintiffs' position would still fail.  While selectively citing distinguishable opinions, Plaintiffs neglect to acknowledge that "[c]ourts generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003).  Indeed, it is "a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way." *Id.*  And "reasonable" means "the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained." *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1223 (2014).

With this standard in mind, Plaintiffs' overblown rhetoric about the potential unfairness and prejudice of the 180-day notice provision is belied by reality.  Numerous lawsuits have been filed against Verizon, of which Plaintiffs' case is one; and Plaintiffs' counsel notes there are *thousands* of eager would-be-plaintiffs who have already retained counsel.  (*See* Opp. at 4, 17.)  That Plaintiffs have already asserted their claims (and thousands more have allegedly retained counsel to do so) makes clear they had sufficient "opportunity to investigate and file an action" and nothing is "barr[ing the action] before the loss or damage can be ascertained," *Ellis*, 224 Cal. App. 4th at 1223, conclusively refuting any assertion of unreasonableness.

---

[3]  As noted by Plaintiffs in their opposition (*see* Opp. at 18), the Customer Agreement separately addresses the applicable statute of limitations.

                (ii)      The Jury Waiver is Not Unconscionable

Plaintiffs' contention that the jury waiver contained in the Customer Agreement "shocks the conscience" grossly misunderstands the law.  As Plaintiffs themselves put it, "arbitration agreements are substantively unconscionable if they require plaintiffs to waive in advance their right to a jury trial for any dispute *for which arbitration is not allowed by law*." (Opp. at 13 (emphasis added).)  Because the Customer Agreement does not require jury trial waiver as to any dispute for which arbitration is forbidden by law, Plaintiffs' objections are irrelevant.  *See, e.g.*, *Chandler v. TA Operating LLC*, 2022 WL 597581, at *6 (E.D. Cal. Feb. 28, 2022) (granting motion to compel arbitration and rejecting unconscionability challenge based on jury trial waiver because "[t]he Agreement in this case does not require Plaintiff to waive the right to a jury trial for any non-arbitrable dispute").  The California Supreme Court has long acknowledged that "[u]nlike predispute jury waivers, predispute arbitration agreements are specifically authorized by statute ... [A]rbitration agreements are distinguishable from waivers of the right to jury trial in that they represent an agreement to avoid the judicial forum altogether."  *Grafton Partners v. Superior Ct.*, 36 Cal. 4th 944, 955 (2005).

                (iii)     The Exculpatory Clause and Its Discovery Limitation is Not Unconscionable

Plaintiffs contend that the acknowledgement in the Customer Agreement that extrinsic evidence, such as other documents or representations by "Sales or Customer Service Representatives" (ECF No. 30-7 (Exhibit G) at ECF p.9), cannot invalidate the parties' written agreement, constitutes an "exculpatory clause" and establishes improper "discovery limitations." (Opp. at 16-17).  Instead, the relevant language (which provides that "[t]his agreement and the documents it incorporates form the entire agreement between us") merely limits the scope of the Customer Agreement to its terms. *See Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968) ("extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract").  This language does not attempt to exempt responsibility for fraud, willful injury, or illegal conduct—the concern of California Civil Code § 1668.  The "exculpation" case law Plaintiffs cite (Opp. at 16)—which says fraud claims can overcome a

contractual provision stating that all representations are contained in the contract—do not address unconscionability and has no applicability here, where Plaintiffs have not even asserted a fraud claim.

Similarly, the "discovery limitations" imagined by Plaintiffs do not exist. A routine integration clause is not the same as a discovery limitation.[4] Despite Plaintiffs' efforts to find unconscionability anywhere and everywhere, they cannot identify *any* language that purports to impose any discovery limitation.

(iv)   Plaintiffs' Assertions Regarding Public Injunctive Relief Are Invalid

Although Plaintiffs contend that the public injunctive relief waiver is unconscionable, they cannot show, as an initial matter, that they even seek true public relief. Plaintiffs make no meaningful effort to distinguish California authorities that conclude "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 751 (2019). The "primary" relief sought by Plaintiffs' suit is to redress purported injuries specific to their defined and limited class of persons. *See, e.g.*, First Am. Compl. ¶1 ("This case challenges a deceptive pricing scheme perpetrated by Verizon against its wireless service customers.").

Put differently, "public injunctive relief," as articulated by the Supreme Court of California, means relief that "benefits the plaintiff, if at all, only incidentally and/or as a member of the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (internal quotation marks and alterations omitted). Plaintiffs never argue that the relief they seek is only "incidental" to their public relief, because it obviously is not. Thus, conclusory labels aside, the substance of the "primary" relief Plaintiffs seek is not "public" as that term is understood in binding law.

