1                                    PAGES 1 - 28

2                     UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4                  BEFORE THE HONORABLE EDWARD M. CHEN

5    MACCLELLAND, ET AL.,              )
                                       )
6                PLAINTIFFS,           )
                                       )
7      VS.                             )  CASE NO. 21-CV-08592 EMC
                                       )
8    CELLCO PARTNERSHIP, D/B/A         )
     VERIZON WIRELESS,                 )
9                                      )  SAN FRANCISCO, CALIFORNIA
                 DEFENDANT.            )  VIA ZOOM VIDEOCONFERENCE
10                                     )  THURSDAY, MAY 19, 2022
                                       )
11   _____)

12                   **TRANSCRIPT OF PROCEEDINGS**

13   **APPEARANCES**:

14   **FOR PLAINTIFF**          HATTIS AND LUKACS
                                400 108TH AVE. NE, STE 500
15                              BELLEVUE, WASHINGTON  98004
                           BY:  **DANIEL M. HATTIS, ESQUIRE**
16                              **CHE CORRINGTON, ESQUIRE**

17                              DENITTIS OSEFCHEN PRINCE, P.C.
                                5 GREENTREE CENTRE, SUITE 410
18                              525 ROUTE 73 NORTH
                                MARLTON, NEW JERSEY 08057
19                         BY:  **STEPHEN DENITTIS, ESQUIRE**

20

21   **FOR DEFENDANT**         QUINN EMANUEL URQUHART & SULLIVAN LLP
                               865 S. FIGUEROA STREET, 10TH FLOOR
21                             LOS ANGELES, CALIFORNIA 90017
22                        BY:  **CRYSTAL NIX-HINES, ESQUIRE**

23                             **MARINA LEV, ESQUIRE**

24

     *REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
25                *PRO TEM OFFICIAL COURT REPORTER, USDC*

```
1    THURSDAY, MAY 19, 2022                        2:05 P.M.

2

3         THE CLERK:  THE COURT IS CALLING MACCLELLAND, ET AL.

4    VERSUS CELLCO PARTNERSHIP DOING BUSINESS AS VERIZON WIRELESS,

5    CASE NUMBER 21-8592.

6         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR RECORD.

7         MR. HATTIS:  THIS IS DAN HATTIS FOR PLAINTIFFS, AND

8    I'M JOINED WITH MY COLLEAGUE CHE CORRINGTON, WHO MAY ALSO ARGUE

9    BUT I'LL PRIMARILY BE ARGUING ON PLAINTIFFS.

10        THE COURT:  ALL RIGHT.  THANK YOU, MR. HATTIS.

11        MR. DENITTIS:  GOOD AFTERNOON, YOUR HONOR.  THIS IS

12   STEVE DENITTIS, ALSO ON BEHALF OF PLAINTIFFS.

13        THE COURT:  THANK YOU, MR. DENITTIS.

14        MS. NIX-HINES:  GOOD AFTERNOON, YOUR HONOR.  CRYSTAL

15   NIX-HINES ON BEHALF OF DEFENDANT, AND WITH ME IS MARINA LEV,

16   WHO WILL ALSO BE ARGUING.

17        THE COURT:  ALL RIGHT.  THANK YOU, MS. NIX-HINES,

18   MS. LEV.

19        LET'S -- I WANT TO SPEND OUR TIME FOCUSING ON A

20   COUPLE OF THE ALLEGED SUBSTANTIVE UNCONSCIONABLY --

21   UNCONSCIONABLE PROVISIONS.

22        ONE IS THE -- WHAT MIGHT BE CALLED AN EXCULPATORY

23   CLAUSE.  I'M TRYING TO UNDERSTAND WHAT IT REALLY DOES AND WHAT

24   IT REALLY SAYS.  OBVIOUSLY, YOU CAN HAVE AN INTEGRATION CLAUSE,

25   AND THAT'S NOT UNCONSCIONABLE, AND THAT IS, YOU KNOW, ANY PRIOR
```

1    AGREEMENTS, ET CETERA, ET CETERA, OR REPRESENTATIONS ARE

2    ABSORBED, AND YOU CAN'T HAVE EXTRINSIC OR PAROL EVIDENCE TO

3    CONTRADICT THE CONTRACT, RIGHT?  I MEAN, THAT'S A BASIC

4    PROVISION WE FIND COMMONLY.  AND I DON'T THINK THERE'S --

5    THAT'S -- THAT DOESN'T AFFECT -- THAT APPLIES WHETHER YOU ARE

6    IN COURT OR WHETHER YOU ARE IN ARBITRATION, IT SEEMS TO ME.

7           I GUESS MY QUESTION IS WHETHER THE CLAUSE IN QUESTION

8    DOES ANYTHING MORE THAN THAT, BECAUSE EVEN THE PAROL EVIDENCE

9    RULE HAS EXCEPTIONS TO IT, AS I UNDERSTAND IT.

10          SO, FOR INSTANCE, THE CLAIM OF FRAUD IN THE

11   INDUCEMENT, IF I'M NOT MISTAKEN, I THINK FRAUD IN THE

12   INDUCEMENT IS A CLAIM THAT CAN BE MADE EVEN IN THE FACE OF AN

13   INTEGRATION CLAUSE UNDER NORMAL CONTRACT LAW.  MAYBE SOMEONE

14   CAN CORRECT ME IF I'M WRONG.  AM I WRONG ON THAT?  IT'S BEEN A

15   WHILE SINCE I TOOK CONTRACTS, BUT THAT'S MY UNDERSTANDING.

16          **MR. HATTIS:**  YOUR HONOR, I THINK THAT'S GENERALLY

17   RIGHT.  IT'S JUST THE LANGUAGE THAT'S USED HERE SPECIFICALLY,

18   YOU CAN'T RELY ON WHAT'S SAID BY ANY SALES OR CUSTOMER SERVICE

19   REPRESENTATIVES, AND YOU HAVE NO OTHER RIGHTS REGARDING SERVICE

20   PER THIS AGREEMENT.

21          AND KEEP IN MIND, THE AGREEMENT THAT WE'RE TALKING

22   ABOUT, THE WIRELESS AGREEMENT DOESN'T EVEN CONTAIN THE MAIN

23   TERMS, WHICH ARE, LIKE, THE PRICE, THE PLAN, OR ANYTHING LIKE

24   THAT.

25          AND SO THIS APPEARS, JUST ON HOW THIS IS WRITTEN, TO

1  NOT BE JUST AN ATTEMPT AT A -- YOU KNOW, JUST AS TO TIE UP IN

2  TERMS OF AN INTEGRATION CLAUSE, BUT, ACTUALLY, TO PREVENT YOU

3  FROM RELYING ON, YOU KNOW, PRETTY MUCH ANYTHING THAT'S NOT IN

4  THIS AGREEMENT.

5         SO IT SEEMS TO BE -- AT THE VERY LEAST, IT'S AN

6  EXAMPLE OF BAD FAITH TRYING TO TAKE THIS TOO FAR AND,

7  BASICALLY, TO, YOU KNOW, REDUCE THE ABILITY OF PLAINTIFFS TO

8  BRING CLAIMS.

9         **THE COURT:**  SO MY QUESTION IS -- AND I THINK YOU'VE

10  ANSWERED IT -- IS I TAKE IT YOUR ARGUMENT IS THAT THIS IS

11  BROADER THAN AN INTEGRATION CLAUSE; IT BARS EVEN THE KINDS OF

12  THINGS THAT COULD COME IN WHEN YOU HAVE AN INTEGRATION CLAUSE.

13  IT'S BROADER THAN AN INTEGRATION CLAUSE.  IT WOULD BAR FRAUD IN

14  THE INDUCEMENT AS ONE EXAMPLE.

15         **MR. HATTIS:**  YES, YOUR HONOR.  THAT'S A GOOD WAY TO

16  PUT IT, THAT IT'S BROADER THAN AN INTEGRATION CLAUSE.  AND, I

17  MEAN, IT EVEN SPECIFICALLY SAYS WHAT A SALES OR CUSTOMER

18  SERVICE REPRESENTATIVE SAYS TO YOU, AND THAT'S THE HUGE

19  MAJORITY OF HOW SALES ARE MADE, ARE ON THE PHONE.

20         AND THEN, YOU KNOW, ADDING IN YOU HAVE NO OTHER

21  RIGHTS TO SERVICES JUST SEEMS OVER THE TOP.

22         **THE COURT:**  ALL RIGHT.  WHAT'S THE DEFENSE RESPONSE

23  THAT THIS IS NOT A, QUOTE, ROUTINE INTEGRATION CLAUSE, BUT

24  SOMETHING BROADER THAN THAT?

25         **MS. NIX-HINES:**  THANK YOU, YOUR HONOR.  I WANT TO SAY

1    AT THE OUTSET WE DON'T BELIEVE ANY OF THESE UNCONSCIONABLE

2    CLAIMS ARE BEFORE YOU, BECAUSE THE AGREEMENT EXPRESSLY RESERVES

3    QUESTIONS ABOUT ENFORCEABILITY SCOPE TO THE ARBITRATOR.

4              **THE COURT:**  RIGHT.

