1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Crystal Nix-Hines (Bar No. 326971)
2      (crystalnixhines@quinnemanuel.com)
       Shon Morgan (Bar No. 187736)
3      (shonmorgan@quinnemanuel.com)
       Marina Lev (Bar No. 321647)
4      (marinalev@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017
     Telephone: (213) 443-3000
6    Facsimile: (213)443-3100

7      Cristina Henriquez (Bar No. 317445)
       (cristinahenriquez@quinnemanuel.com)
8    555 Twin Dolphin Drive, 5th Floor
     Redwood Shores, California 94065
9    Telephone: (650) 801-5000
     Facsimile: ( 650) 801 -5000

10
     *Attorneys for Defendants*
11   *VERIZON WIRELESS and VERIZON*
     *COMMUNICATIONS, INC.*

12
                    UNITED STATES DISTRICT COURT
13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14   TERESA MACCLELLAND, et al.,          CASE NO. 3:21-cv-08592-EMC

15              Plaintiffs,               **DEFENDANT VERIZON'S NOTICE OF**
                                          **MOTION AND MOTION TO STAY**
16   vs.                                  **PROCEEDINGS PENDING APPEAL OF**
                                          **ORDER DENYING ARBITRATION**
17   CELLCO PARTNERSHIP D/B/A VERIZON
     WIRELESS, et al.,
18                                        **[PROPOSED] ORDER**
                Defendants.
19                                        Hearing

20                                        Date: Sep. 29, 2022
                                          Time: 1:30 p.m.
21                                        Judge: Hon. Edward M. Chen
                                          Courtroom: 5
22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on September 29, 2022 at 1:30 p.m., or as soon thereafter as counsel may be heard, defendants Verizon Wireless and Verizon Communications, Inc. (collectively, "Verizon") will and hereby do move to stay further district court proceedings, or alternatively, to stay discovery, pending Verizon's appeal of this Court's Order Denying Defendants' Motion to Compel Arbitration and Stay Proceedings ("Order") (Dkt. 53).

This motion is made on the grounds that plaintiffs agreed to arbitrate their claims against Verizon on a non-class basis, that Verizon's pending appeal implicates significant legal issues, and that the balance of interests—including judicial economy and the irreparable harm to Verizon absent a stay—warrants a stay.  This motion is based upon this Notice, the following memorandum of points and authorities, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED this 26th day of July, 2022                  QUINN EMANUEL URQUHART &
                                                   SULLIVAN, LLP


                                                   By_____/s/ *Crystal Nix-Hines*_____

                                                   Crystal Nix-Hines
                                                   *Attorneys for Defendants VERIZON WIRELESS*
                                                   *and VERIZON COMMUNICATIONS, INC.*

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

3  MEMORANDUM IN SUPPORT ...................................................................................................1

4  Preliminary Statement ...............................................................................................................1

5  Background ..................................................................................................................................3

6  Argument......................................................................................................................................3

7  I.      DEFENDANTS' MOTION RAISES SERIOUS LEGAL QUESTIONS ON
       APPEAL ...............................................................................................................................4
8
9         A.      Whether Express Incorporation of AAA Rules Establishes Clear and
               Unmistakable Agreement to Delegate Arbitrability Is a Serious Legal
               Question ....................................................................................................................4
10
11         B.      The Court Erred in Concluding That Verizon's Customer Agreement Is
               Substantively Unconscionable ...........................................................................9

12         C.      The Court Should Have Applied The Parties' Valid Severability Clause ...............10

13  II.     DEFENDANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY.............11

14  III.    A STAY WILL NOT HARM PLAINTIFFS .........................................................13

15  IV.     THE PUBLIC INTEREST FAVORS A STAY ..................................................14

16  Conclusion.....................................................................................................................................15

17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Cases

*Achey et al., v. Verizon,*
  NO. MID-L-0160-22 (N.J. Sup., Middlesex Cty. Jul. 15, 2022) .............................. 2, 9, 10

*Alascom, Inc. v. ITT N. Elec. Co.,*
  727 F.2d 1419 (9th Cir. 1984) .................................................................. 11, 12, 15

*Ali v. JP Morgan Chase Bank,*
  2014 WL 12691084 (N.D. Cal. Mar. 10, 2014) ................................................ 11

*Alvarez v. NBTY, Inc.,*
  2020 WL 804403 (S.D. Cal. Feb. 18, 2020); ................................................. 5

*Antonelli v. Finish Line, Inc.,*
  2012 WL 2499930 (N.D. Cal. June 27, 2012) ................................................ 13, 14

*Arnold v. Homeaway, Inc.,*
  890 F.3d 546 (5th Cir. 2018) .................................................................. 6

*Attix v. Carrington Mortgage Servs., LLC,*
  35 F.4th 1284 (11th Cir. 2022) ............................................................... 6

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015) ................................................................ 4, 6

*Britton v. Co-op Banking Grp.,*
  916 F.2d 1405 (9th Cir. 1990) ................................................................ 3

*Burzdak v. Universal Screen Arts, Inc.,*
  2021 WL 5585232 (N.D. Cal. Nov. 30, 2021) ................................................ 2, 15

*Cintia Corsi, et al. v. Cellco Partnership D/B/A Verizon Wireless and Verizon Comms. Inc.,*
  Case No. 2:22-cv-04621 ..................................................................... 10

*Eberle v. Smith,*
  2008 WL 238450 (S.D. Cal. Jan. 29, 2008) .................................................. 13, 14

*Fed. Trade Comm'n v. Qualcomm Inc.,*
  935 F.3d 752, 755 (9th Cir. 2019)...............................................................4

