# EXHIBIT 2

                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION, CIVIL PART
                              MIDDLESEX COUNTY
                              DOCKET NO. MID-L-000160-22
                              APP. DIV. NO. _____

JEFFREY ACHEY, et al.,        :
                              :
        Plaintiffs,           :         TRANSCRIPT
                              :
    v.                        :            OF
                              :
CELLCO PARTNERSHIP d/b/a      :       MOTION TO COMPEL
VERIZON WIRELESS; and         :         ARBITRATION
VERIZON COMMUNICATIONS INC.,  :
                              :
        Defendants.           :

                    Place:  Middlesex County
                            (Heard via Zoom)

                     Date:  July 15, 2022

BEFORE:

    HONORABLE J. RANDALL CORMAN, J.S.C.


TRANSCRIPT ORDERED BY:

    MICHAEL C. ZOGBY, ESQ. (Faegre Drinker Biddle &
    Reath LLP)

APPEARANCES:

    STEPHEN P. DeNITTIS, ESQ. (DeNittis Osefchen
    Prince, P.C.)
              - and -
    DANIEL M. HATTIS, ESQ. (Hattis & Lukacs)
    Attorneys for the Plaintiffs

    JEFFREY JACOBSON, ESQ. (Faegre Drinker Biddle &
    Reath LLP)
              - and -
    MARINA LEV, ESQ. (Quinn Emanuel Urquhart &
    Sullivan, LLP)
    Attorney for Defendants Verizon Wireless and
    Verizon Communications, Inc.

          Transcriber:  Lisa Mullen, AD/T 413
                        44 Randolph Avenue
                        Old Bridge, N.J.  08857
                        LisaMullen@optonline.net

                        Digitally Recorded
                        Operator - n/a

<u>I N D E X</u>

<u>Page</u>

ARGUMENT:

   By Mr. Jacobson . . . . . . . . . . . . . . . 4, 27

   By Mr. DeNittis . . . . . . . . . . . . 9, 34, 51

   By Mr. Hattis . . . . . . . . . . . . . . . . 41


THE COURT:
   Decision. . . . . . . . . . . . . . . . 43, 52

3

1          (Proceedings commenced at 11:16 a.m.)
2          THE COURT:  All right.  It's quarter after
3    11, July the 15th.  This is Judge Corman, Middlesex
4    County Superior Court.
5          Our next case is L-160-22.  Plaintiffs are
6    Jeffrey Achey, et al., defendants are Cellco
7    Partnership doing business as Verizon Wireless and
8    Verizon Communication, Incorporated.
9          Will the plaintiffs' counsel please enter an
10   appearance.
11         MR. DeNITTIS:  Good morning, Your Honor.
12   Stephen DeNittis from DeNittis Osefchen and Prince on
13   behalf of the plaintiffs.
14         THE COURT:  Will defendants' counsel please
15   enter an appearance.
16         MR. JACOBSON:  Good morning, Your Honor.
17   This is Jeffrey Jacobson from Faegre Drinker.  I'm
18   joined by my colleague Marina Lev from Quinn Emanuel,
19   whose pro hac motion is pending.  I'll be doing the
20   arguing on the motion.
21         THE COURT:  Okay.  This is the defendant's
22   order to -- to stay and compel arbitration.
23         Counsel, what would you like to tell me about
24   your motion?
25         MR. JACOBSON:  Your Honor, this is Jeffrey

4

1    Jacobson, again.
2          The three most important facts relevant to
3    this motion are undisputed.
4          The plaintiffs agree that they consented to a
5    contract requiring the -- requiring them to arbitrate
6    disputes.
7          They agree that all of the claims they want
8    to pursue against Verizon are covered by that agreement
9    to arbitrate.  And the customer agreement itself
10   incorporates either customers have the choice of the
11   AAA or Better Business Bureau.  It incorporates the
12   rules of the AAA and the BBB.  And both of those rules
13   delegate to arbitrators the kind of challenges that the
14   plaintiffs are making to the customer agreements
15   enforceability.
16         The Third Circuit, every Federal District
17   Court in New Jersey to consider the issue in the
18   Appellate Division on multiple occasions, albeit in
19   unpublished decisions, has held that reference to rules
20   with delegation provisions suffices to require courts
21   to let arbitrators decide these challenges and not hear
22   them themselves.
23         I'd submit, Your Honor, that those three
24   facts are decisive here.  The plaintiffs'
25   unconscionability arguments with regard to the customer

5

1   agreement are wrong.  And I'm happy to talk to the
2   Court about why they're wrong, but those are fights we
3   should be having in front of arbitrators and not Your
4   Honor.
5         It's likely that the Court has questions
6   about the main argument plaintiffs here have made
7   against compelling these claims to arbitration, which
8   is the idea that the customer agreements, mass
9   arbitration provisions, and the statutes of limitation
10   applicable to plaintiffs' claims are what they call a
11   one-two punch, effectively block plaintiffs from
12   pursuing these claims at all.  It's just not.
13         With respect to the statute of limitations,
14   the people represented by plaintiffs' counsel here in
15   arbitration cases, and they say they've got about 2500
16   of them, have all provided timely notices of claim as
17   the customer agreement requires.
18         Your Honor, it would be beyond disingenuous
19   for Verizon to argue that the limitations period is
20   continuing to run against these people while they're
21   following the agreement's mass arbitration provisions.
22   Verizon has never made that argument and we would be
23   laughed at by any arbitrator if we tried.
24         The customer agreement's mass arbitration
25   provision provides a bellwether process for a series of

6

1   ten claims to go forward at a time, plaintiffs choose
2   five, Verizon choose five.  See how those go.  Another
3   process after that.  See how those go.  And it -- that
4   bellwether process allows -- has two goals.  It's
5   primary goal is to foster resolution of a mass of
6   claims by letting the parties test their arguments in a
7   fair sampling of cases.  If Verizon goes ten and oh,
8   one suspects the plaintiffs will not throw good money
9   after bad.  On the other hand, if Verizon goes oh for
10   ten, and then if which ever side loses maybe wants to
11   try again and goes oh for ten again, it would be very
12   difficult for either side to contend that the batching
13   process should continue rather than yielding an
14   agreement to resolve the claims on -- on a mass basis.
15         But here's the important part.  Your Honor,
16   the customer agreement explicitly says that the
17   bellwether process should proceed, and this is a quote,
18   "until the parties are able to resolve all of the
19   claims."  And it gives the court full authority to
20   enforce that part of the agreement.
21         So if plaintiffs are right on the merits,
22   which they're not, but if the plaintiffs are right on
23   the merits and they prove that, if they beat Verizon
24   consistently in the bellwether cases and if Verizon
25   doesn't act appropriately in response, nothing stops

7

1   these counsel from coming back to the court and seeking
2   relief.  But that's a lot of ifs.  They haven't
3   happened yet.  And Verizon has no reason to believe
4   they'll ever happen.
5           And, by the way, the customer agreement says
6   that every winning customer in arbitration gets $5,000
7   minimum, plus attorneys' fees.  So -- while the process
8   unfolds.  So there's no -- there's no incentive for
9   Verizon to keep going if it -- if it's losing.  By
10  contrast, as I said, there's no incentive for
11  plaintiffs to keep going if they're losing.
12          But the second goal of the mass arbitration
13  provision is just as important as the first.  It's to
14  avoid a situation where Verizon has to choose between
15  an unfair settlement that the plaintiffs haven't earned
16  by advancing the merits of their claims or paying AAA
17  millions of dollars in fees for arbitration cases that
18  in all relevant likelihood will not actually proceed.
19          And the plaintiffs' argument that Verizon is
20  the only company it knows of that's adopted a provision
21  like this, it so happens that I got an e-mail as a --
22  as a Microsoft customer this morning that Microsoft
23  adopted the identical provision last night.  The only
24  difference between Microsoft and Verizon is that
25  Microsoft's batching process is 50, not 10.

8

1           So this is something that companies in
2   Verizon's position are dealing with this mass
3   arbitration problem the same way.  It does not make
4   sense, I would submit, to allow thousands of
5   arbitration claims to be filed at once where the only
6   consequence of filing is triggering an obligation on
7   the part of Verizon, or whatever company is in
8   Verizon's position, to pay thousands of dollars to AAA
9   for each claim filed.  And it allows lawyers on the
10  other side to be able say, hey, either settle with us
11  or you've got to write a multimillion-dollar check to
12  AAA.
13          That's all we're trying to avoid through this
14  batching process.  And as I said, if the batching
15  process goes poorly for Verizon and Verizon were to try
16  to continue to force claims into arbitration after it
17  went oh for ten or oh for twenty, that would be the
18  time for plaintiffs to come back and argue that Verizon
19  is acting disingenuously, that Verizon is acting
20  contrary to the stated goal of the process, which is to
21  yield a resolution.
22          But it's not -- that -- that claim is not
23  ripe now.  What should happen now, because there's no
24  disagree about the existence of a -- of an agreement to
25  arbitrate disputes.  There's no dispute that these

9

1   claims are covered by it.  And the other challenge that
2   plaintiffs made to enforceability of certain other
3   provisions of the agreement are for the arbitrators.
4           So if the Court has any questions, I'm happy
5   to address those questions.  It may be more
6   appropriate, though, to hear what plaintiffs have to
7   say and then I can briefly reply.
8           THE COURT:  Thank you, Counsel.
9           All right.  We'll go to plaintiffs' counsel.
10  What do you got to say about all that?
11          MR. DeNITTIS:  Sure, Your Honor.
12          Well, I'd like to start off first that -- why
13  we're here.  We're here -- plaintiffs would like to
14  bring their case as a class action.  A class action
15  where other than a filing fee with the court, there is
16  no cost to do a class action.  There would be no fees
17  by AAA arbitration or by any other arbitration service.
18          We're faced with this arbitration clause
19  because this is what defendants drafted and this is
20  what defendants wanted because they want to avoid a
21  class action.  They want to not have a case with a mass
22  amount of people.
23          So we're -- we -- we do represent 2500 other
24  people, not New Jersey persons, but people from other
25  states in arbitration.  And it is $3,000 a person to do

10

1   such arbitration.  But as you see here, defendants want
2   this in arbitration.  So this is -- they want these 27
3   people to be with those persons.  This is where they
4   want to be, despite the cost.
5           But any -- any argument that this is like
6   some type of extortion attempt or that this is some
7   type of a way for plaintiffs to take advantage of the
8   process is -- is really somewhat ridiculous in that
9   this is what defendants wanted.  This is what they
10  drafted.  I mean, they don't have to have an
11  arbitration clause.  They could actually withdraw their
12  motion if they're so worried about the filing fees and
13  permit us to just go forward with our case.  It's not
14  certified yet.  It's 27 people.
15          So I want to make that mention to the Court
16  because this isn't -- there isn't some reason to feel
17  pity for Verizon.  The reason why these companies are
18  drafting these clauses is because of the advent of the
19  mass arbitration.  Yes, consumers are aggrieved.
20  Consumers are frustrated.  And court -- and companies
21  like Verizon have been getting sued because this is
22  what they require since we can't do a -- they don't
23  want a class action in court.  They -- people file mass
24  arbitration.  And, unfortunately, the process is very
25  costly.  And so now that this is happening, defendants

11

1    don't like it.
2              And so defendants attempted in several courts
3    to say, oh, these mass arbitrations are unfair and
4    these should not be enforceable because it's so costly
5    and they've lost on every single case where they've
6    attempted to do that because -- because courts around
7    the country have said, really, you've been arguing to
8    enforce arbitration for 40 years, you -- you have what
9    you want and now because people have filed a large
10   number of claims, you don't like it, tough, this is
11   your agreement.
12             So I want to -- I want to make sure the Court
13   is aware this -- this is not some pity party for
14   Verizon.
15             Now to get to the merits of what Your Honor
16   has to decide in this motion.  Defense counsel is
17   right, there is an agreement and people didn't
18   willingly consent because it's a contract of adhesion,
19   but when they bought their phones they had an eight-
20   page arbitration clause thrusted upon them without much
21   choice, and they signed it.  We agree on that.
22             But what defense counsel leaves out is, Your
23   Honor has two decisions to make.  One, who should
24   decide this arbitration motion.  And it should be Your
25   Honor, which I'll get to.  And then, two, should -- is

12

1    this conscionable.  Because just because people agree
2    to an arbitration clause, yes, there's the Federal
3    Arbitration Act.  But the Federal Arbitration Act and
4    the case law makes clear that any arbitration clause
5    for it to be enforceable must not be unconscionable.
6    And so -- and that is Your Honor's function as the
7    gatekeeper, to make that determination.
8              And we submit, for all the reasons set forth
9    in our papers and I'm going to put forth today, this is
10   not only unconscionable, this is really one of the most
11   uneven, over-heavy handed agreements for a consumer to
12   have to face to litigate their claims.
13             So let's get to the delegation clause.  As --
14   as the Federal Court determined in the MacClelland
15   case, this exact issue, which is persuasive authority
16   before Your Honor, not -- not binding authority.  But
17   the standard in California is identical to the standard
18   in New Jersey, which is there's a presumption.  Under
19   Morgan v. Stanford, New Jersey Supreme Court 225 N.J.
20   289, (2016), there's a standard for whether who --
21   whether an arbitrator or a court decides an arbitration
22   court -- clause.
23             And the Supreme Court has said it's a
24   presumption that the court decides the arbitration
25   clause, unless there's clear and unmistakable evidence

13

1    that the parties agreed to arbitrate arbitrability.
2              Here there's four main reasons why this
3    should be decided by Your Honor and not by an
4    arbitrator.
5              Number one, the clause, the eight-page
6    arbitration clause, in several instances is aspects of
7    the clause to be enforced by the Court as defense
8    counsel pointed out, that we could go back to court if
9    we don't like the mass arbitration provision and -- and
10   have the Court decide that portion of the arb clause.
11   Which it's really not clear what portion is referenced
12   by that -- by the -- by that -- by that statement.
13             It also references AAA and BBB rules, which
14   they conflict, and I'll get to that in a moment.
15             And so those are really big issues.
16             And, third, which you -- we didn't cite this
17   in our papers because we didn't -- we couldn't file a
18   surreply, but there's a case that decides this exact
19   issue called Alpert Goldberg Butler v. Quinn, 410 N.J.
20   Super. 510, (App. Div. 2009).  And what that court says
21   -- what -- what that case says is, in order for there
22   to be a proper and enforceable incorporation by
23   reference of a separate document or website, the
24   document to be incorporated must be described in such
25   terms that its identity may be ascertained beyond doubt

14

1    and the party to be bound by the terms must have had
2    knowledge of and assented to the incorporated terms.
3              And that case was also -- and that's a
4    published decision.
5              THE COURT:  What's the cite --
6              MR. DeNITTIS:  And that was also --
7              THE COURT:  -- on that, Counsel?  Give me the
8    cite again, Counsel.
9              MR. DeNITTIS:  Sure.  It's 410 N.J. Super.
10   510.
11             THE COURT:  Thank you.
12             MR. DeNITTIS:  Appellate Division 2009.
13             THE COURT:  Okay.
14             MR. DeNITTIS:  And it's -- al -- Alpert v.
15   Quinn.
16             And that's also followed by Bacon v. Avis
17   Budget Group, 357 F.Supp 3d. 401, (D.N.J. 2018).
18             That -- the Bacon case deals specifically --
19   they both deal with arbitration clauses.  And what that
20   means is, if you're going to make it set forth that
21   you're going to incorporate something by reference, and
22   the Bacon case was right on point with this, as well,
23   you just can't blanket refer to something.  It has to
24   be specific.  It has to be exactly to what is looking
25   to be enforced.

