1 | Daniel M. Hattis (SBN 232141)
2 | Che Corrington (admitted *pro hac vice*)
  | HATTIS & LUKACS
3 | 11711 SE 8th Street, Suite 120
  | Bellevue, Washington 98005
4 | Telephone: (425) 233-8650
  | Facsimile: (425) 412-7171
5 | Email: dan@hattislaw.com
  | Email: che@hattislaw.com

6 | Stephen DeNittis, Esq. (admitted *pro hac vice*)
  | DENITTIS OSEFCHEN PRINCE, P.C.
7 | 5 Greentree Centre, Suite 410
  | 525 Route 73 N.
8 | Marlton, New Jersey 08057
  | Telephone: (856) 797-9951
9 | Facsimile: (856) 797-9978
  | Email: sdenittis@denittislaw.com

[Other counsel listed in signature block]

*Attorneys for Plaintiffs
and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND, *Et Al.*, For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and<br>VERIZON COMMUNICATIONS INC.,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-cv-08592-EMC<br><br>**PLAINTIFFS' OPPOSITION TO VERIZON'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING ARBITRATION**<br><br><u>Hearing</u><br>None—Court to Take Under Submission<br><br>[Hon. Edward M. Chen] |

**OPPOSITION**

During the Case Management Conference held on July 26, 2022, this Court proposed a reasonable, middle-of-the-road approach that would allow limited discovery of, among other things, high-level corporate documents while this Court's order denying a motion to compel arbitration was on appeal. The parties then met and conferred to attempt to agree on the scope of discovery. However, Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc. (collectively, "Verizon") has refused to engage in any meaningful discovery. For example, Verizon will not produce any corporate documents or respond to interrogatories regarding the nature and purpose of the Administrative Charge and whether the Charge is truly related to the costs Verizon has claimed—regardless of the burden (i.e., Verizon will not produce any corporate documents, even if the burden on Verizon is small, and even if the evidence would be highly probative). Verizon's extreme position is that: "Documents on which no class member could have relied in selecting their service are neither relevant nor within the discovery your clients would obtain." Hattis Decl., ¶ 4.

Verizon has refused to withdraw its Motion to Stay unless Plaintiffs agree that Verizon need not produce any discovery whatsoever except for "materials that were or could have been viewed by consumers, including your clients." Hattis Decl., ¶ 4. Thus, instead of living with the Court's thoroughly acceptable proposal at the Case Management Conference, Verizon is forcing Plaintiffs Teresa MacClelland, *Et Al.*, to oppose Verizon's Motion To Stay Proceedings Pending Appeal Of Order Denying Arbitration (Dkt. No. 60) (the "Motion") and are further forcing this Court to expend resources in reviewing the Motion—even though the Court has already satisfactorily resolved the issue at hand.

While Plaintiffs would in an ideal world prefer to conduct full and unlimited discovery during the pendency of Verizon's uphill appeal, Plaintiffs can certainly live with the limited discovery pending appeal proposed by the Court during the Case Management Conference. Plaintiffs are also willing, as discussed below, to cabin their requests for discovery while the appeal is pending. Plaintiffs therefore respectfully request that the Court enter a formal limited-discovery order that tracks what the Court presented during the conference.

As a formal matter, Verizon also fails to meet the legal standard for a stay pending appeal. The Court is on firm legal footing to allow Plaintiffs to engage in limited discovery pending appeal.

## RELEVANT FACTS AND HISTORY

The Court is familiar with this case. In brief, Plaintiffs are alleging that Verizon violated California's principal consumer protection statutes and the implied covenant of good faith and fair dealing by adding an improperly disclosed "Administrative Charge" to customers' invoices. *See* Second Amended Complaint, ¶¶ 1–14 (Dkt. No. 58). Each Plaintiff is bringing this case on his or her own behalf, as a private attorney general seeking public injunctive relief, and as a representative of a proposed class of similarly situated consumers.

