Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

M. Frank Bednarz (*pro hac vice* application to be filed shortly)
HAMILTON LINCOLN LAW INSTITUTE
1440 W. Taylor St. #1487
Chicago, IL 60607
Voice: (801) 706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TERESA MACCLELLAND, et al.,<br>for Themselves, as Private Attorneys General, and on Behalf of All Others Similarly Situated,<br><div align=center>Plaintiffs,</div><br><div align=center>v.</div><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC.,<br><div align=center>Defendants.</div><hr>ALLISON HAYWARD, PETER HEINECKE, LAWRENCE PRINCE, and WILL YEATMAN,<br><br><div align=center>Intervenors.</div> | Case No. 3:21-cv-08592-EMC<br>Hon. Edward M. Chen, Courtroom 5 (17th Floor)<br><br>INTERVENORS' MOTION FOR AND MEMORANDUM IN SUPPORT OF EQUITABLE REDISTRIBUTION OF ATTORNEYS' FEES TO THE CLASS<br><br>DATE:    April 4, 2024<br>TIME:    1:30 p.m. |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 4, 2024 at 1:30 p.m., or as soon after as counsel may be heard, intervenors Allison Hayward, Peter Heinecke, Lawrence Prince, and Will Yeatman ("Intervenors"), by and through their attorneys and under the Court's equitable authority to regulate the conduct of attorneys before it, shall hear Intervenors' Motion to Equitably Redistribute Excess Attorneys' Fees and to administer those funds as a Constructive Trust in the interests of class members, namely to add the funds to the money to be distributed to claiming class members. Class counsel misused appellate and judicial procedure for private gains at the expense of class clients to whom they owed a fiduciary duty, and any unjust enrichment should be equitably remedied by the court. *Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (*Pearson III*).

This motion is supported by the following memorandum of points and authorities, the Declaration of M. Frank Bednarz ("Bednarz Decl.") and its exhibits, the pleadings and records on file in this case, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................iii

TABLE OF AUTHORITIES ............................................................................................................iv

ARGUMENT ....................................................................................................................................1

I.      The Court should equitably reallocate excess attorneys' fees to the Class. .......................2

        A.      Class attorneys owe putative class members a fiduciary duty from the moment they
                file a complaint on behalf of a putative class..........................................................4

        B.      The Court has equitable authority over parties before it..........................................6

        C.      Class Counsel's windfall comes from rightful class recovery...................................6

        D.      Class Counsel would be entitled to *less* than a 25% fee award, and the Court should
                order any excess amount redistributed for class benefit. ........................................9

II.     Alternatively, the Court has inherent authority over the parties. ......................................14

III.    Corrective action by this Court is consistent with federalism; the New Jersey court's rulings
        will not preempt anything this Court does. .......................................................................17

        A.      28 U.S.C. § 1715(d) precludes the New Jersey court from adjudicating the settlement
                of federal claims until the parties provide statutory notice to state attorneys general as
                28 U.S.C. § 1715(b) requires................................................................................17

        B.      Intervenors do not ask this Court to disturb New Jersey state proceedings. ...........18

        C.      Finally, the New Jersey proceedings do not require abstention. .............................19

IV.     Recovered funds should be equitably distributed for class benefit. ...................................21

CONCLUSION................................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*In re Air Crash Disaster at Fla. Everglades,*
549 F.2d 1006 (5th Cir. 1977) ................................................................................................8

*Allstate Ins. Co. v. Tucknott Elec. Co.,*
2014 U.S. Dist. LEXIS 151249 (N.D. Cal. 2014) ................................................................ 19

*Arena v. Intuit Inc.,*
No. 19-cv-02546-CRB,
2021 WL 834253, 2021 U.S. Dist. LEXIS 41994 (N.D. Cal. Mar. 5, 2021) ........................10-11

*Arkin v. Pressman, Inc.,*
38 F.4th 1001 (11th Cir. 2022) ................................................................................. 1-2, 8-10

*In re BankAmerica Corp. Secs. Litig.,*
775 F.3d 1060 (8th Cir. 2015) ..................................................................................................5

*In re Bird,*
353 F.3d 636 (8th Cir. 2003) .................................................................................................. 16

*In re Bluetooth Headset Prod. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ....................................................................................................4

*Briseño v. Henderson,*
998 F.3d 1014 (9th Cir. 2021) ..................................................................................................6

*Brown v. Stackler,*
612 F.2d 1057 (7th Cir. 1980) ................................................................................................ 15

*Burrow v. Arce,*
997 S.W.2d 229 (Tex. 1999).............................................................................................16, 22

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991).................................................................................................................. 14

*Chemical Bank v. Jaffe & Schlesinger, P.A.,*
19 F.3d 1306 (9th Cir. 1994)................................................................................................... 20

*Colorado River Water Cons. Dist. v. United States,*
424 U.S. 800 (1976)................................................................................................................ 19

*Cook v. Harding,*
   879 F.3d 1035 (9th Cir. 2018) ................................................................................ 17

*Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307,*
   282 F.3d 984 (7th Cir. 2002) ................................................................................... 15

*Dennis v. Kellogg Co.,*
   697 F.3d 858 (9th Cir. 2012) ................................................................................... 16

*Diettrich v. Northwest Airlines, Inc.,*
   168 F.3d 961 (7th Cir. 1999) ................................................................................... 15

*In re Dry Max Pampers Litig.,*
   724 F.3d 713 (6th Cir. 2013) .......................................................................... 2-3, 4, 6

*Durkin v. Shea & Gould,*
   92 F.3d 1510 (9th Cir. 1996) ............................................................................. 17, 19

*Elna Sefcovic, LLC v. TEP Rocky Mt., LLC,*
   953 F.3d 660 (10th Cir. 2020) ................................................................................. 21

*Estakhrian v. Obenstine,*
   No. 11-cv-3480, 2019 U.S. Dist. LEXIS 50828 (C.D. Cal. Mar. 26, 2019) ............ 15

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) ..................................................................................... 3

*Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.,*
   805 F.3d 425 (2d Cir. 2015) ..................................................................................... 20

*Frank v. Gaos,*
   139 S. Ct. 1041 (2019) ............................................................................................. 22

*Fraser v. Asus Computer Int'l,*
   2012 WL 6680142, 2012 U.S. Dist. LEXIS 181315 (N.D. Cal. Dec. 21, 2012) ..... 11-12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) .................................................................................. 4, 16

*Golden Eagle Ins. Co. v. Travelers Cos.,*
   103 F.3d 750 (9th Cir. 1996),
   *overruled in part on other grounds,*
   *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998) ................................ 19

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010)....................................................................................................... 11

*House v. Akorn, Inc.*,
    No. 17 C 5018, 2019 U.S. Dist. LEXIS 104750, 2019 WL 2576531
    (N.D. Ill. Jun. 24, 2019).................................................................................................................3

*Jacobson v. Persolve, LLC*,
    2014 U.S. Dist. LEXIS 115601, 2014 WL 4090809 (N.D. Cal. Aug. 19, 2014) ...........................4

*Jacobson v. Persolve, LLC*,
    2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) ........................................................................... 16

*Kamilewicz v. Bank of Boston Corp.*,
    100 F.3d 1348 (7th Cir. 1996) ................................................................................................... 19

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004) .................................................................................................18-19

*Kovilic Constr. Co. v. Missbrenner*,
    106 F.3d 768 (7th Cir. 1997)...................................................................................................... 14

*Laguna v. Coverall N. Am. Inc*,
    753 F.3d 918 (9th Cir. 2014),
    *vacated as moot*, 772 F.3d 608 (9th Cir. 2014) .............................................................................3

*Laffitte v. Robert Half Int'l*,
    376 P.3d 672 (Cal. 2016) ..............................................................................................................2