Because Plaintiffs do not seek "public" relief, *McGill* is inapplicable. *See, e.g.*, *Sponheim v. Citibank, N.A.*, 2019 WL 2498938 at *5 (C.D. Cal. June 10, 2019) ("the Court finds that

---

[4] Even if plaintiffs did identify discovery limitations, such limitations are common in arbitration and do not automatically render an arbitration provision unconscionable. *See, e.g.*, *Southerland v. Corp. Transit of Am.*, 2014 WL 4906891, at *8 (E.D. Mich. Sept. 30, 2014).

[plaintiff] does not seek public injunctive relief . . . Accordingly, *McGill* does not invalidate the Arbitration Provision"); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042 at *6-8 (C.D. Cal. Sept. 18, 2018) (same); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676580 at *9-10 (C.D. Cal. June 1, 2017) (same). That a claimant "[m]erely requests relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for *public* injunctive relief." *Johnson*, 2018 WL 4726042 at *6. Rather, where the "relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured . . . the individuals who stand to benefit are still an inherently circumscribed group," and the relief is appropriately characterized as "private." *Id.*; *See also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) ("the district court correctly concluded that Plaintiffs' requested injunctive relief is not one for 'public injunctive relief'" where it was "overwhelmingly directed at Plaintiffs" and others similarly situated, who would be the "primary beneficiaries," even if the relief "may benefit the general public incidentally").

Plaintiffs seek relief that would primarily (indeed, overwhelmingly) impact a limited class—Verizon Wireless customers—rather than the general public as a whole. This renders irrelevant whether the Customer Agreement waives Plaintiffs' right to seek public injunctive relief. Even if that were not the case, well-established law provides that the appropriate remedy is not to disregard the arbitration agreement but rather to sever the public injunctive relief remedy from the claims for monetary and private injunctive relief that remain subject to arbitration under the Customer Agreement. *See* ECF No. 20, Verizon's Motion to Compel Arbitration ("MTC") at 10-11. The Customer Agreement expressly contemplates severance; thus, severing any request for public injunctive relief would advance the terms of the contract (as mandated by the FAA) and would be entirely consistent with the reasonable expectations of the parties.

Plaintiffs' only response is rote incantation that the Customer Agreement is "permeated" by unconscionability that somehow precludes severance or enforcement. But as shown in Verizon's opening brief, courts routinely sever public injunction requests. *See* MTC at 10-11; *Stout v. Grubhub*, 2021 WL 5758889 (N.D. Cal. Dec. 3, 2021) (Chen, J.) (agreeing that "the proper thing to do is sever and arbitrate all claims and the request for private relief while the

-9-  Case No. 3:21-cv-08592-EMC
REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

request for public injunctive relief is stayed pending arbitration"). That is true even if a court finds that certain provisions are unenforceable. *See Laughlin v. Vmware, Inc.*, 2012 WL 298230 (N.D. Cal. 2012) ("the substantively unconscionable provisions regarding cost-splitting and attorney's fees may be severed from the agreement" without "eviscerating the central purpose of the Agreement"); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1178-80 (S.D. Cal. 2011) (compelling arbitration after concluding that three substantively unconscionable clauses could be severed from an arbitration agreement which was not permeated by unconscionability); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1205 (S.D. Cal. 2013) (severing unconscionable provision unfairly allocating costs, fees, and expenses, and holding that the remainder of the arbitration agreement was not "permeated" by unconscionability); *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006) ("substantive unconscionability does not 'permeate' this agreement as it contains only two objectionable provisions which are easily severable"); *Stacy v. Brinker Rest. Corp.*, 2012 WL 5186975, at *11 (E.D. Cal. Oct. 18, 2012), *adopted*, 2012 WL 5499449 (E.D. Cal. Nov. 13, 2012) (where "provisions that are not central to the agreement and can be severed without the need to augment the contract, courts find severance appropriate").

### 2. *The unconscionability case law Plaintiffs cite is inapposite*

None of the unconscionability cases Plaintiffs reference mandate the invalidation of the Customer Agreement. The cases that pepper the Opposition overwhelmingly arise in the employment context, where the potential "oppression" and "surprise" of a contract of adhesion are more acute, they involve contracts that contain multiple, mutually interlocking provisions that thoroughly skewed an agreement against claimants, and often involve provisions altogether distinct from those that plaintiffs challenge in the Customer Agreement.