5              **MS. NIX-HINES:**  SO WE DON'T THINK YOU EVEN NEED TO

6    REACH THIS ISSUE.

7              **THE COURT:**  ALL RIGHT.  I UNDERSTAND THE ARGUMENT.

8    LET'S ASSUME FOR A MOMENT I DO REACH IT.  I'D LIKE TO HEAR

9    YOUR --

10             **MS. NIX-HINES:**  UNDERSTOOD.  WE BELIEVE THIS IS A

11   STANDARD INTEGRATION CLAUSE, AND IT DOESN'T IN ANY WAY PRECLUDE

12   ANY OF THE FRAUD CLAIMS OR ALLEGATIONS THAT 1668 IS CONCERNED

13   WITH.

14             I ALSO NOTE THAT THEY HAVE NOT ALLEGED FRAUD.  THEY

15   HAVE NOT ALLEGED ANY CONDUCT THAT WOULD EVEN RISE TO THE LEVEL

16   OF FRAUD.  THEY DID NOT SEEK PUNITIVE DAMAGES.  SO WE DON'T

17   THINK THEY EVEN HAVE HAD ABILITY TO MAKE THIS ASSERTION.

18             BUT, IN ANY CASE, THIS IS A STANDARD INTEGRATION

19   CLAUSE THAT MERELY BINDS VERIZON CUSTOMERS TO THE TERMS OF THE

20   CUSTOMER AGREEMENT, WHICH THEY EXPRESSLY AGREED TO THROUGH THE

21   CLICK-THROUGH PROCESS THAT VERIZON ESTABLISHED.

22             **THE COURT:**  ALL RIGHT.  ARE THERE ANY OTHER

23   PROVISIONS OR ANYTHING ELSE THAT WOULD ENLIGHTEN ONE BESIDES

24   THE -- THIS PROVISION?  IS THERE ANY OTHER SUPPLEMENTARY OR

25   PARTS OF THE AGREEMENT THAT I SHOULD TAKE NOTE OF, OTHER THAN

```
1    THE CLAUSE THAT SAID, THIS AGREEMENT AND THE DOCUMENTS IT
2    INCORPORATES FORM THE ENTIRE AGREEMENT BETWEEN US, YOU CAN'T
3    RELY, ET CETERA, ET CETERA, THE TWO SENTENCES?  IS THERE ANY
4    MORE, OR IS THAT IT?
5          MR. HATTIS:  REGARDING THAT PARTICULAR ISSUE, YOUR
6    HONOR?
7          THE COURT:  YES.
8          MR. HATTIS:  THE CONCEPT?  YES, THAT WOULD BE IT.
9          THE COURT:  OKAY.  ALL RIGHT.  LET ME GET TO THE,
10   PERHAPS, EVEN MORE INTERESTING ISSUE, THE COORDINATED
11   PROCEEDINGS PROVISION.
12          AND I'D LIKE TO GET THE DEFENSE RESPONSE TO THE
13   PRACTICAL LIMITATION.  I MEAN, ONE COULD UNDERSTAND WHY IT
14   WOULD BE DESIRABLE TO HAVE SOME ORDERING AND SOME PROCESS.
15   TYPICALLY, WHAT WE SEE -- AND WE DO THIS ALL THE TIME IN MDL
16   CASES, IS WE'LL DO BELLWETHER SYSTEM, AND -- BUT USUALLY AFTER
17   THE FIRST BELLWETHER YOU THEN GO INTO, YOU KNOW, NEGOTIATIONS,
18   AND THE WHOLE PURPOSE OF THE BELLWETHER IS TO TRY TO STIMULATE
19   A GLOBAL SETTLEMENT.
20          THIS ONE SEEMS DIFFERENT.  IT'S NOT JUST A BELLWETHER
21   PROCEEDING.  I MEAN, MAYBE IT IS TO TRY TO HELP RESOLVE THE
22   CLAIMS, BUT IF THEY'RE NOT RESOLVED, IF I UNDERSTAND THIS
23   CORRECTLY, THIS TRANCHE OF TEN CONTINUES AS LONG AS IT TAKES TO
24   ADJUDICATE THE CASES.  I MEAN, AT SOME POINT IT KIND OF GOES
25   BEYOND BELLWETHER, IT GOES INTO THE WHOLE SHIP.
```

1              DO I UNDERSTAND THIS PROPERLY, OR DID I MISCONSTRUE

2    HOW THIS THING WORKS?

3              **MS. NIX-HINES:**  I THINK YOU'RE RIGHT, YOUR HONOR, IN

4    THE SENSE THAT VERIZON ESTABLISHED THIS CLAUSE TO PROMOTE

5    EFFICIENCY SIMILAR TO OTHER BELLWETHER PROVISIONS, AND THE GOAL

6    IS TO STREAMLINE THE PROCESS SO CASES CAN COME TOGETHER IN

7    GROUPS OF, YOU KNOW, TEN AND BE ADJUDICATED QUICKLY AND

8    EFFICIENTLY.

9              NOW, AS A PRACTICAL MATTER, YOU KNOW, THAT FIRST

10   GROUP WILL BE INSTRUCTIVE, ALTHOUGH VERIZON IS NOT BOUND BY THE

11   DECISION, NEITHER SIDE IS, IT WILL BE A VERY INSTRUCTIVE

12   SETTLEMENT.

13             SO, OBVIOUSLY, THAT'S GOING TO AFFECT HOW THEY

14   APPROACH THE SUBSEQUENT CASES.

15             AND ALTHOUGH, YOU KNOW, PLAINTIFFS RECITE THIS PARADE

16   OF HORRIBLES ABOUT HOW MANY YEARS IT'S GOING TO TAKE, THE

17   REALITY IS ONLY 27 PLAINTIFFS ARE BEFORE YOU.  AND IF THERE'S A

18   28TH PLAINTIFF THAT DOESN'T HAVE THE SAME GROUP OF LAWYERS, AND

19   DESPITE WHAT THEY SAY ABOUT BEING ONLY A HANDFUL OF EXPERIENCED

20   PLAINTIFFS' LAWYERS, THERE'S THOUSANDS OF PLAINTIFFS' LAWYERS

21   THEY COULD RETAIN, AND THEY WOULD NOT NECESSARILY BE BOUND BY

22   THE PROCESS.  THEY COULD BRING THEIR CLAIM IN INDIVIDUAL

23   ARBITRATION.

24             **THE COURT:**  WHAT DO I DO WITH THE REPRESENTATION FROM

25   PLAINTIFFS' COUNSEL THAT THEY REPRESENT 2712 VERIZON CUSTOMERS

1    AND ALL OF THEM WOULD BE COVERED BY THIS, AND IT WOULD TAKE,

2    YOU ASSUME, SEVEN MONTHS PER TRANCHE OF TEN IS 156 YEARS TO GET

3    THROUGH ALL OF THEM?

4            **MS. NIX-HINES:**  IT'S PURELY SPECULATIVE, YOUR HONOR.