*Green v. Supershuttle, Int'l Inc.,*
  653 F.3d 766, 767-69 (8th Cir. 2011) ........................................................ 6

*Greenberg v. Amazon.com, Inc.,*
  2021 WL 7448530 (N.D. Cal. May 7, 2021) ................................................. 7

*G.G. v. Valve Corp.,*
  799 F. App'x 5 57 (9th Cir. 2020)............................................................ 5

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) ................................................................................................ 3

*In re Pac. Fertility Ctr. Litig.*,
    2019 WL 2635539 (N.D. Cal. June 27, 2019) ...................................................... 5

*In re Checking Acct. Overdraft Litig.*,
    856 F. App'x 238 (11th Cir. 2021) ....................................................................... 6

*Iskanian v. CLS Transp. L.A., LLC*,
    59 Cal. 4th 348 (2014) .......................................................................................... 9

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) .............................................................................. 4

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ...................................................................... passim

*Lummus Co. v. Commonwealth Oil Refining Co.*,
    273 F.2d 613 (1st Cir. 1959) ................................................................................ 3

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
    No. 18-CV-05226-EMC, 2020 WL 733228 (N.D. Cal. Feb. 13, 2020) ............ 15

*McGee v. Armstrong*,
    941 F.3d 859 (6th Cir. 2019) ............................................................................... 6

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017) ............................................................................................ 9

*McLellan v. Fitbit, Inc.*,
    2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ................................................. 5, 7

*Miller v. Time Warner Cable Inc.*,
    2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ..................................................... 7

*Mohamed v. Uber Techs.*,
    115 F. Supp. 3d 1024 (N.D. Cal. 2015) ............................................... 1, 2, 13, 15

*Mohamed v. Uber Techs.,Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .......................................................................... 1, 8

*Nken v. Holder*,
    556 U.S. 418 (2009) .............................................................................................. 4

*Oracle Am. Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ............................................................................. 5

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ......................................................................... 2, 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ............................................................................................ 10

*Richards v. Ernst & Young LLP*,
   No. 08-cv-04988-RMW, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012) ................................. 5

*Richardson v. Coverall N. Am., Inc.*,
   811 F. App'x 100 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021) ........................... 6

*Roe v. SFBSC Mgmt., LLC*,
   2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ................................................. 14

*Rogers v. SWEPI LP*,
   2018 WL 1663294 (S.D. Ohio Apr. 6, 2018) .................................................. 3

*Sample v. Brookdale Senior Living Communities*, *Inc.*,
   No. C11-58844, 2012 WL 195175 (W.D. Wash. Jan 23, 2012) ............................... 14

*Smith v. Legal Helpers Debt Resol., LLC*,
   No. 11-5054RJB, 2012 WL 12863172 (W.D. Wash. Apr. 24, 2012) ................... 11, 14,15

*Steiner v. Apple Comp., Inc.*,
   2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ........................................ 1, 3, 11

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ....................................................................... 9

*Ward v. Est. of Goosen*,
   2014 WL 7273911 (N.D. Cal. Dec.. 22, 2014) ............................................. 13

*Winig v. Cingular Wireless LLC*,
   2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ................................................ 1

*Wuest v. Comcast Cable Commc'ns Mgmt.*,
   2017 WL 5569819 (N.D. Cal. Nov. 20, 2017) ................................... 4, 11, 12, 15

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
   2021 WL 1772808 (N.D. Cal. Mar. 19, 2021) .............................................. 2

**Statutory Authorities**

9 U.S.C. § 16(a)(1) ..................................................................................... 3

**Other Authorities**

AAA Consumer Arbitration Rule 14(a),
   https://adr.org/sites/default/files/Consumer Rules.pdf ................................... 4, 8

AAA Consumer Arbitration Rule 22(a),
   https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf .......................... 12

AAA Consumer Arbitration Rule 22(c) ........................................................... 12

BBB Rules of Arbitration [Binding] / Pre-Dispute (2010), *available at*
  https://www.bbb.org/content/dam/iabbb/dispute-handling/bbb-rules-of-arbitration-pre-
  dispute.pdf................................................................................................................................. 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM IN SUPPORT**

### **Preliminary Statement**

Verizon seeks relief routinely granted by courts in this district: a stay pending appeal of an order declining to compel arbitration. *See, e.g.*, *Steiner v. Apple Comp., Inc.*, 2008 WL 1925197, at *1 (N.D. Cal. Apr. 29, 2008) ("general practice in the California district courts" is to grant a stay pending appeal of order denying motion to compel arbitration) (collecting cases).  These stays preserve the status quo and prevent unnecessary expenditure of court and litigant resources.

A stay is warranted here for several reasons.  Verizon's appeal raises "serious legal issues," *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011), each of which independently warrants a stay.  First, a core issue underlying this Court's denial of Verizon's motion is unresolved in this circuit: whether express incorporation of arbitral rules shows a clear and unmistakable agreement to delegate questions of arbitrability even where unsophisticated parties are involved.  Every circuit to address this issue has held it does, and the Ninth Circuit agreed in an unpublished decision.  *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020).  Verizon's appeal thus presents "serious legal issues," and the reasoning and outcome in *Valve Corp.* and in numerous other circuits demonstrates that Verizon has a sufficient likelihood of success to warrant a stay.  *See, e.g.*, *Winig v. Cingular Wireless LLC*, 2006 WL 3201047, at *1 (N.D. Cal. Nov. 6, 2006) (granting stay pending appeal of order denying motion to compel arbitration when "Ninth Circuit ha[d] not issued a published opinion" as to an issue on appeal); *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015) ("[M]atters of first impression within the Ninth Circuit" constitute "serious legal issues.").