15

```
1            If you look at the arb clause, all that
2    reference says is, it says you could go to AAA.com or
3    BBB.com for our rules.  It doesn't link right to the
4    rules.
5            So a person would have to go on the cite,
6    would then have to navigate the site, which we -- we
7    invite Your Honor to try to do that.  And then you have
8    to try to find where the delegation clause is in that
9    agreement.
10            So Verizon is expecting someone
11    unsophisticated, not attorneys, to get an eight-page
12    arbitration clause and then read it while they're
13    buying their cell phone, and then navigate through
14    whether in certain instances a court is to decide or if
15    AAA rules apply or if BBB rules apply.  And then
16    they're supposed to go to that website and then
17    navigate through the website, they have to dig around
18    to find what rules actually apply to delegation.
19            I mean, that's interesting is, there's not --
20    the word delegation is not even in their eight-page
21    arbitration clause.  It's not even in it.
22            And so those two cases are directly on point
23    and they're published cases.
24            The cases that defense counsel is referring
25    to are unpublished cases, even the Third Circuit case
```

16

```
1    is unpublished.  And Third Circuit and Federal cases
2    are not binding on this Court.  It's New Jersey case
3    law is what controls.  And we ask that you look at the
4    Quinn case and you look at -- the Bacon case cites to
5    the Quinn case.  And they're right on point.  And so
6    their incorporation of that is -- is invalid.
7            But, more importantly, even if Your Honor
8    were going to get to the threshold question of, okay,
9    well, let me look at these two clauses, trip -- AAA
10    says an arbitrator should decide the clause.  BBB says
11    the arbitrator has the ability to decide what claims
12    should be included in the arbitration, not decide
13    unconscionability.  It does not say the Court is -- the
14    arbitrator is to decide the issue of whether the
15    clauses is enforceable under unconscionability analysis
16    or not.  All it says is, it's to determine what claims
17    are to be covered within the arbitration.
18            So that in itself conflicts.  And we cited an
19    Appellate Division case, Rockel v. Cherry Hill Dodge,
20    which states where an arbitration clause is conflicting
21    on the delegation issue -- which this certainly is.
22    There's portions of this that gives it to the Court,
23    there's portions of this that gives it to AAA, there's
24    portions of this that give it to BBB.  And then even if
25    a person could find those two rules, because they're
```

17

1    not specifically cited to, which is -- makes it invalid
2    under Quinn, but even if they can find it, they
3    conflict.
4           And so if you look at Rockel v. Cherry Hill
5    Dodge, when -- when there's delegation clauses or --
6    that conflict, or whose to decide if that conflicts,
7    the Court is to throw it out and let the Court decide.
8           And so in this -- and by the way, these --
9    you know, this isn't -- this has already been decided
10   once.  So you have -- Your Honor has a nice roadmap in
11   MacClelland, which has the same standard, which is the
12   clear and unmistakable standard.  That's the same in
13   California.  And another court in California just
14   decided less than a month ago that this exact clause
15   should be decided by the Court.
16          So I have nothing else to say on the
17   delegation issue.
18          I'd like to go to why this agreement is so
19   one-sided and unconscionable.  So as we set forth in
20   our papers, there's several reasons why this -- this
21   arbitration clause (inaudible).  Out of the gate,
22   before I even get to the public policy issues and also
23   the issues of having ten cases go forward at a time,
24   something that's really overbearing and -- and really
25   unfair to the customers is, the contract bars extrinsic

18

1    evidence.
2           So the beginning of the arbitration clause
3    says, any dispute between you and us, you being the
4    customer, whether it's with a sales rep., whether it's
5    billing disputes, whether it deals with the product,
6    must go to arbitration.  But then later in the clause
7    it says all disputes -- this -- it says this agreement,
8    which is the customer agreement, governs all disputes
9    and no extrinsic evidence can be relied upon, whether
10   it be documents, advertisements, or statements from
11   sales representatives.
12          The problem with that clause, Your Honor, is
13   the customer agreement doesn't have the terms.  The
14   customer agreement doesn't have the pricing.  The
15   customer agreement doesn't have representations in the
16   advertisements.  The customer agreement doesn't have
17   what people say.  So we will be unable to prove our
18   case if we go to arbitration.
19          We're challenging in this case that Verizon
20   told people in their bills that they have -- that they
21   have to pay surcharges and that the surcharges in their
22   bill say that they're government fees, federal charges,
23   or taxes that are imposed and that they're going to be
24   passed on to you.  And they list as an administrative
25   charge under their surcharges that it's a government

19

```
 1        fee, which we contend is a total lie.
 2                 Their advertisements gave people a flat price
 3        of what their charges would be and they say surcharges
 4        could apply.  However, the surcharges here, we're
 5        contending, are a lie, that they just are another part
 6        of profit in their profit plan that they impose on
 7        people and it wasn't imposed -- they weren't honest
 8        with people.
 9                 But we can't prove our claim.  We're in -- if
10        this goes to arbitration, we're not going to be allowed
11        to rely on a bill.  We're not going to be allowed to
12        rely on an advertisement.  We're not going to be
13        allowed to bring in witnesses to testify as to what
14        they told people when they bought their plan.  We will
15        lose our claim.  We will lose.  We will not be able to
16        prove our claim because the customer agreement doesn't
17        have the terms we need.
18                 To get to the other egregious portions of the
19        agreement, the agreement says because defendants are
20        afraid of mass arbitrations, which is a -- which is a
21        (indiscernible) phenomenon over the last couple years
22        and we're pursuing one here.  They don't want to pay
23        the arbitration costs, but they have to have the
24        arbitration agreement say that they're willing to pay
25        the costs or the agreements will be procedurally
```

20

```
 1        unconscionable.
 2                 So they say they want to pay the cost.  So
 3        their new way to get out of basically preventing a mass
 4        case and hearing -- picking off people one by one is to
 5        have this -- this clause that says if you per --
 6        client, decide to hire a law firm, that law firm, if
 7        they have more than 25 persons, have to go through this
 8        claim process of 10 claims going forward at a time, 5
 9        picked from the defendant and 5 picked from the
10        plaintiff.
11                 So what's wrong with that?  Well, first of
12        al, if a person wants to do this cumbersome process,
13        they have to either decide, well, if I stick with my
14        attorney, who has all these claims, being us, over
15        2500, this case is going to take 145 years to decide.
16                 The defendants' argument to that position by
17        plaintiff is, well, we have the bellwether process.
18        And the bellwether process it -- of course, it's not
19        going to take this long.  And there's no reason or
20        incentive for us to do more than ten at a time because
21        if we lose the ten, we're going to settle and if we win
22        the ten, plaintiffs are going to give up.  Well, that
23        sounds nice in theory, but that's not what the contract
24        says.  And we've got to go by what the contract says,
25        not by just what Verizon might do gratuitously trying
```

1   to predict how this case goes.
2           The contract says, Verizon has the right to
3   either settle cases after the bellwether process or
4   continue to arbitrate.  So what does that mean, if we
5   have to continue to arbitrate?  That means we pick 10
6   at a time out of the 2500 people.  That means,
7   according to AAA's own website, each arbitration is
8   going to take 6.9 months -- and even if it's
9   streamlined in some purpose.  Let's say they have 10 go
10  at a time, that -- that's going to take 6.9 months,
11  even a year, 10 at a time.  And we have to get through
12  2500.
13          Now what's onerous about that?  The agreement
14  says that they reserve the right to challenge the
15  statute of limitations.  So what's the big deal about
16  that?  That's a big deal because the plaintiffs can't
17  even file any claims until the first ten are heard.  So
18  if you're someone, you know, a thousand in down the
19  batch, 1500 in down the batch, your case can't even be
20  filed.  And if you look at that many people and you
21  can't say the -- the bellwether process, oh, this is
22  never going to happen.  This is what the contract says
23  will happen if they -- if we don't settle.  You've got
24  to do ten at a time.  So it's going to 145 years for
25  these cases to be heard.  It's going to -- the statute

1   of limitation will expire and the people will be dead,
2   literally.
3           And now the defendants in California, because
4   they saw this as a problem, they said, oh, we're going
5   to amend, we're not going to enforce the statute of
6   limitations.  Well, even if you don't enforce the
7   statute of limitations, which, by the way, they can't
8   waive it.  There's a -- we briefed that.  They can't --
9   they can't change it midstream in the litigation.  But
10  even if the Court were to say, well, they said -- you
11  know, Mr. DeNittis, they said they're going to waive
12  the statute of limitations, that doesn't matter.  It's
13  going to take 145 years for this -- for this to be
14  decided.
15          We can't, as plaintiffs, against a company
16  like Verizon, have to hope that they're going to be
17  gratuitous and settle with us.  What's -- the defense
18  counsel said what's the incentive for them to continue
19  litigating.  The incentive is to preclude claims.
20  What's the incentive for them to settle?  They could
21  have ten go at a time, have very little exposure, and
22  take years for these cases to be decided.  Hundred --
23  over a hundred years.  Why -- why would they settle?  I
24  mean, I don't see why they would.  It's ridiculous.
25          So in addition to that clause, it also

23

 1    violates five -- Rule 5.6(b) of the Rules of
 2    Professional Conduct.  Why?  Because the only way a
 3    consumer gets out of this egregious agreement about
 4    having to wait 145 years, potentially, for their claim
 5    to be decided, is for them to pick another attorney.
 6             And under Rule 5.6(b) and under the Cardillo
 7    case and under the Jacobs case, a person has an
 8    unfettered right of choice of counsel.  Unfettered.
 9    It's a very important rule.
10             So now these people are going to have to --
11    they're like, well, if we want DeNittis Osefchen and
12    Prince, who has been doing consumer litigation for over
13    30 years, we don't want to -- you know, if we use them,
14    our claims are going to be decided -- may never be
15    decided or now we have to choose another -- another law
16    firm.  Well, guess what?  That's against public policy
17    and that's against the Rules of Professional Conduct,
18    and that also makes this agreement unenforceable.
19             So this agreement is unenforceable already
20    because it bars any extrinsic evidence.  It's against
21    public policy because it's affects people's right to
22    choose their attorney.  And, also, it should be
23    unenforceable because it precludes claims from people
24    ever potentially getting their cases heard.
25             I mean, again, Your Honor, another court, in

24

 1    MacClelland, a federal judge found that our arguments
 2    on this were persuasive and ruled that the entire
 3    clause was unconscionable because these egregious
 4    provisions being -- being unenforceable.
 5             But it doesn't stop there.  What -- what's
 6    crazy is, that's not the extent of why this is --
 7    should not be enforceable.  Another reason is, it bars
 8    damages.
 9             So there's one section of the agreement that
10    says an -- the arbitrator can award the same damages as
11    a person -- as if they're in court.  But then later it
12    says a person may not get consequential damages, treble
13    damages, punitive damages, injunctive relief.  Well,
14    guess what?  The Supreme Court said that that type of
15    clause limiting damages is unenforceable in the case --
16    again, Brown v. Sanford, and the other cases that we
17    cite.
18             So that's another reason Your Honor could
19    say, hey, this is unconscionable, this is restricting
20    people's rights that they would have in court.  And
21    there's authority for it, Your Honor, for that reason
22    to throw it out.
23             Another reason to throw it out is, the clause
24    conflicts as to attorney fees.  It says the -- the
25    arbitrator may award attorney's fees if there's fee

25

```
 1        shifting.  But then it give us convoluted, really, hard
 2        for an attorney -- we -- our -- our office had to read
 3        it multiple times to follow, where arbitration clause -
 4        - fees may be awarded but they may not be awarded,
 5        really limiting quite extensively when attorney fees
 6        can be awarded.  That's another reason to throw this
 7        out.
 8               In addition, it's a contract of adhesion.
 9        These people did not have their right to choose.  They
10        didn't have a right to choose this agreement.  Every
11        cell phone company, every cable company, every -- most
12        consumer contracts, every gym membership, they have
13        arbitration clauses and class action waivers.  Try to
14        go in to buy a cell phone and say, well, you know,
15        Verizon, I'm not signing this agreement.  Oh, I'm not -
16        - I want you to take this clause out.  They're not
17        going to take this out.  I mean, they won't.  They'll
18        say, sorry, we can't sell you a phone.
19               So, again, that's another reason why this
20        should be unenforceable.
21               So for all of these reasons, number one, we
22        think it's clear, Your Honor is to decide what -- that
23        -- whether this contract is unenforceable or not.
24               And then for all the reasons I just
25        articulated and that are in our papers, this should not
```

26

```
 1        be -- under -- Your Honor, the last decision Your Honor
 2        has to make, if you agree with plaintiffs, is can you
 3        sever these clauses and allow some of this to go to
 4        arbitration and some of it to stay?
 5               Or, can you throw the whole clause out.  And
 6        under the Dong Ho case that we cited, if a -- if a
 7        contract is permeated with unconscionability
 8        throughout, which I think for all the reasons I just
 9        articulated, frankly, how can Your Honor not, but if
10        you find that it's permeated throughout the agreement,
11        Your Honor is -- just throw out the entire arb clause
12        and let the case stay in court.
13               So for all of these reasons, Your Honor, I
14        respectfully submit that, one, that Your Honor decide
15        that this issue of whether the arbitration clause is
16        unconscionable or not.  Two, respectfully, find that it
17        is unconscionable for all the reasons I articulated,
18        which, again, I don't think you'd be taking a -- a real
19        leap here.  This is already what one federal court has
20        found.  And then, third, just throw out the entire
21        agreement.
22               For all these -- all these reasons, Your
23        Honor, I respectfully submit.
24               THE COURT:  All right.
25               MR. JACOBSON:  Can I reply briefly, Your
```

27

```
1    Honor?
2            THE COURT:  You may.
3            MR. JACOBSON:  This is Jeffrey Jacobson,
4    again.  Thank you, Your Honor, for your time.
5            It seems we agree that the main question here
6    is who decides.  Is it for the arbitrator to decide
7    these questions that Mr. DeNittis raised or is it for
8    Your Honor?
9            Mr. DeNittis talked about the case in
10   California, MacClelland, that was decided a few weeks
11   ago.  And Mr. DeNittis said that the standard in
12   California is the same standard that Your Honor should
13   apply, except it's not.  The only reason why Judge Chen
14   decided that California case as he did is because the
15   Ninth Circuit that controlled him left open the
16   question of whether in a consumer contract reference to
17   the AAA rules suffice to delegate questions like that
18   to the arbitrator.
19           The Third Circuit and every other Federal
20   Circuit Court of Appeals that's looked at this issue --
21   and by the way this is a case that's controlled by the
22   Federal Arbitration Act, so the Federal Court decisions
23   here interpreting the FAA should be dispositive.  The
24   Third Circuit did not leave that question open.  No
25   other circuit has.
```