On March 4, 2022, Verizon moved to compel arbitration of the Plaintiffs' claims. Dkt. No. 20. On July 1, 2022, this Court denied Verizon's motion. Dkt No. 53; *MacCelland v. Cellco Partnership*, --- F. Supp. 3d ---, 2022 WL 2390997 (N.D. Cal. July 1, 2022). On July 12, 2022, Verizon filed a Notice of Appeal from the Court's order; the appeal is proceeding, with Verizon's opening brief due October 20, 2022. *See* Time Schedule Order, issued July 13, 2022, in *MacClelland v. Cellco Partnership*, Case No. 22-16020 (9th Cir.).

On July 26, 2022, the Court held a Case Management Conference and addressed the question of how much discovery should be allowed while Verizon's appeal was proceeding. The Court proposed that the parties engage in non-burdensome but probative discovery that could be used in the Plaintiffs' individual arbitrations in the event Verizon's appeal was successful. The Court stated:

> THE COURT: Okay. The question is: What do we do during the pendency of the appeal of the order regarding arbitration?
>
> And as you all have noted correctly, it is sort of my practice to, in cases where there could be some serious questions here on the merits of the potential appeal, is to stay proceedings in a partial way but to allow some limited discovery on those matters which are of the type that would be had in an individual case in arbitration in any event.
>
> Now, I know there's a dispute as to: Well, what does that mean? And what does that entail?
>
> And I see from the plaintiffs' anticipation that the plaintiffs' view

encompasses six categories of things.[1] And I would agree with the defendant that that, at first blush, seems quite broad.

And so I'm going to direct the parties to meet and confer. This is not rocket science.

And as I said yesterday in a similar case, what should be guiding the parties is not just a question of relevance, because you can always think of a relevant nexus to all sorts of stuff in an individual case, but really a question of how critical it is and how central it is, what's the probative value, especially if this were seen as an individual case going to arbitration versus the burden on the defendant.

So it may be that the broad "collecting all consumer complaints" is something that is much more burdensome than, for instance, some critical corporate documents, which although a defendant may not like to turn over, it's not that much of a burden to produce, especially if they're high-level documents.

So that's what I am going to ask the parties to do.

I'm going to follow the same mode here, and that is to grant the stay, with the limited exception for discovery of a type that would be produced in an individual case, and ask the parties to try to meet and confer and work that out.

Now, if you have a disagreement and there are certain categories you can't agree on, you know where to go, I'm here, but I'm hoping you can work that out.

But I think this case should not proceed in any substantive way until we hear from the Ninth Circuit.

Transcript of Remote Zoom Video Conference Proceeding, dated July 26, 2022, pp. 3:19–5:7

(**Exhibit A** to Declaration of Daniel M. Hattis, attached).

After the Court announced its views on the matter, Verizon's counsel revealed that Version had filed a formal Motion To Stay prior to the Case Management Conference.

After the Case Management Conference, the Court issued Civil Minutes stating:

Court acknowledges that Plaintiff's proposed categories of discovery for individual case seem quite broad. Court directs the parties to meet and confer regarding discovery during the stay, the Court intends to impose during the pendency of Defendant's appeal. In defining the limited discovery, the Court

---

[1] In the Joint Further Case Management Statement (Dkt. No. 57), Plaintiffs proposed discovery of: "1) the nature and purpose of the charge; 2) the substance and scope of Verizon's marketing efforts and disclosures regarding the charge; 3) Verizon's internal deliberations, discussions, policies and procedures concerning the charge, its disclosures concerning the charge, and the introduction of the charge and its increases; 4) consumer and other external reaction to the charge and its effects and Verizon's policies, practices, and procedures relating to responses to such complaints; 5) revenue gained from the charge; and 6) how revenues from the charge are utilized."

intends to permit, parties to consider not mere relevance, but probative value versus burden on the defendant.