*Lobatz v. U.S. West Cellular of Cal. Inc.*,
    222 F.3d 1142 (9th Cir. 2000) ......................................................................................................2

*McLeod v. Bank of Am., N.A.*,
    No. 16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869 (N.D. Cal. Mar. 13, 2019) ..................... 13

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010)................................................................................................... 3, 13

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982).................................................................................................................. 20

*Muniz v. UPS*,
    No. C 09-01987 CW, 2011 U.S. Dist. LEXIS 36697 (N.D. Cal. Mar. 25, 2011)......................... 15

*Nachshin v. AOL, LLC,*
    663 F.3d 1034 (9th Cir. 2011) ............................................................................................ 22

*N.Y. Marine & Gen. Ins. Co. v. Junkermier, Clark, Campanella, Stevens, P.C.,*
    2015 U.S. Dist. LEXIS 185118 (D. Mont. 2015) ................................................................ 20

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) ("*Pearson I*") .........................................................................4

*Pearson v. Target Corp.,*
    968 F.3d 827 (7th Cir. 2020) (*Pearson III*) ..............................................................ii, 6-7, 9

*Pierce v. Visteon Corp.,*
    791 F.3d 782 (7th Cir. 2015)................................................................................................5

*Porter v. Warner Holding Co.,*
    328 U.S. 395 (1946)................................................................................................................6

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,*
    324 U.S. 806 (1945)............................................................................................................ 10

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014)................................................................................................4

*Rodriguez v. Disner,*
    688 F.3d 645 (9th Cir. 2012)..........................................................................................15-16

*Roper v. Consurve, Inc.,*
    578 F.2d 1106 (5th Cir. 1978) .............................................................................................4

*In re Roundup Prods. Liab. Litig.,*
    544 F. Supp. 3d 950 (N.D. Cal. 2021)................................................................................8

*Ross v. Trex Co.,*
    No. C 09-00670, 2013 U.S. Dist. LEXIS 74720 (N.D. Cal. May 28, 2013) .................... 12

*Rynearson v. Ferguson,*
    903 F.3d 920 (9th Cir. 2018)............................................................................................. 20

*Serrano v. Unruh,*
    32 Cal. 3d 621 (1982) ....................................................................................................... 15

*Shelton v. Pargo,*
    582 F.2d 1298 (4th Cir. 1978) .............................................................................................5

*Sprint Commc'ns., Inc. v. Jacobs,*
    571 U.S. 69 (2013)..................................................................................................... 17, 19-20

*Standard Fire Ins. Co. v. Knowles,*
    568 U.S. 588 (2013)........................................................................................................16, 17

*Stone v. Patchett,*
    08 CV 5171 (RPP),
    2009 WL 1108596, 2009 U.S. Dist. LEXIS 35049 (S.D.N.Y. Apr. 23, 2009).............................. 21

*US Airways, Inc. v. McCutchen,*
    569 U.S. 88 (2013)..................................................................................................................6

*Vasquez v. Cebridge Telecom CA, LLC,*
    569 F. Supp. 3d 1016 (N.D. Cal. 2021)................................................................................ 14

*Viceral v. Mistras Grp., Inc.,*
    2017 WL 661352, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) ................................ 13

*In re Walgreen Co. Stockholder Litig.,*
    832 F.3d 718 (7th Cir. 2016)............................................................................................... 12

*Wallingford v. Bonta,*
    82 F.4th 797 (9th Cir. 2023) ..........................................................................................20-21

*Weinberger v. Great N. Nekoosa Corp.,*
    925 F.2d 518 (1st Cir. 1991) ..................................................................................................6

*Weisman v. Alleco, Inc.,*
    925 F.2d 77 (4th Cir. 1991)................................................................................................ 16

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
    396 F.3d 922 (8th Cir. 2005)..............................................................................................4-5

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,*
    MDL No. 2592, 2020 U.S. Dist. LEXIS 50440 (E.D. La. Mar. 24, 2020) ....................................8

*Young v. Higbee,*
    324 U.S. 204 (1945)...........................................................................................................7-9

**Statutes and Rules**

28 U.S.C. § 2042..................................................................................................................... 21

Class Action Fairness Act, 28 U.S.C. § 1711 *ff*. .......................................................... 1, 14, 16, 17, 21

    28 U.S.C. § 1711(2) .................................................................................................... 17

    28 U.S.C. § 1711(6) .................................................................................................... 17

    28 U.S.C. § 1711 note § 2(a)(3), 119 Stat. 5 (2005) ........................................... 15, 16

    28 U.S.C. § 1711 note § 2(a)(4), 119 Stat. 5 (2005) ................................................. 16

    28 U.S.C. § 1715 ........................................................................................................

    28 U.S.C. § 1715(b) ............................................................................................. 5, 17-18

    28 U.S.C. § 1715(d) ................................................................................................ 5, 18

    28 U.S.C. § 1715(e)(1) ........................................................................................... 5, 18


Fed. R. Civ. Proc. 11 ........................................................................................................ 16

Fed. R. Civ. Proc. 23 ..................................................................................................... 4, 16

Fed. R. Civ. Proc. 23(h) ............................................................................................... 1, 13

N.D. Cal. Loc. R. 3-13 .......................................................................................................1

## **Other Authorities**

AMERICAN LAW INSTITUTE,

    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. (2010)

    § 1.05(c)(3).................................................................................................................. 16

    § 1.05 *cmt*. f................................................................................................................5-6


AMERICAN LAW INSTITUTE,

    RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(4) (2010) ......................... 6, 15


Landsman-Roos, Nick,

    *Front-End Fiduciaries: Precertification Duties and Class Conflict,*

    65 STAN. L. REV. 817 (2013)...........................................................................................4


N.D. Cal. Procedural Guidance for Class Action Settlements........................................ 1, 10

S. Rep. No. 109-14 (2005) ............................................................................................... 16

# ARGUMENT

Intervenors seek equitable redistribution of the unjust enrichment Class Counsel obtained in three federal class actions, including the first-filed one here, from Class Counsel's breach of fiduciary duty to the class in forum shopping by agreeing to a settlement of the federal class actions that would file a new Potemkin nationwide class action in a state court where precedent would permit a larger fee award at the expense of the class.

Class Counsel availed itself to the benefit of litigating in this Court and filed their first putative class action on behalf of 27 California plaintiffs on November 3, 2021, using the federal jurisdiction created by the Class Action Fairness Act. Class Counsel knew about this forum's expertise in managing class litigation and experience in substantive California contract law. Plaintiffs benefited from the Court's swift and favorable decision finding Verizon's customer contract unconscionable and unenforceable in its entirety. And Plaintiffs received discovery from this Court, the only venue to have granted them substantive discovery. But Class Counsel did *not* want this Court to apply its same careful reasoning when deciding their attorneys' fees, and did not want to comply with the Class Action Fairness Act's notice requirements, this district's Procedural Guidance for Class Settlements, nor this Circuit's decisional law on Rule 23(h).

When the parties reached a new settlement—on the eve of the oral argument on appeal from this Court—Plaintiffs filed a new action on November 10, 2023 for the purpose of evading scrutiny from federal courts, objecting class members, and state attorneys general. The settling parties neglected to provide "prompt" notice of the new class action, in violation of N.D. Cal. Loc. R. 3-13. And on January 31, 2024 class counsel—representing most of the California plaintiffs before this Court—moved for $33.3 million in attorneys' fees, far exceeding the amount that could or would be awarded by this Court. Under the terms of the New Jersey settlement, Defendants granted "clear sailing" to these fees, which will be paid out of the $100 million common fund for the class.