Many of the cases Plaintiffs rely upon arise in the employment context. For example, *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) (Opp. at 9), involved an employment contract deemed unconscionable because it evidenced an "extraordinarily high" degree of oppression and surprise, including that the arbitration provision was "visually impenetrable;" the employee was expected to sign the agreement "immediately;" the employee was required to sign to keep his job; the employee did not receive a copy of the agreement; and the substantive terms were, in light of this

oppression and surprise, "sufficiently one-sided as to render the agreement unenforceable." No similarly extraordinary degree of procedural unconscionability is present here.

In *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) (Opp. at 10), the court declined to enforce an arbitration provision in the employment context, finding unconscionability largely based on improper cost-splitting and fee-shifting provisions, which violated the California public policy prohibiting an employer from recovering attorney fees for defending a wage and hour claim. Again, these provisions are not found in the Customer Agreement.

The arbitration provision in *Armendariz* (Opp. at 11) required arbitration of employee—but not employer—claims arising from wrongful termination and precluded full recovery of damages for employees, while placing no such restriction on the employer. 24 Cal. 4th at 120-21. The illegal provisions of the arbitration agreement were deemed non-severable because (i) the agreement contained multiple such provisions, and (ii) the agreement's overall lack of mutuality meant that removing "the unconscionable taint" would require that the court "reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Id.* at 124. Again, these considerations are not present here.

Also distinguishable is *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242 (2011) (Opp. at 12), which found strong procedural unconscionability (plaintiffs were required to sign agreements as a condition of employment that they did not have time to read and were not given a copy); as well as substantively unfair imposition of costs; and the risk of attorneys' fees awarded to defendants in circumstances greater than provided for in court. These provisions were not severable because the pervasive unconscionability could only be saved by reformation.

In the consumer context, the court in *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) (Opp. at 9), invalidated as unconscionable numerous terms not at issue here—regarding confidentiality, fee-splitting, and class action prohibitions—but despite finding these provisions unconscionable the court enforced the parties' agreement to arbitrate.

*Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012) (Opp. at 14) also offers no support to Plaintiffs. There, the court declined to sever unconscionable terms from an arbitration clause because there were multiple such terms relating to attorneys' fees; ability to

recover; location of arbitration; and selection of arbitrator, which combined to force the plaintiffs to relinquish statutory rights and evinced a systemic" effort by the defendant to gain an unfair advantage. And as with Plaintiffs' other cases, the agreement in *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) (Opp. at 19) contained multiple unconscionable provisions (involving, among other things, unilateral confidentiality, unreasonable fees), and the language Plaintiffs quote about an "unpalatable choice" referred to forcing a plaintiff to choose between "a possibly biased arbitrator whose daily fees are capped, or selecting a neutral arbitrator with no daily fee cap." Plaintiffs have not, and cannot, point to any qualitatively similar provision here that compromises the integrity of the process contemplated by the Customer Agreement. Fairly read, none of the citations Plaintiffs offer to support their unconscionability arguments apply here and cannot render unenforceable the actual terms of the Customer Agreement.

## II.  THE MASS ARBITRATION PROVISION IS RESERVED FOR THE ARBITRATOR, AND IN ANY EVENT IS ENFORCEABLE

Finally, Plaintiffs challenge the procedures governing the filing of mass arbitrations. However, as with their other arguments, adjudication of this challenge is reserved for the arbitrator. Plaintiffs do not even attempt to dispute this dispositive fact, which precludes consideration of their argument. Instead, Plaintiffs again urge the Court to consider the mass arbitration provision merely because it is included in their "pervasive unconscionability" fusillade. Even if the Court had authority to consider their argument (it does not), the mass arbitration provision is reasonable and enforceable (and severable if the Court were to disagree on both grounds).

In an effort to portray the mass arbitration provision as unfair, unethical, and oppressive, Plaintiffs again misstate the language of the Customer Agreement. Plaintiffs contend this provision creates intolerable delay and interferes with the right to counsel as well as counsel's exercise of their duties. All of these arguments are, at best, speculative distractions.

The Customer Agreement's coordinated proceedings provision (which uses the term "bellwether" in a way that differs from how that term is generally understood in the mass tort context) is intended to streamline, not stymie, disputes. The provision specifies that, where a

sufficiently large number of customers initiate "*similar*" (emphasis added) disputes and the customers have selected the same counsel, the arbitration claims shall be coordinated in batches of ten, with each side selecting five, and the remaining claims held in abeyance pending resolution of these ten.