5    THOSE 2,000 AND SOME, IF THAT'S IS THE CASE, ARE NOT BEFORE YOU

6    TODAY.  WHAT'S ONLY BEFORE YOU TODAY ARE THE 27 PLAINTIFFS THAT

7    ARE NAMED PLAINTIFFS THAT ARE PART OF THIS CLASS ACTION, AND

8    THOSE ARE THE ONLY ONES YOU NEED TO CONSIDER AT THIS POINT.

9    SHOULD THERE BE ANY ISSUES WITH THE ARBITRATION -- AND WE DON'T

10   THINK THERE WILL BE BECAUSE IT'S A CAREFULLY CALIBRATED

11   PROCESS.

12           BUT, NONETHELESS, THEY HAVE -- IN PARAGRAPH 6 IT

13   MAKES IT EXPLICITLY CLEAR:  THE COURT WILL HAVE AUTHORITY TO

14   ENFORCE THIS CLAUSE AND, IF NECESSARY, TO ENJOIN THE MASS

15   FILING OF ARBITRATION DEMANDS AGAINST VERIZON.

16           IF THEY GO THROUGH THE PROCESS AND THIS PARADE OF

17   HORRIBLES OCCURS, WHICH WE DON'T THINK IT WILL, THEY HAVE THE

18   RIGHT TO COME BACK TO COURT AND SEEK RELIEF.

19           **THE COURT:**  LET ME QUESTION YOUR ASSERTION THAT THE

20   ONLY THING I NEED TO BE CONCERNED WITH RIGHT NOW ARE THE 27

21   PEOPLE IN THIS COURTHOUSE OR THIS CASE.

22           MY RECOLLECTION OR UNDERSTANDING OF UNCONSCIONABILITY

23   ANALYSIS IS THAT YOU LOOK AT THE OVERALL IMPACT THAT THE -- I

24   THINK THERE ARE CASES -- I THINK I HAVE SO RULED, AND I HAVEN'T

25   BEEN OVERTURNED, BUT I THINK THERE ARE CASES THAT SAY YOU JUST

```
 1    DON'T LOOK TO WHAT -- YOU LOOK TO WHETHER SOMETHING IS
 2    UNCONSCIONABLE EVEN IF IT DOESN'T NECESSARILY DIRECTLY GET
 3    IMPLICATED BY THE ONE PLAINTIFF.  IT'S NOT YOUR TYPICAL SORT OF
 4    STANDING ANALYSIS.  YOU HAVE TO LOOK AT UNCONSCIONABILITY FROM
 5    A MORE SYSTEMIC VIEW.  SO I'M NOT SURE THAT IT'S CORRECT TO SAY
 6    WE CAN IGNORE WHAT THE LONG-RUN IMPACT MIGHT BE ON OTHERS.
 7               MR. HATTIS:  YOUR HONOR, MAY I SAY SOMETHING ON THAT
 8    POINT?
 9               THE COURT:  YEAH.
10               MR. HATTIS:  AS YOU'RE SAYING, THE LAW IS THAT THE
11    COURT DETERMINES UNCONSCIONABILITY AT THE TIME THE CONTRACT IS
12    FORMED, AND LIKE YOU SAID, IT'S NOT -- YOU KNOW, IT'S NOT
13    SPECIFIC -- IT'S AN OBJECTIVE STANDARD AND YOU LOOK AT THE
14    TOTALITY.
15               AND, YOU KNOW, IN THIS CASE THE 2,712 AREN'T
16    THEORETICAL.  AS MS. NIX-HINES KNOWS, WE SENT A DEMAND LETTER
17    WITH A SPREADSHEET WITH ALL OF THEM.  THAT'S BESIDE THE POINT.
18               THE ISSUE IS IT SHOWS HOW THIS REALLY IMPACTS PEOPLE.
19    IT SHOWS IT'S VERY -- YOU KNOW, THAT YOU VERY QUICKLY CAN HAVE
20    SO MANY PEOPLE YOU'LL HAVE A HUNDRED YEARS GO ABOUT BY BEFORE
21    YOU CAN EVEN MAKE YOUR CLAIM.
22               SO I THINK IT'S VERY RELEVANT.  IT'S NOT THAT IT'S A
23    PARADE OF HORRIBLES OR IT'S OUTSIDE OF THE AUTHORITY OF THE
24    COURT.  IN FACT, THIS VERY MUCH INFORMS THE COURT LOOKING AT IT
25    OBJECTIVELY AS A WHOLE.
```

1          **MS. NIX-HINES:**  YOUR HONOR, IF I MAY RESPOND.  I JUST

2    WANT TO POINT OUT THEY BROUGHT THIS AS A CLASS ACTION.  THEY

3    CLAIM THAT THERE'S COMMONALITY, THAT THERE'S TYPICALITY, YOU

4    KNOW, THAT THERE'S, YOU KNOW, COMMON ISSUES PREDOMINATE OVER

5    INDIVIDUAL ONES.

6          SO IT'S SORT OF DISINGENUOUS TO THEN BE CONCERNED

7    ABOUT THE FACT THAT, YOU KNOW, THERE'S GOING TO BE A

8    STREAMLINED PROCESS OF LIKE-MINDED CLAIMS.  THIS IS A PROCESS

9    THAT GIVES THE VERY CLAIMANTS THAT THEY SAY HAVE SIMILAR CLAIMS

10   AN OPPORTUNITY TO COME FORWARD IN GROUPS TO HAVE THOSE CLAIMS

11   EFFICIENTLY RESOLVED.

12         AND, AS A PRACTICAL MATTER, THOSE INITIAL CASES ARE

13   GOING TO INFORM HOW THE PARTIES HANDLE THE SUBSEQUENT CASES.

14   IT WOULDN'T BE IN ANYBODY'S INTEREST TO DRAG OUT, YOU KNOW, IN

15   GROUPS OF TEN, YOU KNOW, ARBITRATIONS FOR MONTHS ON END.  THE

16   WHOLE POINT IS TO GET AN EARLY INDICATION OF THE LEGITIMACY OF

17   THE CLAIMS FROM AN ARBITRATOR, GET A RULING AND THEN, YOU KNOW,

18   LIKELY --

19         **THE COURT:**  WELL, EXCEPT THERE'S ONE PROBLEM WITH

20   THAT, MS. NIX-HINES, THIS PROVISION, BECAUSE IT REQUIRES

21   WAITING, TAKES A SUFFICIENT AMOUNT OF LEVERAGE AWAY.

22         LET'S SAY PLAINTIFFS DO WELL.  LET'S SAY THE FIRST

23   TWO ROUNDS DON'T GO SO WELL FOR YOUR CLIENT AND THE PLAINTIFFS

24   DO WELL.  YOUR CLIENT CAN JUST SIT THERE AND SAY, OKAY, WE'LL

25   DO THE NEXT TEN; OKAY, WE'LL DO THE NEXT TEN AFTER THAT.  FIVE

```
1    YEARS LATER -- I MEAN, PEOPLE ARE GOING TO -- THEY HAVE THE
2    DISADVANTAGED TIME.  IF THERE'S A REGULATOR OUT THAT THAT SAYS,
3    YOU CAN ONLY BRING TEN CLAIMS EVERY SEVEN MONTHS AND GET IN
4    LINE, THAT'S A LOT OF LEVERAGE FOR THE PARTY THAT'S --
5    IRRESPECTIVE OF THE MERITS OF HOW THE SO-CALLED BELLWETHERS GO.
6          THIS IS NOT YOUR TYPICAL BELLWETHER.  TYPICAL
7    BELLWETHER IS THE LID IS OFF, YOU COME TO THE TABLE, TO THE
8    BARGAINING TABLE, AND IF YOU DON'T COME TO GRIPS WITH IT, YOU
9    KNOW, ALL THESE SUITS ARE GOING TO BE FILED.
10         ON THE OTHER HAND, YOU KNOW, THE DEFENDANT SAYS,
11   YOU'VE DONE TERRIBLE ON THESE, YOU'RE GOING TO TEST US AGAIN,
12   YOU'RE JUST GOING TO -- YOU'RE GOING TO LOSE.
13         SO THAT'S -- A BELLWETHER IS TO OPEN NEGOTIATIONS,
14   BUT WHEN YOU PUT A REGULATOR OUT THERE ON EVERYTHING ELSE AND
15   BASICALLY SAY, FOR SOME OF YOU PEOPLE THE AVERAGE YOU MAY HAVE
16   TO WAIT FOR THIS PARTICULAR GROUP OF 2,700 PEOPLE IS 78 YEARS,
17   THAT -- YOU GET A DISTORTED NEGOTIATION PROCESS AFTER THAT.
18   THAT'S NOT A TRUE BELLWETHER.
19         MS. NIX-HINES:  IT WOULD BE JUST THE OPPOSITE, YOUR
20   HONOR, RESPECTFULLY.  I MEAN, IF VERIZON LOSES THE FIRST 10 OR
21   THE FIRST 20, IT WOULDN'T BE IN THEIR INTEREST TO DRAG THIS
22   OUT.  THEY WOULD WANT TO RESOLVE IT QUICKLY BECAUSE IT'S THE
23   SAME ARBITRATOR VIEWING THE SAME SET OF CASES.  THERE'S NO
24   REASON TO THINK THE OUTCOME WOULD BE DIFFERENT FOR THE
25   SUBSEQUENT CASES, SO THERE WOULDN'T BE AN INTEREST IN DRAGGING
```