Second, this Court's order presents other important legal issues on which Verizon is sufficiently likely to prevail.  The Court's finding that the arbitration agreement's reference to BBB rules created ambiguity is contrary to *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016), which held that parties can clearly delegate some issues while reserving others.  That is what the parties did here, by clearly agreeing to arbitrate questions of arbitrability for "claims over $10,000," as well as for claims under that threshold at claimants' election.  In addition, the Ninth Circuit has not addressed provisions such as the "mass arbitration" term at issue here, so this Court's unenforceability determination raises "matters of first impression."  *Mohamed*, 115 F. Supp. 3d at

1029.  And although the Court cited public policy concerns in declining to sever the "problematic provisions" under the clause that specifically contemplated such provisions "may be removed from th[e] agreement," the Ninth Circuit has held such a severance provision "makes clear that the parties intended for any invalid portion of the agreement to be restricted" to allow arbitration, without reference to any public policy limitation.  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1274 (9th Cir. 2017).[1]  Each of these serious legal issues warrants a stay.

The balance of interests similarly favors a stay.  Absent a stay, Verizon will incur costs and business disruption stemming from discovery and pre-trial motions, all of which would be unnecessary if Verizon prevails on appeal.  A stay is justified not merely to prevent duplicative proceedings, but also to avoid potentially unwarranted litigation that would fundamentally differ in nature and scope than in arbitration.  This is particularly true with class actions where litigation is especially burdensome and the benefits of arbitration can be permanently lost.

Even granting a partial stay allowing limited discovery, as this Court has ordered in other cases, *see, e.g.*, *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 5585232, at *5 (N.D. Cal. Nov. 30, 2021) (Chen, J.), does not make sense here because, as plaintiffs concede, if the appeal is successful, any AAA arbitration will proceed with a series of individual claims involving modest damages, without the kind of uncabined, class-wide discovery plaintiffs intend to pursue here.  Thus, a partial stay would not serve the purpose it has in other cases where this Court adopted that approach to advance the proceedings in an orderly way that would be consistent with either forum.  *Cf. Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2021 WL 1772808, at *5 (N.D. Cal. Mar. 19, 2021) (Chen, J.) (allowing "reasonable discovery commensurate with that which would likely be permitted if the case were arbitrated").  Rather, it would allow plaintiffs to pursue discovery supporting an entirely different type of case: one involving a purported class with millions of members that would be off the table if Verizon prevails on appeal.

---

[1]  Just recently, a New Jersey court interpreting *the identical Verizon arbitration agreement* in a putative class action over the same Administrative Charge rejected the same unconscionability arguments advanced by the same plaintiffs' counsel here, compelling the case to arbitration, while severing one provision it found in tension with New Jersey law.  *See Achey et al., v. Verizon*, NO. MID-L-0160-22 (N.J. Sup., Middlesex Cty. Jul. 15, 2022) (Nix-Hines Decl. Ex. 1).

1   For all these reasons, the Court should stay the case, or alternatively, stay discovery pending

2   resolution of Verizon's appeal.

3                                   **Background**

4   Plaintiffs filed a putative class complaint challenging Verizon's monthly Administrative

5   Charge, which Verizon fully and fairly discloses through multiple channels.   Dkt. 58 (SAC).

6   Plaintiffs assert claims under California's Consumer Legal Remedies Act, False Advertising Law,

7   and Unfair Competition Law, as well as a common law claim, and seek injunctive relief.   Verizon

8   moved to compel arbitration based on its Customer Agreement ("Agreement"), in which plaintiffs

9   agreed to submit all disputes to binding arbitration on a non-class basis.   Dkts. 20, 34.

10   Plaintiffs concede they signed the Agreement and that their claims are within the scope of

11   its arbitration requirement.   Dkt. 53 at 3.   But plaintiffs argued that certain provisions rendered the

12   arbitration agreement unenforceable.   *Id.*   The Court denied Verizon's motion to compel arbitration,

13   ruling that the arbitration agreement was "permeated" with unconscionability, and declining to sever

14   any of the "problematic provisions."   *See* Dkt. 53.   Verizon appealed.   Dkt. 54.

15                                   **Argument**

16   A party to an arbitration agreement has a statutory right to an interlocutory appeal of an order

17   denying a motion to compel arbitration.   9 U.S.C. § 16(a)(1).   In the Ninth Circuit, a district court

18   may stay further proceedings pending the outcome of that appeal, *Britton v. Co-op Banking Grp.*,

19   916 F.2d 1405, 1411-12 (9th Cir. 1990), and the "general practice in the California district courts"

20   is to grant such stays, *Steiner*, 2008 WL 1925197, at *1, *5 (collecting cases).[2]   Courts consider the

21

22   [2]   On this issue, the Ninth Circuit is at odds with the overwhelming weight of authority: the Third,
23   Fourth, Seventh, Tenth, Eleventh, and District of Columbia Circuits have held that the appeal of an
     order denying a motion to compel arbitration automatically stays further trial court proceedings
24   pending appeal.   *See, e.g.*, *Rogers v. SWEPI LP*, 2018 WL 1663294, at *1 (S.D. Ohio Apr. 6, 2018)
     (collecting cases).   Those decisions accord with the general rule that "[t]he filing of a notice of
25   appeal is an event of jurisdictional significance [that] confers jurisdiction on the court of appeals
     and divests the district court of its control over those aspects of the case involved in the appeal."
26   *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).   And they recognize that
     "combining the costs of litigation and arbitration is what lies in store if a district court continues
27   with a case while an appeal under § 16(a) is pending"—making such cases "poor candidates for
     exceptions to the principle that a notice of appeal divests the district court of power to proceed with
28   the aspects of the case that have been transferred to the court of appeals."   *Lummus Co. v.*

following factors in determining whether to do so:

> (1)    whether the stay applicant has made a strong showing it is likely to succeed on the merits;
>
> (2)    whether the applicant will be irreparably injured absent a stay;
>
> (3)    whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4)    where the public interest lies.

*Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009). These factors are examined on a "flexible" "'continuum,' … whereby the elements are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964. Here, these factors favor a stay pending appeal.

## I.    DEFENDANTS' MOTION RAISES SERIOUS LEGAL QUESTIONS ON APPEAL

To satisfy the first stay factor, a party need only demonstrate a "reasonable probability" or "fair prospect" of success on appeal, or that the appeal raises "serious legal questions." *Id.* at 968 (internal quotation marks and citations omitted); *accord Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *Wuest v. Comcast Cable Commc'ns Mgmt.*, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017). As shown below, defendants readily meet both requirements.

### A.    Whether Express Incorporation of AAA Rules Establishes Clear and Unmistakable Agreement to Delegate Arbitrability Is a Serious Legal Question

The Court's Order acknowledges that Verizon's Customer Agreement expressly states that "for claims over $10,000, the AAA's consumer arbitration rules will apply." Dkt. 53 at 6-7. Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Consumer Arbitration Rule 14(a).[3]

The Ninth Circuit has held repeatedly that "[i]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*

---

*Commonwealth Oil Refining Co.*, 273 F.2d 613, 613-14 (1st Cir. 1959). We recognize the Court is bound by the Ninth Circuit authority, but reserve the right to address the issue on appeal.

[3]   https://adr.org/sites/default/files/Consumer%20Rules.pdf.

1  *v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am. Inc. v. Myriad Group A.G.*, 724

2  F.3d 1069, 1974 (9th Cir. 2013); *Valve Corp.*, 799 F. App'x at 558; *see also McLellan v. Fitbit, Inc.*,

3  2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017) ("The greater weight of authority has concluded

4  that the [rule regarding AAA rules] applies similarly to non-sophisticated parties.").  This Court did

5  not cite a case in which the Ninth Circuit held that incorporation of AAA rules was insufficient to

6  delegate questions of arbitrability, Dkt. 53 at 6, and acknowledged the Ninth Circuit has "expressly

7  left open the question of whether this holding applies in the context of unsophisticated parties." *Id.*

8  As courts in this circuit have long recognized, the presence of an open question raises a

9  serious legal issue.  *See, e.g.*, *Alvarez v. NBTY, Inc.*, 2020 WL 804403, at *2 (S.D. Cal. Feb. 18,

10  2020); *In re Pac. Fertility Ctr. Litig.*, 2019 WL 2635539, at *3 (N.D. Cal. June 27, 2019).  That is

11  because "there is a reasonable probability that the court of appeals might disagree with [the lower

12  court's] decision."  *Richards v. Ernst and Young, LLP*, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012).

13  Accordingly, the "open" question as to whether the presence of "unsophisticated parties" alters the

14  legal standards pertaining to arbitrability, alone, establishes a serious legal question warranting a

15  stay.

16  There are other reasons too.  Ninth Circuit precedent foreshadows that Verizon will prevail

17  on appeal: it has emphasized that its precedent in non-consumer contexts "does not foreclose the

18  possibility that [the rule regarding incorporation of AAA rules] could apply to unsophisticated

19  parties or to consumer contracts." *Id.* at 1130.  "Indeed, the vast majority of the circuits that hold

20  that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent

21  do so without explicitly limiting that holding to sophisticated parties or commercial contracts." *Id.*

22  at 1130-31 (collecting cases).

23  Significantly, the Ninth Circuit already followed that reasoning.  In *Valve Corp.*, a case

24  involving unsophisticated parties in a consumer contract, the Ninth Circuit recognized that "[t]he

25  parties' degree of sophistication d[id] not change th[e] conclusion" that "teenagers clearly and

26  unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement

27  incorporate[d] AAA rules." 799 F. App'x at 558.  The Ninth Circuit reasoned that, as a matter of

28  basic contract law, "'[c]ourts presume that parties to an agreement have read all parts of the entire

1    contract and intend what is stated in its objective terms,' and '[c]ontractual language must … be

2    interpreted in light of existing … rules of law." *Id.* (citation omitted).  Given this unpublished

3    decision holding that incorporation of AAA rules in a consumer contract involving unsophisticated

4    parties shows the parties agreed to arbitrate questions of arbitrability, there is at least a "reasonable

5    probability" or a "fair prospect," *Leiva-Perez*, 640 F.3d at 964, that the Ninth Circuit will apply that

6    same reasoning in a published opinion on appeal.

7           Further cementing that Verizon's appeal raises serious legal issues that may well be resolved

8    in Verizon's favor is the fact that other circuits have unanimously agreed with Verizon's position.

9    The Third Circuit's reversal of a district court's opinion failing to find delegation is a case in point.

10   In *Richardson v. Coverall North America Inc.*, the district court found that incorporation of AAA

11   rules in a separate, cross-referenced agreement involving an "unsophisticated party" was insufficient

12   to demonstrate a clear and unmistakable intent to delegate.  811 F. App'x 100, 102 (3d Cir. 2020).

13   The Third Circuit reversed, holding that the language in the AAA rule incorporated into the

14   agreement—the ***same rule*** the parties incorporated here—"is about as clear and unmistakable as

15   language can get.'" *Id.*   The Third Circuit rejected the plaintiff's argument that "relying on

16   incorporated rules is unreasonable in agreements involving 'unsophisticated parties,'" concluding

17   that such an argument "stretches too far and would disregard the 'clear and unmistakable' standard

18   and ignore even the plainest of delegations.'" *Id*. at (citing *Brennan*, 796 F.3d at 1130-31).