28

```
1            And so, you know, we don't agree with Judge
2    Chen's opinion.  We've already appealed from Judge
3    Chen's opinion to the Ninth Circuit.  That -- it's
4    going to take some time, but it's simply not true that
5    that California case applied the same standard because
6    it couldn't have.  He was bound by Ninth Circuit
7    precedent.  Here, I understand that the Third Circuit
8    is Federal, but we've got Appellate Division
9    unpublished decision saying incorporation of AAA rules
10   is enough.  We've got a Third Circuit authoritative
11   decision saying incorporation of AAA rules is enough.
12   And so these questions really should be decided by the
13   arbitrator not by Your Honor.
14           Mr. DeNittis cited two cases, Alpert against
15   Quinn and Bacon against Avis, and he said that those
16   dealt with arbitration agreements.  That wasn't quite
17   true, either.  The Alpert against Quinn case didn't
18   involve arbitration at all.  And the Bacon against Avis
19   case did not involve incorporation of AAA rules.  It
20   was a question of whether the arbitration agreement
21   incorporated terms from the rental jacket that the
22   customer received.
23           So neither of those cases contradicts the
24   Third Circuit's holding that if you cite AAA rules it
25   suffices to delegate arbitrability questions to the
```

29

```
 1        arbitrator.
 2                So once the Court decides, if it does, that
 3        incorporation of AAA rules delegates every other
 4        question that Mr. DeNittis raised to the arbitrator,
 5        that's the ball game.  That means we compel arbitration
 6        and Mr. DeNittis can make these points to the
 7        arbitrator and off we go.  And there is no basis in any
 8        New Jersey decision, in any Third Circuit decision for
 9        the Court to hold that incorporation of AAA rules does
10        not suffice to delegate these issues to the arbitrator.
11                And just a couple of points in response to
12        Mr. DeNittis.  He -- he, again, raises this idea that
13        Verizon can just keep arbitrating these cases until the
14        cows come home.  Again, that's not what the clause
15        says.  If Verizon goes oh for ten and then maybe goes
16        oh for twenty, and if we try to keep going, the clause
17        provides a role for the Court.  Because the stated goal
18        of this batching process is to yield a resolution.  And
19        if Verizon is acting unreasonably, there is an explicit
20        invocation of the Court's authority to do something
21        about it.  That issue -- that situation is just simply
22        not presented here.  We haven't started the batching
23        process yet.  Not a single one of these claims has been
24        arbitrated.
25                So, you know, again, this -- this idea that
```

30

```
 1        we can't try the bellwether process and see what
 2        happens because it's unconscionable is just not right.
 3                The next thing Mr. DeNittis talked about was
 4        what I'll call the contractual integration clause,
 5        which says that the agreement is the agreement.
 6                So, you know, this is another issue that
 7        should be decided by the arbitrator.  But I have to
 8        say, I don't understand Mr. DeNittis's argument about
 9        this provision at all.  It says that the written
10        contract is the contract and a consumer can't argue
11        that something an agent said orally is also part of the
12        contract.  I don't understand what's wrong with that.
13                The first sentence of the customer agreement
14        says, "your service terms and conditions are part of
15        the agreement."  So Mr. DeNittis's statement that the
16        pricing terms aren't part of the agreement is simply
17        wrong.
18                And nothing in this provision stops the
19        customer from arguing that something an agent said to
20        him or her, you know, that fraudulently induced the
21        customer to execute the contract is -- you know, that
22        you can make a fraudulent inducement claim under this
23        provision and you can use something an agent said as
24        the basis for a statutory consumer fraud claim.
25        Verizon hasn't argued otherwise and I would say that
```

31

1    this provision doesn't give it a basis to argue
2    otherwise.
3            And the other provision that Mr. DeNittis
4    pointed to is that the agreement does contractually
5    preclude anything other than direct damages.  He may or
6    may be -- may or may not be right.  But that bar on
7    treble damages is enforceable against New Jersey
8    consumers asserting claims under the CFA.  That's a
9    question for the arbitrator.
10           I do know that in plaintiffs' brief when they
11   cited the Morgan against Sanford Brown case, which is
12   225 N.J. 289, they did not characterize that case
13   correctly.
14           In Morgan, the Supreme Court held that once
15   the Appellate Division had determined that an agreement
16   delegated unconscionability questions to the
17   arbitrator, the court should not have opined at all on
18   whether the treble damages bar was enforceable in that
19   case.
20           Yes, it's true the Supreme Court said in that
21   case that, however -- you know, they used the words
22   "however correct it may be" when they were referring to
23   the Appellate Division's statement that the bar on
24   treble damages in the arbitration agreement was not
25   enforceable.  But they held that that was a decision

32

1    that should have been made by the arbitrator, as it
2    should be here.
3            So, you know, I get it.  I -- I -- I know
4    what he's trying to do.  It's what they did
5    successfully in California under a different standard,
6    but there are a couple of challenges he wants to make
7    to the arbitration agreement, all of which can be
8    easily presented to the arbitrator and the arbitrator
9    can make the decisions and, you know, that's what
10   happens in these cases.
11           Your Honor, I'll just end where I began.
12   They filed 2500 -- or they want to file 2500 AAA
13   arbitrations.  They could file all of these cases in
14   small claims court today, if they wanted to.  The
15   agreement allows that.
16           They want to have these claims go forward in
17   arbitration immediately because they think Verizon
18   should have to write a big check to AAA.  And they
19   cited some other cases where companies did not have
20   provisions like this, where there was not a batching
21   process, and the company said, well, wait a minute, we
22   shouldn't have to write this big check, and the court
23   said, well, yes, you should because the contract didn't
24   provide, as Verizon's does, for a batching process.
25           Here we have one.  It should go forward.  If

33

1      something goes wrong with it, there's a role for the
2      Court later.  But there's nothing in the agreement that
3      it's unconscionable or should preclude the Court --
4      and, no, sorry.
5             One last thing.  I apologize.
6             This idea that we're stopping people from
7      having their choice of counsel, we're not.  As we said
8      in our reply brief, as many people can hire Mr.
9      DeNittis and Mr. Hattis as want to hire them.  And they
10     can get the benefit of their experience and the benefit
11     of the fact that they have a lot of claims.  And if
12     there's a mass resolution, they would be included in
13     it.  All it says is, let's have a bellwether process.
14     Let's see how it goes.
15            So this is not a case where we're interfering
16     with people's choice of counsel.  It's not a case where
17     we're making people wait 149 years.  We're going to
18     have ten cases that are going to move forward shortly.
19     If it's too late to get a New Jersey person in that
20     first batch, we can make sure a New Jersey person gets
21     in the second batch.  We can test all these claims
22     under the CFA.
23            And if something goes wrong, there a couple
24     of provisions allowing the Court to sound off later.
25     But for now, we submit that these cases should be --

34

1      should be compelled into arbitration.
2            THE COURT:  Counsel, I've got a question for
3      you.  The --
4            MR. JACOBSON:  Sure.
5            THE COURT:  You say that the issue of treble
6      damages, that -- that's a question for the arbitrator?
7            MR. JACOBSON:  It should be.  Because all of
8      these questions about enforceability of anything other
9      than the arbitration agreement itself are for the
10     arbitrator.  So once -- in other words, once the Court
11     finds that the agreement was validly formed, whether or
12     not that ban on treble damages is enforceable as
13     against a New Jersey consumer under the CFA would be
14     for the arbitrator, that's correct.
15            THE COURT:  Okay.
16            MR. JACOBSON:  Which is exactly what the
17     Supreme Court said in Morgan against Sanford Brown.
18            MR. DeNITTIS:  Your Honor, if I may just
19     respond to a couple points?  I'll be brief.
20            THE COURT:  You may.
21            MR. DeNITTIS:  So just so Your Honor
22     understands, the FAA doesn't mandate that this gets --
23     that -- that the -- the arbitrator decides this issue.
24     The FAA says courts are to look at state contract law
25     to determine unconscionability and who decides the

35

1    arbitration clause.
2            So this is your decision, Your Honor, number
3    one.  It's not that the FAA is mandating you to do
4    anything.
5            As to this whole issue about referring to a -
6    - the AAA's rules and standards it -- that is
7    referenced by incorporation.  First, defense counsel
8    makes it sound like there's all of these cases all
9    around the country that have held this.  They're not
10   before Your Honor.  The only cases that defense counsel
11   has cited are a couple unpublished federal cases that
12   are not binding on this court.  This is a -- this is
13   state law contract law that is binding on this court.
14   So they are not binding.  And they weren't even
15   published decisions, number one.
16           Number two, they're distinguishable in that
17   they only had AAA.  Here we have AAA and we have BBB
18   and we also have instances where the Court is to
19   decide.  That wasn't presented in any of those federal
20   cases that were unpublished.  Okay.  And so this --
21   this notion that, oh, this is such a well-settled issue
22   is just not true.
23           Third, I -- I will be comfortable to rest on
24   Your Honor reading <u>Alpert v. Quinn</u> and the <u>Bacon</u> case
25   that we cite, that you wrote down, and Your Honor could

36

1    decide for yourself if you think those cases would be
2    applicable here.
3            What those cases talk about is reference by
4    incorporation either to another document or to a
5    website and that it has to be specific and that it has
6    to be clear and that it has to be with -- identified
7    without doubt.
8            And I ask Your Honor to look at their
9    arbitration clause that they have before Your Honor and
10   you go on to the website and try to find -- try to find
11   what defense counsel makes it that it's so easy to
12   identify as to the rules that are supposed to apply
13   here.
14           Third, I find it interesting, defense counsel
15   and defendant's position is very contradictory.  They
16   say the bellwether process is fine because they could -
17   - you could do ten cases at a time and then they could
18   go back to court if someone doesn't like it because the
19   Court should decide that issue.  We're asking the Court
20   right now to decide the enforceability of the mass arb
21   restriction.  We're asking the Court to do that.
22           So what the defendants are asking, right, to
23   Your Honor is, well, don't decide this.  You know --
24   they've argued to the Court you should -- it's up to
25   the courts to decide that issue, let it go to

37

1   arbitration, let it kind of ferret itself out and then
2   whoever is unhappy with it can come back and challenge
3   it.  Well, we're asking you to -- to review it right
4   now.
5           They're basically telling us to go -- I don't
6   understand that argument.  They're saying, well, you
7   could do the bellwether process, do ten, see how they
8   come out, and then either party -- it's not like it
9   (inaudible) basically says either party could challenge
10  this clause with the court.  The (inaudible) we're
11  doing it now.  We're challenging that issue -- that
12  clause right now with the Court.  They're saying don't
13  decide it, go to arbitration, then if you don't like
14  the results of the arbitration, come back and attempt
15  to throw it out.
16          Why even go through that expense and that --
17  those steps?  Your Honor could decide it right now.
18  And I don't think either of us disagree on that.
19          Also, again, you have to read what the
20  contract says.  This whole bellwether process is
21  bologna.  It says after the ten are heard, it could
22  settle or the parties can continue to arbitrate.  So
23  what's going to be -- what's going to happen is, what
24  defendant wants to happen is, let ten go forward.  And
25  then after those ten cases are decided, they could

38

1   pretty much unilaterally decide if they want to settle
2   or not.
3           And if they don't want to settle, they're
4   going to say, well, keep arbitrating because why -- why
5   would they not?  They're not, certainly, going to go to
6   court and challenge it.
7           So we're asking for Your Honor to review it
8   now.  I mean, that's -- I don't under -- I don't -- I
9   really don't understand that argument.
10          And so, you know, that -- those are -- are --
11  are really just what I wanted to respond to.
12          I think -- you know, I think the case law is
13  clear by the Supreme Court of New Jersey to decide who
14  determines the arb -- arbitrability of an arbitration
15  clause.  It's presumed to be the court, unless it's
16  clear and unmistakable.  And I think the cases that
17  defendant cites are just unpersuasive and they're
18  persuasive authority, at best, anyway.
19          Look to the New Jersey cases that we cite,
20  and Your Honor could determine is this clear and
21  unmistakable.  We submit it's not.  We submit it just
22  simply isn't.
23          And so, you know, we would ask that not only
24  do you decide the arb clause, but you could also get to
25  the unconscionability issues.

39

```
1            I think I went on at length about why it's
2   unconscionable.  I just think you could look at -- you
3   know, look back at our arguments.  They're in the
4   papers.  I think the -- I think at this point, not to
5   belabor different points, I think they speak for
6   themselves.  I think this is a really egregious
7   agreement.
8            Not to mention, even the process of picking
9   ten arbitrations, that's a conflict for defendant --
10  for plaintiffs' counsel.  Because being that these
11  claims could be time precluded, we'd have to pick five.
12  That's a conflict of interest for us, Your Honor.  How
13  do we -- which five do we pick?  And if we -- as we go
14  through this process, we pick five, defendants pick
15  five.  If defendants decide they don't want to settle,
16  then we are going to be faced with a timing -- a timing
17  issue.
18            And, you know, defense counsel is like, well,
19  why would we ever enforce like the statute of
20  limitations.  Well, because they want to get out of
21  liability.  It's -- I mean, it's -- you know, that's
22  not -- you know, they make it sound like they're very
23  benevolent, but I'm sure they'll do whatever they can
24  to preclude claims.
25            And so, you know, again, you have to look to
```

40

```
1   what the agreement says.  And even forcing plaintiffs'
2   counsel to have to choose between five and then another
3   five and then another five, that in itself is a
4   conflict.  We haven't chosen five.  We refuse to do so
5   because we believe it's a conflict.
6            And so, you know, this -- this agreement,
7   other than the California court that heard this, these
8   agreements, as defense counsel just emphasized, like
9   Microsoft just changed theirs, another company that
10  we're familiar with, Optimum, just changed theirs, this
11  -- Verizon not to long ago changed theirs, this is --
12  this is a recent advent to avoid this mass arbitration
13  process that companies are so fearful of.
14            This is not settled law.  The only reportable
15  case or the only case -- I don't know if it's a
16  published decision yet.  The only case that's dealt
17  with this exact issue and the exact clause before Your
18  Honor is the MacClelland case, which found in our
19  favor.
20            So, you know, it's not -- this is -- these --
21  there's going to be more of these cases, for sure, that
22  go before the Court because this is just a really
23  egregious clause.
24            And so I -- you know, with all that, Your
25  Honor, I appreciate your patience, and we -- we submit
```

41

1    on the (inaudible).
2            MR. HATTIS:  Your Honor, be -- before we
3    submit, I'm sorry, this is Dan Hattis.  I -- I'm co-
4    counsel with Steve DeNittis.  I think I have a pro hac
5    vice pending.  I just had -- if I could speak just for
6    60 seconds, if I would have the permission of the
7    Court?
8            THE COURT:  I'm going to time you, Counsel.
9            MR. HATTIS:  Okay.  Excellent.
10           With regard to the delegation issue, you
11   know, the -- what -- the Better Business Bureau
12   arbitration rules do not have a delegation clause.  And
13   -- and Judge Chen in -- in the MacClelland case found
14   so.
15           And, in fact, I defy Verizon to find a single
16   case in the entire nation that ever found that there's
17   a delegation clause in the BBB rules.
18           As -- as my colleague said, it only says that
19   the arbitrator should -- so what they cite in their
20   papers is the arbitrator should decide any disputes
21   about whether a particular issue falls within the
22   parties' arbitration agreement.  Well, act -- what --
23   what falls in the agreement, not the validity of the
24   clause itself, which is very different than what he AAA
25   says.