Civil Minutes (Dkt. No. 63), at p. 1.

The Court stated that it would review Verizon's Motion To Stay and Plaintiffs' Opposition, but that no Reply was to be filed and that a hearing would occur only if the Court needed to hold one. Civil Minutes (Dkt. No. 63), at p. 1.

In accordance with the Court's Order, the parties have met and conferred about what discovery could occur while the appeal is pending. Hattis Decl., ¶ 3. The parties have not reached a resolution. *Ibid.*

## ARGUMENT

Verizon moves for a stay pending its appeal of this Court's order denying arbitration. Dkt. No. 60. Verizon fails to justify a stay under the legal standard. The Court should enter an order that conforms with the Court's proposal made during the Case Management Conference; as discussed below, Plaintiffs will limit their discovery as proposed by the Court.

### I.      PLAINTIFFS CONCUR WITH THE COURT'S PROPOSAL.

The Court's proposal is a reasonable, workable solution. To alleviate the Court's concern that some of Plaintiffs' proposals are too broad, Plaintiffs are willing to limit their discovery during the pending appeal to 10 document requests, 10 special interrogatories and 10 requests for admission. **Generally, Plaintiffs are seeking discovery regarding whether the Administrative Charge is in fact a deceptive and bogus double-charge for service, whether Verizon inadequately disclosed the Charge to Plaintiffs, and whether Verizon's disclosures on the customer bill were false or misleading.**

For example:

• Plaintiffs would seek information and documents concerning communications and disclosures made to the 27 Plaintiffs including in the sign-up process, in Verizon retail stores, in marketing, in customer bills, and in customer service conversations.

• Plaintiffs would propound document requests and focused interrogatories regarding how Verizon's disclosures regarding the nature of the charge—including the language on its

billing statements claiming the Administrative Charge is a "Surcharge" to "cover the costs that are billed to us by federal, state or local governments"—are false or misleading.

• Plaintiffs would propound requests for admission regarding whether or not Verizon's statement on the bill that the Administrative Charge was to pay for costs billed to Verizon by the government was true or false. Plaintiffs would ask why did Verizon remove that statement (about the Charge covering government costs) from the bill in July 2022.

• Plaintiffs would seek corporate documents and propound a focused interrogatory or two regarding what was the reason for the timing and amount of each of the increases of the Administrative Charge that was charged to the 27 Plaintiffs, and what relationship if any did the increases have to actual increases in Verizon's costs (and what costs).

• Plaintiffs would propound an interrogatory and seek high-level corporate documents regarding why did Verizon change the name of the Administrative Charge in July 2022 to the "Admin & Telco Recovery Charge" and what if anything changed at that time regarding the nature of the Charge and what costs it is purportedly paying for.

• Plaintiffs would request cost study documents concerning the Administrative Charge and its cost basis and the maximum amount of the Charge that costs would support, which are documents that Verizon has admitted exist but has refused to produce (Hattis Decl., ¶ 4).

• Plaintiffs would request internal surveys or studies concerning the Administrative Charge, which are documents that Verizon has admitted exist but has refused to produce (Hattis Decl., ¶ 4).

• Plaintiffs would seek documents which memorialize how Verizon trained or instructed employees to disclose (or not disclose) the existence of the Administrative Charge on sign-up or renewal of wireless service plans, and how they were trained to explain the Administrative Charge.

**These requests are consistent with the Court's proposal to allow discovery of "some critical documents, which although a defendant may not like to turn those over, it's not that much of a burden to produce."** Transcript, (Ex. A), at 4:19-21.

    • Plaintiffs would request other information for its probative value and non-burdensome production.

    Plaintiffs <u>would not</u> request discovery of individual consumer complaints (apart from any that were made by the individual Plaintiffs).

    Plaintiffs <u>would not</u> seek to conduct a deposition of a current Verizon employee, officer or director while the Ninth Circuit appeal is pending (unless a preservation of evidence situation presented itself).