The fee motion is within the discretion of the New Jersey court, and will be decided under the less-developed, less protective case law of that venue. Intervenors move under a different theory: that by judge-shopping to file an outsized fee request, Class Counsel have breached their fiduciary duty to Intervenors and all class members. A law firm settling a federal class action in state court to increase attorneys' fees at the expense of their clients improperly "subordinates the interests of the class to its own interests." *Arkin v.*

*Pressman, Inc.*, 38 F.4th 1001, 1011 (11th Cir. 2022). When counsel have "breached their fiduciary duty to the class" by "agree[ing] to accept excessive fees and costs to the detriment of class plaintiffs," that "excessive award could be considered property of the class plaintiffs, and any injury…could be…redressed by allocating to them a portion of that award." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000).

Should the New Jersey court award an amount greater than this Court would have awarded—and certainly if the award exceeds the 25% benchmark of this Circuit—the Court should equitably prevent Class Counsel's unjust enrichment.

Intervenors, who are putative class members who stand to be bound by the New Jersey settlement, move for the Court to act based on its equitable and oversight powers to reallocate class counsel's unjust enrichment and administer recovered funds as a constructive trust on behalf of all class members. The trust should ideally be deposited with the same administrator handling the New Jersey settlement and paid to all class claimants *pro rata*, but in no event should Class Counsel profit from breaching their fiduciary duty to the class.

## I.    The Court should equitably reallocate excess attorneys' fees to the Class.

Class actions play a vital role in the judicial system. Often, they are the only way plaintiffs can be compensated and defendants held to account for serious misdeeds that widely distribute harm. In turn, the health of the class action system as the "proper enforcement of substantive law" depends on "[p]ublic confidence in the fairness of attorney compensation." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). As with many other cases, some class actions must be settled, sparing both sides the costs and uncertainties of litigation. But class-action *settlements* create special problems for our adversary system, because in that *non*-adversary context, Class Counsel may be tempted to favor their own recovery over that of the absent class members.

> Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own.

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) (*"Pampers"*).

While settling parties have an incentive to bargain effectively over the *size* of a settlement, similar incentives do not govern their critical decisions about how to divvy it up—including the portion allocated to counsel's own fees. The defendant cares only about the bottom line, and will take any deal that drives it down. *Laguna v. Coverall N. Am. Inc,* 753 F.3d 918, 936 (9th Cir. 2014) (Chen, J., dissenting), *vacated as moot*, 772 F.3d 608 (9th Cir. 2014). Meanwhile, class counsel have an obvious incentive to seek the largest portion possible for themselves, and may accept bargains to protect their fee award to the detriment of class members. *Id.* "From the selfish standpoint of class counsel and the defendant, … the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). This presents a recurring problem because our adversary system—and the valuable role class actions play within it—both depend upon *unconflicted* counsel's zealous advocacy for their clients, especially where (as here) those clients cannot choose counsel for themselves.

Here, Class Counsel owed the putative class, including Intervenors, a duty not to shortchange their entitlement to the common fund by judge-shopping the litigation to a venue willing to grant fees in excess of what this Court would permit. Here, the settling parties agreed to re-file in New Jersey state court precisely to evade this Court's sound discretion so that Class Counsel could receive more of the settlement for themselves. This Court has equitable jurisdiction over the parties before it, and should discharge its "fiduciary duty to safeguard the interests of the absent and putative class members" by shifting excess attorneys' fees to benefit class members. *Laguna*, 754 F.3d at 927 (Chen, J., dissenting), *vacated as moot*, 772 F.3d 608; *accord In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (instructing district courts to act with "jealous regard" for rights and interests of absent class members). Additionally or alternatively, the Court can use its inherent power to discipline parties before it, and so should order disgorgement of a larger amount to discourage breaches of fiduciary duty in the future. *E.g., House v. Akorn, Inc.*, No. 17 C 5018, 2019 U.S. Dist. LEXIS 104750, 2019 WL 2576531 (N.D. Ill. Jun. 24, 2019) (ordering disgorgement of fees that putative class counsel negotiated outside the jurisdiction of the court that would have breached counsel's fiduciary duty).

A decision by the Court in equity would not offend principles of federalism. Intervenors do not seek to relitigate the New Jersey court's decision under their precedents. Nor do intervenors wish to pursue the underlying claims concerning Verizon's "administrative charge." Instead, Intervenors bring an action against

Class Counsel specifically for their breach of fiduciary duty in representing their putative clients (the absent class members) in this first filed action, which is neither precluded by state court action nor requires abstention from this Court.

Finally, while the Court would ideally order disgorged money distributed to the class members along with the underlying relief from the New Jersey settlement, if this proves infeasible for some reason, the Intervenors can arrange alternative plans with the settlement administrator and, failing that, the Court can administer the constructive trust in other ways.

## A. Class attorneys owe putative class members a fiduciary duty from the moment they file a complaint on behalf of a putative class.

Class Counsel's fiduciary duty to absent class members attaches the moment they seek to represent a class. In fact, attorneys have a *heightened* duty when resolving class actions prior to achieving certification. "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("*GMC Pick-Up*") ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."); *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978); *Jacobson v. Persolve, LLC*, 2014 U.S. Dist. LEXIS 115601, 2014 WL 4090809 (N.D. Cal. Aug. 19, 2014) (Koh, J.) (duty exists "[e]ven in a putative class action"). "If anything, a greater fiduciary duty should be imposed prior to certification…" Nick Landsman-Roos, *Front-End Fiduciaries: Precertification Duties and Class Conflict,* 65 STAN. L. REV. 817, 841 (2013).

The potential for conflict is structural and acute because every dollar reserved to the class is a dollar defendants will not want to pay class counsel. Defendants care only about minimizing payments and are indifferent to allocation, and so a court must ensure that counsel is not self-dealing at the class's expense. *Bluetooth*, 654 F.3d at 948; *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786-87 (7th Cir. 2014) ("*Pearson I*"); *Pampers,* 724 F.3d at 718.

To avoid these distortions of the class action system, first "the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect [class members'] interests." *Pampers*, 724 F.3d at 718 (cleaned up). Failing that however, Rule 23 assigns to courts superintendent "fiduciary"

responsibilities of their own to absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). The vitality of the class-action mechanism depends on *how* courts scrutinize such settlements, and whether their doctrinal tests correctly align the incentives of class counsel with those of the vulnerable, absent class members whose claims they purport to settle away. When courts simply defer to the settling parties, class counsel and defendants can each realize unfair windfalls at the expense of absent class members.

Plaintiffs triggered the Court's fiduciary duty to absent class members with the filing of their first putative class complaint on November 3, 2021. Dkt. 1 at 29. It does not matter that the underlying claims brought by Class Counsel may be settled by the time the Court decides this motion.[1] (That said, Intervenors urge the Court to move expeditiously so that the excess fees can be returned to the class as part of the ordinary administration process without the need for a reversion to state unclaimed funds procedures, *cy pres* awards, or a possibly-infeasible secondary distribution.) District courts have a continuing duty "to checkmate any abuse of the class action procedure, if unreasonable prejudice to absentee class members would result, irrespective of the time when the abuse arises." *Shelton v. Pargo*, 582 F.2d 1298, 1305 (4th Cir. 1978).