Although resolution of the first ten arbitrations is intended to provide instructive guidance as to the other outstanding claims, those later claimants are still entitled to pursue their claims through arbitration. Indeed, the Customer Agreement requires the claims be "similar" to even trigger the provision. And Plaintiffs' strident appeal to Rule 23 (Opp. at 5) necessarily implies that Plaintiffs and their claims have, among other things, commonality and that these common issues *predominate* over any individual considerations. *See* Fed. R. Civ. Pro. 23(a)(2), 23(b)(3). If Plaintiffs believe their claims are appropriate for class treatment under Rule 23, it is difficult to see how resolution of ten representative claims would *not* be exceptionally informative in the efficient resolution of other, similar claims.

With respect to Plaintiffs' assertions of delay, this speculative possibility is both overblown and far from inevitable. First, Plaintiffs arguments rely almost entirely on delay that would theoretically be experienced by 2,712 individuals who are not before this Court. The 27 Plaintiffs in the instant case could have their claims resolved in three concurrent proceedings—a far cry from the 156 years speculated by Plaintiffs.[5]

Second, the coordinated proceeding approach is designed precisely to expedite resolution of similar cases. Similar procedural methods have been widely and long recognized as important case management tools. *See Hodges v. Comcast Cable Commc'ns*, 21 F.4th 535, 547 (9th Cir. 2021) (federal arbitration act protects "efficient, streamlined procedures" for consumer arbitrations). The Customer Agreement also provides Verizon's customers the option to pursue

---

[5] Plaintiffs' claims that the collective approach works in tandem with the statute of limitations to deprive Plaintiffs of their claims is particularly unfounded. The 27 Plaintiffs before this Court have already lodged their claims, thereby pausing the statute of limitations clock from running. How the statute of limitations may apply to theoretical plaintiffs who are not included in the instant matter is outside the authority of this Court.

their claims in small claims court if they deemed that venue more expeditious.  Plaintiffs are conspicuously silent when it comes to whether *any* of their claims fall above the jurisdictional threshold for California small claims court.

The collective approach described in the Customer Agreement is also entirely consistent with the right to representation and counsel's ability to perform their duties.  Plainly, nothing in the coordinated proceedings structure deprives any customer of the counsel of their choice.  A customer's hypothetical choice of counsel resulting in a *potential* delay is not tantamount to a denial of the right to select counsel.  Nor is the reasonable and logical delay (inherent in a tiered approach) so extreme as to compel customers to select counsel with "asymmetrical" information.

Thus, although the mass arbitration provision is not properly before the Court, it is demonstrably reasonable and enforceable.  Should the Court disagree as to both points, the provision is also severable, for the same reasons articulated above.  (*See* Part I.B, *supra*.)

### III.   A STAY OF PROCEEDINGS IS WARRANTED

Plaintiffs offer *no* response to Verizon's arguments about why a stay is warranted under the FAA both during arbitration and while this motion is pending.  Thus, any opposition has been waived.  *Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*, 2021 WL 5758890, at *10 (N.D. Cal. Dec. 3, 2021) ("Plaintiffs also do not respond to [defendant's] arguments that no plausible claim for relief can be stated . . . [t]his is sufficient to deem Plaintiffs' opposition to dismissal based on these arguments to have been waived.").  As this Court recognized in *Grubhub*, a stay is appropriate even where only a subset of the claims is compelled to arbitration.  *Grubhub*, 2021 WL 5758889 at *11.  Additionally, in light of the U.S. Supreme Court's review of *Mariana v. Viking River Cruises, Inc.*, No. 27 B297327 (Cal. Ct. App.), which implicates whether the FAA requires enforcement of an arbitration agreement that waives representative claims by employees, and may therefore bear on the FAA's preemption of the rule set forth in *McGill v. Citibank, NA.*, 393 P.3d 84 (2017), the parties and the Court would benefit from a general stay, pending clarification from the Supreme Court.  For the reasons stated in and based on the authority cited in Verizon's opening brief (*see* MTC at 12), all proceedings should be stayed pending the resolution of Verizon's motion to compel arbitration.

# CONCLUSION

For the foregoing reasons, Verizon's motion to compel arbitration and stay proceedings should be granted.

DATED: April 22, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Crystal Nix-Hines*
Crystal Nix-Hines
Attorneys for Defendants
VERIZON WIRELESS and VERIZON COMMUNICATIONS, INC.