 1  IT OUT.

 2          **MR. HATTIS:**  YOUR HONOR, THAT'S NOT HOW THE AAA

 3  WORKS.  EVERY SINGLE INDIVIDUAL IN THE FIRST TEN, EACH ONE HAS

 4  A SEPARATE ARBITRATOR, THEN EVERY SINGLE ONE OF THESE 2,700 ARE

 5  GOING TO HAVE A SEPARATE ARBITRATOR, AND IT'S CERTAINLY IN

 6  VERIZON'S INTEREST TO KEEP THIS GOING.

 7          I MEAN, BASICALLY, YOU CAN ONLY DO 20 ARBITRATIONS A

 8  YEAR, SINCE EACH SET OF TEN TAKES ABOUT SEVEN MONTHS.

 9  ARBITRATION FEES AT $3,300 A CASE AND SO FORTH, NOW, INSTEAD OF

10  POTENTIALLY MILLIONS AND MILLIONS OF DOLLARS, THEY ONLY HAVE TO

11  PAY 66,000 A YEAR, AND YOU KNOW, THEY'VE WIPED US OUT.  AS YOU

12  SAID, YOUR HONOR, THIS IS COMPLETELY IN THEIR INTEREST.

13          WHAT'S GOING ON HERE, REALLY YOU CAN LOOK AT -- YOU

14  KNOW, IN TERMS OF THE ARBITRATION PROVISION AND THE LAST

15  SENTENCE IN THE MASS ARB PROVISION, IT SAYS A COURT WILL HAVE

16  AUTHORITY TO ENFORCE THIS CLAUSE AND, IF NECESSARY, TO ENJOIN

17  THE MASS FILING, MASS ARBITRATION DEMANDS AGAINST VERIZON.

18  THAT'S WHAT THEY WANT.  THEY WANT THAT LOTS OF PEOPLE CAN'T

19  MAKE CLAIMS.

20          THERE'S NOTHING WRONG WITH MASS ARBITRATION.  IT'S

21  THE LOGICAL CULMINATION OF THEIR POSITION, HEY, YOU DON'T NEED

22  CLASS ACTIONS, ALL THESE INDIVIDUALS CAN BRING INDIVIDUAL

23  CLAIMS.  NOW THEY SAY, NO, YOU CAN'T DO THAT EITHER; IF THERE'S

24  LOTS OF FILINGS, WE CAN GO TO COURT AND PREVENT THAT, TOO.

25  THAT'S WHAT'S GOING ON, AND THEY GAVE IT AWAY RIGHT THERE.

1        **MS. NIX-HINES:**  YOUR HONOR, I MEAN, THIS IS OBVIOUSLY

2   IN RESPONSE TO PLAINTIFFS' LAWYERS LIKE MR. HATTIS AND OTHERS

3   THAT, YOU KNOW, BRING, YOU KNOW, MASS ARBITRATIONS IN ORDER TO

4   GAIN LEVERAGE IN COMPANY IS A REASONABLE RESPONSE.  BUT I MEAN,

5   THIS IS A VERY FAIR AND ENFORCEABLE PROVISION.  YOU KNOW, THIS

6   IS NOT THE SITUATION WHERE --

7        **THE COURT:**  IS THERE ANY PRECEDENT, MS. NIX-HINES?

8   DOES AAA OR JAMS OR INTERNATIONAL ASSOCIATION OF ARBITRATORS,

9   DO THEY HAVE -- IS THIS BARRED FROM SOME PROCESS?

10       **MS. NIX-HINES:**  NO.  IN FACT, MR. HATTIS, YOU KNOW,

11  TRIED TO REACH OUT TO THE AAA, ALLEGING ALL SORTS OF

12  IMPROPRIETIES, AND THEY DECLINED TO REVIEW THE CLAIM BECAUSE

13  THIS IS THE APPROPRIATE FORUM.

14       AND, REALLY, LIKE THESE CLAIMS SHOULD BE PUT IN FRONT

15  OF THE ARBITRATOR, BECAUSE THE AGREEMENT EXPRESSLY RESERVES THE

16  VERY KIND OF CLAIMS THAT MR. HATTIS IS MAKING TO THE

17  ARBITRATOR.

18       **THE COURT:**  I UNDERSTAND THAT.  MY QUESTION IS A

19  LITTLE DIFFERENT.

20       DID YOUR CLIENT BORROW THIS MODEL FROM SOME EXISTING

21  INSTITUTIONALIZED PRACTICE SOMEWHERE, OR THIS WAS CREATED BY

22  YOUR CLIENT, BY VERIZON?

23       **MS. NIX-HINES:**  IT WASN'T MODELED IN ANY SPECIFIC

24  PRACTICE, YOUR HONOR.  OBVIOUSLY, THE BUSINESS COMMUNITY HAS

25  BEEN LOOKING AT WAYS TO ADDRESS THE PHENOMENON OF MASS

1    ARBITRATIONS.  BUT UNLIKE SOME OTHERS, YOU KNOW, WHICH

2    MR. HATTIS CITED IN HIS BRIEF, YOU KNOW, THIS IS A VERY FAIR

3    AND REASONABLE APPROACH.  VERIZON PAYS ATTORNEY'S FEES.  THEY

4    DON'T DICTATE COUNSEL.  THEY ALLOW A CONTINUOUS PROCESS SO THAT

5    CLAIMANTS CAN CONTINUE TO BRING ARBITRATIONS, OR THEY CAN GO IN

6    SMALL CLAIMS COURT.

7            **THE COURT:**  THERE'S NO OUTSIDE LIMIT.  THERE'S NO

8    LIMIT THAT SAYS, NO MATTER WHAT, WE WILL RESOLVE ALL THESE

9    CASES AND GO TO ARBITRATION WITHIN X MONTHS, X YEARS.  THERE'S

10   NO GUARANTEE OF AN END DATE.

11           **MS. NIX-HINES:**  THERE'S NO GUARANTEE OF AN END DATE,

12   BUT THAT WOULD BE SORT OF IMPOSSIBLE TO ASSUME, BECAUSE,

13   OBVIOUSLY, IT ALSO DEPENDS ON THE AAA'S CASELOAD AND

14   SCHEDULING.  BUT IT'S AN ATTEMPT TO STREAMLINE THE PROCESS.

15   IT'S NOT AN ATTEMPT TO BE A LOGJAM.  THAT'S WHY THEY DO IT IN

16   SMALL PATCHES.

17           UNLIKE, YOU KNOW, SOME OTHER SYSTEMS, THEY DON'T

18   IMPOSE A DECISION ON THE REST OF THE CLAIMANTS.  THAT MIGHT BE

19   A SITUATION WHERE IT WOULD BE UNCONSCIONABLE IF YOU SAY --

20           **MR. HATTIS:**  YOUR HONOR.