19   Numerous cases in other jurisdictions are in accord.[4]

20

21

22

23   ──────────────
     [4]   *See McGee v. Armstrong*, 941 F.3d 859, 863, 865-866 (6th Cir. 2019); *Arnold v. Homeaway, Inc.*,
24   890 F.3d 546, 552 & n.5 (5th Cir. 2018) (rejecting argument that rule regarding incorporation of
     AAA rules did not apply to a "consumer contract of adhesion," and noting that "no circuit court has
25   adopted" that argument); *Green v. Supershuttle, Int'l Inc.*, 653 F.3d 766, 767-69 (8th Cir. 2011).
     *Accord In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 244 (11th Cir. 2021) ("[W]e have
26   never distinguished between agreements involving sophisticated and unsophisticated parties, and
     those involving only sophisticated parties; in fact, our precedent includes cases about agreements
27   involving unsophisticated parties."); *Attix v. Carrington Mortgage Servs., LLC*, 35 F.4th 1284, 1298
     (11th Cir. 2022) (similar).
28

1    Given these contrary precedents, and irrespective whether some district courts in this circuit

2  have declined to find delegation in cases with unsophisticated parties, Dkt. 53 at 6,[5] the question

3  whether the presence of unsophisticated parties alters the general legal standards pertaining to

4  delegation is ripe for Ninth Circuit review and presents a "serious legal question[]." *Leiva-Perez,*

5  640 F.3d at 967-68.  A stay pending appeal is warranted given the gravity of this issue, the strong

6  potential for reversal, and the implications of the appeal for thousands of businesses in this circuit

7  that rely on delegation clauses in their arbitral agreements in the consumer context.  Verizon should

8  not be required to proceed with this case until the Ninth Circuit resolves this crucial issue.

9    This Court also based its denial on a second rationale, which similarly raises a serious legal

10  issue.  Specifically, the Court ruled that, despite incorporation of AAA rules, there was ambiguity

11  as to whether the parties clearly and unmistakably agreed to arbitrate questions of arbitrability

12  because the arbitration agreement provides that "for claims of $10,000 or less, the party bringing

13  the claim can choose either the AAA's consumer arbitration rules or the BBB's rules for binding

14  arbitration." Dkt. 53 at 7 (citation omitted).  According to the Court, "[t]he BBB rules do *not* contain

15  an explicit delegation clause," giving rise to ambiguity because "it is not clear that the consumer

16  would consider any individual claim to be worth over $10K." *Id.*[6]

17    But there is no ambiguity and, at minimum, the Court's ruling raises a serious appellate

18  issue.  As an initial matter, the Ninth Circuit has held that an arbitration agreement that delegates

19  questions of arbitrability for certain arbitrability challenges but not others is permissible.  *See*

---

[5]   This Court asserted that "courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." Dkt. 53 at 6.  But in doing so, the Court overlooked many cases, including from this district, to the contrary. *See, e.g., Greenberg v. Amazon.com, Inc.*, 2021 WL 7448530, at *7 (N.D. Cal. May 7, 2021) ("The Court agrees with those courts that have held incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability, regardless of the parties' relative sophistication."); *McLellan*, 2017 WL 4551484, at *2 (same); *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (same).

[6] The BBB rules do, however, provide, that "[t]he arbitrator shall decide any dispute about whether a particular issue falls within the parties' arbitration agreement."  *See* BBB Rules of Arbitration [Binding] / Pre-Dispute (2010), available at https://www.bbb.org/content/dam/iabbb/dispute-handling/bbb-rules-of-arbitration-pre-dispute.pdf.

*Mohamed*, 848 F.3d at 1208-9 (holding that the parties "clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims except challenges to the … [Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver] waivers.")  That structure is no different than what the parties did here, by agreeing to arbitrate questions of arbitrability for "claims over $10,000" but not necessarily for claims of $10,000 or less.

The arbitration agreement creates a two-tier framework under which: (1) AAA or BBB rules apply to "claims of $10,000 or less," (unless the claimant elects small claims court) and (2) AAA rules apply to "claims over $10,000." Dkt. 53 at 6-7 (citation omitted).[7]  Even if plaintiffs' claims amounted to less than $10,000, Verizon's Agreement expressly permits customers to *choose* between AAA and BBB rules for any given dispute under $10,000, eliminating any ambiguity for any plaintiff as to which rules apply.  And factoring in the damages they have alleged, including punitive damages attorneys' fees, and the cost of injunctive relief, plaintiffs have plausibly put in controversy "claims over $10,000." Dkt. 58 ¶¶ 533, 550, 568, Prayer for Relief.[8]  Accordingly, the AAA rules apply to the claims here and clearly and unmistakably require arbitration of any questions of arbitrability related to those claims.  That plaintiffs' counsel has filed thousands of claims in the AAA and none with the BBB demonstrates that they understand AAA rules apply without ambiguity.  Verizon thus has at least a "reasonable probability" or a "fair prospect" of success on appeal.  *Leiva-Perez,* 640 F.3d at 968.

In short, Verizon's appeal raises a serious question as to whether the arbitration agreement clearly and unmistakably delegated questions of arbitrability for any claims that proceed under those rules.  A stay is warranted until the Ninth Circuit resolves that question.

---

[7]  As to the latter, the parties clearly and unmistakably agreed to arbitrate questions of arbitrability, because the AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Consumer Arbitration Rule 14(a). https://adr.org/sites/default/files/Consumer%20Rules.pdf.