42

1            Also with regard to the -- you know, the
2    point that, well, why don't we file in small claims.
3    We're also asking in these arbitrations for injunctive
4    relief to stop the -- to stop the charging of the --
5    the fee in the future.
6            THE COURT:  Five seconds, Counsel.
7            MR. HATTIS:  And, you know, that's something
8    small claims can't do.
9            Okay.  And -- and anyway, that's -- that's --
10           THE COURT:  I think you made your point,
11   Counsel.
12           MR. HATTIs:  -- generally, you have the
13   ability to do --
14           THE COURT:  Thank you very much.
15           All right.
16           MR. HATTIS:  Thank you.
17           THE COURT:  Gentlemen, give me a -- a few
18   minutes.  I want to look at these cases that you've
19   highlighted for me.  I'll take another look at them.
20   Give me about 20 minutes.
21           MS. LEV:  Do you want us to stay on the line,
22   Your Honor?
23           THE COURT:  Stay on the line.  I'll have an
24   answer  I'll have a decision.
25           MS. LEV:  Okay.  Thank you.

43

```
1                    (Recess taken 12:02 p.m. to 12:30 p.m.)
2               THE COURT:  All right.  It's 12:30.  I took a
3     little more time than I wanted to.
4               We're back on the record in L-160-22.
5               We have plaintiffs' counsel on the line?
6               MR. DeNITTIS:  Yes.
7               THE COURT:  We have defendants' counsel on
8     the line?
9               MR. JACOBSON:  Yes, Your Honor.
10              THE COURT:  All right.  I've gone through all
11    this.  I looked at some of those cases.  And let me
12    just start out by saying that I really have no basic
13    hostility to the concept of arbitration.  It's part of
14    -- the New Jersey Supreme Court has said that that's --
15    you know, we do want to try to resolve cases and this
16    is one of the way we do it, consistent with Federal
17    Arbitration Act and, as well, as the New Jersey
18    statutes.
19              I have to note that -- that -- I have to say
20    that I'm unconvinced that the bellwether process set
21    forth in this agreement is, per se, unconscionable.
22    I'm not quite so sure this really limits plaintiffs'
23    right to choose their own counsel.
24              On the subject of arbitrability, Justice
25    Albin does say in the Morgan case that this has got to
```

44

```
1     be clear.  There is language in both the rules for AAA
2     or Better Business Bureau arbitration that does seem to
3     indicate that arbitrators get to decide what's
4     arbitrable and what's not.  Whether that's clear enough
5     to meet the standards established by Justice Albin, who
6     just retired, I'm -- I'm not going to get into right
7     now.
8               I'm going to have to deny the motion based on
9     the issue -- based on the fact that the agreement bars
10    treble damages.  By baring treble damages, basically,
11    you -- you eviscerate the -- the applicability of the
12    Consumer Fraud Act.
13              Treble damages, along with counsel fees,
14    that's the heart of the Consumer Fraud Act.  That's
15    what gives the act its teeth.  It's been upheld to be
16    constitutional.
17              And the purpose -- the purpose of treble
18    damages, it's intended to punish the wrongdoer and
19    deter others from engaging in unfair and deceptive
20    commercial practices.  That's -- you'll find in the
21    Supreme -- New Jersey Supreme Court cases of Furst v.
22    Einstein Moomjy, 182 N.J. 1, that's at 14, it's 2004
23    case.
24              And without -- without that, you don't have -
25    - you don't have the deterrence factor about -- about
```

45

1    unconscionable practices in the marketplace.
2              Now you can have arbitration.  You can have
3    these things arbitrated.  The courts have clearly
4    allowed that.  That's -- the Appellate Division case is
5    Gras v. Associates First Capital 346 N.J. Super. 42, an
6    Appellate Division case from 2001, certification was
7    denied by the Supreme Court.
8              And the Court found no inherent conflict
9    between arbitration and the underlying purposes of the
10   Consumer Fraud Act, noting that the plaintiffs can
11   vindicate their statutory rights in the arbitration
12   forum.  But if there's no treble damages, they're not
13   vindicating their rights under the consumer -- under
14   the Consumer Fraud Act.  It -- it just cuts the legs
15   out from -- from that -- that particular remedy.
16             And defense counsel suggested, well, the
17   arbitrator could decide whether or not this can be
18   enforced.  And I disagree.  This is not a question of
19   whether the arbitrator decides what's arbitrable.  This
20   is a question of whether or not the agreement itself is
21   unconscionable and contrary to public policy.
22             Every Superior Court judge takes an oath to
23   uphold the laws of the State of New Jersey.  I can't
24   delegate -- I can't farm that out to a AAA arbitrator.
25   That's a responsibility of this Court to determine and

46

1    not some private party.
2              And it -- so I have to find that an agreement
3    that allows a business -- a corp -- you know, a
4    business entity to immunize themselves from -- from the
5    Consumer Fraud Act through arbitration agreements to be
6    contrary to public policy.  I mean, they -- they can no
7    more do that than they can have an arbitration
8    agreement that says they're not bound by the law
9    against discrimination, they're not bound by minimum
10   wage laws.
11             Now all those things, the rights of -- of
12   consumers or their employees can all be referred to
13   arbitration, but you can't erase their rights by virtue
14   of the -- the arbitration agreement.
15             That's what makes this agreement
16   unconscionable on its face.  And, therefore, I am
17   required to deny the motion.
18             Counsel, if you'd like to file an appeal,
19   that's fine by me.  If the Appellate Division says I'm
20   wrong, no hard feelings.
21             MR. JACOBSON:  But, Your Honor, this is
22   Jeffrey Jacobson.
23             THE COURT:  No.  Counsel, that's my decision
24   and --
25             MR. JACOBSON:   No.  But, Your Honor,

47

```
 1        there's a --
 2                 THE COURT:  -- and we got to break.
 3                 MR. JACOBSON:  -- there's a sever --
 4        there's --
 5                 THE COURT:  No.  No.  No.
 6                 MR. JACOBSON:  There's a sever --
 7                 THE COURT:  What?  What do you want to say?
 8                 MR. JACOBSON:  Your Honor, there's a sever --
 9        there's a severability clause, Your Honor.
10                 THE COURT:  I'm ruling against you, Counsel.
11        I'm denying your motion.  Now what do you want to say?
12                 MR. JACOBSON:  There's a severability clause,
13        Your Honor, so you can find that that provision is
14        unconscionable, but then you have to address the
15        severability clause.
16                 Finding one provision un -- you're -- I'm not
17        -- I'm not arguing with you on the -- on the treble
18        damages provision.
19                 THE COURT:  All right.
20                 MR. JACOBSON:  But by finding that provision
21        unconscionable, you can sever that provision and refer
22        the rest of the contract to the arbitrator.
23                 MR. DeNITTIS:  You -- you can do that, Your
24        Honor.  You don't have to.  You can also find that it
25        renders the -- the arb clause completely unenforceable
```

48

```
 1        and you can deny their motion like Your Honor just did.
 2                 MR. JACOBSON:  Yes, you could.  But you would
 3        have to make that clear so when we go to the Appellate
 4        Division, we know what Your Honor decided.
 5                 THE COURT:  All right.  It's something I
 6        don't remember in your pleadings, but --
 7                 MR. JACOBSON:  Well, we could talk about the
 8        fact that -- I mean, there is a severability clause,
 9        Your Honor, and it does -- it does say that if you find
10        that something is unconscionable, you sever the rest.
11                 THE COURT:  Let me find the -- now I got to
12        find the clause.
13                          (Pause)
14                 THE COURT:  Let's see.
15                 MR. DeNITTIS:  We also -- we also cited
16        arguments on that, too, Your Honor.  We -- we cited
17        NAACP of Camden v. Foulke Management, 421 --
18                 THE COURT:  What's -- wait.  What's the --
19        let me find the -- where can I quickly find the -- the
20        agreement?  Having everything on a computer screen, it
21        makes it difficult.
22                 Counsel, where would I find that?
23                 MR. JACOBSON:  Well, I've -- I've got it up
24        on my -- up on my computer by searching for Verizon
25        customer agreement.
```

49

```
1              THE COURT:  Okay.
2              MR. JACOBSON:  It's -- it's -- it's in the
3    docket as Page 2 of --
4              THE COURT:  Is this --
5              MR. JACOBSON:  -- the documented we submitted
6    on -- attached to our -- one of our declarations on May
7    13th.
8              THE COURT:  May 13th.  Let me find that.  I
9    can find that.
10             MR. JACOBSON:  Page 2 of 124.
11             THE COURT:  May 13th.  Motion to stay case.
12   And I'm already logged in.
13             Which declaration?  The Kennedy Declaration
14   Part 1 or Part 2?
15             MR. JACOBSON:  It's page -- so I -- I --
16   separated everything when I --
17             THE COURT:  What page is it on?
18             MR. JACOBSON:  -- transported myself -- it's
19   on Page 9 --
20             THE COURT:  Okay.
21             MR. JACOBSON:  -- of the documents that were
22   submitted 11:21 p.m.
23             And I can read the Court the language.  It's
24   at the very end of the agreement.
25             THE COURT:  Oh.  Here we go.  I got the
```

50

```
1    customer agreement in front of me.
2              MR. JACOBSON:  So at the -- at the very -- at
3    the -- at the very end it reads:
4              "If any part of this agreement, including
5    anything regarding the arbitration process," and then
6    there's an except that doesn't apply, "is ruled
7    invalid, that part may be removed from this agreement."
8              THE COURT:  All right.  Let's find the
9    section --
10             MR. JACOBSON:  It's in the (inaudible)
11   paragraph of the --
12             THE COURT:  Okay.  Okay.  I see that.
13             MR. JACOBSON:  -- customer agreement.
14             THE COURT:  Treble damages.  Let me find
15   that.
16                  (Court reviewing document)
17             THE COURT:  And where do I find the thing
18   about treble damages.  Where is that at?
19             MR. JACOBSON:  So the treble damages is in --
20   I'm sorry.  The beauty of having it up this way is I
21   can search for the word treble.
22             UNIDENTIFIED SPEAKER:  It's on their Exhibit
23   A, Your Honor, of the -- in support of the reply that
24   was filed on June 10th.
25             MR. JACOBSON:  It's -- it's Page 6 of the --
```

51

1    it's page -- it's Page 5 of the agreement.  It's Page 6
2    of the exhibit.  It's under the waivers and limitations
3    of --
4              THE COURT:  Waivers and limitations --
5              MR. JACOBSON:  -- liability.
6              THE COURT:  -- liability.  Okay.
7                  (Court reviewing document)
8              THE COURT:  Well, I think I probably have to
9    strike out any damages permitted under the Consumer
10   Fraud Act are severed.
11             MR. DeNITTIS:  Judge, if I may be heard on
12   this?
13             THE COURT:  Go ahead.
14             MR. DeNITTIS:  So the contract says "may."
15   It doesn't say you have to do it.  It's still your
16   decision.
17             THE COURT:  Yeah.  I know.
18             MR. DeNITTIS:  And under the cases that we
19   cite in our papers, both NAACP of Camden v. Foulke
20   Management, 421 N.J. Super. 404, (App. Div. 2011), as
21   well as Dong Ho Lee v. Eun Kyung Park, which is an
22   unpublished LEXIS opinion at 1233, at 35, (App. Div.
23   May 27, 2015).  It's your discretion whether to either
24   strike it or --
25             THE COURT:  Yeah.  Counsel, I -- I -- I get

52

1    all that.
2              What I'm -- what I'm going to -- I am going
3    to sever this.  And if you want to file a motion for
4    reconsideration, because I'm focusing -- mostly I'm
5    focusing on the issue of consumer fraud.  Once I
6    spotted that last night when I was reading through all
7    this, that's what I tended to focus on.  And, you know,
8    if there's something that -- that I didn't really --
9    you want to take another run at this, I'll let you.
10   Okay.
11             MR. DeNITTIS:  Okay.
12             THE COURT:  And maybe you'll convince me on
13   something else.  Who knows.
14             But what I will do, because the -- the damage
15   issue -- I mean, there are certain -- the damages that
16   are permitted under the Consumer Fraud Act, not
17   necessarily -- I don't know that I can limit that to
18   direct damages.
19             So what language?  What would I use?
20             Okay.  All right.  I'm going to -- I'm
21   striking -- this is the language.
22             The limitation on damages clause is severed
23   as unconscionable to the extent that it conflicts with
24   damages that are available under the Consumer Fraud
25   Act, including, but not limited to treble damages.

53

```
1                So that's my decision.
2                So now do you want to -- you want to -- if
3     you think I gave short shrift to your arguments about
4     whether or not the arbitrability -- delegation on
5     arbitrability was sufficient, that's fine.  I'd be
6     happy to take another look at that.
7                That's my decision for today.  Have a good --
8     have a good weekend, guys.
9                MR. JACOBSON:  Thank you, Your Honor.
10               MR. DeNITTIS:  Thank you, Your Honor.
11               (Proceedings concluded at 12:47 p.m.)
12
13                      CERTIFICATION
14
15          I, Lisa Mullen, the assigned transcriber, do
16    hereby certify the foregoing transcript of proceedings
17    on CourtSmart, Index No. from 11:16 a.m. to 12:47 p.m.,
18    is prepared to the best of my ability and in full
19    compliance with the current Transcript Format for
20    Judicial Proceedings and is a true and accurate
21    compressed transcript of the proceedings, as recorded.
22        /s/  Lisa Mullen                    AD/T 413
23        Lisa Mullen                         AOC Number
24                                            07/18/2022
25                                            Date
```

**$**

**$3,000 (1)**
9:25
**$5,000 (1)**
7:6

**/**

**/s/ (1)**
53:22

**A**

**AAA (24)**
4:11,12;7:16;8:8,12;9:17;
13:13;15:15;16:9,23;27:17;
28:9,11,19,24;29:3,9;32:12,
18;35:17,17;41:24;44:1;45:24
**AAA's (2)**
21:7;35:6
**AAAcom (1)**
15:2
**ability (3)**
16:11;42:13;53:18
**able (3)**
6:18;8:10;19:15
**according (1)**
21:7
**accurate (1)**
53:20
**Achey (1)**
3:6
**act (15)**
6:25;12:3,3;27:22;41:22;
43:17;44:12,14,15;45:10,14;
46:5;51:10;52:16,25
**acting (3)**
8:19,19;29:19
**action (6)**
9:14,14,16,21;10:23;25:13
**actually (3)**
7:18;10:11;15:18
**AD/T (1)**
53:22
**addition (2)**
22:25;25:8
**address (2)**
9:5;47:14
**adhesion (2)**
11:18;25:8
**administrative (1)**
18:24
**adopted (2)**
7:20,23
**advancing (1)**
7:16
**advantage (1)**
10:7
**advent (2)**
10:18;40:12
**advertisement (1)**