    These requests for information are consistent with the American Arbitration Association's Consumer Rules, which allow an arbitrator to direct the exchange of specific documents and the identification of witnesses. See AAA Consumer Rule 22(a) (cited in Motion, at 19:10-14).

    As the Court can see, Plaintiffs are willing to be reasonable. Verizon is the party taking an extreme position, e.g., that it will not produce any corporate documents or respond to interrogatories regarding the nature and purpose of the Administrative Charge and whether the Charge is truly related to the costs Verizon has claimed—regardless of the burden or the probative value.[2]

---

[2] Specifically, counsel for Verizon wrote in an email to Plaintiffs' counsel dated August 19, 2022, the following: "With respect to documents, Verizon would agree in principle to produce materials that were or could have been viewed by consumers, including your clients. **Documents on which no class member could have relied in selecting their service are neither relevant nor within the discovery your clients would obtain in an individual AAA arbitration.** Verizon would agree to produce, for example, communications with and disclosures made to Plaintiffs, including the nature and purpose of the Administrative Charge, and their account documents. Verizon is not willing to produce cost study documents or internal surveys such as you describe below." Hattis Decl., ¶ 4 (emphasis added).

## II. VERIZON HAS FAILED TO JUSTIFY A STAY PENDING ITS APPEAL TO THE NINTH CIRCUIT.

Verizon asks the Court for a stay pending the appeal of the Order denying Verizon's motion to compel arbitration. Motion at 8:3-4 (Dkt. No. 60)[3]. On the law, the Court should deny this request.

**Legal Standard.** The Court has discretion to decide whether to grant a stay pending an appeal. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). By denying a stay, "[t]he district court is simply moving the case along consistent with its view of the case as reflected in its order denying arbitration." *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of this Court's discretion." *Lair v. Bullock*, 697 F.3d 1200, 1202 (9th Cir. 2012).

Courts consider four factors when determining whether to grant a stay pending the appeal of a civil order:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).

These factors are not weighed equally. The first factor (likelihood of success on the merits) determines how the other three factors are weighed. To justify a stay, Verizon must show either: "(a) a *strong* likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips *sharply* in [its] favor." *Leiva-Perez*, 640 F.3d at 970 (emphasis added). These two standards represent the "outer extremes of a continuum." *Id.*

---

[3] Each page number citation to a document filed in this case is to the blue PACER page number in the upper right-hand corner and is not to the black page number in the bottom center of the footer.

**Verizon Does Not Meaningfully Contend That It Has A *Strong* Likelihood Of Success On The Merits.** Verizon barely attempts to argue that it has a strong likelihood of success on the merits of its appeal (making an askance reference to its arguments as "strong" (Motion, at 14:5)). It would be quite difficult for Verizon to make a *strong* showing of appellate success. This Court's order is predominantly grounded in well-established California unconscionability law that the Ninth Circuit cannot change; this Court's decision to not enforce an entire arbitration agreement permeated with unconscionability (as opposed to severing the unlawful clauses) is likewise an application of California law that the Ninth Circuit cannot re-write.

That leaves Verizon with only one real opportunity for a reversal: by convincing the Ninth Circuit to adopt Verizon's proffered rule regarding the delegation of arbitrability decisions to the American Arbitration Association when a consumer contract is involved. While Verizon contends that other circuits have ruled the way Verizon prefers (Motion, at 8:12-13), our appellate court is not shy about disagreeing with its sister circuits (as Verizon admits in Footnote 2 of its Motion—where Verizon explains that, with regard to the procedure for a stay pending appeal, the Ninth Circuit has no qualms about disagreeing with the Third, Fourth, Seventh, Tenth, Eleventh and District of Columbia Circuits). Verizon does not *strongly* establish in its Motion that the Ninth Circuit will rule in its favor; Verizon merely cites an inapposite unpublished summary disposition.[4] On the face of it, Verizon has at best an even chance of prevailing in this one issue on appeal, and an even chance is not a strong chance.[5]

---

[4] The unpublished decision in *G.G. v. Valve Corp.*, 799 Fed. App'x 557, 558 (9th Cir. 2020) (Motion, at 12:23-13:6), is not on point. In Footnote 2 of the decision, the Ninth Circuit stated that the plaintiffs in that case abandoned their unconscionability argument, and that the Court's ruling was directed to "determining the scope of a contract under Washington law."