The fiduciary duty includes the duty to maximize class recovery. "[I]t is unfathomable that the class's lawyer would try to sabotage the recovery of some of his own clients." *Pierce v. Visteon Corp.*, 791 F.3d 782, 787 (7th Cir. 2015) (affirming denial of larger fee award where plaintiffs' counsel argued that class members should receive less money from the settlement); *see also In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060, 1068 (8th Cir. 2015); American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 1.05, *cmt.* f (2010) (fiduciary duty "forbids a lead lawyer from advancing his or her own interests by acting to the detriment of the

---

[1] The fairness hearing in Middlesex County, New Jersey is scheduled to occur on March 22, 2024. Given that court's adoption of settling parties' proposed orders over substantive opposition by an independent attorney representing thousands of putative class members (*see* Bednarz Decl. ¶¶ 7, 15), Intervenors would not be surprised if final approval and the fee award are both approved on this date. However, because the parties have not complied with the statutory notice requirements of 28 U.S.C. § 1715(b), the New Jersey court's decision is not binding on any non-party members of the putative classes alleged in the federal complaints putatively settled in the New Jersey action. 28 U.S.C. §§ 1715(d), (e)(1).

In any event, as explained below, the order sought by Intervenors can issue only after the amount of unjust enrichment is known—that is, the excess fees successfully misappropriated by Class Counsel through their evasion of this Court's scrutiny.

persons on whose behalf the lead lawyer is empowered to act."). Similarly, Class Counsel's fiduciary duty demands that they cannot sacrifice class recovery for "'red-carpet treatment on fees.'" *Pampers*, 724 F.3d at 718 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991)); *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021).

## B.    The Court has equitable authority over parties before it.

The Court has the inherent equitable power to order unjust enrichment recovered through the establishment of a constructive trust. "[U]nless otherwise explicitly restricted by statute, District Courts may exercise all inherent equitable powers to fashion relief, including ordering the payment of money." *Porter v. Warner Holding Co.*, 328 U.S. 395, 397-99 (1946). "The object of restitution . . . is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(4) (2010). Here, the court should exercise its equitable discretion to reallocate the unjust enrichment to Class Counsel that would otherwise result from their scheme to divest this Court of oversight over their fee award.

## C.    Class Counsel's windfall comes from rightful class recovery.

Class action fee awards derive from the basic equitable principle that one who provides a benefit to a group of beneficiaries ought to be rewarded proportionally for creating this benefit. Courts grant awards based on this "common fund" principle, even outside the class action context. *See, e.g., US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013).

To the extent Class Counsel seeks and obtains an excessive award, equity demands a reallocation of settlement in the reverse direction: disgorging unjust enrichment to equally benefit the entire class. This sort of equitable fee shifting has occurred in several contexts.

For example, in *Pearson III*, the Seventh Circuit found that the district court possessed the equitable authority to disgorge attorneys' fees misappropriated by class objectors who purported to represent the entire class, but settled for private payoff. *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020). Three objectors to a class action settlement filed appeals to prosecute their objections, which they purported to make on behalf of the entire settlement class. *Id.* at 830. Instead, these objectors settled their appeals for private payoff and no benefit to other class members. *Id.* A good-faith objector, represented by the Hamilton Lincoln Law Institute,

moved to discover these side-payments and claw them back for the benefit of class members. *Id.* at 831. The district court denied the motion, concluding there was no basis to believe the side-payments harmed class members. *Id.* The Seventh Circuit reversed and remanded.

While objectors purporting to appeal on behalf of the class do not have a fiduciary duty as class counsel does, they owe a duty "to object only in 'good faith'… that is, not for an improper purpose." *Pearson III*, 968 F.3d at 833. By filing bogus appeals intended only to extort the settling parties for private gain, the objectors breached even this lesser duty. *Id.* The panel further found that the objectors had leveraged something that didn't belong to them—the underlying claims resolved in the class action settlement. *Id.* at 834. Thus, the money extracted by the objectors rightfully belonged to the entire class. *Id.* The panel concluded that the remedy for this breach posed a "practical challenge" because payments to the class had already been sent, and the amounts misappropriated by the selfish objectors were far too small to issue another round of payments. *Id.* at 836-37. The panel found that the funds should nevertheless be held as a "constructive trust" with the purpose of benefiting class members, which the underlying settlement agreement contemplated in the form of a *cy pres* award to a charity. *Id.* at 837. Notably, the panel found the district court should have ordered an equitable remedy even though the selfish objectors (and their attorneys) were not technically parties to the underlying litigation. In fact, the district court had denied intervention to one of the objectors. *Id.* at 830.

What is true for objectors in a class action is even truer for Class Counsel, who owe a fiduciary duty directly to their clients.

*Pearson III* followed the Supreme Court's decision in *Young v. Higbee*, 324 U.S. 204 (1945). *Young* involved a proposed bankruptcy reorganization of The Higbee Company department store. 324 U.S. at 206. Two preferred shareholders (Potts and Boag) objected to the confirmation of the plan, contending that junior debt was allocated too great a share of the plan's proposed distribution. *Id.* After the district court overruled their objections and confirmed the plan, they appealed to have the confirmation set aside based upon the unfair treatment of preferred shareholders like themselves. *Id.* at 206-07. But rather than proceed on that argument, they "sold" their appeal to the junior debt holders (i.e., they settled and dismissed their appeal) for a personal payoff. *Id.* at 207. Another preferred shareholder (Young) intervened to compel an accounting by the initial appellants to disgorge the proceeds of the sale of their appeal to the other preferred shareholders. *Id.* at 208. A special master, the district court, and the circuit court of appeals presumed that because Potts and Boag

"had not acted as representatives of a class" there was no justification for disgorgement. *Id.* The Supreme Court reversed and required disgorgement. Even though "Potts and Boag did not expressly specify that they appealed in the interest of the whole class of preferred stockholders" the basis of that appeal "was that every other preferred stockholder, as well as themselves, would be injured by confirmation." *Id.* at 209. Their rights were "inseparable" and "[e]quity looks to the substance and not merely the form." *Id.* By appealing from a judgment that affected "a whole class of stockholders," "at the very least they owed them an obligation to act in good faith." *Id.* at 210.

Similarly, the Eleventh Circuit affirmed a denial of attorneys' fees in *Arkin v. Pressman, Inc.*, based on fundamental equitable principles. 38 F.4th 1001 (11th Cir. 2022). In *Arkin*, one set of class attorneys (Wanca) "provided one substantial and independent benefit to the class," but the panel agreed they were entitled to no fees from a common fund eventually negotiated by later-filing attorneys. *Id.* at 1005. Wanca attempted to forum shop by dismissing their first-filed complaint and re-filling a settlement in Illinois state court, where they could receive more fees. *Id.* at 1012. Common benefit fees are rooted in equity, and so class counsel forfeits their entitlement to fees through inequitable conduct. *Id.*

Another example of equitable redistribution of fees frequently occurs in MDL proceedings. A widely-cited opinion by the Fifth Circuit conceptually approved of a district court's order requiring "free rider" attorneys to contribute 8% toward a common fund to benefit the MDL steering committee. *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1019 (5th Cir. 1977). Cases following this approach have redistributed $100 million or more from private attorneys' fees to steering committees based on common benefit doctrine and courts' inherent managerial authority. *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. 2592, 2020 U.S. Dist. LEXIS 50440, at *9 (E.D. La. Mar. 24, 2020). Such orders have effectively renegotiated private retention agreements and sometimes have reached plaintiffs and attorneys who never participated in federal litigation. While these broad and purportedly equitable orders have been criticized, the critique primarily revolves around the questionable exercise of jurisdiction over attorneys not before the court and the fact that MDLs are not truly "common benefit funds" as class actions are. *See generally In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 964 (N.D. Cal. 2021). Neither criticism applies to the equitable order sought by Intervenors. The original Plaintiffs and their counsel intentionally availed themselves of this Court's jurisdiction—indeed, this was the

first filed action of all—and the settlement they obtained constitutes a common benefit fund. Equitable doctrines of fee shifting should apply forcefully to Class Counsel unjustly enriching themselves at class expense.