21           **MS. NIX-HINES:**  -- THE OUTCOME OF THE FIRST, YOU

22   KNOW, BATCH OF TEN IS GOING TO THEREFORE CONTROL THE OUTCOME OF

23   THE OTHER CLAIMANTS.  VERIZON DID NOT SPECIFICALLY DO THAT.

24           **MR. HATTIS:**  YOUR HONOR, SOMETHING THAT'S INTERESTING

25   HERE AND UNIQUE.  IT SPECIFICALLY SAYS YOU CAN'T EVEN FILE THE

1    ARBITRATIONS.

2            AND WHAT'S ALSO INTERESTING IN APRIL 2021, WHICH IS

3    WHEN VERIZON ADDED THIS MASS ARBITRATION PROVISION, THAT SAYS

4    YOU CAN'T EVEN FILE THEM UNTIL YOUR GROUP OF TEN COMES UP,

5    WHICH MIGHT BE 150 YEARS, AT THAT VERY SAME TIME THEY ADDED

6    INTO THEIR AGREEMENT THAT THE STATUTE OF LIMITATION APPLIES IN

7    ARBITRATION.  WHAT A COINCIDENCE.  NOW YOU FIVE YEARS OR TEN

8    YEARS AND YOU'VE LOST THE STATUTE OF LIMITATIONS.

9            I MEAN, THIS IS -- THIS DOESN'T EXIST.  THIS IS SO

10   OUT THERE AND SUCH A STRETCH.  IT'S ALMOST LIKE THEY ASSIGNED

11   SOME JUNIOR ASSOCIATE TO WRITE AN ARBITRATION AGREEMENT THAT

12   WAS SO ONE-SIDED AND EGREGIOUS, IT'S LIKE JUST MAKE SURE THEY

13   CAN'T DO ANYTHING.

14           **MS. NIX-HINES:**  THAT'S ABSOLUTELY FALSE, YOUR HONOR.

15           **THE COURT:**  HOLD ON.  ONE AT A TIME.  LET HIM FINISH,

16   AND I WANT YOUR ANSWER.

17           GO AHEAD, MR. HATTIS.

18           **MR. HATTIS:**  I'M DONE.  IT'S JUST THE TIMING AND ALL

19   OF THIS JUST SEEMS PRETTY CLEAR THAT ALL OF THIS IS DONE IN BAD

20   FAITH, AND HOW ALL OF THESE WORK TOGETHER IS PERMEATED WITH

21   UNCONSCIONABILITY.

22           **THE COURT:**  LET ME ASK, MS. NIX-HINES, IF YOU COULD

23   RESPOND TO THE STATUTE OF LIMITATIONS RUNNING.  LET'S SAY

24   SOMEBODY IS ON THE LIST AND IT'S FOUR YEARS, WHAT THEN?

25           **MS. NIX-HINES:**  SO PLAINTIFFS ALLEGE THEY HAVE TO PAY

1  THE ADMINISTRATIVE CHARGE EVERY MONTH, INCLUDING THROUGH THE

2  PRESENT.  SO THAT MEANS THAT EVERY MONTH RESTARTS THEIR ABILITY

3  TO BRING A DISPUTE TO VERIZON AND BEFORE AN ARBITRATION.

4  THERE'S NO CUTOFF IN THE SENSE THAT THERE'S AN ONGOING ALLEGED

5  VIOLATION, AND, THEREFORE, EACH MONTH TRIGGERS A NEW

6  OPPORTUNITY TO SEND THE NOTICE.

7          **THE COURT:**  DO YOU AGREE WITH THAT?  DO YOU CONCEDE

8  THAT THAT STATUTE RUNS EVERY TIME THERE'S A NEW START TO THE

9  STATUTE?  OR WOULD YOU TAKE THE VIEW THAT THE FIRST OVERT ACT

10  RUNS, AND THERE'S NOT A CONTINUAL ACCRUAL?

11          **MS. NIX-HINES:**  WELL, OBVIOUSLY, I MEAN, IT RESTARTS

12  UP UNTIL THE POINT WHERE THERE'S, YOU KNOW, THE ULTIMATE

13  STATUTE OF LIMITATIONS UNDER THE STATUTE.  BUT HIS CLAIM IS THE

14  180-DAY NOTICE PROVISION IS UNCONSCIONABLE.

15          **THE COURT:**  WE'RE NOT EVEN TALKING ABOUT THAT.  IT'S

16  THE CLAUSE THAT SAYS:  THE REMAINING CASES WILL NOT BE FILED IN

17  ARBITRATION UNTIL THE FIRST TEN HAVE BEEN RESOLVED.  WHAT DOES

18  THAT MEAN?  DOES THAT MEAN YOU CAN FILE AFTER THE FIRST TEN

19  HAVE BEEN RESOLVED, EVEN IF YOU'RE LIKE NUMBER 2,000?

20          **MS. NIX-HINES:**  THEY'RE GOING TO BE DONE IN BATCHES.

21  AND AS WITH CLASS ACTION WHERE THEY IDENTIFY NAMED PLAINTIFFS

22  HERE, THE PLAINTIFFS' COUNSEL WOULD IDENTIFY THEIR FIVE.

23  VERIZON WOULD IDENTIFY FIVE, AND THE NEXT TEN WOULD PROCEED

24  ACCORDINGLY.

25          **MR. HATTIS:**  YOUR HONOR --

1          **MS. NIX-HINES:**  IT'S A SEQUENCE OBVIOUSLY.

2          **THE COURT:**  WOULDN'T THE STATUTE RUN IF YOU'RE NOT

3    THE FIRST -- LET'S SAY YOU'RE IN -- YOU HAVE THE UNFORTUNATE

4    SITUATION OF BEING IN A LATER GROUP, AND THAT IT TAKES YOU FOUR

5    YEARS BEFORE YOU GET THROUGH THE BATCHES OF TEN AND THE STATUTE

6    HAS RUN AT THAT POINT, WHAT HAPPENS THEN?

7          **MS. NIX-HINES:**  SO IF YOU LOOK FURTHER DOWN IN

8    PARAGRAPH 6, IT SAYS:

9                    "THIS PROCESS MAY CONTINUE UNTIL

10              THE PARTIES ARE ABLE TO EITHER RESOLVE ALL

11              THEIR CLAIMS, EITHER THROUGH SETTLEMENT OR

12              ARBITRATION."

13         THAT IS WHAT IS INTENDED BY THIS PROVISION.  OR THEY

14   CAN FILE WITH SEPARATE COUNSEL.  THAT IS NOT PART OF THE, YOU

15   KNOW, BELLWETHER PROCEEDING.  THAT'S AVAILABLE TO THEM AS WELL.

16         **THE COURT:**  IF THEY HAVE THE SAME COUNSEL, CAN THEY

17   FILE WHILE OTHER CASES ARE PENDING IF THEY'RE STILL IN THE

18   QUEUE?

19         **MS. NIX-HINES:**  NO, IT'S DONE IN BATCHES, SO THEY

20   WOULD TO HAVE WAIT UNTIL THAT GROUP OF TEN IS RESOLVED, BUT IT

21   SAYS --

22         **THE COURT:**  SO THE STATUTE THEORETICALLY COULD RUN ON

23   SOMEBODY WHO'S IN THE QUEUE AND, UNFORTUNATELY FOR THEM, THEY

24   SERVE IN THE MIDDLE OR THE BACK OF THE QUEUE.

25         **MS. NIX-HINES:**  BY THE EXPRESS TERMS OF PARAGRAPH 6,

1  IT SAYS THE PROCESS MAY CONTINUE UNTIL THE PARTIES ARE ABLE TO

2  RESOLVE ALL OF THE CLAIMS THROUGH ARBITRATION.  SO THE INTENT

3  IS THEY WILL ALL EITHER BE ARBITRATED, OR, MORE LIKELY,

4  DEPENDING ON THE OUTCOME OF THE INITIAL CASES, THEY WOULD BE

5  SETTLED.  IT'S NOT INTENDED TO BE A BAIT AND SWITCH.

6           **THE COURT:**  BUT IT COULD BE -- BUT THE STATUTE COULD

7  RUN.  THIS DOESN'T SAY THE STATUTE OF LIMITATIONS IS STAYED

8  PENDING RESOLUTION OF THESE MASS ARBITRATIONS.

9           **MS. NIX-HINES:**  I BELIEVE, MS. LEV IS SIGNALING THAT

10 SHE'D LIKE TO CHIME IN.

11          **THE COURT:**  ALL RIGHT.  MS. LEV.