[8]  While Verizon does not agree that the claims actually have such a value, plaintiffs' requests for relief allege this amount in controversy.

1

2

### B.   The Court Erred in Concluding That Verizon's Customer Agreement Is Substantively Unconscionable

This Court's ruling on unconscionability also presents "serious legal questions."  *Leiva-Perez,* 640 F.3d at 968.   Plaintiffs asserted that six provisions in the Agreement rendered it unconscionable, and the Court agreed as to five of them.   Those determinations raise serious legal issues warranting a stay pending appeal.

This Court's ruling that the public injunctive relief waiver is unenforceable based on *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), also presents an important legal question.   As Verizon argued in its supplemental briefing, the Supreme Court's recent decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), undermines *McGill*'s core holding.   In *Viking River*, the Supreme Court held that the FAA preempts a rule of California law, announced in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014), that prevents severance of "individual" and "non-individual" PAGA claims when that rule prevents the enforcement of an arbitration agreement.   *Id.* at 1924 ("We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.").   Under that reasoning, and as Verizon explained, *see* Dkt. 51, the FAA preempts *McGill*'s rule that requires tying together individual and non-individual injunctive relief claims (by prohibiting parties from waiving their right to bring non-individual injunctive relief claims).   Irrespective of the Court's views on *Viking River*, it presents important legal issues on which the Ninth Circuit should opine before this case proceeds.

This Court's ruling as to other provisions of the parties' agreement, such as the integration clause and the "mass arbitration" provision, among others, also present substantial legal questions that will benefit from Ninth Circuit review.   Indeed, a New Jersey court interpreting *the identical Verizon arbitration agreement* recently rejected the same unconscionability arguments advanced by the same plaintiffs' counsel here.   *See Achey et al., v. Verizon*, NO. MID-L-0160-22 (N.J. Sup., Middlesex Cty. Jul. 15, 2022) (Nix-Hines Decl. Ex. 1).   In a putative class action brought by the very same plaintiffs' counsel over the same issue of the Administrative Charge, *Achey* ruled that the Customer Agreement was not unconscionable and thus compelled the case to arbitration.   *Id.   See*

1    *also* Nix-Hines Decl. Ex. 2, 7/15/22 *Achey* Hr'g Tr. 43:19-21 (THE COURT: "I have to say that I'm

2    unconvinced that the bellwether process set forth in this agreement is, per se, unconscionable.").

3    Plaintiffs have now recently filed yet another similar action, *Cintia Corsi, et al. v. Cellco*

4    *Partnership D/B/A Verizon Wireless and Verizon Comms. Inc.*, Case No. 2:22-cv-04621, in the

5    Third Circuit, which raises similar arbitration issues, creating the prospect for even more divergent

6    reasoning and outcomes.  Before proceeding further with this case, the parties should have the

7    benefit of the Ninth Circuit's definitive rulings, which, if the appeal is successful, would leave

8    resolution of these unconscionability issues to the arbitrator, who might well reach a different

9    conclusion.

10        In any event, issues outside the arbitration agreement itself—including other portions of the

11    Customer Agreement, such as the 180-day provision and the integration clause, Dkt. 30-7 at 4, 8—

12    should be determined by an arbitrator, rather than the Court.  *See Prima Paint Corp. v. Flood &*

13    *Conklin Mfg. Co.*, 388 U.S. 395 (1967) (holding that as a matter of federal law, where the parties

14    insert a broad arbitration clause, an arbitrator rather than a federal court decides if the principal

15    contract has been fraudulently induced).

16        **C.    The Court Should Have Applied The Parties' Valid Severability Clause**

17        Whether the Court erred in refusing to sever the provisions it deemed unenforceable also

18    presents a significant legal question.  The parties agreed that if the "public injunctive relief" waiver

19    this Court deemed invalid "cannot be enforced as to all or part of a dispute, then the agreement to

20    arbitrate will not apply to that dispute or part of the dispute."  Dkt. 53 at 25 (citation omitted).  The

21    parties further agreed that "[i]f any part of the agreement … is ruled invalid, that part may be

22    removed from th[e] agreement."  *Id.*

23        The Ninth Circuit recognizes that such severance provisions "make[] clear that the parties

24    intended for any invalid portion of the agreement to be restricted," while allowing arbitration to

25    proceed.  *Poublon*, 846 F.3d at 1274.  And this Court recognized that "the problematic provisions

26    could be excised from the Agreement," Dkt. 53 at 26, giving effect to the parties' objective intent.

27    But the Court declined to do so, asserting that companies may be "incentivized to retain

28    unenforceable provisions designed to chill customers' vindication of their rights."  Dkt. at 27.  The

1   question whether this policy concern can override the parties' objective intent presents a significant

2   question warranting Ninth Circuit consideration, further demonstrating that Verizon's appeal raises

3   sufficiently serious legal questions as to compel a stay.

4   **II.    DEFENDANTS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY**

5       In determining whether to stay proceedings pending appeal of an order denying a motion to

6   compel arbitration, a district court must also consider a second factor: "whether the applicant will

7   be irreparably injured absent a stay." *Leiva-Perez,* 640 F. 3d at 964.  The Ninth Circuit has held

8   that absent a stay in this context, "one party is deprived of the inexpensive and expeditious means

9   by which the parties had agreed to resolve their disputes." *Alascom, Inc. v. ITT N. Elec. Co.*, 727

10  F.2d 1419, 1422 (9th Cir. 1984).  "If that party must undergo the expense and delay of a trial before

11  being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Id.*

12  That result is "'serious, perhaps, irreparable" and "effectally challenged' only by immediate

13  appeal." *Id.* (internal citations omitted).