19:12
**advertisements (3)**
18:10,16;19:2
**affects (1)**
23:21
**afraid (1)**
19:20
**again (14)**
4:1;6:11,11;14:8;23:25;
24:16;25:19;26:18;27:4;
29:12,14,25;37:19;39:25
**against (17)**
4:8;5:7,20;22:15;23:16,17,
20;28:14,15,17,18;31:7,11;
34:13,17;46:9;47:10
**agent (3)**
30:11,19,23
**aggrieved (1)**
10:19
**ago (3)**
17:14;27:11;40:11
**agree (7)**
4:4,7;11:21;12:1;26:2;27:5;
28:1
**agreed (1)**
13:1
**agreement (67)**
4:8,9;5:1,17;6:14,16,20;7:5;
8:24;9:3;11:11,17;15:9;
17:18;18:7,8,13,14,15,16;
19:16,19,19,24;21:13;23:3,18,
19;24:9;25:10,15;26:10,21;
28:20;30:5,5,13,15,16;31:4,
15,24;32:7,15;33:2;34:9,11;
39:7;40:1,6;41:22,23;43:21;
44:9;45:20;46:2,8,14,15;
48:20,25;49:24;50:1,4,7,13;
51:1
**agreement's (2)**
5:21,24
**agreements (7)**
4:14;5:8;12:11;19:25;
28:16;40:8;46:5
**ahead (1)**
51:13
**al (3)**
3:6;14:14;20:12
**albeit (1)**
4:18
**Albin (2)**
43:25;44:5
**allow (2)**
8:4;26:3
**allowed (4)**
19:10,11,13;45:4
**allowing (1)**
33:24
**allows (4)**
6:4;8:9;32:15;46:3
**along (1)**
44:13
**Alpert (5)**
13:19;14:14;28:14,17;

35:24
**amend (1)**
22:5
**amount (1)**
9:22
**analysis (1)**
16:15
**AOC (1)**
53:23
**apologize (1)**
33:5
**App (3)**
13:20;51:20,22
**appeal (1)**
46:18
**appealed (1)**
28:2
**Appeals (1)**
27:20
**appearance (2)**
3:10,15
**Appellate (10)**
4:18;14:12;16:19;28:8;
31:15,23;45:4,6;46:19;48:3
**applicability (1)**
44:11
**applicable (2)**
5:10;36:2
**applied (1)**
28:5
**apply (7)**
15:15,15,18;19:4;27:13;
36:12;50:6
**appreciate (1)**
40:25
**appropriate (1)**
9:6
**appropriately (1)**
6:25
**arb (7)**
13:10;15:1;26:11;36:20;
38:14,24;47:25
**arbitrability (6)**
13:1;28:25;38:14;43:24;
53:4,5
**arbitrable (2)**
44:4;45:19
**arbitrate (7)**
4:5,9;8:25;13:1;21:4,5;
37:22
**arbitrated (2)**
29:24;45:3
**arbitrating (2)**
29:13;38:4
**arbitration (80)**
3:22;5:7,9,15,21,24;7:6,12,
17;8:3,5,16;9:17,17,18,25;
10:1,2,11,19,24;11:8,20,24;
12:2,3,3,4,21,24;13:6,9;14:19;
15:12,21;16:12,17,20;17:21;
18:2,6,18;19:10,23,24;21:7;
25:3,13;26:4,15;27:22;28:16,
18,20;29:5;31:24;32:7,17;

34:1,9;35:1;36:9;37:1,13,14;
38:14;40:12;41:12,22;43:13,
17;44:2;45:2,9,11;46:5,7,13,
14;50:5
**arbitrations (5)**
11:3;19:20;32:13;39:9;42:3
**arbitrator (31)**
5:23;12:21;13:4;16:10,11,
14;24:10,25;27:6,18;28:13;
29:1,4,7,10;30:7;31:9,17;
32:1,8,8;34:6,10,14,23;41:19,
20;45:17,19,24;47:22
**arbitrators (5)**
4:13,21;5:3;9:3;44:3
**aren't (1)**
30:16
**argue (4)**
5:19;8:18;30:10;31:1
**argued (2)**
30:25;36:24
**arguing (4)**
3:20;11:7;30:19;47:17
**argument (5)**
5:6,22;7:19;10:5;20:16;
30:8;37:6;38:9
**arguments (6)**
4:25;6:6;24:1;39:3;48:16;
53:3
**around (3)**
11:6;15:17;35:9
**articulated (3)**
25:25;26:9,17
**ascertained (1)**
13:25
**aspects (1)**
13:6
**assented (1)**
14:2
**asserting (1)**
31:8
**assigned (1)**
53:15
**Associates (1)**
45:5
**attached (1)**
49:6
**attempt (2)**
10:6;37:14
**attempted (2)**
11:2,6
**attorney (6)**
20:14;23:5,22;24:24;25:2,5
**attorney's (1)**
24:25
**attorneys (1)**
15:11
**attorneys' (1)**
7:7
**authoritative (1)**
28:10
**authority (6)**
6:19;12:15,16;24:21;29:20;
38:18

**available (1)**
52:24
**Avis (3)**
14:16;28:15,18
**avoid (4)**
7:14;8:13;9:20;40:12
**award (2)**
24:10,25
**awarded (3)**
25:4,4,6
**aware (1)**
11:13

**B**

**back (8)**
7:1;8:18;13:8;36:18;37:2,
14;39:3;43:4
**Bacon (7)**
14:16,18,22;16:4;28:15,18;
35:24
**bad (1)**
6:9
**ball (1)**
29:5
**ban (1)**
34:12
**bar (3)**
31:6,18,23
**baring (1)**
44:10
**bars (4)**
17:25;23:20;24:7;44:9
**based (2)**
44:8,9
**basic (1)**
43:12
**basically (4)**
20:3;37:5,9;44:10
**basis (4)**
6:14;29:7;30:24;31:1
**batch (4)**
21:19,19;33:20,21
**batching (8)**
6:12;7:25;8:14,14;29:18,
22;32:20,24
**BBB (7)**
4:12;13:13;15:15;16:10,24;
35:17;41:17
**BBBcom (1)**
15:3
**beat (1)**
6:23
**beauty (1)**
50:20
**began (1)**
32:11
**beginning (1)**
18:2
**behalf (1)**
3:13
**belabor (1)**
39:5

**bellwether (14)**
5:25;6:4,17,24;20:17,18;
21:3,21;30:1;33:13;36:16;
37:7,20;43:20
**benefit (2)**
33:10,10
**benevolent (1)**
39:23
**best (2)**
38:18;53:18
**Better (3)**
4:11;41:11;44:2
**beyond (2)**
5:18;13:25
**big (5)**
13:15;21:15,16;32:18,22
**bill (2)**
18:22;19:11
**billing (1)**
18:5
**bills (1)**
18:20
**binding (5)**
12:16;16:2;35:12,13,14
**blanket (1)**
14:23
**block (1)**
5:11
**bologna (1)**
37:21
**both (4)**
4:12;14:19;44:1;51:19
**bought (2)**
11:19;19:14
**bound (4)**
14:1;28:6;46:8,9
**break (1)**
47:2
**brief (3)**
31:10;33:8;34:19
**briefed (1)**
22:8
**briefly (1)**
9:7;26:25
**bring (2)**
9:14;19:13
**Brown (3)**
24:16;31:11;34:17
**Budget (1)**
14:17
**Bureau (3)**
4:11;41:11;44:2
**business (6)**
3:7;4:11;41:11;44:2;46:3,4
**Butler (1)**
13:19
**buy (1)**
25:14
**buying (1)**
15:13

**C**

**cable (1)**
25:11
**California (10)**
12:17;17:13,13;22:3;27:10,
12,14;28:5;32:5;40:7
**call (2)**
5:10;30:4
**called (1)**
13:19
**Camden (2)**
48:17;51:19
**can (39)**
9:7;17:2;18:9;24:10;25:6;
26:2,5,9,25;29:6,13;30:22,23;
32:7,9;33:8,10,20,21;37:2,22;
39:23;45:2,2,10,17;46:6,7,12;
47:13,21,23,24;48:1,19;49:9,
23;50:21;52:17
**can't (17)**
10:22;14:23;19:9;21:16,19,
21;22:7,8,9,15;25:18;30:1,10;
42:8;45:23,24;46:13
**Capital (1)**
45:5
**Cardillo (1)**
23:6
**case (54)**
3:5;9:14,21;10:13;11:5;
12:4,15;13:18,21;14:3,18,22;
15:25;16:2,4,4,5,19;18:18,19;
20:4,15;21:1,19;23:7,7;24:15;
26:6,12;27:9,14,21;28:5,17,
19;31:11,12,19,21;33:15,16;
35:24;38:12;40:15,15,16,18;
41:13,16;43:25;44:23;45:4,6;
49:11
**cases (39)**
5:15;6:7,24;7:17;15:22,23,
24,25;16:1;17:23;21:3,25;
22:22;23:24;24:16;28:14,23;
29:13;32:10,13,19;33:18,25;
35:8,10,11,20;36:1,3,17;
37:25;38:16,19;40:21;42:18;
43:11,15;44:21;51:18
**cell (3)**
15:13;25:11,14
**Cellco (1)**
3:6
**certain (3)**
9:2;15:14;52:15
**certainly (2)**
16:21;38:5
**certification (2)**
45:6;53:13
**certified (1)**
10:14
**certify (1)**
53:16
**CFA (3)**
31:8;33:22;34:13
**challenge (5)**
9:1;21:14;37:2,9;38:6
**challenges (3)**

**cable (1)** — *(right column)*
4:13;21;32:6
**challenging (2)**
18:19;37:11
**change (1)**
22:9
**changed (3)**
40:9,10,11
**characterize (1)**
31:12
**charge (1)**
18:25
**charges (2)**
18:22;19:3
**charging (1)**
42:4
**check (3)**
8:11;32:18,22
**Chen (2)**
27:13;41:13
**Chen's (2)**
28:2,3
**Cherry (2)**
16:19;17:4
**choice (5)**
4:10;11:21;23:8;33:7,16
**choose (9)**
6:1,2;7:14;23:15,22;25:9,
10;40:2;43:23
**chosen (1)**
40:4
**Circuit (13)**
4:16;15:25;16:1;27:15,19,
20,24,25;28:3,6,7,10;29:8
**Circuit's (1)**
28:24
**cite (10)**
13:16;14:5,8;15:5;24:17;
28:24;35:25;38:19;41:19;
51:19
**cited (9)**
16:18;17:1;26:6;28:14;
31:11;32:19;35:11;48:15,16
**cites (2)**
16:4;38:17
**claim (10)**
5:16;8:9,22;19:9,15,16;
20:8;23:4;30:22,24
**claims (32)**
4:7;5:7,10,12;6:1,6,14,19;
7:16;8:5,16;9:1;11:10;12:12;
16:11,16;20:8,14;21:17;
22:19;23:14,23;29:23;31:8;
32:14,16;33:11,21;39:11,24;
42:2,8
**class (6)**
9:14,14,16,21;10:23;25:13
**clause (54)**
9:18;10:11;11:20;12:2,4,13,
22,25;13:5,6,7,10;15:1,8,12,
21;16:10,20;17:14,21;18:2,6,
12;20:5;22:25;24:3,15,23;
25:3,16;26:5,11,15;29:14,16;
30:4;35:1;36:9;37:10,12;

38:15,24;40:17,23;41:12,17,
24;47:9,12,15,25;48:8,12;
52:22
**clauses (7)**
10:18;14:19;16:9,15;17:5;
25:13;26:3
**clear (12)**
12:4,25;13:11;17:12;25:22;
36:6;38:13,16,20;44:1,4;48:3
**clearly (1)**
45:3
**client (1)**
20:6
**co- (1)**
41:3
**colleague (2)**
3:18;41:18
**comfortable (1)**
35:23
**coming (1)**
7:1
**commenced (1)**
3:1
**commercial (1)**
44:20
**Communication (1)**
3:8
**companies (5)**
8:1;10:17,20;32:19;40:13
**company (7)**
7:20;8:7;22:15;25:11,11;
32:21;40:9
**compel (2)**
3:22;29:5
**compelled (1)**
34:1
**compelling (1)**
5:7
**completely (1)**
47:25
**compliance (1)**
53:19
**compressed (1)**
53:21
**computer (2)**
48:20,24
**concept (1)**
43:13
**concluded (1)**
53:11
**conditions (1)**
30:14
**Conduct (2)**
23:2,17
**conflict (8)**
13:14;17:3,6;39:9,12;40:4,
5;45:8
**conflicting (1)**
16:20
**conflicts (4)**
16:18;17:6;24:24;52:23
**conscionable (1)**
12:1

**consent (1)**
11:18
**consented (1)**
4:4
**consequence (1)**
8:6
**consequential (1)**
24:12
**consider (1)**
4:17
**consistent (1)**
43:16
**consistently (1)**
6:24
**constitutional (1)**
44:16
**consumer (18)**
12:11;23:3,12;25:12;27:16;
30:10,24;34:13;44:12,14;
45:10,13,14;46:5;51:9;52:5,
16,24
**consumers (4)**
10:19,20;31:8;46:12
**contend (2)**
6:12;19:1
**contending (1)**
19:5
**continue (6)**
6:13;8:16;21:4,5;22:18;
37:22
**continuing (1)**
5:20
**contract (21)**
4:5;11:18;17:25;20:23,24;
21:2,22;25:8,23;26:7;27:16;
30:10,10,12,21;32:23;34:24;
35:13;37:20;47:22;51:14
**contracts (1)**
25:12
**contractual (1)**
30:4
**contractually (1)**
31:4
**contradictory (1)**
36:15
**contradicts (1)**
28:23
**contrary (3)**
8:20;45:21;46:6
**contrast (1)**
7:10
**controlled (2)**
27:15,21
**controls (1)**
16:3
**convince (1)**
52:12
**convoluted (1)**
25:1
**Corman (1)**
3:3
**corp (1)**
46:3

**correctly (1)**
31:13
**cost (3)**
9:16;10:4;20:2
**costly (2)**
10:25;11:4
**costs (2)**
19:23,25
**couldn't (2)**
13:17;28:6
**counsel (40)**
3:9,14,23;5:14;7:1;9:8,9;
11:16,22;13:8;14:7,8;15:24;
22:18;23:8;33:7,16;34:2;35:7,
10;36:11,14;39:10,18;40:2,8;
41:4,8;42:6,11;43:5,7,23;
44:13;45:16;46:18,23;47:10;
48:22;51:25
**country (2)**
11:7;35:9
**County (1)**
3:4
**couple (6)**
19:21;29:11;32:6;33:23;
34:19;35:11
**course (1)**
20:18
**COURT (128)**
3:2,4,14,21;4:17;5:2,5;6:19;
7:1;9:4,8,15;10:15,20,23;
11:12;12:14,19,21,22,23,24;
13:7,8,10,20;14:5,7,11,13;
15:14;16:2,13,22;17:7,7,13,
15;22:10;23:25;24:11,14,20;
26:12,19,24;27:2,20,22;29:2,
9,17;31:14,17,20;32:14,22;
33:2,3,24;34:2,5,10,15,17,20;
35:12,13,18;36:18,19,19,21,
24;37:10,12;38:6,13,15;40:7,
22;41:7,8;42:6,10,14,17,23;
43:2,7,10,14;44:21;45:7,8,22,
25;46:23;47:2,5,7,10,19;48:5,
11,14,18;49:1,4,8,11,17,20,23,
25;50:8,12,14,16,17;51:4,6,7,
8,13,17,25;52:12
**Court's (1)**
29:20
**courts (6)**
4:20;11:2,6;34:24;36:25;
45:3
**CourtSmart (1)**
53:17
**covered (3)**
4:8;9:1;16:17
**cows (1)**
29:14
**crazy (1)**
24:6
**cumbersome (1)**
20:12
**current (1)**
53:19
**customer (24)**