[5] Verizon has little chance of prevailing on its appellate arguments regarding the recent U.S. Supreme Court decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022); the *Viking River Cruises* decision simply "does not bear on the present case." *MacClelland v. Cellco Partnership*, --- F. Supp. 3d ---, 2022 WL 2390997, *9 (N.D. Cal. July 1, 2022). In any event, Verizon's *Viking River Cruises* argument applies to only one of many unconscionable clauses in Verizon's arbitration agreement; the Ninth Circuit could theoretically agree with Verizon on this one point and still affirm the Court's order.

**Even If Verizon Will Raise "Serious Legal Issues" In Its Appeal, It Fails To Establish That The Balance Of The Hardships Tilts *Sharply* In Its Favor.** For purposes of this Opposition only, Plaintiffs do not contest (but do not agree with) Verizon's assertion that Verizon will raise "serious legal issues" on appeal. Plaintiffs do not want to waste this Court's time with a series of arguments that are better addressed to the Ninth Circuit.

Assuming for present purposes that Verizon will raise serious legal issues (and it should be noted that Verizon has not yet filed its Opening Appellate Brief), Verizon's Motion should be denied because Verizon fails to establish that the balance of the hardships tips *sharply* in its favor. *See Leiva-Perez*, 640 F.3d at 970 (to obtain stay, appellant may in the alternative establish "a substantial case on the merits and that the balance of hardships tips sharply in [its] favor." *Leiva-Perez*, 640 F.3d at 970. The Court typically decides this question by first determining what, if any, *irreparable* harms will be suffered by the defendant absent a stay and then weighing those *irreparable* harms against the injuries incurred if a stay is granted. *See Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 5585232, *5 (N.D. Cal. Nov. 30, 2021) (Chen, J.).

Verizon points to several harms that it claims it will suffer absent a stay, but none is irreparable.

Verizon argues that, without a stay, it will forever lose the speed and economy of arbitration (Motion, p. 18:10-13), but the loss of speed and economy is only an irreparable harm if the Court enters a final adjudication on the merits, thereby vitiating the defendant's right to arbitration. *O'Connor v. Uber Techs., Inc.*, 2015 WL 9303979, *3 (N.D. Cal. Dec. 22, 2015) (Chen, J.) (allowing the trial to proceed, but staying entry of judgment pending the appeal); *see also Mohamed v. Uber Technologies*, 115 F. Supp. 3d 1024, 1034 (N.D. Cal. 2015) (Chen, J.) ("[W]ere any ruling on the merits by the Court to have some binding effect on the arbitration, Uber would lose the benefit of arbitration."). The case at bar is nowhere near trial or judgment, so any threat of irreparable harm is premature.

1    Verizon contends that it would be harmed by the expenditure of discovery and litigation
2  expenses (Motion, at 19:2-40), but that is not an irreparable harm. As this Court has stated
3  several times, "nearly all courts 'have concluded that incurring litigation expenses does not
4  amount to an irreparable harm.'" *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2021 WL
5  1772808, at *4 (N.D. Cal. Mar. 19, 2021) (Chen, J.) (quoting *Mohamed*, 115 F. Supp. 3d at
6  1033 (collecting cases)). This includes the litigation expense of discovery—particularly if the
7  discovery would likely be obtained in any forum. *See Yeomans*, 2021 WL 1772808, at *4
8  ("Conducting basic pre-trial discovery—two years into this litigation—would not prejudice
9  Defendants because they will have to conduct that similar discovery if the case is to proceed in
10 the Northern District of Georgia or in arbitration."); *Mohamed v*, 115 F. Supp. 3d at 1034
11 (allowing all discovery to proceed).