Here, Intervenors have a stronger equitable argument for reallocating excess attorneys' fees than the movants in *Pearson III*, *Young*, and MDL fee orders. First, Class Counsel owe class members a fiduciary duty, not just merely "an obligation to act in good faith" as in *Pearson III* and *Young*. Second, the beneficiaries of such equitable fee shifting are not just *like* class members as in *Young* and the MDL cases—they actually *are* class members, and can proportionally benefit from a redistribution of the unjust enrichment.

### D. Class Counsel would be entitled to *less* than a 25% fee award, and the Court should order any excess amount redistributed for class benefit.

The New Jersey settlement agreement captions itself under a new action that was to be filed in Middlesex County, New Jersey. Bednarz Decl. Ex. 1 (Settlement Agreement) at 1. The only explanation offered for filing a new action in November 2023 was to "join[] all the named Plaintiffs and claims asserted on behalf of the Plaintiffs in the Putative Class Cases, and the putative classes they seek to represent, in a single, consolidated proceeding." *Id.* at 4. But this rationale does not survive scrutiny. Settling parties frequently amend their operative complaints upon settlement, especially when expanding the scope of released claims, as happened here. Amendment has the advantage of not inadvertently forfeiting time under various statutes of limitations (another action the plaintiffs have taken contrary to the interests of class members).

The Eleventh Circuit examined an agreement to settle in state court and had no difficulty discerning its fee-extraction purpose. "As Eleventh Circuit precedent generally only allows district courts to award 25% of the common fund to class counsel as attorneys' fees, … Arkin and Smith agreed to voluntarily dismiss *Arkin I* and refile the class action in … the Illinois state trial court for Lake County, Illinois. … Illinois precedent allows state trial courts to award one-third of the common fund as attorneys' fees in class action." *Arkin v. Pressman*, 38 F.4th 1001, 1005-06 (11th Cir. 2022). "Had the *Arkin* Settlement been approved in Illinois state court, Wanca would have received $1.75 million more in attorneys' fees than it likely would have had the settlement agreement been approved in the Middle District of Florida." *Id.* at 1011. The Illinois plaintiffs' counsel, Wanca, denied it had refiled the complaint in order to increase its fees, contending that the venue was simply more convenient to the settling firms, but the panel found this implausible and potentially harmful to the class:

This rationale simply does not explain the terms of the Arkin Settlement. But let's assume for the sake of the argument that Wanca really did refile in Illinois only out of convenience, and that the Arkin Settlement's provisions providing for the refiling and the one-third attorneys' fees award (by happen-stance, the apparent benchmark award under Illinois law) really were a happy coincidence. Even still, Wanca's stated reasons for the refiling establish that the refiling was undertaken for the benefit of Wanca (and Smith), not for the benefit of the class. … this refiling for "convenience" put many of the class's claims at serious risk by potentially impairing 75% of the faxes at issue under the statute of limitations, as *Arkin II* was filed in August 2018, almost one year after *Arkin I* was filed. … If it truly had been more convenient for the parties to litigate in Illinois, they could have jointly moved for the venue to be transferred to an Illinois district court under 28 U.S.C. § 1404(a) and avoided the statute of limitations problem.

*Id.* at 1011-12. The Illinois court rejected the *Arkin II* settlement, and a settlement (with much more modest fee provisions) was later reached by other counsel. Although the panel agreed that *Arkin* counsel (Wanca) "provided one substantial and independent benefit to the class, we affirm because Wanca's prioritization of its interests over the class's interests throughout the *Arkin* litigation forecloses the equitable relief Wanca seeks." *Id.* at 1005. This is because "'he who comes into equity must come with clean hands,' and a party (or law firm) 'tainted with inequitableness or bad faith' 'closes the doors of a court of equity' with its misconduct." *Id.* at 1012 (*quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). "The record clearly shows that Wanca put the class at serious risk of harm with the Arkin Settlement for the sake of inflated attorneys' fees and convenience. Wanca has thus closed the doors of equity on its claim for attorneys' fees under the *Pressman* Settlement." *Id.* at 1012-13 (affirming denial of attorneys' fees).

The same factual inferences apply to the *Esposito* settlement. Just as in *Arkin*, the only alternative reason for filing in New Jersey state court curtails rather than enhances class benefit. Specifically, Verizon appears to value the terms that make opt-out more difficult for absent class members to exercise, terms that would not have been available under this district's Procedural Guidance or this Court's scrutiny. *See Arena v. Intuit Inc.*, 2021 WL 834253, 2021 U.S. Dist. LEXIS 41994, at *35 (N.D. Cal. Mar. 5, 2021) (finding "wet-ink" signature requirement, among others, to be "unduly burdensome" on the right of exclusion). Defendants have filed two different motions against an independent attorney who wished to opt out his thousands of arbitration clients, but was frustrated by terms forbidding group opt-out and requiring each customer to send a form with original

signature. Bednarz Decl. ¶¶ 7, 15. A court in this district would likely reject preliminary approval of a settlement structured to frustrate class members' due process rights. *E.g.*, *Arena*.

As an initial approximation of Class Counsel's unjust enrichment, should the *Esposito* court award $33.3 million, this would be $8.3 million more than the "benchmark" 25% fee award typical in this Circuit. But this Court would almost certainly award less than the benchmark due to the economies of scale of such a mega-settlement, the broad scope of waiver in the settlement, and infirmities in the fee papers.

In the first place, the gross $100 million settlement represents less than 1% of the damages estimated by Class Counsel under their theory of damages, which they reckon to be $263.25 per "average Verizon customer … during the class period" (Bednarz Decl. Ex. 7, ¶ 17)—*i.e.*, over $15 billion for the 58 million class members. Achieving less than a penny on the dollar militates against finding "exceptional results" by Class Counsel, and therefore against an above-benchmark fee.

The only thing exceptional about the settlement is the remarkably broad release provided to Verizon. The settlement contains a "covenant" preliminarily approved by the New Jersey court, which purports to waive class members' right to challenge Verizon's "administrative charge" in any court *or* in arbitration "permanently." Bednarz Decl. Ex. 1 ¶ 16.[2] No end date appears to apply to this "covenant" or to the date of "released claims." *Id.* at 25-27. "This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement and this Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction and to protect its judgments." *Id.*

Thus, the settlement makes all non-claiming class members much worse off. If the "covenant" is literally binding (and Intervenors hope that it is not), a non-claiming class member would be unable to challenge "administrative charges" decades from now, regardless of any intervening change in the law. That would not seem to comply with this Circuit's standard that circumscribes releases to claims that share an "identical factual predicate" with claims asserted in the litigation. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Indeed, some judges in this District would demand that non-claimants be exempted from the release. *Fraser v. Asus Computer Int'l*, 2012 WL 6680142, 2012 U.S. Dist. LEXIS 181315, at *7-*10 (N.D. Cal. Dec. 21, 2012) (Alsup,

---

[2] The preliminary approval order as proposed by the parties and as approved verbatim by the New Jersey court does not include page numbers.

J.) (release should be limited to those who submit claim forms); *Ross v. Trex Co.*, No. C 09-00670, 2013 U.S. Dist. LEXIS 74720, at *5 (N.D. Cal. May 28, 2013) (White, J.) (same). The gross settlement recovers $1.72 per class member, so the requirement for class members to spend a 68-cent first class stamp to preserve their rights is for the exclusive benefit of Verizon.