12          **MS. LEV:**  GOOD AFTERNOON, YOUR HONOR.

13          I WANTED TO POINT OUT A COUPLE OF THINGS.

14          FIRST, THIS RELIEF THAT PLAINTIFFS ARE SEEKING WILL

15 BE AVAILABLE TO THEM, POTENTIALLY SEEKING YOUR COUNSEL ON IT,

16 IF AND WHEN ANY SORT OF DELAY ACTUALLY MATERIALIZES.  AT THIS

17 MOMENT, YOUR HONOR, THERE ARE 27 PLAINTIFFS BEFORE YOU.  I'M

18 NOT RETREADING PREVIOUS GROUND.  I WANT TO SAY SOMETHING

19 DIFFERENT.

20          THOSE 27 WOULD BE DONE WITHIN THREE BATCHES.  BY

21 PLAINTIFFS' OWN ADMISSION, THAT IS WELL WITHIN ANY CONCEIVABLE

22 STATUTE OF LIMITATIONS FOR ANY OF THESE CLAIMS.

23          **THE COURT:**  THAT GOES TO THE QUESTION WHETHER I'M

24 SUPPOSED TO JUDGE AN ARBITRATION PROVISION AND ITS

25 CONSCIONABILITY AT THE TIME THAT IT'S IMPOSED OR CREATED AND

1    GOES INTO EFFECT AND NOT LOOK AT THE SPECIFICS, NECESSARILY,

2    OF, YOU KNOW, WHO'S THERE AND WHO'S GOING TO TAKE ADVANTAGE OF

3    IT, ET CETERA, ET CETERA.

4              **MR. HATTIS:**  YOUR HONOR, IT GOES BEYOND THAT --

5              **THE COURT:**  WAIT.  LET MS. LEV FINISH.

6              **MS. LEV:**  THANK YOU, YOUR HONOR.

7              I THINK OUR REQUEST WOULD BE LET US TRY, BECAUSE WE

8    BELIEVE THERE IS NO REASON THIS WOULD DRAG OUT FOR, YOU KNOW,

9    156 YEARS.

10             WE BELIEVE THAT, HAVING BROUGHT THIS ACTION AS A

11   CLASS ACTION IN CONTRAST TO, FOR EXAMPLE, THE, YOU KNOW,

12   AMENDED COMPLAINT IN THE *GRUBHUB* OPINION THAT YOUR HONOR

13   OFFERED RECENTLY, THIS IS A DIFFERENTLY SITUATED CASE.  THIS IS

14   A CASE WHERE THEY'RE CLAIMING, LOOK, EVERYBODY HERE IS SITUATED

15   IN THE SAME WAY.  TO THEN SUGGEST THAT WITHIN EVEN ONE ROUND OF

16   TEN, LET ALONE THREE, YOU DO NOT BEGIN TO ACHIEVE A COMMON END?

17   THAT'S DISINGENUOUS.

18             NOW, YOU'RE SUGGESTING, MR. HATTIS, THAT VERIZON

19   WOULD SOMEHOW BE INCENTIVIZED TO CONTINUE THIS AD INFINITUM.

20   LET ME ADDRESS BRIEFLY WHY THAT'S NOT THE CASE.

21             WERE VERIZON NOT TO PREVAIL ON AN INJUNCTIVE PORTION

22   OF THIS, IT'S NOT JUST -- YOU KNOW, THEY'RE NOT SEEKING REFUNDS

23   FOR ADMIN PERIOD, FULL STOP.  THEY'D LIKE A REVAMP OF VERIZON'S

24   ADVERTISING PRACTICES, ESSENTIALLY.  THAT'S AN EXPENSIVE

25   UNDERTAKING, YOUR HONOR.  IF YOU HAVE A DIFFERENT NOTICE THAT

1   YOU GIVE TO A PARTICULAR CLIENT, THAT'S NOT SOMETHING YOU CAN

2   DO ON AN AD HOC BASIS FOR ONE CLIENT.

3            SO FOR VERIZON IT WOULDN'T JUST BE YOU'RE LOSING 195

4   PER PERSON AS THEY'RE SUGGESTING.  IT MEANS THAT IT

5   MEANINGFULLY INFORMS VERIZON'S BUSINESS DECISIONS WHETHER THEY

6   WIN OR LOSE THOSE --

7            **THE COURT:**  I ASSUME THIS IS WRITTEN IN A WAY THAT

8   THE ARBITRATOR DOES NOT HAVE THE ABILITY TO ISSUE CLASS-WIDE

9   INJUNCTIVE RELIEF, CORRECT?

10            **MR. HATTIS:**  CORRECT.

11            **MS. LEV:**  CORRECT.

12            **THE COURT:**  IF THEY WIN, QUOTE, INJUNCTIVE RELIEF

13   INDIVIDUALLY, IT SEEMS TO ME ALL IT TAKES IS VERIZON SENDS A

14   LETTER TO THOSE TEN PEOPLE SAYING, HEY, HERE'S THE DEAL.

15   WHAT'S SO HARD ABOUT THAT?

16            **MS. LEV:**  WHAT THEY'RE ASKING FOR IN THEIR COMPLAINT

17   ON THE PRIVATE INJUNCTIVE RELIEF COMPONENT OF IT IS THAT THE

18   CUSTOMER BILLS REFLECT DIFFERENT THINGS, AND THOSE CUSTOMER

19   BILLS CANNOT BE DONE ON AN AD HOC BASIS.

20            SO MY POINT IS JUST --

21            **THE COURT:**  WHY NOT?  IF IT'S ONLY TEN OF THEM LEFT.

22            **MS. LEV:**  AS A BUSINESS PRACTICE, YOU HAVE TO HAVE A

23   COMMON APPROACH TO HOW YOU CHARGE THE ADMINISTRATIVE FEE.

24            **MS. NIX-HINES:**  IF YOU LOOKED AT THE PRAYER FOR

25   RELIEF, YOUR HONOR, IT'S VERY BROAD WHAT THEY'RE SEEKING, AND

1    THAT WOULD BE EXPENSIVE TO IMPLEMENT.

2            **THE COURT:**  ALL RIGHT.  SO YOU'RE SAYING, AS A

3    PRACTICAL MATTER, YOU PROBABLY WON'T NEED THIS PROCEDURE.  IN

4    OTHER WORDS, YOU COULD HAVE WRITTEN A PROCEDURE THAT SAID, ALL

5    RIGHT, AFTER THE FIRST TWO BELLWETHERS, WE'LL OPEN IT UP, AND

6    IT WOULD MAKE NO DIFFERENCE TO VERIZON, AS A PRACTICAL MATTER.

7            **MS. LEV:**  YES.  AS A PRACTICAL MATTER, IT COULD BE.

8            **THE COURT:**  COULD BE.

9            **MS. LEV:**  YES.

10           **MS. NIX-HINES:**  YOUR HONOR, I DO -- I KNOW YOU'RE

11   EXPLORING THESE ISSUES, BUT I AM -- I DO WANT TO COME BACK TO

12   THE FACT THAT THE BARGAIN FOR AGREEMENT THAT THE PARTIES

13   ENTERED INTO IS ALL OF THESE CHALLENGES WOULD BE DONE BY THE

14   ARBITRATOR.

15           **THE COURT:**  I KNOW.  I KNOW THERE'S A LAW ABOUT

16   WHETHER YOU LOOK AT THE -- WHETHER IT'S A SOPHISTICATED PARTY

17   OR NOT.  WE'RE FAMILIAR WITH THAT LAW.  I UNDERSTAND THE

18   ARGUMENTS.

19           **MS. NIX-HINES:**  ACTUALLY, I WAS GOING TO POINT YOU TO

20   THE FACT THAT THE AGREEMENT EXPRESSLY INCORPORATES THE AAA'S

21   CONSUMER ARBITRATION RULES.

22           **THE COURT:**  YES.