14      District courts in this circuit have granted motions to stay further proceedings pending

15  appeals of orders denying motions to compel arbitration, recognizing that failing to do so would

16  result in irreparable harm.  *See, e.g.*, *Ali v. JP Morgan Chase Bank*, 2014 WL 12691084, at *1 (N.D.

17  Cal. Mar. 10, 2014) (finding irreparable harm, "[i]f the litigation proceeded to trial, and then the

18  Ninth Circuit reversed this Court's order denying arbitration, then the benefits of arbitration would

19  have been lost."); *Steiner*, 2008 WL 1925197 ("[C]osts of litigation, in the face of a denied motion

20  to compel arbitration, will generally constitute irreparable harm.").

21      This injury is particularly significant when plaintiffs have filed a class action.  In *Wuest*,

22  2017 WL 5569819, at *1, for instance, the court ruled that "Defendants would be irreparably injured

23  if the Court did not stay this action pending appeal," particularly because the plaintiffs "brought

24  th[e] case as a class action, thus increasing the expense Defendant [would] incur."  Similarly, in

25  *Smith v. Legal Helpers Debt Resol., LLC*, 2012 WL 12863172, at *2 (W.D. Wash. Apr. 24, 2012),

26  the potential for irreparable harm was apparent because, absent a stay, the defendants were "facing

27  the expense of a possible class action where" they would "be forced to incur costs that would defeat

28

the important, cost-limiting purpose of arbitration agreements.'"[9]

These concerns are present here.  Absent a stay, Verizon will be forced to incur substantial costs on discovery and pre-trial motions in a class context—depriving Verizon of the "expeditious" and "inexpensive" means by which the parties in this case agreed to resolve any and all disputes.  If the Ninth Circuit reverses the Order, without a stay, these benefits would be "lost forever." *Wuest*, 2017 WL 5569819, at *1.  That is particularly true because the parties' arbitration agreement contemplates individual, not class, proceedings—substantially reducing both the damages as well as the discovery plaintiffs may seek.

Moreover, the applicable AAA rules narrow discovery in ways that fundamentally differ from what is permitted in federal court.  Specifically, "[i]f any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct (1) specific documents and other information to be shared between the consumer and business, and (2) that the consumer and the business identify the witnesses, if any, they plan to have testify at the hearing."  AAA Consumer Arbitration Rule 22(a).[10]  "No other exchange of information … is contemplated under the[] Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process." *Id.*, Rule 22(c).  Thus, the typical burdens and costs associated with litigation in federal court—interrogatories, requests for admission, requests for production, and depositions—are largely precluded.  This confined discovery is fundamentally different from the uncabined, class-wide discovery plaintiffs intend to pursue here.  *See* Dkt. 57 (stating that plaintiffs intend to pursue discovery including "1) the nature and purpose of the charge; 2) the substance and scope of Verizon's marketing efforts and disclosures regarding the charge; 3) Verizon's internal deliberations, discussions, policies and

---

[9]  *See also Richards*, 2012 WL 92738, at *3 (N.D. Cal. Jan. 11, 2012) ("there are significant consequences to denying a stay and allowing the case to proceed" because proceeding as a class action "changes both the character of the litigation and the potential scale of expenses."); *Alascom*, 727 F.2d at 1422 ("Although monetary expenses incurred in litigation are normally not considered irreparable, it is a unique situation when these expenses are incurred pending an appeal of an order refusing to compel arbitration.").

[10]  https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf.

procedures concerning the charge, its disclosures concerning the charge, and the introduction of the charge and its increases; 4) consumer and other external reaction to the charge and its effects and Verizon's policies, practices, and procedures relating to responses to such complaints," among multiple other requests).

Even if the Court were to seek to bring the scope of discovery in line with that afforded under the AAA, it would still not be proper because the allowed discovery would be in support of a purported class containing millions of members—not the individual claims that would be at issue if the Ninth Circuit reverses the denial of arbitration.  As a result, this case is fundamentally different from the Court's other cases permitting discovery pending an appeal.

For example, in *Mohamed*, one of the relevant arbitration agreements provided that "the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses." 115 F. Supp. 3d at 1033.  As a result, the Court permitted limited discovery to proceed on the ground that the party seeking the stay would incur discovery costs regardless of the outcome of the appeal, "because it [would] be required to respond to discovery requests *in either* arbitration or federal court." *Id.*  Notably, however, the Court suggested the result would have been different if—as here—the agreed-upon arbitration procedure was "a streamlined process … [with] no formal discovery, law and motion practice, or other pretrial hearings." *Id.* (quoting *Ward v. Est. of Goossen*, 2014 WL 7273911, at *4 (N.D. Cal. Dec. 22, 2014)).  In short, the irreparable harm factor weighs in favor of a stay.

## III.    A STAY WILL NOT HARM PLAINTIFFS

The third factor a court considers in determining whether to stay proceedings pending appeal is whether "the stay will substantially injure the other parties interested in the proceeding." *Leiva-Perez,* 640 F.3d at 964.  "When a defendant appeals an order refusing to compel arbitration, the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court during pendency of appeal." *Eberle v. Smith*, 2008 WL 238450, at *3 (S.D. Cal. Jan. 29, 2008).  "[T]he risk of 'dragging out' [an] action does not constitute … the type of injury significant enough to preclude imposition of a stay." *Antonelli v. Finish Line, Inc.*, 2012 WL 2499930, at *3 (N.D. Cal. June 27, 2012).  That is because

1    a plaintiff's "choice to bring this litigation has necessarily exposed [her] to its attendant procedures,

2    including the possibility of an interlocutory appeal [of an order denying a motion to compel