4:9,14,25;5:8,17,24;6:16;
7:5,6,22;18:4,8,13,14,15,16;
19:16;28:22;30:13,19,21;
48:25;50:1,13
**customers (2)**
4:10;17:25
**cuts (1)**
45:14

---

**D**

**damage (1)**
52:14
**damages (27)**
24:8,10,12,13,13,15;31:5,7,
18,24;34:6,12;44:10,10,13,18;
45:12;47:18;50:14,18,19;
51:9;52:15,18,22,24,25
**Dan (1)**
41:3
**Date (1)**
53:25
**dead (1)**
22:1
**deal (3)**
14:19;21:15,16
**dealing (1)**
8:2
**deals (2)**
14:18;18:5
**dealt (2)**
28:16;40:16
**deceptive (1)**
44:19
**decide (32)**
4:21;11:16,24;13:10;15:14;
16:10,11,12,14;17:6,7;20:6,
13,15;25:22;26:14;27:6;
35:19;36:1,19,20,23,25;37:13,
17;38:1,13,24;39:15;41:20;
44:3;45:17
**decided (15)**
13:3;17:9,14,15;22:14,22;
23:5,14,15;27:10,14;28:12;
30:7;37:25;48:4
**decides (8)**
12:21,24;13:18;27:6;29:2;
34:23,25;45:19
**decision (14)**
14:4;26:1;28:9,11;29:8,8;
31:25;35:2;40:16;42:24;
46:23;51:16;53:1,7
**decisions (5)**
4:19;11:23;27:22;32:9;
35:15
**decisive (1)**
4:24
**Declaration (2)**
49:13,13
**declarations (1)**
49:6
**defendant (4)**
20:9;37:24;38:17;39:9

**defendant's (2)**
  3:21;36:15
**defendants (12)**
  3:6;9:19,20;10:1,9,25;11:2;
  19:19;22:3;36:22;39:14,15
**defendants' (3)**
  3:14;20:16;43:7
**Defense (12)**
  11:16,22;13:7;15:24;22:17;
  35:7,10;36:11,14;39:18;40:8;
  45:16
**defy (1)**
  41:15
**delegate (5)**
  4:13;27:17;28:25;29:10;
  45:24
**delegated (1)**
  31:16
**delegates (1)**
  29:3
**delegation (12)**
  4:20;12:13;15:8,18,20;
  16:21;17:5,17;41:10,12,17;
  53:4
**denied (1)**
  45:7
**DeNITTIS (31)**
  3:11,12,12;9:11;14:6,9,12,
  14;22:11;23:11;27:7,9,11;
  28:14;29:4,6,12;30:3;31:3;
  33:9;34:18,21;41:4;43:6;
  47:23;48:15;51:11,14,18;
  52:11;53:10
**DeNittis's (2)**
  30:8,15
**deny (3)**
  44:8;46:17;48:1
**denying (1)**
  47:11
**described (1)**
  13:24
**despite (1)**
  10:4
**deter (1)**
  44:19
**determination (1)**
  12:7
**determine (4)**
  16:16;34:25;38:20;45:25
**determined (2)**
  12:14;31:15
**determines (1)**
  38:14
**deterrence (1)**
  44:25
**didn't (7)**
  11:17;13:16,17;25:10;
  28:17;32:23;52:8
**difference (1)**
  7:24
**different (3)**
  32:5;39:5;41:24
**difficult (2)**

**6:12;48:21**
**dig (1)**
  15:17
**direct (2)**
  31:5;52:18
**directly (1)**
  15:22
**disagree (3)**
  8:24;37:18;45:18
**discretion (1)**
  51:23
**discrimination (1)**
  46:9
**disingenuous (1)**
  5:18
**disingenuously (1)**
  8:19
**dispositive (1)**
  27:23
**dispute (2)**
  8:25;18:3
**disputes (6)**
  4:6;8:25;18:5,7,8;41:20
**distinguishable (1)**
  35:16
**District (1)**
  4:16
**Div (3)**
  13:20;51:20,22
**Division (9)**
  4:18;14:12;16:19;28:8;
  31:15;45:4,6;46:19;48:4
**Division's (1)**
  31:23
**DNJ (1)**
  14:17
**docket (1)**
  49:3
**document (5)**
  13:23,24;36:4;50:16;51:7
**documented (1)**
  49:5
**documents (2)**
  18:10;49:21
**Dodge (2)**
  16:19;17:5
**doesn't (14)**
  6:25;15:3;18:13,14,15,16;
  19:16;22:12;24:5;31:1;34:22;
  36:18;50:6;51:15
**dollars (2)**
  7:17;8:8
**don't (31)**
  10:10,22;11:1,10;13:9;
  19:22;21:23;22:6,24;23:13;
  26:18;28:1;30:8,12;36:23;
  37:5,12,13,18;38:3,8,8,9;
  39:15;40:15;42:2;44:24,25;
  47:24;48:6;52:17
**Dong (2)**
  26:6;51:21
**doubt (2)**
  13:25;36:7

**down (3)**
  21:18,19;35:25
**drafted (2)**
  9:19;10:10
**drafting (1)**
  10:18
**Drinker (1)**
  3:17

## E

**earned (1)**
  7:15
**easily (1)**
  32:8
**easy (1)**
  36:11
**effectively (1)**
  5:11
**egregious (5)**
  19:18;23:3;24:3;39:6;40:23
**eight- (1)**
  11:19
**eight-page (3)**
  13:5;15:11,20
**Einstein (1)**
  44:22
**either (5)**
  4:10;6:12;8:10;20:13;21:3;
  28:17;36:4;37:8,9,18;51:23
**else (2)**
  17:16;52:13
**e-mail (1)**
  7:21
**Emanuel (1)**
  3:18
**emphasized (1)**
  40:8
**employees (1)**
  46:12
**end (3)**
  32:11;49:24;50:3
**enforce (5)**
  6:20;11:8;22:5,6;39:19
**enforceability (4)**
  4:15;9:2;34:8;36:20
**enforceable (9)**
  11:4;12:5;13:22;16:15;
  24:7;31:7,18,25;34:12
**enforced (3)**
  13:7;14:25;45:18
**engaging (1)**
  44:19
**enough (3)**
  28:10,11;44:4
**enter (2)**
  3:9,15
**entire (4)**
  24:2;26:11,20;41:16
**entity (1)**
  46:4
**erase (1)**
  46:13

**established (1)**
  44:5
**et (1)**
  3:6
**Eun (1)**
  51:21
**even (17)**
  15:20,21,25;16:7,24;17:2,
  22;21:8,11,17,19;22:6,10;
  35:14;37:16;39:8;40:1
**evidence (4)**
  12:25;18:1,9;23:20
**eviscerate (1)**
  44:11
**exact (5)**
  12:15;13:18;17:14;40:17,
  17
**exactly (2)**
  14:24;34:16
**Excellent (1)**
  41:9
**except (2)**
  27:13;50:6
**execute (1)**
  30:21
**Exhibit (2)**
  50:22;51:2
**existence (1)**
  8:24
**expecting (1)**
  15:10
**expense (1)**
  37:16
**experience (1)**
  33:10
**expire (1)**
  22:1
**explicit (1)**
  29:19
**explicitly (1)**
  6:16
**exposure (1)**
  22:21
**extensively (1)**
  25:5
**extent (2)**
  24:6;52:23
**extortion (1)**
  10:6
**extrinsic (3)**
  17:25;18:9;23:20

## F

**FAA (4)**
  27:23;34:22,24;35:3
**face (2)**
  12:12;46:16
**faced (2)**
  9:18;39:16
**fact (4)**
  33:11;41:15;44:9;48:8
**factor (1)**

**44:25**
**facts (2)**
4:2,24
**Faegre (1)**
3:17
**fair (1)**
6:7
**falls (2)**
41:21,23
**familiar (1)**
40:10
**farm (1)**
45:24
**favor (1)**
40:19
**fearful (1)**
40:13
**Federal (15)**
4:16;12:2,3,14;16:1;18:22;
24:1;26:19;27:19,22,22;28:8;
35:11,19;43:16
**fee (4)**
9:15;19:1;24:25;42:5
**feel (1)**
10:16
**feelings (1)**
46:20
**fees (10)**
7:7,17;9:16;10:12;18:22;
24:24,25;25:4,5;44:13
**ferret (1)**
37:1
**few (2)**
27:10;42:17
**fights (1)**
5:2
**file (8)**
10:23;13:17;21:17;32:12,
13;42:2;46:18;52:3
**filed (6)**
8:5,9;11:9;21:20;32:12;
50:24
**filing (3)**
8:6;9:15;10:12
**find (25)**
15:8,18;16:25;17:2;26:10,
16;36:10,10,14;41:15;44:20;
46:2;47:13,24;48:9,11,12,19,
19,22;49:8,9;50:8,14,17
**Finding (2)**
47:16,20
**finds (1)**
34:11
**fine (3)**
36:16;46:19;53:5
**firm (3)**
20:6,6;23:16
**first (8)**
7:13;9:12;20:11;21:17;
30:13;33:20;35:7;45:5
**five (12)**
6:2,2;23:1;39:11,13,14,15;
40:2,3,3,4;42:6

**flat (1)**
19:2
**focus (1)**
52:7
**focusing (2)**
52:4,5
**follow (1)**
25:3
**followed (1)**
14:16
**following (1)**
5:21
**force (1)**
8:16
**forcing (1)**
40:1
**foregoing (1)**
53:16
**Format (1)**
53:19
**formed (1)**
34:11
**forth (5)**
12:8,9;14:20;17:19;43:21
**forum (1)**
45:12
**forward (8)**
6:1;10:13;17:23;20:8;
32:16,25;33:18;37:24
**foster (1)**
6:5
**Foulke (2)**
48:17;51:19
**found (6)**
24:1;26:20;40:18;41:13,16;
45:8
**four (1)**
13:2
**frankly (1)**
26:9
**fraud (10)**
30:24;44:12,14;45:10,14;
46:5;51:10;52:5,16,24
**fraudulent (1)**
30:22
**fraudulently (1)**
30:20
**front (2)**
5:3;50:1
**frustrated (1)**
10:20
**FSupp (1)**
14:17
**full (2)**
6:19;53:18
**function (1)**
12:6
**Furst (1)**
44:21
**future (1)**
42:5

**G**

**game (1)**
29:5
**gate (1)**
17:21
**gatekeeper (1)**
12:7
**gave (2)**
19:2;53:3
**generally (1)**
42:12
**Gentlemen (1)**
42:17
**gets (2)**
7:6;23:3;33:20;34:22
**gives (4)**
6:19;16:22,23;44:15
**goal (4)**
6:5;7:12;8:20;29:17
**goals (1)**
6:4
**goes (11)**
6:7,9,11;8:15;19:10;21:1;
29:15,15;33:1,14,23
**Goldberg (1)**
13:19
**Good (5)**
3:11,16;6:8;53:7,8
**government (2)**
18:22,25
**governs (1)**
18:8
**Gras (1)**
45:5
**gratuitous (1)**
22:17
**gratuitously (1)**
20:25
**Group (1)**
14:17
**guess (2)**
23:16;24:14
**guys (1)**
53:8
**gym (1)**
25:12

**H**

**hac (2)**
3:19;41:4
**hand (1)**
6:9
**handed (1)**
12:11
**happen (6)**
7:4;8:23;21:22,23;37:23,24
**happened (1)**
7:3
**happening (1)**
10:25

**happens (3)**
7:21;30:2;32:10
**happy (3)**
5:1;9:4;53:6
**hard (2)**
25:1;46:20
**hasn't (1)**
30:25
**Hattis (7)**
33:9;41:2,3,9;42:7,12,16
**haven't (4)**
7:2,15;29:22;40:4
**he's (1)**
32:4
**hear (2)**
4:21;9:6
**heard (6)**
21:17,25;23:24;37:21;40:7;
51:11
**hearing (1)**
20:4
**heart (1)**
44:14
**held (4)**
4:19;31:14,25;35:9
**here's (1)**
6:15
**hereby (1)**
53:16
**hey (2)**
8:10;24:19
**highlighted (1)**
42:19
**Hill (2)**
16:19;17:4
**hire (3)**
20:6;33:8,9
**Ho (2)**
26:6;51:21
**hold (1)**
29:9
**holding (1)**
28:24
**home (1)**
29:14
**honest (1)**
19:7
**Honor (65)**
3:11,16,25;4:23;5:4,18;
6:15;9:11;11:15,23,25;12:16;
13:3;15:7;16:7;17:10;18:12;
23:25;24:18,21;25:22;26:1,1,
9,11,13,14,23;27:1,4,8,12;
28:13;32:11;34:18,21;35:2,
10,24,25;36:8,9,23;37:17;
38:7,20;39:12;40:18,25;41:2;
42:22;43:9;46:21,25;47:8,9,
13,24;48:1,4,9,16;50:23;53:9,
10
**Honor's (1)**
12:6
**hope (1)**
22:16

**hostility (1)**
43:13
**Hundred (2)**
22:22,23

# I

**I'd (4)**
4:23;9:12;17:18;53:5
**I'll (10)**
3:19;11:25;13:14;30:4;
32:11;34:19;42:19,23,24;52:9
**I'm (28)**
3:17;5:1;9:4;12:9;25:15,15;
39:23;41:3,3,8;43:20,22;44:6,
6,8;46:19;47:10,11,16,17;
49:12;50:20;52:2,2,4,4,20,20
**I've (4)**
34:2;43:10;48:23,23
**idea (4)**
5:8;29:12,25;33:6
**identical (2)**
7:23;12:17
**identified (1)**
36:6
**identify (1)**
36:12
**identity (1)**
13:25
**ifs (1)**
7:2
**immediately (1)**
32:17
**immunize (1)**
46:4
**important (4)**
4:2;6:15;7:13;23:9
**importantly (1)**
16:7
**impose (1)**
19:6
**imposed (2)**
18:23;19:7
**inaudible (5)**
17:21;37:9,10;41:1;50:10
**incentive (6)**
7:8,10;20:20;22:18,19,20
**included (2)**
16:12;33:12
**including (2)**
50:4;52:25
**incorporate (1)**
14:21
**Incorporated (4)**
3:8;13:24;14:2;28:21
**incorporates (2)**
4:10,11
**incorporation (9)**
13:22;16:6;28:9,11,19;29:3,
9;35:7;36:4
**Index (1)**
53:17
**indicate (1)**

**indiscernible (1)**
19:21
**induced (1)**
30:20
**inducement (1)**
30:22
**inherent (1)**
45:8
**injunctive (2)**
24:13;42:3
**instances (3)**
13:6;15:14;35:18
**integration (1)**
30:4
**intended (1)**
44:18
**interest (1)**
39:12
**interesting (2)**
15:19;36:14
**interfering (1)**
33:15
**interpreting (1)**
27:23
**into (3)**
8:16;34:1;44:6
**invalid (3)**
16:6;17:1;50:7
**invite (1)**
15:7
**invocation (1)**
29:20
**involve (2)**
28:18,19
**isn't (4)**
10:16,16;17:9;38:22
**issue (24)**
4:17;12:15;13:19;16:14,21;
17:17;26:15;27:20;29:21;
30:6;34:5,23;35:5,21;36:19,
25;37:11;39:17;40:17;41:10,
21;44:9;52:5,15
**issues (5)**
13:15;17:22,23;29:10;
38:25
**It's (77)**
3:2;5:5,12;6:4;7:9,13;8:22;
10:13,14;11:4,18;12:23;
13:11;14:9,14;15:21;16:2,16;
18:4,4,25;20:18;21:8,24,25;
22:12,24;23:9,20,21;25:8,22;
26:10;27:13;28:3,4;30:2;
31:20;32:4;33:3,16,19;35:3;
36:11,24;37:8;38:15,15,21;
39:1,21,21;40:5,15,20;43:2,
13;44:15,18,22;48:5;49:2,2,2,
15,18,23;50:10,22,25,25;51:1,
1,1,2,15,23