12   Verizon also argues that its harm will be magnified if it is forced to conduct discovery
13 "in a class context." Motion, at 19:2-40. But, as discussed above, Plaintiffs are taking pains to
14 limit discovery to only evidence that could be used in the 27 individual arbitrations in which
15 Plaintiffs would seek their personal remedies. Plaintiffs are seeking discovery regarding
16 whether the Administrative Charge is a deceptive and bogus double-charge for service, whether
17 Verizon inadequately disclosed the Charge, and whether Verizon's disclosures on the bill were
18 false or misleading.

19   Moreover, Verizon's potential hardships must be considered against the backdrop of the
20 harm that Plaintiffs and the general public will incur if a stay is granted. While Verizon claims
21 that its harm is magnified because Plaintiffs are seeking public injunctive relief, this harm cuts
22 both ways. Whatever harm Verizon claims it will incur in producing some unknown amount of
23 discovery must also be weighed against the harm incurred by delaying any potential relief to
24 not only Plaintiffs but also the general public. Every month the case is stayed is another month
25 that Verizon is free to continue falsely advertising to the general public. When considering all
26 of the harms that would result from a stay, Verizon's harm pales in comparison, and the
27 balance of the hardships certainly does not tilt *sharply* in its favor.
28

**The Public Interest Lies In Denying The Stay.** Finally, the public interest lies in denying the stay so that Plaintiffs may continue pursuing their case. Plaintiffs seek public injunctive relief to enjoin Verizon's false advertising practices to the California general public. The public interest is self-evident.

Verizon argues that the public interest lies with it because of the federal policy favoring arbitration. Motion, at 21:15-16. First, the federal policy favoring arbitration is not actually at issue here, and second, even if it were, that interest is dwarfed by the public's interest in being free of false advertising.

Verizon cannot invoke the federal policy favoring arbitration because Verizon is not trying to enforce a good faith arbitration agreement; as Plaintiffs argued in opposition to Verizon's Motion To Compel Arbitration (at n. 19) (Dkt. No. 29), Verizon is trying to enforce a liability shield that limits its annual exposure for false advertising claims to a mere $66,000 a year plus expenses, while Verizon is raking in millions of dollars in improperly disclosed fees. Verizon's arbitration agreement was not drafted in good faith and is not entitled to legal deference or indulgence.

Moreover, even if the policy favoring arbitration were at issue here, that interest is dwarfed by the public's interest in being free of false advertising. *See Yeomans*, 2021 WL 1772808, at *5 (Chen, J.) (considering a public interest "California's interest in enforcing its wage and hour laws"). The interest in arbitration is held only by Verizon. The interest in being free of false advertising is held by all 40 million Californians who are subject to, or could be subject to, Verizon's false advertising. And, because Verizon's real interest is consigning its customers' claims to an inferior forum, the interests are diametrically opposed, with the public interest squarely on the side of protecting the public from false advertising and from Verizon's overreaching arbitration agreement.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court allow Plaintiffs to engage in limited discovery consistent with the Court's proposal made during the Case Management Conference.

| | | |
|---|---|---|
| 1 | Dated: August 26, 2022 | Respectfully submitted, |
| 2 | | HATTIS & LUKACS |
| 3 | | By: */s/ Daniel M. Hattis* |

Daniel M. Hattis (SBN 232141)
Che Corrington (admitted *pro hac vice*)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: che@hattislaw.com

Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
936 Woodlawn Drive
Thousand Oaks, CA 91360
Tel: (805) 233-8062
FAX: (425) 412-7171
pkl@hattislaw.com

Stephen DeNittis, Esq. (admitted *pro hac vice*)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*