The settlement does not change Verizon's practices or limit their ability to increase these fees at will. (The fee is now styled as "Telco Recovery Charge" and has increased from $1.95 to a now unassailable $3.30 per month.) To the contrary, the settlement expressly allows increases. Class Counsel asserts "valuable injunctive relief" from a requirement for Verizon to revise a few words in the middle of its 5700-word Customer Agreement, but calling these changes "valuable" fails the laugh test:

> In addition to the cost of your plan or any features to which you may subscribe, our charges may also include ~~a Federal Universal Service Charge, a Regulatory Charge and~~ an Administrative and Telco Recovery Charge, ~~and other costs, fees, and assessments we incur to provide service~~ **in addition to the other fees described in this Agreement**.
>
> ~~We set these charges;~~ **The Administrative and Telco Recovery Charge** ~~they aren't taxes~~, **isn't a tax**, ~~they aren't~~ **it isn't** required by law, ~~they are~~ **is** not necessarily related to anything the government does, and ~~they are~~ **it is** kept by us in whole or in part~~, and t~~**T**he amount~~s~~ **of the Administrative and Telco Recovery Charge** and what ~~they pay~~ **it pays** for may change **over time**.

*Cf. In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016) (immaterial change in disclosures is not a settlement benefit).

While plaintiffs purported to vindicate the rights of class members to have their case heard in court, the settlement does the opposite. Except for class members who opt out by sending a request via mail with an "original signature," the settlement releases all class claims "regardless of whether the Settlement Class Member has any pending claims or causes of action against Verizon"—forever. Bednarz Decl. Ex. 1 (*Esposito* settlement) at 25-26. This is not merely hypothetical, as the settling plaintiffs and defendants have *both* moved to prevent an attorney who represents thousands of clients from opting his clients out of the settlement.

Read together, the terms of the settlement make it about as favorable to the defendant as $100 million settlement could be, with non-pecuniary terms aimed at frustrating the arbitration rights of certain class members. The broad release and illusory injunction do not mean a $100 million settlement is necessarily unfair

(Intervenors take no position on this), but it militates against the sort of result that would entitle Class Counsel to a 25% fee, let alone 33%. But even if the settlement is as fair as a settlement could possibly be, it does not excuse the breach of fiduciary duty in the forum-shopping to obtain additional fees at the expense of the class.

On the other side of the ledger, the work claimed by Class Counsel likewise does not support even a 25% fee award. Class Counsel claims to have billed 30,801.1 hours to reach settlement, which equals a $17.1 million lodestar, seeking a 1.46 lodestar multiplier. While this sort of fee award would be appropriate where class members achieve significant relief, *e.g.*, *McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869, at *17 (N.D. Cal. Mar. 13, 2019) (granting 27% fee award where class recovered half the value of their claims at trial), the *Esposito* settlement does not represent an exceptional result. While $100 million sounds impressive, as discussed above, it is less than 1% of Plaintiffs' $15.3 billion in claimed damages.

The high-level information provided in the New Jersey fee application would not satisfy this Circuit's standard of Rule 23(h) notice. *See Mercury Interactive*, 618 F.3d at 994 (requiring that class members be allowed "an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported"). What has been provided raises concerns about efficiency, waste, and whether the work was directed toward common benefit. Seven partners billed a total of 20,339.5 hours of the claimed 30,801.1 total. These hours seem top-heavy, given that most time listed is under the category of "Client Acquisition/Management." Attorney DeNittis declared "<u>over three fifths</u> of total time expended by Class Counsel and their staff on this litigation – approximately 61% – was spent identifying and reaching out to these 13,668 clients, vetting their potential claims, signing them up, answering their questions, collecting and reviewing their documents, customer agreements and bills, providing them with periodic updates regarding case developments, and maintaining their files." Bednarz Decl. Ex. 7 at 5 n.2 (emphasis in original). While Class Counsel may be correct that the "very real threat of having to fund and defend against 13,539 individual arbitrations" precipitated settlement (*id.*), they do not explain why this work was performed mostly by partners. The quantity and top-heavy nature of the hours claimed should receive careful scrutiny to the extent Class Counsel seek to justify their fees on the basis of lodestar rather than percentage of the fund. *See Viceral v. Mistras Grp., Inc.*, 2017 WL 661352, 2017 U.S. Dist. LEXIS 23220, at *11-*14 (N.D. Cal. Feb. 17, 2017) (Chen, J.) (finding excessive hours such that even a 25% award would overcompensate plaintiffs' attorneys).

The *modus operandi* of Class Counsel in this case is a repeat of earlier litigation these attorneys settled in order to avoid federal scrutiny. Since the filing of the complaint, the Class Counsel firms have settled at least six other class action settlements in New Jersey, including one in *Vasquez v. Altice USA, Inc.*, which resulted in an uncontested fee award of $4,999,500. MER-L-618-23 (N.J. Super. Ct.). The *Altice USA* settlement followed the same lifecycle as this case: it was initially filed as a putative California class concerning defendants' "TV Fees" billing charge. Class Counsel prevailed over defendants' motion to compel arbitration before this very Court, which defendants appealed. *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016 (N.D. Cal. 2021). As in this case, the order attracted *amicus* briefs on appeal. During the pendency of the appeal, the same attorneys filed two similar suits with putative classes covering additional states. As in this case, the parties agreed to dismiss all the actions in favor of a newly-filed New Jersey complaint to hear their settlement. The settling parties in *Altice USA* never advised this Court the reason for their Rule 41 dismissal. Class Counsel requested and received a 33.3% fee award from a $15 million settlement for a nationwide class of 7 million consumers without disclosing their hours billed. Bednarz Decl. Ex. 18. The state court simply adopted the parties' proposed orders without alteration. Bednarz Decl. Ex. 19. The same pattern also appeared in *Grillo v. RCN Telecom Servs.*, which was a federal action for a putative New Jersey class refiled in state court as a multistate class action settlement of one million consumers. Class Counsel sought and received a 33.3%/$3,834,401.72 fee award from the state court, again without even disclosing the hours billed. Bednarz Decl. Exs. 20 & 21.

## II.    Alternatively, the Court has inherent authority over the parties.

Independently, when confronted with an abuse of its processes, the Court has inherent authority to remedy wrongdoing and craft an equitable remedy. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("A primary aspect of [the court's inherent] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

While the Court does not have unbounded authority, it is appropriately exercised here because disgorgement complements the current and proposed amendments to the Federal Rules of Civil Procedure. "Sanctions authorized only by the inherent power of the court are . . . available only when no direct conflict with laws or national rules of procedure would arise." *Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 773 (7th Cir. 1997). Because CAFA was designed to prevent settlements where "counsel are awarded large fees, while

leaving class members with … awards of little or no value" (28 U.S.C. § 1711 note (a)(3)), curtailing class counsel's unjust enrichment accomplishes its purpose by undoing the abuse it was intended to prevent.

Further, equitable reallocation proportionally penalizes class counsel without prejudicing the defendants or third parties. Disgorgement perfectly "fits the crime" of bad faith settlements, because it recovers precisely what class counsel misappropriated for themselves. *See Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999) (when exercising inherent powers to sanction, "the punishment must fit the crime").

District courts possess inherent authority to revert baseless attorneys' fees in order to prevent "circuity and enforce ethical conduct in litigation before it." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 986 (7th Cir. 2002); *accord Estakhrian v. Obenstine*, No. 11-cv-3480, 2019 U.S. Dist. LEXIS 50828 (C.D. Cal. Mar. 26, 2019) (ordering disgorgement of fees as a well-established remedy for class counsel's breach of fiduciary duty) (*citing, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)). Identical reasoning applies here: Class Counsel has multiplied proceedings to benefit themselves and tried to pocket sizable sums that equitably belong to the class.

The Court should at a minimum equitably disgorge money in excess of what Class Counsel would have been awarded if they didn't breach their duty to the class, and this is not a penalty. In fact, equitable relief avoids "so far as possible, the imposition of a penalty." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(4) (2010).