23           **MS. NIX-HINES:**  THE NINTH CIRCUIT CLEARLY HELD THE

24   INCORPORATION OF AAA RULES -- IN THAT CASE IT WAS THE CONSUMER

25   ARBITRATION RULE, 14(A), WHICH PROVIDES THAT THE ARBITRATOR

1    SHALL HAVE THE POWER TO RULE IN HIS OR HER JURISDICTIONS,

2    INCLUDING ANY OBJECTIONS WITH RESPECT TO THE EXISTENCE, SCOPE,

3    OR VALIDITY OF THE ARBITRATION AGREEMENT OR TO THE

4    ARBITRABILITY OF ANY CLAIM OR COUNTERCLAIM.

5              AND THE NINTH CIRCUIT HAS SAID IN *BRENNAN* THAT, YOU

6    KNOW, INCORPORATING AAA RULES CONSTITUTES CLEAR AND

7    UNMISTAKABLE EVIDENCE THAT CONTRACTING PARTIES AGREE TO

8    ARBITRATE ARBITRABILITY.

9              **THE COURT:**  RIGHT.  BUT THE COURT ALSO LEFT OPEN THE

10   QUESTION WHETHER THE HOLDING APPLIES IN THE CONTEXT OF, QUOTE,

11   UNSOPHISTICATED PARTIES, AND THAT'S WHERE YOU'VE GOTTEN A RANGE

12   OF DECISIONS FROM THE DISTRICT COURTS, RIGHT?

13             **MS. NIX-HINES:**  WELL*, BRENNAN* GOES ON TO SAY *ORACLE*

14   *AMERICA V. MYRIAD GROUP* -- THAT'S AT 74 F.3D 1069, A NINTH

15   CIRCUIT CASE IN 2013, WHERE THEY SAY:

16                  "WE HAVE OBSERVED THAT VIRTUALLY

17                  EVERY CIRCUIT TO HAVE CONSIDERED THE ISSUE

18                  HAS DETERMINED THAT INCORPORATION OF THE AAA

19                  ARBITRATION RULES CONSTITUTES CLEAR AND

20                  UNMISTAKABLE EVIDENCE THAT THE PARTIES AGREED

21                  TO ARBITRATE ARBITRABILITY."

22             NONE OF THESE SPEECHES -- OR EVEN IF YOU FIND THEM,

23   YOU KNOW, LEGITIMATE CLAIMS SHOULD BE DECIDED BY YOUR HONOR.

24   THEY BELONG --

25             **THE COURT:**  YOU DISAGREE WITH JUDGE GONZALEZ, JUDGE

1    ALSUP AND VARIOUS OTHERS, INCLUDING MYSELF, OF THIS COURT WHO

2    HAVE FOUND THAT THERE IS A LINE, THAT YOU DO LOOK AT THE

3    SOPHISTICATION OF THE PARTIES TO DETERMINE WHETHER THE AAA

4    RULES, JUST CITING THE AAA RULES, IS SUFFICIENT TO BE A CLEAR

5    AND UNMISTAKABLE AGREEMENT TO ARBITRATE ARBITRABILITY.

6         **MS. NIX-HINES:**  YOUR HONOR, EVEN IF YOU LOOK AT THE

7    SOPHISTICATION OF THE PARTIES, I MEAN, THIS IS NOT A CASE WHERE

8    IT WAS IN SMALL FINE PRINT IN THE BACK OF SOME, YOU KNOW,

9    20-PAGE AGREEMENT THAT THEY OFTEN JUST CLICK ON.  THIS WAS A

10   VERY CLEAR CLICK-THROUGH AGREEMENT.  IT'S STATED IN MULTIPLE

11   CASES IN BOLD TYPE, DIFFERENT COLOR, THAT THEY WERE AGREEING TO

12   ARBITRATE, THAT THEY WERE WAIVING THEIR RIGHT TO A JURY, AND

13   ALL OF THAT IS VERY CLEARLY LAID OUT.

14        EVEN IF YOU WERE, YOU KNOW, NOT A SOPHISTICATED

15   CONSUMER, THE FACT YOU HAVE TO CLICK ON EACH ONE OF THOSE AND,

16   AGREE AND ACCEPT, IT'S IN BOLD LANGUAGE, THAT IS CERTAINLY THE

17   CASE THAT, YOU KNOW, THEY WERE CLEARLY PUT ON NOTICE THAT THIS

18   IS WHAT THEY WERE -- YOU KNOW, THE AGREEMENT THAT THEY WERE

19   ENTERING INTO.

20        SIGNIFICANTLY, YOU KNOW, THE PLAINTIFFS HAVE NOT

21   DISPUTED THIS IS A VALID ARBITRATION AGREEMENT, OR THAT THE

22   ARBITRATION AGREEMENT APPLIES TO THEIR CLAIMS.  THERE WOULD BE

23   NO BASIS TO DO SO.

24        **THE COURT:**  I'LL GIVE YOU A BRIEF CHANCE TO RESPOND,

25   MR. HATTIS, AND I'M GOING TO TAKE THE MATTER UNDER SUBMISSION.

1          **MR. HATTIS:**  YOU DON'T EVEN HAVE TO GET THERE, YOUR

2     HONOR, BECAUSE THE THRESHOLD ISSUE IS THAT THE CONSUMER CAN

3     CHOOSE, IT SAYS, ANY AGREEMENT BETWEEN THE AAA RULES AND BBB

4     RULES, WHICH THEY GO OUT OF THEIR WAY TO NOT POINT IT OUT IN

5     THEIR BRIEF.  AND IT SAYS ANY CLAIM FOR LESS THAN $10,000 YOU

6     CHOOSE.  GUESS WHAT?  THE BBB RULES DON'T HAVE A DELEGATION

7     CLAUSE, NOT THERE.  IT DOESN'T EXIST.  SO THERE'S NO POSSIBLE

8     WAY THERE COULD BE ANY CLEAR AND UNMISTAKABLE DELEGATION,

9     BECAUSE ONE OF THE TWO OPTIONS THAT CAN BE CHOSEN DOESN'T HAVE

10    A DELEGATION CLAUSE.  YOU DON'T EVEN HAVE TO GO THERE.

11          **THE COURT:**  ALL RIGHT.  I'LL TAKE THE MATTER UNDER

12    SUBMISSION.  THANK YOU.  I APPRECIATE IT.

13          **MS. NIX-HINES:**  THANK YOU, YOUR HONOR.

14          **THE CLERK:**  LET ME ASK ABOUT -- WE HAVE A STATUS

15    CONFERENCE SCHEDULED.  OBVIOUSLY, IT WOULD BE IMPACTED.  LET ME

16    ASK ABOUT ADR.  IT SAYS IN THIS STATUS CONFERENCE STATEMENT

17    THAT PARTIES ARE AMENABLE TO PRIVATE MEDIATION AT THE

18    APPROPRIATE TIME.  I GUESS MY QUESTION IS, WHAT IS THE

19    APPROPRIATE TIME?

20          **MS. LEV:**  PART OF OUR POSITION, YOUR HONOR, HAS BEEN,

21    YOU KNOW, THAT WE'D ASK THAT YOU STAY THE PROCEEDINGS PENDING

22    THE RESOLUTION OF OUR MOTION TO COMPEL ARBITRATION, AND SO THAT

23    MIGHT INFORM TIMING IN THAT RESPECT.

24          **MS. NIX-HINES:**  YOU MIGHT JUST HIGHLIGHT THE SUPREME

25    CASE, TOO, MS. LEV.

1            **MS. LEV:**  I'M SORRY?