3    arbitration]." *Id.*

4           Here, any assertion by plaintiffs that a stay "would force them to wait to receive the money

5    to which they are entitled" or "delay any injunctive relief" would be based on a presumption that

6    plaintiffs "will win on the merits of their claim," and this Court should not "indulge th[at]

7    presumption." *Roe v. SFBSC Mgmt.*, *LLC*, 2015 WL 1798926, at *4 (N.D. Cal. Apr. 17, 2015).  In

8    any event, such arguments do not outweigh the "potential injury to defendant from proceeding in

9    district court during pendency of appeal." *Eberle*, 2008 WL 238450, at *3; *see also Smith*, 2012

10   WL 12863172, at *2 (plaintiff would not be unduly prejudiced by stay where plaintiff and putative

11   class sought injunctive and declaratory relief in addition to damages).  Thus, this factor favors a

12   stay.

13   **IV.     THE PUBLIC INTEREST FAVORS A STAY**

14          The fourth factor requires a court to weigh "where the public interest lies."  *Leiva-Perez*,

15   640 F.3d at 964.  As to this factor, the federal policies favoring arbitration and judicial economy

16   favor a stay.  *Antonelli*, 2012 WL 2499930, at *3.  This Court has also recognized that "continuing

17   to litigate … during the pendency of the appeal would undermine both policies because of the risk

18   of redundant or inconsistent actions."  *Sample*,v. *Brookdale Senior Living Communities, Inc.*, No.

19   C11-58844, 2012 WL 195175, * 2 (W.D. Wash. Jan 23, 2012) 2012 WL 195175.

20          These concerns are present here.  Because Verizon's appeal raises serious legal issues, the

21   denial of a stay would be improper.  Any claim that immediate litigation will serve the public interest

22   is outweighed by the burdens that would impose on the Court, the parties, and any third parties that

23   may be subject to discovery.  Although "[p]rompt remedies are always preferred," "promptness is

24   not the only goal and, like most ends, must bend to accommodate other concerns."  *Roe*, 2015 WL

25   1798926, at *4.  "The main concern here is the potential waste of the litigants' and the court's

26   resources."  *Id.*  "Rushing ahead may buy little and waste much."  *Id.*  And as explained above, these

27   burdens are great when, as here, plaintiffs pursue a class action.  *See supra* at II.

28          The interests of the judicial system and the litigants would be best served by preserving the

1    status quo while the Ninth Circuit rules on the important delegation and unconscionability issues

2    Verizon's appeal engenders. This final factor thus favors the Court's granting a stay pending appeal.

3            Alternatively, the Court should stay discovery pending appeal.  This action is unlike previous

4    cases where the Court permitted limited discovery to go forward.  For instance, in *Burzdak*, this

5    Court denied the defendants' motion to stay but "stag[ed] discovery so that the initial focus in the

6    case [was] on [plaintiff's] claims," not "class certification discovery.  2021 WL 5585232, at *5.

7    Similarly, in *Mohamed*, this Court stayed adjudication of all non-discovery issues (e.g., dispositive

8    motions) pending the final resolution of Uber's appeal of this Court's order denying its motion to

9    compel arbitration, while allowing "reasonable discovery," "which would take place even in

10   arbitration," to continue.  115 F. Supp. 3d at 1027.

11           Here, no such "reasonable" option exists because plaintiffs say they will seek voluminous

12   discovery on a class-wide basis, including as to the "reactions" of consumers to the Charge,

13   communications regarding those reactions, and a multitude of other onerous topics. Dkt. 57 at 4.  As

14   explained above, the discovery plaintiffs would seek here—based on a putative class of millions of

15   members—is fundamentally different from the modest, individual claims and the confined

16   discovery to which plaintiffs agreed under the AAA rules.  Permitting such discovery under these

17   circumstances would open the very pandora's box other courts have taken pains to avoid.  *See, e.g.*,

18   *Alascom*, 727 F.2d at 1422; *Wuest*, 2017 WL 5569819, at *1; *Smith*, 2012 WL 12863172, at *2;

19   *supra* Section II.[11]

20                                        **Conclusion**

21           For the foregoing reasons, a stay pending appeal of this Court's Order should be granted.

22

23   [11]   This Court's denial of a stay in *Martinez-Gonzalez v. Elkhorn Packing Co.*, LLC, No. 18-CV-
     05226-EMC, 2020 WL 733228, *3 (N.D. Cal. Feb. 13, 2020), is distinguishable because the appeal

24   there did not raise serious legal issues; the Court had held a bench trial and applied "well-settled
     law" to find that an arbitration agreement was unenforceable based on economic duress and undue

25   influence.  In *Vasquez v. Cebridge Telecom CA LLC*, Civil Minutes, dated July 12, 2022, Case No.
     21-cv-06400-EMC, this Court stayed the case pending an appeal to the Ninth Circuit while allowing

26   "limited discovery of information that would be relevant to an individual case," but here, plaintiffs'
     statement regarding discovery shows they will seek sweeping discovery to support their putative

27   class action, not "limited discovery" that "would be relevant to an individual case."  *See* Dkt. 57 at
     4.

28

DATED this 26th day of July, 2022

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By_____/s/ *Crystal Nix-Hines*_____

Crystal Nix-Hines
*Attorneys for Defendants VERIZON WIRELESS
and VERIZON COMMUNICATIONS, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2022, I caused a true and correct copy of the foregoing **DEFENDANT VERIZON'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING ARBITRATION** to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties who have appeared in this matter.

Dated this July 26, 2022.

/s/ *Crystal Nix-Hines*_____
Crystal Nix-Hines