# J

**jacket (1)**

**28:21**
**Jacobs (1)**
23:7
**JACOBSON (35)**
3:16,17,25;4:1;26:25;27:3,
3;34:4,7,16;43:9;46:21,22,25;
47:3,6,8,12,20;48:2,7,23;49:2,
5,10,15,18,21;50:2,10,13,19,
25;51:5;53:9
**Jeffrey (5)**
3:6,17,25;27:3;46:22
**Jersey (16)**
4:17;9:24;12:18,19;16:2;
29:8;31:7;33:19,20;34:13;
38:13,19;43:14,17;44:21;
45:23
**joined (1)**
3:18
**Judge (8)**
3:3;24:1;27:13;28:1,2;
41:13;45:22;51:11
**Judicial (1)**
53:20
**July (1)**
3:3
**June (1)**
50:24
**Justice (2)**
43:24;44:5

# K

**keep (5)**
7:9,11;29:13,16;38:4
**Kennedy (1)**
49:13
**kind (2)**
4:13;37:1
**knowledge (1)**
14:2
**knows (2)**
7:20;52:13
**Kyung (1)**
51:21

# L

**L-160-22 (2)**
3:5;43:4
**language (4)**
44:1;49:23;52:19,21
**large (1)**
11:9
**last (5)**
7:23;19:21;26:1;33:5;52:6
**late (1)**
33:19
**later (4)**
18:6;24:11;33:2,24
**laughed (1)**
5:23
**law (11)**
12:4;16:3;20:6,6;23:15;

**34:24;35:13,13;38:12;40:14;
46:8**
**laws (2)**
45:23;46:10
**lawyers (1)**
8:9
**leap (1)**
26:19
**leave (1)**
27:24
**leaves (1)**
11:22
**Lee (1)**
51:21
**left (1)**
27:15
**legs (1)**
45:14
**length (1)**
39:1
**less (1)**
17:14
**let's (6)**
12:13;21:9;33:13,14;48:14;
50:8
**letting (1)**
6:6
**Lev (3)**
3:18;42:21,25
**LEXIS (1)**
51:22
**liability (3)**
39:21;51:5,6
**lie (2)**
19:1,5
**likelihood (1)**
7:18
**likely (1)**
5:5
**limit (1)**
52:17
**limitation (3)**
5:9;22:1;52:22
**limitations (5)**
5:13,19;21:15;22:6,7,12;
39:20;51:2,4
**limited (1)**
52:25
**limiting (2)**
24:15;25:5
**limits (1)**
43:22
**line (4)**
42:21,23;43:5,8
**link (1)**
15:3
**Lisa (3)**
53:15,22,23
**list (1)**
18:24
**literally (1)**
22:2
**litigate (1)**

12:12
**litigating (1)**
22:19
**litigation (2)**
22:9;23:12
**little (2)**
22:21;43:3
**logged (1)**
49:12
**long (2)**
20:19;40:11
**look (15)**
15:1;16:3,4,9;17:4;21:20;
34:24;36:8;38:19;39:2,3,25;
42:18,19;53:6
**looked (2)**
27:20;43:11
**looking (1)**
14:24
**lose (3)**
19:15,15;20:21
**loses (1)**
6:10
**losing (2)**
7:9,11
**lost (1)**
11:5
**lot (2)**
7:2;33:11

## M

**MacClelland (6)**
12:14;17:11;24:1;27:10;
40:18;41:13
**main (3)**
5:6;13:2;27:5
**makes (7)**
12:4;17:1;23:18;35:8;
36:11;46:15;48:21
**making (2)**
4:14;33:17
**Management (2)**
48:17;51:20
**mandate (1)**
34:22
**mandating (1)**
35:3
**many (2)**
21:20;33:8
**Marina (1)**
3:18
**marketplace (1)**
45:1
**mass (17)**
5:8,21,24;6:5,14;7:12;8:2;
9:21;10:19,23;11:3;13:9;
19:20;20:3;33:12;36:20;
40:12
**matter (1)**
22:12
**may (22)**
9:5;13:25;23:14;24:12,25;

25:4,4;27:2;31:5,6,6,6,22;
34:18,20;49:6,8,11;50:7;
51:11,14,23
**maybe (3)**
6:10;29:15;52:12
**mean (11)**
10:10;15:19;21:4;22:24;
23:25;25:17;38:8;39:21;46:6;
48:8;52:15
**means (4)**
14:20;21:5,6;29:5
**meet (1)**
44:5
**membership (1)**
25:12
**mention (2)**
10:15;39:8
**merits (4)**
6:21,23;7:16;11:15
**Microsoft (4)**
7:22,22,24;40:9
**Microsoft's (1)**
7:25
**Middlesex (1)**
3:3
**midstream (1)**
22:9
**might (1)**
20:25
**millions (1)**
7:17
**minimum (2)**
7:7;46:9
**minute (1)**
32:21
**minutes (2)**
42:18,20
**moment (1)**
13:14
**money (1)**
6:8
**month (1)**
17:14
**months (2)**
21:8,10
**Moomjy (1)**
44:22
**more (7)**
9:5;16:7;20:7,20;40:21;
43:3;46:7
**Morgan (5)**
12:19;31:11,14;34:17;
43:25
**morning (3)**
3:11,16;7:22
**most (3)**
4:2;12:10;25:11
**mostly (1)**
52:4
**motion (13)**
3:19,20,24;4:3;10:12;11:16,
24;44:8;46:17;47:11;48:1;
49:11;52:3

**move (1)**
33:18
**much (3)**
11:20;38:1;42:14
**Mullen (3)**
53:15,22,23
**multimillion-dollar (1)**
8:11
**multiple (2)**
4:18;25:3
**must (4)**
12:5;13:24;14:1;18:6
**myself (1)**
49:18

## N

**NAACP (2)**
48:17;51:19
**nation (1)**
41:16
**navigate (3)**
15:6,13,17
**necessarily (1)**
52:17
**need (1)**
19:17
**neither (1)**
28:23
**New (17)**
4:17;9:24;12:18,19;16:2;
20:3;29:8;31:7;33:19,20;
34:13;38:13,19;43:14,17;
44:21;45:23
**next (2)**
3:5;30:3
**nice (2)**
17:10;20:23
**night (2)**
7:23;52:6
**Ninth (3)**
27:15;28:3,6
**NJ (7)**
12:19;13:19;14:9;31:12;
44:22;45:5;51:20
**note (1)**
43:19
**notices (1)**
5:16
**noting (1)**
45:10
**notion (1)**
35:21
**number (7)**
11:10;13:5;25:21;35:2,15,
16;53:23

## O

**oath (1)**
45:22
**obligation (1)**
8:6

**occasions (1)**
4:18
**off (4)**
9:12;20:4;29:7;33:24
**office (1)**
25:2
**once (7)**
8:5;17:10;29:2;31:14;
34:10,10;52:5
**one (19)**
6:8;11:23;12:10;13:5;
19:22;20:4,4;24:9;25:21;
26:14,19;29:23;32:25;33:5;
35:3,15;43:16;47:16;49:6
**onerous (1)**
21:13
**one-sided (1)**
17:19
**one-two (1)**
5:11
**only (13)**
7:20,23;8:5;12:10;23:2;
27:13;35:10,17;38:23;40:14,
15,16;41:18
**open (2)**
27:15,24
**opined (1)**
31:17
**opinion (3)**
28:2,3;51:22
**Optimum (1)**
40:10
**orally (1)**
30:11
**order (2)**
3:22;13:21
**Osefchen (2)**
3:12;23:11
**others (1)**
44:19
**otherwise (2)**
30:25;31:2
**out (22)**
11:22;13:8;17:7,21;20:3;
21:6;23:3;24:22,23;25:7,16,
17;26:5,11;37:1,8,15;39:20;
43:12;45:15,24;51:9
**over (4)**
19:21;20:14;22:23;23:12
**overbearing (1)**
17:24
**over-heavy (1)**
12:11
**own (2)**
21:7;43:23

## P

**page (10)**
11:20;49:3,10,15,17,19;
50:25;51:1,1,1
**papers (7)**
12:9;13:17;17:20;25:25;

39:4;41:20;51:19
**paragraph (1)**
50:11
**Park (1)**
51:21
**part (12)**
6:15,20;8:7;19:5;30:11,14,
16;43:13;49:14,14;50:4,7
**particular (2)**
41:21;45:15
**parties (4)**
6:6,18;13:1;37:22
**parties' (1)**
41:22
**Partnership (1)**
3:7
**party (5)**
11:13;14:1;37:8,9;46:1
**passed (1)**
18:24
**patience (1)**
40:25
**Pause (1)**
48:13
**pay (5)**
8:8;18:21;19:22,24;20:2
**paying (1)**
7:16
**pending (2)**
3:19;41:5
**people (27)**
5:14,20;9:22,24,24;10:3,14,
23;11:9,17;12:1;18:17,20;
19:2,7,8,14;20:4;21:6,20;
22:1;23:10,23;25:9;33:6,8,17
**people's (3)**
23:21;24:20;33:16
**per (2)**
20:5;43:21
**period (1)**
5:19
**permeated (2)**
26:7,10
**permission (1)**
41:6
**permit (1)**
10:13
**permitted (2)**
51:9;52:16
**person (9)**
9:25;15:5;16:25;20:12;
23:7;24:11,12;33:19,20
**persons (3)**
9:24;10:3;20:7
**persuasive (3)**
12:15;24:2;38:18
**phenomenon (1)**
19:21
**phone (4)**
15:13;25:11,14,18
**phones (1)**
11:19
**pick (6)**

21:5;23:5;39:11,13,14,14
**picked (2)**
20:9,9
**picking (2)**
20:4;39:8
**pity (2)**
10:17;11:13
**plaintiff (2)**
20:10,17
**Plaintiffs (22)**
3:5,13;4:4,14;5:6,11;6:1,8,
21,22;7:11,15;8:18;9:2,6,13;
10:7;20:22;21:16;22:15;26:2;
45:10
**plaintiffs' (11)**
3:9;4:24;5:10,14;7:19;9:9;
31:10;39:10;40:1;43:5,22
**plan (2)**
19:6,14
**pleadings (1)**
48:6
**please (2)**
3:9,14
**plus (1)**
7:7
**pm (5)**
43:1,1;49:22;53:11,17
**point (6)**
14:22;15:22;16:5;39:4;
42:2,10
**pointed (2)**
13:8;31:4
**points (4)**
29:6,11;34:19;39:5
**policy (5)**
17:22;23:16,21;45:21;46:6
**poorly (1)**
8:15
**portion (2)**
13:10,11
**portions (4)**
16:22,23,24;19:18
**position (4)**
8:2,8;20:16;36:15
**potentially (2)**
23:4,24
**practices (2)**
44:20;45:1
**precedent (1)**
28:7
**preclude (4)**
22:19;31:5;33:3;39:24
**precluded (1)**
39:11
**precludes (1)**
23:23
**predict (1)**
21:1
**prepared (1)**
53:18
**presented (3)**
29:22;32:8;35:19
**presumed (1)**

38:15
**presumption (2)**
12:18,24
**pretty (1)**
38:1
**preventing (1)**
20:3
**price (1)**
19:2
**pricing (2)**
18:14;30:16
**primary (1)**
6:5
**Prince (2)**
3:12;23:12
**private (1)**
46:1
**pro (2)**
3:19;41:4
**probably (1)**
51:8
**problem (3)**
8:3;18:12;22:4
**procedurally (1)**
19:25
**proceed (2)**
6:17;7:18
**Proceedings (5)**
3:1;53:11,16,20,21
**process (32)**
5:25;6:3,4,13,17;7:7,25;
8:14,15,20;10:8,24;20:8,12,
17,18;21:3,21;29:18,23;30:1;
32:21,24;33:13;36:16;37:7,
20;39:8,14;40:13;43:20;50:5
**product (1)**
18:5
**Professional (2)**
23:2,17
**profit (2)**
19:6,6
**proper (1)**
13:22
**prove (4)**
6:23;18:17;19:9,16
**provide (1)**
32:24
**provided (1)**
5:16
**provides (2)**
5:25;29:17
**provision (15)**
5:25;7:13,20,23;13:9;30:9,
18,23;31:1,3;47:13,16,18,20,
21
**provisions (7)**
4:20;5:9,21;9:3;24:4;32:20;
33:24
**public (5)**
17:22;23:16,21;45:21;46:6
**published (4)**
14:4;15:23;35:15;40:16
**punch (1)**

5:11
**punish (1)**
44:18
**punitive (1)**
24:13
**purpose (3)**
21:9;44:17,17
**purposes (1)**
45:9
**pursue (1)**
4:8
**pursuing (2)**
5:12;19:22
**put (1)**
12:9

## Q

**quarter (1)**
3:2
**quickly (1)**
48:19
**Quinn (9)**
3:18;13:19;14:15;16:4,5;
17:2;28:15,17;35:24
**quite (3)**
25:5;28:16;43:22
**quote (1)**
6:17

## R

**raised (2)**
27:7;29:4
**raises (1)**
29:12
**rather (1)**
6:13
**read (4)**
15:12;25:2;37:19;49:23
**reading (2)**
35:24;52:6
**reads (1)**
50:3
**real (1)**
26:18
**really (17)**
10:8;11:7;12:10;13:11,15;
17:24,24;25:1,5;28:12;38:9,
11;39:6;40:22;43:12,22;52:8
**reason (11)**
7:3;10:16,17;20:19;24:7,18,
21,23;25:6,19;27:13
**reasons (7)**
12:8;13:2;17:20;25:21,24;
26:8,13,17,22
**received (1)**
28:22
**recent (1)**
40:12
**Recess (1)**
43:1
**reconsideration (1)**

52:4
**record (1)**
43:4
**recorded (1)**
53:21
**refer (2)**
14:23;47:21
**reference (6)**
4:19;13:23;14:21;15:2;
27:16;36:3
**referenced (2)**
13:11;35:7
**references (1)**
13:13
**referred (1)**
46:12
**referring (3)**
15:24;31:22;35:5
**refuse (1)**
40:4
**regard (3)**
4:25;41:10;42:1
**regarding (1)**
50:5
**relevant (2)**
4:2;7:18
**relied (1)**
18:9
**relief (3)**
7:2;24:13;42:4
**rely (2)**
19:11,12
**remedy (1)**
45:15
**remember (1)**
48:6
**removed (1)**
50:7
**renders (1)**
47:25
**rental (1)**
28:21
**rep (1)**
18:4
**reply (4)**
9:7;26:25;33:8;50:23
**reportable (1)**
40:14
**represent (1)**
9:23
**representations (1)**
18:15
**representatives (1)**
18:11
**represented (1)**
5:14
**require (2)**
4:20;10:22
**required (1)**
46:17
**requires (1)**
5:17
**requiring (2)**