This poses a problem for deterring future breaches of fiduciary duty. If the only consequence from breaching their fiduciary duty is that Class Counsel will receives what they would have been entitled to if they had moved before their Court, they have no incentive against future gamesmanship. In the vanishingly rare event class members hold them to a reasonable fee award, plaintiffs' counsel are no worse off. Few settlements attract a substantive objector, let alone intervening class members who seek to counteract court shopping, so counsel usually receives an unjust windfall. If "the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Muniz v. UPS*, No. C 09-01987 CW, 2011 U.S. Dist. LEXIS 36697, at *3 (N.D. Cal. Mar. 25, 2011) (*quoting Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).

Breach of one's fiduciary duty is subject to judicial sanction. *E.g., Rodriguez*, 688 F.3d 645 (affirming near-zeroing out of class counsel fees); *In re Bird*, 353 F.3d 636, 637 (8th Cir. 2003); *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999); *Weisman v. Alleco, Inc.*, 925 F.2d 77, 80 (4th Cir. 1991) (a "'gross violation' of the attorney-client relationship…would, standing alone, justify the imposition of Rule 11 sanctions."); *see also* American Law Institute, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 1.05(c)(3) (2010) ("To promote adequate representations, judges may: enforce fiduciary duties on named parties and their attorneys.").

"[W]here…class counsel negotiates a settlement agreement before the class is even certified, courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg*, 697 F.3d 858, 864 (9th Cir. 2012); *GMC Pick-Up*, 55 F.3d at 805.

Public policy and the law demand that there be material consequences for attempting to evade Rule 23 review of an attorneys' fee request after leveraging that court's processes to secure the settlement. If the Court had been properly presented with Class Counsel's fee petition, it would have discretion to reduce hours across the board. *E.g., Jacobson v. Persolve, LLC*, 2016 WL 7230873, at *6-7 (N.D. Cal. Dec. 14, 2016) (weighing counsel's disregard for the interests of absent class members in the fee calculus). A similar determination should apply here; let the punishment fit the crime.

This case—in particular the unfair process and negotiated fees ushered through in state court—is a prime example of why the law does and should disfavor precertification accords.

The parties may assert that CAFA's pro-federal bent only applies to situations where the defendant is held hostage against its will in state court. Not so. CAFA also serves to prevent state-court abuse of absent class members. *See* 28 U.S.C § 1711, note § 2(a)(3), (4); S. Rpt. 109-14 at 4, 14 (2005) (expressing concerns about lawyers who "'game' the procedural rules and keep nationwide or multistate class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests"; and about "state court judges…unable to give class action cases and settlements the attention they need"). It would be ironic—especially after *Standard Fire v. Knowles* disapproved of other gimmicks to circumvent federal jurisdiction over class actions—to hold that CAFA prohibits judges from acting to prevent gamesmanship of the system to evade federal review. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013).

**III.** **Corrective action by this Court is consistent with federalism; the New Jersey court's rulings will not preempt anything this Court does.**

The parties may argue that the Court lacks authority to disgorge unjust enrichment because the New Jersey court will set a fee award (under New Jersey law), which, they might falsely claim, ties this Court's hands due to *res judicata*, issue preclusion, or abstention doctrine. None of these arguments withstands scrutiny.

Intervenors do not ask the Court to re-litigate the New Jersey fee award, nor do they assert claims against Verizon like those resolved in the New Jersey settlement. Instead, the Intervenors plead a cause of action against Class Counsel where their forum selection gamesmanship merely provided a means for unjust enrichment. For example, in *Durkin v. Shea & Gould*, the fact that another court had favorably adjudicated the fairness and reasonableness of a shareholder derivative settlement did not preclude shareholders from suing plaintiffs' counsel for malpractice in the prosecution of the settled claim. 92 F.3d 1510 (9th Cir. 1996). Indeed, for administrative purposes, Intervenors would prefer this Court act before the New Jersey court if feasible, by issuing an order contingent (and only operative) on an excessive fee award. But even if the New Jersey court acts first, Intervenors move to disgorge against Class Counsel, not Verizon, so no preclusive effect from the New Jersey court's decisions tie this Court's hands.

As for abstention, no significant state interests are threatened by a Federal court issuing a decision in equity over counsel that have voluntarily appeared in litigation before the federal tribunal. If anything, CAFA expresses Congress's preference that cases of national importance receive scrutiny in Federal courts. To allow parties to evade federal review by colluding to file in state court would "run directly counter to CAFA's primary objective: ensuring 'Federal court consideration of interstate cases of national importance.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013). The putative Verizon class, touching 58 million souls or nearly 18% of all Americans, certainly qualifies as a national case.

**A.** **28 U.S.C. § 1715(d) precludes the New Jersey court from adjudicating the settlement of federal claims until the parties provide statutory notice to state attorneys general as 28 U.S.C. § 1715(b) requires.**

The New Jersey Settlement, by its own terms, resolves this and other federal 28 U.S.C. § 1711(2) class actions. Bednarz Decl. Ex. 1 at 32-33. It is thus a § 1711(6) "proposed settlement." But 28 U.S.C. § 1715(b) requires parties to a settlement of a federal class action to serve statutory notice upon the "appropriate State

official" and the "appropriate Federal official" within ten days after a proposed settlement is filed in court. The parties have not provided that notice to state attorneys general or the Attorney General of the United States. Bednarz Decl. ¶ 13. "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice" that § 1715(b) requires. 28 U.S.C. § 1715(d). Class members are thus not bound by any settlement agreement or consent decree. 28 U.S.C. § 1715(e)(1). Under federal law, this Court may thus adjudicate the rights of class members without regard to any findings of the New Jersey state court.

### B. Intervenors do not ask this Court to disturb New Jersey state proceedings.

Intervenors do not ask this court to review or disturb the *Esposito* court's forthcoming fee award, which is based on New Jersey law awarding fees for the resolution of class claims. Intervenors do not bring those claims against defendants, but instead seek a remedy against Class Counsel for their breach of fiduciary duty. Disgorging unjust enrichment does not countermand the order of a state court any more than collateral litigation involving fee sharing agreements or vendor disputes does. An equitable order from this Court would not be precluded by the New Jersey fee order or settlement approval. *E.g.*, *Durkin*, 92 F.3d 1510; *cf. Ruffalo v. Patterson*, 234 Cal. App. 3d 341 (1991).

As a rule, "federal courts are obliged to decide cases within the scope of federal jurisdiction," including diversity disputes on state law issues—abstention "is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). This is because federal courts "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018).

Nor are there *Rooker-Feldman* problems. The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). For *Rooker-Feldman* to apply, a federal action must implicate a final state court judgment and assert, in the federal claim, a legal error by the state court as the basis for that relief. *Id.* Presuming that the *Esposito* court in New Jersey approves the settlement and the fee motion, however, *Rooker-Feldman* does not bar this Court from adjudicating Intervenors' claims.

First, the Intervenors do not allege—in the event of approval of the settlement and fee motion—any legal error by the *Esposito* court. *Id.* It is entirely plausible, given the laws of this Circuit on settlements and fees differ from the laws of New Jersey, that the *Esposito* court makes the correct approval decision using the relevant New Jersey law. Instead, Intervenors are alleging that the settlement should never have been filed in New Jersey state court at all—at least not for the purpose of increasing counsel's fee award. This allegation is a "wrongful act by the" class counsel, not "legal error" by any *Esposito* approval. *Kougasian*, 359 F.3d at 1140-41. And when "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* at 1141. *Accord Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing *en banc*) (relying on Ninth Circuit law in *Durkin*).