2            **MS. NIX-HINES:**  YOU MIGHT CITE THE SUPREME COURT CASE

3     AS WELL, *VIKING RIVER*.

4            **MS. LEV:**  YES.  SO ONE OF THE CONSIDERATIONS, YOUR

5     HONOR, IS -- OF COURSE, YOUR HONOR'S DOUBTLESS AWARE OF *VIKING*

6     *RIVER* IS CURRENTLY PENDING BEFORE THE SUPREME COURT.  ARGUMENT

7     HAS ALREADY BEEN HELD ON MARCH 30TH.  AND AS ANYBODY WELL

8     VERSED IN SUPREME COURT PRACTICE, WHICH, OF COURSE,

9     MS. NIX-HINES VERY MUCH IS, WILL TELL YOU THEY ARE GOING TO

10    HAND DOWN A DECISION PRIOR TO EARLY JULY.  WE DON'T HAVE TOO

11    MUCH LONGER TO WAIT.

12            BUT IT WILL DOUBTLESS INFORM YOUR CONSIDERATIONS ON

13    THIS MOTION TO COMPEL, YOUR HONOR, BECAUSE, TO THE EXTENT THAT

14    PLAINTIFFS ARE GOING TO HANG THEIR HAT IN ANY WAY ON THE MCGILL

15    RULE, THE ISKANIAN RULE WITHIN CALIFORNIA IS AN ANALOGOUS

16    CONCEPT, AND MCGILL VERY WELL MAY BE IMPACTED BY THE SUPREME

17    COURT'S RULING.

18            **THE COURT:**  SO IN OTHER WORDS, TO GET BACK TO MY

19    QUESTION, IS YOU'RE NOT INTERESTED IN PRIVATE MEDIATION YET.

20            **MS. NIX-HINES:**  NOT AT THIS TIME.

21            **MS. LEV:**  NO, YOUR HONOR.

22            **MS. NIX-HINES:**  YOU KNOW, WE WOULD REQUEST, THOUGH,

23    THAT YOU ISSUE A STAY PENDING YOUR ADJUDICATION OF OUR MOTION

24    TO COMPEL, AND, OBVIOUSLY --

25            **THE COURT:**  WHAT'S GOING TO HAPPEN IN THE NEXT, LET'S

1   SAY, MONTH AND A HALF IN THIS CASE IF I DON'T ISSUE A STAY?

2   **MS. LEV:**  PLAINTIFFS HAVE, YOU KNOW, SOUGHT INITIAL

3   DISCLOSURES WITHIN 11 DAYS, YOUR HONOR, AND WE THINK THAT'S

4   PREMATURE PENDING THE RESOLUTION OF THE MOTION.

5   **MR. HATTIS:**  WELL, INITIAL DISCLOSURES, ISN'T THAT

6   THE KIND OF THING, WHETHER YOU GO TO ARBITRATION OR WHETHER YOU

7   GO TO COURT, IT SEEMS LIKE A VERY MINOR EVENT.

8   **MS. NIX-HINES:**  WITHOUT A STAY, YOUR HONOR, THEY MAY

9   PURSUE DISCOVERY.

10   **THE COURT:**  THAT'S WHY I ASKED WHAT'S GOING TO

11   HAPPEN.  IF IT'S JUST DISCLOSURES, I COULD SAY, WHICH I OFTEN

12   DO, ALL RIGHT, I'M GOING TO ISSUE A PARTIAL STAY, DO YOUR

13   INITIAL DISCLOSURES, MAYBE START PREPARING, GET READY FOR YOUR

14   INTERROGATORIES AND STUFF, BUT DON'T PROMULGATE IT OR YOU

15   PROMULGATE IT, BUT IT WON'T BE ANSWERABLE UNTIL I LIFT THE

16   STAY, YOU KNOW, JUST SO WE DON'T NECESSARILY LOSE ALL THE TIME.

17   BUT ON THE OTHER HAND, THERE'S NOT MUCH -- THE STAY IS TO

18   PREVENT ANY BURDEN THAT BECOMES OBVIATED.

19   SO WHY NOT, IN OTHER WORDS, HAVE THE PARTIES DO THEIR

20   INITIAL DISCLOSURES DURING THE NEXT -- YOU KNOW, UNTIL I RULE.

21   NOW, OF COURSE, I MAY END UP RULING SOON OR I MAY WAIT UNTIL

22   *VIKING* COMES DOWN.  BUT, IN ANY EVENT, IT WON'T TAKE THAT LONG.

23   THAT'S WHY I ASK, FOR THE NEXT 90 DAYS OR SO, WHY

24   NOT, FOR INSTANCE, DO YOUR INITIAL DISCLOSURES MAYBE -- YOU

25   KNOW, SEE WHAT HAPPENS AT THAT POINT, AND THEN WE GET TOGETHER

 1    IN ANOTHER 60 DAYS.

 2              **MS. NIX-HINES:**  THAT WOULD BE ACCEPTABLE, YOUR HONOR.

 3              **MS. LEV:**  YES, YOUR HONOR.

 4              **MS. NIX-HINES:**  JUST LIMITED TO INITIAL DISCLOSURES,

 5    YES.

 6              **MS. LEV:**  I WANTED TO CLARIFY ONE POINT VERY QUICKLY.

 7    WHEN WE PREVIOUSLY SPOKE ABOUT THE POTENTIAL BURDEN ON

 8    VERIZON -- AND ONLY BECAUSE I THINK IT MAY INFORM YOUR HONOR'S

 9    REASONING HERE -- AS TO WHAT MIGHT HAPPEN IN ONE OF THESE

10    BELLWETHER CASES, I ONLY REFER YOU TO -- IN THE PRAYER FOR

11    RELIEF, SECTION 5, WHERE THE PRIVATE INJUNCTIVE RELIEF STATES

12    PLAINLY THAT THEY'RE SEEKING REVISION OF ALL OF VERIZON'S

13    CUSTOMER BILLS.  SO IT'S NOT JUST PER PERSON, AND I JUST WANTED

14    TO MAKE THAT CLEAR, YOUR HONOR.

15              **THE COURT:**  I THINK THE ARBITRATOR DOESN'T HAVE THE

16    ABILITY TO DO THAT, RIGHT?

17              **MS. LEV:**  WELL, IT DEPENDS ON HOW THEY SEEK IT.

18              **THE COURT:**  WHAT'S THAT?

19              **MS. LEV:**  IT DEPENDS ON HOW THEY SEEK IT.

20              IN ANY EVENT, YOUR HONOR, I WANTED TO POINT OUT YOUR

21    PROPOSAL FOR, YOU KNOW, ONLY INITIAL DISCLOSURES WORKS IN LIGHT

22    OF THAT.

23              **THE COURT:**  ALL RIGHT.  I'M GOING TO STAY THE CASE

24    UNTIL I RULE, BECAUSE IT'S SUCH -- IT WILL HAVE SUCH AN IMPACT

25    ON WHERE THIS CASE GOES, BUT I WILL ALLOW THE PROCESS OF

1    INITIAL DISCLOSURES TO GO FORWARD.

2            WHY DON'T WE RECONVENE IN 60 DAYS FOR A STATUS

3    CONFERENCE, SINCE I'M NOT REALLY HOLDING STATUS CONFERENCES AT

4    THIS POINT, AND THEN SEE WHERE WE'RE AT.

5            VICKY, THAT WOULD --

6            **THE CLERK:**  JULY 26TH, YOUR HONOR, AT 2:30.

7            **THE COURT:**  JULY 26 AT 2:30.  ALL RIGHT.

8            **MS. NIX-HINES:**  THANK YOU, YOUR HONOR.

9            **THE COURT:**  APPRECIATE IT.  THANK YOU.

10           **MR. HATTIS:**  THANK YOU, YOUR HONOR.

11           (PROCEEDINGS ADJOURNED AT 2:41 P.M.)

1   STATE OF CALIFORNIA     )

2                           )     SS

3   COUNTY OF CONTRA COSTA )

4

5        I HEREBY CERTIFY THAT THE FOREGOING IN THE WITHIN-ENTITLED

6   CAUSE WAS TAKEN AT THE TIME AND PLACE HEREIN NAMED; THAT THE

7   TRANSCRIPT IS A TRUE RECORD OF THE PROCEEDINGS AS REPORTED BY

8   ME, A DULY CERTIFIED SHORTHAND REPORTER AND A DISINTERESTED

9   PERSON, AND WAS THEREAFTER TRANSCRIBED INTO TYPEWRITING BY

10  COMPUTER.

11       I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE OUTCOME

12  OF THE SAID ACTION, NOR CONNECTED WITH, NOR RELATED TO ANY OF

13  THE PARTIES IN SAID ACTION, NOR TO THEIR RESPECTIVE COUNSEL.

14       IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 30TH

15  DAY OF MAY, 2019.

16

17

18   _____

19   JOAN MARIE COLUMBINI, CSR NO. 5435

20   STATE OF CALIFORNIA

21

22

23

24

25