4:5,5
**reserve (1)**
21:14
**resolution (4)**
6:5;8:21;29:18;33:12
**resolve (3)**
6:14,18;43:15
**respect (1)**
5:13
**respectfully (3)**
26:14,16,23
**respond (2)**
34:19;38:11
**response (2)**
6:25;29:11
**responsibility (1)**
45:25
**rest (3)**
35:23;47:22;48:10
**restricting (1)**
24:19
**restriction (1)**
36:21
**results (1)**
37:14
**retired (1)**
44:6
**review (2)**
37:3;38:7
**reviewing (2)**
50:16;51:7
**ridiculous (2)**
10:8;22:24
**right (31)**
3:2;6:21,22;9:9;11:17;
14:22;15:3;16:5;21:2,14;23:8,
21;25:9,10;26:24;30:2;31:6;
36:20,22;37:3,12,17;42:15;
43:2,10,23;44:6;47:19;48:5;
50:8;52:20
**rights (5)**
24:20;45:11,13;46:11,13
**ripe (1)**
8:23
**roadmap (1)**
17:10
**Rockel (2)**
16:19;17:4
**role (2)**
29:17;33:1
**Rule (3)**
23:1,6,9
**ruled (2)**
24:2;50:6
**rules (24)**
4:12,12,19;13:13;15:3,4,15,
15,18;16:25;23:1,17;27:17;
28:9,11,19,24;29:3,9;35:6;
36:12;41:12,17;44:1
**ruling (1)**
47:10
**run (2)**
5:20;52:9

**S**

**sales (2)**
18:4,11
**same (6)**
8:3;17:11,12;24:10;27:12;
28:5
**sampling (1)**
6:7
**Sanford (3)**
24:16;31:11;34:17
**saw (1)**
22:4
**saying (5)**
28:9,11;37:6,12;43:12
**screen (1)**
48:20
**se (1)**
43:21
**search (1)**
50:21
**searching (1)**
48:24
**second (2)**
7:12;33:21
**seconds (2)**
41:6;42:6
**section (2)**
24:9;50:9
**seeking (1)**
7:1
**seem (1)**
44:2
**seems (1)**
27:5
**sell (1)**
25:18
**sense (1)**
8:4
**sentence (1)**
30:13
**separate (1)**
13:23
**separated (1)**
49:16
**series (1)**
5:25
**service (2)**
9:17;30:14
**set (4)**
12:8;14:20;17:19;43:20
**settle (11)**
8:10;20:21;21:3,23;22:17,
20,23;37:22;38:1,3;39:15
**settled (1)**
40:14
**settlement (1)**
7:15
**sever (7)**
26:3;47:3,6,8,21;48:10;52:3
**severability (4)**
47:9,12,15;48:8

**several (3)**
11:2;13:6;17:20
**severed (2)**
51:10;52:22
**severing (1)**
26:20
**shifting (1)**
25:1
**short (1)**
53:3
**shortly (1)**
33:18
**shouldn't (1)**
32:22
**shrift (1)**
53:3
**side (3)**
6:10,12;8:10
**signed (1)**
11:21
**signing (1)**
25:15
**simply (4)**
28:4;29:21;30:16;38:22
**single (3)**
11:5;29:23;41:15
**site (1)**
15:6
**situation (2)**
7:14;29:21
**small (3)**
32:14;42:2,8
**someone (3)**
15:10;21:18;36:18
**somewhat (1)**
10:8
**sorry (4)**
25:18;33:4;41:3;50:20
**sound (3)**
33:24;35:8;39:22
**sounds (1)**
20:23
**speak (2)**
39:5;41:5
**SPEAKER (1)**
50:22
**specific (2)**
14:24;36:5
**specifically (2)**
14:18;17:1
**spotted (1)**
52:6
**standard (9)**
12:17,17,20;17:11,12;
27:11,12;28:5;32:5
**standards (2)**
35:6;44:5
**Stanford (1)**
12:19
**start (2)**
9:12;43:12
**started (1)**
29:22

**state (3)**
34:24;35:13;45:23
**stated (2)**
8:20;29:17
**statement (3)**
13:12;30:15;31:23
**statements (1)**
18:10
**states (2)**
9:25;16:20
**statute (7)**
5:13;21:15,25;22:5,7,12;
39:19
**statutes (2)**
5:9;43:18
**statutory (2)**
30:24;45:11
**stay (6)**
3:22;26:4,12;42:21,23;
49:11
**Stephen (1)**
3:12
**steps (1)**
37:17
**Steve (1)**
41:4
**stick (1)**
20:13
**still (1)**
51:15
**stop (3)**
24:5;42:4,4
**stopping (1)**
33:6
**stops (2)**
6:25;30:18
**streamlined (1)**
21:9
**strike (2)**
51:9,24
**striking (1)**
52:21
**subject (1)**
43:24
**submit (10)**
4:23;8:4;12:8;26:14,23;
33:25;38:21,21;40:25;41:3
**submitted (2)**
49:5,22
**successfully (1)**
32:5
**sued (1)**
10:21
**suffice (2)**
27:17;29:10
**suffices (2)**
4:20;28:25
**sufficient (1)**
53:5
**suggested (1)**
45:16
**Super (4)**
13:20;14:9;45:5;51:20

**Superior (2)**
3:4;45:22
**support (1)**
50:23
**supposed (2)**
15:16;36:12
**Supreme (11)**
12:19,23;24:14;31:14,20;
34:17;38:13;43:14;44:21,21;
45:7
**surcharges (5)**
18:21,21,25;19:3,4
**Sure (8)**
9:11;11:12;14:9;33:20;
34:4;39:23;40:21;43:22
**surreply (1)**
13:18
**suspects (1)**
6:8

**T**

**talk (3)**
5:1;36:3;48:7
**talked (2)**
27:9;30:3
**taxes (1)**
18:23
**teeth (1)**
44:15
**telling (1)**
37:5
**ten (20)**
6:1,7,10,11;8:17;17:23;
20:20,21,22;21:17,24;22:21;
29:15;33:18;36:17;37:7,21,
24,25;39:9
**tended (1)**
52:7
**terms (8)**
13:25;14:1,2;18:13;19:17;
28:21;30:14,16
**test (2)**
6:6;33:21
**testify (1)**
19:13
**that's (48)**
7:2,20;8:13;14:3,16;15:19;
17:12,24;20:23;21:10,16;
23:16,17;24:6,18;25:6,19;
27:20,21;29:5,14;31:8;32:9;
34:6,14;38:8;39:9,12,21;
40:16;42:7,9,9;43:14;44:4,14,
14,20,22;45:4,25;46:15,19,23;
52:7;53:1,5,7
**theirs (3)**
40:9,10,11
**theory (1)**
20:23
**there's (38)**
7:8,8,10;8:23,25;12:2,18,
20,25;13:2,18;15:19;16:22,
23,23;17:5,20;20:19;22:8;

24:9,21,25;33:1,2,12;35:8;
40:21;41:16;45:12;47:1,3,4,6,
8,9,12;50:6;52:8
**therefore (1)**
46:16
**they'll (3)**
7:4;25:17;39:23
**they're (11)**
5:2,20;6:22;7:11;10:12;
15:12,16,23;16:5,25;18:22,
23;19:24;22:11,16;23:11;
24:11;25:16;35:9,16;37:5,6,
12;38:3,5,17;39:3,22;45:12;
46:8,9
**they've (4)**
5:15;11:5,5;36:24
**Third (13)**
4:16;13:16;15:25;16:1;
26:20;27:19,24;28:7,10,24;
29:8;35:23;36:14
**though (1)**
9:6
**thousand (1)**
21:18
**thousands (2)**
8:4,8
**three (2)**
4:2,23
**threshold (1)**
16:8
**throughout (2)**
26:8,10
**throw (8)**
6:8;17:7;24:22,23;25:6;
26:5,11;37:15
**thrusted (1)**
11:20
**timely (1)**
5:16
**times (1)**
25:3
**timing (2)**
39:16,16
**today (3)**
12:9;32:14;53:7
**told (2)**
18:20;19:14
**took (1)**
43:2
**total (1)**
19:1
**tough (1)**
11:10
**transcriber (1)**
53:15
**transcript (3)**
53:16,19,21
**transported (1)**
49:18
**treble (17)**
24:12;31:7,18,24;34:5,12;
44:10,10,13,17;45:12;47:17;
50:14,18,19,21;52:25

**tried (1)**
5:23
**triggering (1)**
8:6
**trip (1)**
16:9
**true (5)**
28:4,17;31:20;35:22;53:20
**try (10)**
6:11;8:15;15:7,8;25:13;
29:16;30:1;36:10,10;43:15
**trying (3)**
8:13;20:25;32:4
**twenty (2)**
8:17;29:16
**two (9)**
6:4;11:23,25;15:22;16:9,
25;26:16;28:14;35:16
**type (3)**
10:6,7;24:14

**U**

**un (1)**
47:16
**unable (1)**
18:17
**unconscionability (7)**
4:25;16:13,15;26:7;31:16;
34:25;38:25
**unconscionable (19)**
12:5,10;17:19;20:1;24:3,
19;26:16,17;30:2;33:3;39:2;
43:21;45:1,21;46:16;47:14,
21;48:10;52:23
**unconvinced (1)**
43:20
**Under (22)**
12:18;16:15;17:2;18:25;
23:6,6,7;26:1,6;30:22;31:8;
32:5;33:22;34:13;38:8;45:13,
13;51:2,9,18;52:16,24
**underlying (1)**
45:9
**understands (1)**
34:22
**undisputed (1)**
4:3
**unenforceable (8)**
23:18,19,23;24:4,15;25:20,
23;47:25
**uneven (1)**
12:11
**unfair (4)**
7:15;11:3;17:25;44:19
**Unfettered (2)**
23:8,8
**unfolds (1)**
7:8
**unfortunately (1)**
10:24
**unhappy (1)**
37:2

**UNIDENTIFIED (1)**
50:22
**unilaterally (1)**
38:1
**unless (2)**
12:25;38:15
**unmistakable (4)**
12:25;17:12;38:16,21
**unpersuasive (1)**
38:17
**unpublished (7)**
4:19;15:25;16:1;28:9;
35:11,20;51:22
**unreasonably (1)**
29:19
**unsophisticated (1)**
15:11
**up (5)**
20:22;36:24;48:23,24;
50:20
**upheld (1)**
44:15
**uphold (1)**
45:23
**upon (2)**
11:20;18:9
**use (3)**
23:13;30:23;52:19
**used (1)**
31:21

**V**

**validity (1)**
41:23
**validly (1)**
34:11
**Verizon (37)**
3:7,8;4:8;5:19;22;6:2,7,9,
23,24;7:3,9,14,19,24;8:7,15,
15,18,19;10:17,21;11:14;
15:10;18:19;20:25;21:2;
22:16;25:15;29:13,15,19;
30:25;32:17;40:11;41:15;
48:24
**Verizon's (3)**
8:2,8;32:24
**vice (1)**
41:5
**vindicate (1)**
45:11
**vindicating (1)**
45:13
**violates (1)**
23:1
**virtue (1)**
46:13

**W**

**wage (1)**
46:10
**wait (4)**

23:4;32:21;33:17;48:18
**waive (2)**
22:8,11
**waivers (3)**
25:13;51:2,4
**wants (4)**
6:10;20:12;32:6;37:24
**wasn't (3)**
19:7;28:16;35:19
**way (10)**
7:5;8:3;10:7;17:8;20:3;
22:7;23:2;27:21;43:16;50:20
**we'd (1)**
39:11
**We'll (1)**
9:9
**we're (29)**
8:13;9:13,13,18,23;18:19;
19:4,9,10,11,12,22;20:21;
22:4,5;33:6,7,15,17,17;36:19,
21;37:3,10,11;38:7;40:10;
42:3;43:4
**we've (4)**
20:24;28:2,8,10
**website (6)**
13:23;15:16,17;21:7;36:5,
10
**weekend (1)**
53:8
**weeks (1)**
27:10
**well-settled (1)**
35:21
**weren't (2)**
19:7;35:14
**What's (16)**
14:5;20:11;21:13,15;22:17,
18,20;24:5;30:12;37:23,23;
44:3,4;45:19;48:18,18
**whole (3)**
26:5;35:5;37:20
**whose (2)**
3:19;17:6
**willing (1)**
19:24
**willingly (1)**
11:18
**win (1)**
20:21
**winning (1)**
7:6
**Wireless (1)**
3:7
**withdraw (1)**
10:11
**within (2)**
16:17;41:21
**without (4)**
11:20;36:7;44:24,24
**witnesses (1)**
19:13
**won't (1)**
25:17

**word (2)**
15:20;50:21
**words (2)**
31:21;34:10
**worried (1)**
10:12
**write (3)**
8:11;32:18,22
**written (1)**
30:9
**wrong (8)**
5:1,2;20:11;30:12,17;33:1,
23;46:20
**wrongdoer (1)**
44:18
**wrote (1)**
35:25

**Y**

**year (1)**
21:11
**years (10)**
11:8;19:21;20:15;21:24;
22:13,22,23;23:4,13;33:17
**yield (2)**
8:21;29:18
**yielding (1)**
6:13
**you'd (2)**
26:18;46:18
**you'll (2)**
44:20;52:12
**you're (4)**
14:20,21;21:18;47:16
**you've (4)**
8:11;11:7;21:23;42:18

**0**

**07/18/2022 (1)**
53:24

**1**

**1 (2)**
44:22;49:14
**10 (5)**
7:25;20:8;21:5,9,11
**10th (1)**
50:24
**11 (1)**
3:3
**11:16 (2)**
3:1;53:17
**11:21 (1)**
49:22
**12:02 (1)**
43:1
**12:30 (2)**
43:1,2
**12:47 (2)**
53:11,17

**1233 (1)**
51:22
**124 (1)**
49:10
**13th (3)**
49:7,8,11
**14 (1)**
44:22
**145 (4)**
20:15;21:24;22:13;23:4
**149 (1)**
33:17
**1500 (1)**
21:19
**15th (1)**
3:3
**182 (1)**
44:22

**2**

**2 (3)**
49:3,10,14
**20 (1)**
42:20
**2001 (1)**
45:6
**2004 (1)**
44:22
**2009 (2)**
13:20;14:12
**2011 (1)**
51:20
**2015 (1)**
51:23
**2016 (1)**
12:20
**2018 (1)**
14:17
**225 (2)**
12:19;31:12
**25 (1)**
20:7
**2500 (7)**
5:15;9:23;20:15;21:6,12;
32:12,12
**27 (3)**
10:2,14;51:23
**289 (2)**
12:20;31:12

**3**

**30 (1)**
23:13
**346 (1)**
45:5
**35 (1)**
51:22
**357 (1)**
14:17
**3d (1)**
14:17

## 4

**40 (1)**
 11:8
**401 (1)**
 14:17
**404 (1)**
 51:20
**410 (2)**
 13:19;14:9
**413 (1)**
 53:22
**42 (1)**
 45:5
**421 (2)**
 48:17;51:20

## 5

**5 (3)**
 20:8,9;51:1
**5.6b (2)**
 23:1,6
**50 (1)**
 7:25
**510 (2)**
 13:20;14:10

## 6

**6 (2)**
 50:25;51:1
**6.9 (2)**
 21:8,10
**60 (1)**
 41:6

## 9

**9 (1)**
 49:19