## C. Finally, the New Jersey proceedings do not require abstention.

The Supreme Court has identified three "extraordinary and narrow" exceptions that justify abstaining from the "general rule" that federal courts hear claims. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813-17 (1976); *see also Sprint*, 571 U.S. at 78. But Intervenors' complaint does not implicate any of these categories and, moreover, the burdensome and byzantine doctrinal scheme which requires abstention is not satisfied here either. For the following reasons, this Court should adjudicate Intervenors' claims.

First, as a threshold matter, the *Esposito* suit in New Jersey where the settlement is currently submitted is not a "parallel state proceeding" that even implicates abstention. While the Ninth Circuit qualifies such proceedings "liberally," *Allstate Ins. Co. v. Tucknott Elec. Co.*, 2014 U.S. Dist. LEXIS 151249, *12 (N.D. Cal. 2014), Intervenors' complaint still does not satisfy this low threshold for abstention, because the *Esposito* state proceedings do not "arise from the same factual circumstances" as the Intervenors' federal action. *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 755 (9th Cir. 1996), *overruled in part on other grounds, Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998). Intervenors' complaint addresses only factual circumstances related to how Class Counsel handled this case—all of which came after the facts alleged in Plaintiffs' complaint. Intervenors' claims do not rely on the underlying facts substantiating the relevant class action at all. In fact, counsel could have brought any class action with completely different facts, handled it the same way, and—so long as they were still class members—Intervenors would have intervened and brought the same new

complaint before this court. Thus, this case is akin to *N.Y. Marine & Gen. Ins. Co. v. Junkermier, Clark, Campanella, Stevens, P.C.*, where the court recognized the federal malpractice suit "relate[d] to insurance coverage for the tort claims settled in state court" but because "the parties and the legal claims remain quite different" there was no "substantially similar state action" at issue. 2015 U.S. Dist. LEXIS 185118, *4 (D. Mont. 2015).

*Second*, the *Esposito* suit adjudicating settlement in New Jersey does not belong to any of the three categories for which abstention is even possible under *Sprint*. These categories are (1) state criminal prosecutions, (2) quasi-criminal civil enforcement proceedings, and (3) "civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. The first two categories are obvious non-starters. And in the Ninth Circuit, the only proceedings which satisfy the third category of abstention are when a federal complaint goes after the "procedures by which states administer their judicial system and ensure compliance with their judgments," not "substantive challenge[s]." *Wallingford v. Bonta*, 82 F.4th 797, 824 (9th Cir. 2023) (discussing *Rynearson v. Ferguson*, 903 F.3d 920, 925 (9th Cir. 2018)).

Here, Intervenors' challenge to attorneys' fees is substantive in nature, not a legal challenge to the "procedures by which states administer their judicial system." *Id.* For example, the Ninth Circuit has already affirmed the authority of a district court to decide on attorneys' fees while a related State proceeding is ongoing. *Chemical Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1307-1309 (9th Cir. 1994) (*per curiam*) (affirming lower court's decision not to award fees to lawyers who did not directly represent the class in the state proceeding). This holding is consistent with abstention law because the attorney fee decision did not affect the ability of the state court to enforce its ultimate holding. And it contrasts with federal suits affecting state processes like state custody hearings that are "integral to the State court's ability to perform its judicial function" to ensure sound placement of children. *Cf. Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 428 (2d Cir. 2015).

But even then, "it is not enough that there is a state proceeding that falls into one of the" *Sprint* categories for a federal court to abstain. *Wallingford*, 82 F.4th at 822-23. In addition, "the state proceeding must be (1) ongoing, (2) implicate important state interests, and (3) provide an adequate opportunity . . . to raise constitutional challenges." *Id.* (*quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Here, the *Esposito* settlement hearing simply does not implicate an important New Jersey interest: The

existence of CAFA itself and the fact the settlement addresses a nationwide class puts this way outside the scope of New Jersey-specific issues. As demonstrated in *Stone v. Patchett*, 08 CV 5171 (RPP), 2009 WL 1108596, 2009 U.S. Dist. LEXIS 35049 (S.D.N.Y. Apr. 23, 2009), where the district court rejected a motion to dismiss an effort to enforce a federal fee award for a class suit decided at arbitration while there was an ongoing state proceeding on the pertinent class settlement, attorneys' fees in nationwide class actions—especially those that arise in federal court—are substantive federal issues.

Further, there are not "exceptional circumstances ... present every time a federal court" decides a class issue "that resolves uncertainty flowing from an earlier settlement agreement resolving state court litigation." *Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 953 F.3d 660, 672 (10th Cir. 2020). This is especially so given the narrow scope of Intervenors' complaint and sought relief. Additionally, the federal relief sought "would [not] have the practical effect of enjoining the state proceedings." *Wallingford*, 82 F.4th at 823. The *Esposito* court will still, even if Intervenors are completely successful in their claims, maintain the independent sovereign authority to adjudicate the settlement proposal before it—even though the settlement was filed long after Plaintiffs and their lawyers brought the original, related litigation in this Court.

Accordingly, there is no lawful reason for this Court to abstain from hearing Intervenors' claims.

## IV. Recovered funds should be equitably distributed for class benefit.

The Court should order the parties to instruct the settlement administrator to retain class member information for potential payment of any reallocated funds. Should the Court swiftly order the reallocation of excess attorneys' fees, they may be distributed to claiming class members *pro rata* using the same process contemplated by the New Jersey settlement. Such distribution should incur essentially no marginal cost on the class.

The parties may argue that any constructive trust established by this Court in equity cannot feasibly be distributed to class claimants under the New Jersey settlement because it would violate terms of the agreement or because the timing of the Court's action makes distribution infeasible. To the extent that Class Counsel again breaches their fiduciary duty by invoking purported technical or logistic difficulties, the Court should instruct Intervenors to negotiate one or more quotes for the settlement administrator (Angeion) to redistribute reclaimed funds.

In the unlikely event that reallocated funds cannot be economically delivered to class members, the Court may nonetheless administer the funds as a constructive trust for the benefit of class members. For example the administrator could combine the distribution of disgorged funds and "unclaimed funds" as contemplated by the *Esposito* Settlement. Bednarz Decl. Ex. 1 at 19. The Court could select *cy pres* recipients for the funds, which the *Esposito* Settlement also contemplates. *Id.* Finally, the Court may also elect to escheat such disgorged funds to the Treasury of the United States under 28 U.S.C. § 2042. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1041 (9th Cir. 2011). True, Intervenors' counsel are known for their opposition to *cy pres*, and oppose it here though Ninth Circuit law permits it. *Frank v. Gaos*, 139 S. Ct. 1041 (2019). But whether the court distributes the funds to a *cy pres* recipient or the funds escheat to the Treasury, such disbursement is more fair than condoning the unethical behavior of class counsel. *Cf. Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999) ("main purpose" of disgorgement is not compensation, rather it is discouraging future wrongdoing).

## CONCLUSION

WHEREFORE, Intervenors request that this Court grant their Motion and order the redistribution of any attorneys' fees obtaining by class counsel in excess of the amount that would have been awarded by this Court. Additionally, the Court should reduce any net fee award to deter similar misuse of judicial process and order further relief as the Court deems just.

Dated: February 23, 2024

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
    CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

M. Frank Bednarz (*pro hac vice* pending)
HAMILTON LINCOLN LAW INSTITUTE
    CENTER FOR CLASS ACTION FAIRNESS
1440 W. Taylor St. #1487
Chicago, IL 60607
Voice: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Intervenors*

## PROOF OF SERVICE

I hereby certify that on this day I electronically filed the foregoing Motion and Memorandum in support of Intervention using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.


DATED this 23rd of February, 2024.

                                                    /s/ Theodore H. Frank
                                                    Theodore H. Frank