Daniel M. Hattis (SBN 232141)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com

Stephen DeNittis, Esq. (admitted *pro hac vice*)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

[Other counsel listed in signature block]

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND, *Et Al.*, For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC., <br><br> Defendants. | Case No. 3:21-cv-08592-EMC <br><br> **PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE** <br><br> <u>Hearing</u> <br> Date: May 9, 2024 <br> Time: 1:30 p.m. <br> Judge: Hon. Edward M. Chen <br> Courtroom: 5 |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................- 1 -

PROCEDURAL AND FACTUAL HISTORY .......................................... - 3 -

ARGUMENT ...................................................................................... - 10 -

I.    After The New Jersey Court Enters An Order Awarding Attorneys' Fees, This Court Will Lack Subject Matter Jurisdiction Over The Claims In The Proposed Complaint-In-Intervention...................................................- 10 -

    A.    This Court Will Lack Subject Matter Jurisdiction Under The *Rooker-Feldman* Doctrine. ...................................................................... - 10 -

    B.    The Claims In The Proposed Complaint-In-Intervention Will Be Precluded By Issue Preclusion And Full Faith And Credit. .................. - 13 -

II.   The Court Should Deny The Request For Mandatory Intervention. ...........- 15 -

    A.    The Motion To Intervene Is Not Timely. ........................................- 15 -

    B.    Proposed Intervenors Do Not Claim A Significantly Protectable Interest Relating To The Subject Of The Action..................................... - 17 -

        1.    The Proposed Intervenors Lack A Protectable Interest Because The Motion Is Not Ripe.................................................- 17 -

        2.    Proposed Intervenor Will Yeatman Lacks A Protectible Interest Because He Is Not A Member Of the California Class Alleged In This *MacClelland* Case. ...................................- 17 -

        3.    The Proposed Intervenors Lack A Protectible Interest In Their Non-Existent "Unjust Enrichment" Cause Of Action. ......................................... - 18 -

    C.    The Proposed Intervenors Are Not So Situated That The Disposition Of The Action May As A Practical Matter Impair Or Impede Their Ability To Protect Their Interest....................................................... - 18 -

    D.    The Proposed Intervenor's Interest Are Not Inadequately Represented By The Parties To The Action.......................................................... - 20 -

III.  The Court Should Deny The Request For Permissive Intervention. ............. - 21 -

    A.    The Proposed Intervenors Do Not Share A Common Question Of Law Or Fact With The Main Action. ...................................................... - 21 -

    B.    The Motion Is Not Timely............................................................. - 22 -

    C.    This Court Does Not Have An Independent Basis For Jurisdiction Over The Proposed Intervenor's Claims. .............................................. - 22 -

    D.    This Court Can And Should Deny The Motion For Intervention Even If Potential Intervenors Satisfy The Three-Part Test. ........................... - 23 -

CONCLUSION ................................................................................... - 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                            **PAGE(S)**

*Achey v. Cellco P'ship,*
   293 A.3d 551 (N.J. App. Div. 2023) ................................................................. 5

*Alaniz v. California Processors, Inc.,*
   73 F.R.D. 269 (N.D. Cal. 1976) ...................................................................... 19

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................ 18

*Carroll v. Wells Fargo & Co.,*
   No. 15-CV-02321-EMC,
   2016 WL 3951650 (N.D. Cal. July 22, 2016) ........................................... 17, 18

*Cohorst v. BRE Props., Inc.,*
   No. 10CV2666 JM BGS,
   2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) .................................................. 16

*Corsi v. Cellco P'ship,*
   No. CV224621ZNQRLS,
   2023 WL 3775320 (D.N.J. June 2, 2023) ......................................................... 6

*Cox v. RKA Corp.,*
   753 A.2d 1112 (N.J. 2000) ............................................................................. 16

*Davis v. J.P. Morgan Chase & Co.,*
   775 F. Supp. 2d 601 (W.D.N.Y. 2011) ........................................................... 19

*De Havilland v. FX Networks, LLC,*
   21 Cal.App.5th 845 (2018) ............................................................................. 18

*Devlin v. Scardelletti,*
   536 U.S. 1 (2002) ........................................................................................... 15

*Doe & Assocs. Law Offices v. Napolitano,*
   252 F.3d 1026 (9th Cir. 2001) ........................................................................ 11

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) .......................................................................... 21

*Dubinka v. Judges of Super. Ct. of State of Cal. for County of Los Angeles,*
   23 F.3d 218 (9th Cir. 1994) ............................................................................ 11

*Efreom v. McKee,*
   46 F.4th 9 (1st Cir. 2022) ........................................................................... 12, 13

*Epstein v. MCA, Inc.,*
   179 F.3d 641 (9th Cir. 1999) .............................................................. 11, 14, 20

*Estate of Dawson,*
    641 A.2d 1026 (N.J. 1994) .................................................................................. 14

*Feng v. County of Santa Clara,*
    No. 19-CV-06877-LB,
    2020 WL 2494528 (N.D. Cal. May 14, 2020)..................................................... 12

*First Union Nat'l Bank v. Penn Salem Marina, Inc.,*
    921 A.2d 417 (N.J. 2007) .................................................................................. 14

*Forthoffer v. Fore,*
    804 F. App'x 688 (9th Cir. 2020) ...................................................................... 18

*Greene v. United States,*
    996 F.2d 973 (9th Cir.1993) .............................................................................. 17

*In re Warfarin Sodium Antitrust Litigation,*
    212 F.R.D. 231 (D. Del. 2002) .......................................................................... 19

*Kamerman v. Steinberg,*
    681 F. Supp. 206 (S.D.N.Y. 1988) ...................................................................... 3

*Khanna v. State Bar of California,*
    505 F. Supp. 2d 633 (N.D. Cal. 2007)............................................................... 12

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) .......................................................................... 21

*Kougasian v. TMSL, Inc.,*
    359 F.3d 1136 (9th Cir. 2004) .................................................................... 11, 13

*Lee v. The Pep Boys-Manny Moe,*
    No. 12-cv-05064-JSC,
    2016 WL 324015 (N.D. Cal. Jan. 27, 2016)....................................................... 18

*MacClelland v. Cellco P'ship,*
    609 F.Supp.3d 1024 (N.D. Cal. 2022)................................................................. 4

*Molock v. Whole Foods Mkt. Grp., Inc.,*
    952 F.3d 293 (D.C. Cir. 2020).......................................................................... 15

*O'Connor v. Uber Technologies, Inc.,*
    No. 13-CV-03826-EMC,
    2016 WL 4400737 (N.D. Cal. Aug. 18, 2016) .................................................... 19

*Olson Farms, Inc. v. Barbosa,*
    134 F.3d 933 (9th Cir. 1998) ............................................................................ 11

*Oregon Environmental Council v. Oregon Dep't of Enironmental Quality,*
    775 F. Supp. 353 (D. Or. 1991) ........................................................................ 23

*Pension Tr. Fund For Operating Engineers v. Triple A Mach. Shop, Inc.,*
   942 F.2d 1457 (9th Cir. 1991) ........................................................................... 14

*Perry v. Proposition 8 Official Proponents,*
   587 F.3d 947 (9th Cir. 2009) ........................................................................... 20

*Reusser v. Wachovia Bank, N.A.,*
   525 F.3d 855 (9th Cir. 2008) ........................................................................... 11

*Rosenaur v. Scherer,*
   88 Cal. App. 4th 260 (2001) ........................................................................... 16

*See In re: Sasson,*
   424 F.3d 864 (9th Cir. 2005) ........................................................................... 13

*Silver v. Babbitt,*
   166 F.R.D. 418 (D. Ariz. 1994) ...................................................................... 17

*State ex rel. Lockyer v. United States,*
   450 F.3d 436 (9th Cir. 2006) ........................................................................... 15

*Tali v. Liao,*
   No. 18-CV-00330-LHK,
   2018 WL 5816171 (N.D. Cal. Nov. 5, 2018) .................................................. 12

*Tarus v. Borough of Pine Hill,*
   916 A.2d 1036 (N.J. 2007) .............................................................................. 14

*United States v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004) ........................................................................... 16

*United States v. Pitney Bowes, Inc.,*
   25 F.3d 66 (2d Cir. 1994) ................................................................................ 21

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989) ........................................................................... 23

*Zepeda v. Paypal, Inc.,*
   No. 10-cv-02500-SBA (JCS),
   2014 WL 1653246 (N.D. Cal. April 23, 2014) ............................................... 18

**STATUTES**

28 U.S.C. § 1738 ..................................................................................................... 14

**RULES**

Federal Rule of Civil Procedure 24 ........................................................................ 21

## <u>INTRODUCTION</u>

Four proposed intervenors have a problem with a class action settlement agreement that is currently being reviewed by a New Jersey state court. They could have filed an objection in that court. If that court overruled their objection, the New Jersey appellate courts are at their disposal and, from there, the U.S. Supreme Court.

Yet the four proposed intervenors did not file an objection (or any other document) in the New Jersey state court. Instead, they made the vexatious decision to ask this Court—located three thousand miles away and part of a different level of government—to allow them to intervene in this federal action so that they can ask this Court to change the New Jersey court's order regarding class action attorneys' fees (which, as of the day this Opposition is being filed, has not been decided or entered).

The proposed intervenors contend that they are not, in fact, objecting to the settlement agreement but are instead seeking to assert claims against Class Counsel (some of whom are the counsel of record in this action) for breach of fiduciary duty and unjust enrichment. As best as can be gleaned from the Motion To Intervene (Dkt. No. 89) ("Motion" or "Mot.") and the proposed Complaint-In-Intervention (Dkt. No. 89-1), the proposed intervenors seek to allege two theories of liability. First, they allege that Class Counsel had a fiduciary duty to settle this *MacClelland* case in this Court but violated that duty by seeking to approve a nationwide settlement of four pending class actions (including *MacClelland*) and more than 13,000 private arbitrations in a New Jersey Superior Court action (known by the shorthand name *Esposito*). Second, they allege that Class Counsel had a fiduciary duty to seek attorneys' fees under the Ninth Circuit benchmark of 25% of the common fund but violated that duty by seeking fees from the New Jersey court of 33.3%. As relief, the proposed intervenors request that this Court order Class Counsel to disgorge either all of their *Esposito* attorneys' fees above the 25% benchmark or, in the alternative, all of their attorneys' fees period. *See* Proposed Order, at ¶¶ 29-32 (Dkt. No. 90-1).

These theories of liability are barely disguised objections to the settlement agreement; they could and should have been brought in the New Jersey Superior Court, which is more than

1   competent to determine whether it is the proper forum for settlement, what governing law

2   applies to an attorneys' fees award, and what amount to award. In fact, as of the day of the

3   filing of this Opposition, the New Jersey Superior Court is in the process of making exactly

4   these final determinations (with the Fairness Hearing scheduled for March 22, 2024). Yet the

5   remarkable fact about the proposed intervenor's tactics is that the proposed intervenors did *not*

6   file an objection (or a request for exclusion) with the New Jersey court and are *not* asking the

7   New Jersey court to rule on these issues—*which are before that court right now.*

8       The Motion To Intervene is riddled with fatal flaws. The motion is not ripe, since not

9   one penny of attorneys' fees has yet been awarded. Once the New Jersey court enters its

10  attorneys' fees award, the *Rooker-Feldman* doctrine, the law of issue preclusion and the Full

11  Faith And Credit statute will forbid this Court from re-determining the sum that Class Counsel

12  will receive. The motion is not timely. The proposed intervenors have no protectable interest in

13  *this* case. The proposed intervenors had an interest in the New Jersey action but made the

14  befuddling decision not to file an objection in that case, and the deadline has now passed. One

15  of the proposed intervenors is not a California resident and is therefore not a member of the

16  class alleged in this *MacClelland* case. "Unjust enrichment" is not an actual cause of action.

17  Intervention cannot be used to create new lawsuits against new defendants—especially this

18  close to the Fairness Hearing. This Court also likely does not even have jurisdiction to

19  adjudicate the claims in the proposed Complaint-In-Intervention, since, among other reasons,

20  the proposed intervenors are actually attempting to obtain control over a specific pot of money

21  located out of state (a *res*) rather than alleging traditional liability.

22      The entire motion is strange. None of it looks like a normal intervention application. To

23  quote a district court that was confronted with a similarly incongruous attempt to intervene,

24  "The court notes at the outset the peculiar character of movants' application to intervene.

25  Ordinarily, a person desiring to intervene seeks to join a pending action either as a plaintiff or

26  as defendant. . . . .  The movants here, on the other hand, do not seek to join this action as

27  either plaintiffs or as defendants. They have no claim to press against defendants; nor have they

28  any defense to assert against plaintiffs. In fact, they have no intention whatsoever of litigating

1   the causes of action asserted in the federal complaint. Their sole purpose in submitting their

2   motion is to delay the prosecution of the federal action. With this goal in mind, they dress in the

3   language of Rule 24 what is in reality an application for some special status permitting them to

4   press their motion for a stay. For this reason alone, the court believes that the application to

5   intervene should be denied." *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988).

6   The proposed intervenors are attempting something similar here: Instead of seeking to become

7   additional plaintiffs or defendants with regard to the claims alleged in the underlying dispute,

8   they seek some special status so that they can achieve their real purpose of halting the

9   performance of the New Jersey court's attorneys' fees order. This Court should have none of it.

10                              **PROCEDURAL AND FACTUAL HISTORY**

11          The claims alleged by Plaintiffs Teresa MacClelland, Et Al. ("Plaintiffs") in this

12   *MacClelland* case are in the process of being settled in the New Jersey Superior Court along

13   with four other class actions and more than 13,000 private arbitrations that were asserted

14   against Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications

15   Inc. (collectively, "Verizon") with regard to Verizon's monthly Administrative Charge. *See*

16   Declaration of Daniel M. Hattis In Support of Oppositions To Motion To Intervene And

17   Motion For Equitable Distribution ("Hattis Decl."), ¶ 3.

18          When the five class actions against Verizon are plotted out on paper, the strategy of

19   plaintiffs' counsel becomes clear: allege classes that include customers in every state but then

20   stay, preserve and protect the class members' claims by using a new class action (the *Esposito*

21   case) as a settlement vehicle. Hattis Decl., ¶ 8. That way, if the settlement falls apart, the

22   plaintiffs can pursue their claims in their original cases without worrying about the limitations

23   period having expired or other procedural complications. *Ibid.*

24          The following summary of the class actions against Verizon also underscores an

25   important point: the center of gravity of this dispute is and always has been New Jersey.

26   Plaintiffs' counsel filed this one *MacClelland* action in California and pleaded a single-state

27   class limited to California. Plaintiffs' counsel then filed three separate class actions in New

28   Jersey, including a class action filed in New Jersey state court only two months after

*MacClelland* was filed, and those three New Jersey actions collectively pleaded a nationwide

class (excepting California) and forty-five state classes comprising 102 plaintiffs that, when

combined, cover consumers in 49 states and the District of Columbia. Obviously, the amount of

liability that Verizon faces in the New Jersey actions is factors greater than what it faces in this

California-only action.

**The *MacClelland* Class Action.** The Court is well-acquainted with this civil action. In

short, Plaintiffs allege false advertising and deceptive practices claims on behalf of a class of

California consumers against Verizon regarding Verizon's monthly Administrative Charge. *See*

Second Amended Complaint, ¶¶ 1-14 (summary of allegations), 501 (California class defined)

(Dkt. No. 58).

This Court denied Verizon's motion to compel arbitration. *MacClelland v. Cellco*

*P'ship*, 609 F.Supp.3d 1024 (N.D. Cal. 2022). Verizon appealed. *MacClelland v. Cellco P'ship*,

Ninth Circuit Case No. 22-16020.

Five days before Ninth Circuit oral arguments were scheduled to occur, the parties

informed the Ninth Circuit that a settlement-in-principle had been reached. *See* Notice Of

Settlement And Joint Motion To Hold Case In Abeyance, filed Nov. 9, 2023 (Exhibit B to

Hattis Decl.). The Ninth Circuit took the oral argument off calendar and ordered the case to be

held in abeyance for 60 days. *See* Order, Nov. 13, 2023 (Exhibit C to Hattis Decl.).

In November 2023, Plaintiffs and other claimants and Verizon agreed to a nationwide

class settlement that, if approved, would resolve this *MacClelland* action, plus four pending

class actions in the New Jersey state and federal courts, plus more than thirteen thousand

private demands for arbitration—all of which allege similar false advertising and deceptive

practice claims against Verizon with regard to its monthly Administrative Charge. *See* Class

Action Settlement Agreement (Exhibit A to Hattis Decl.).

In December 2023, Plaintiffs and Verizon filed in this *MacClelland* action a Stipulation

And Proposed Order Continuing Status Conference (Dkt. No. 84) discussing the settlement; in

response, this Court continued the next status conference to April 23, 2024 (Dkt. No. 85).

Similarly, in January 2024, Plaintiffs and Verizon filed a Joint Status Report in the

*MacClelland* Ninth Circuit Appeal (Exhibit D to Hattis Decl.) discussing the settlement; in response, the Ninth Circuit ordered that the appeal continue to be held in abeyance for an additional 90 days (i.e., through to April 16, 2024) (Dkt. No. 87).

**The Initial Three New Jersey Class Actions.** This *MacClelland* action is part of a multi-action wave of litigation against Verizon regarding its Administrative Charge. Hattis Decl., ¶¶ 4–5. Other class actions have been filed and are pending in the state and federal courts of New Jersey—the state in which Verizon is headquartered and which has general jurisdiction over Verizon. *Ibid.* (This *MacClelland* action was the first of the class actions to be filed—on November 3, 2021, to be precise. The scope of this action and its proposed class is limited to *California* consumers. *See* Complaint, ¶ 113 (Dkt. 1) (limiting class to "individual consumers in California").)

**The *Achey* Class Action.** On January 11, 2022—only two months after this *MacClelland* action was filed—counsel filed in the New Jersey Superior Court of Middlesex County the class action captioned *Jeffrey Achey v. Cellco P'ship*, Case No. MID-L-000160-22 ("*Achey*"). The *Achey* class is limited to New Jersey citizens, specifically, "[a]ll New Jersey citizens who currently subscribe or formerly subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an 'Administrative Charge' within the applicable statutes of limitations." Hattis Decl., ¶ 12 (quoting *Achey* Class Action Complaint, ¶ 114).

The *Achey* case was litigated intensively by both sides. While the Superior Court (by Hon. J. Randall Corman) granted Verizon's motion to compel arbitration, the Appellate Division reversed and unanimously held that Verizon's arbitration agreement was unconscionable under New Jersey law. *Achey v. Cellco P'ship*, 293 A.3d 551 (N.J. App. Div. 2023). The New Jersey Supreme Court then agreed to hear the case. *Achey v. Cellco P'ship*, N.J. Supreme Court No. 088253 (cert. granted on Sept. 11, 2023). A couple of months later, after all briefing before the New Jersey Supreme Court had been completed and while waiting for an oral argument date, a nationwide settlement was reached. As of now, the New Jersey Supreme Court appeal is informally stayed pending the trial court's approval of the class

settlement. Hattis Decl., ¶ 14.

**The *Corsi* Class Action.** On July 18, 2022, counsel filed in the Newark Vicinage of the U.S. District Court for the District of New Jersey the class action captioned *Cintia Corsi v. Cellco P'ship*, Case No. 22-4621 ("*Corsi*"). Hattis Decl., ¶ 15.

The operative *Corsi* complaint alleges claims on behalf of six classes composed of Verizon post-paid customers who paid the Administrative Charge; the six classes are based on the state of citizenship of the customer, with different classes for customers in Florida, Hawaii, New Mexico, New York State, Oregon and Washington State. Hattis Decl., ¶ 15 (citing *Corsi* Amended Class Action Complaint, ¶¶ 113-18).

In *Corsi*, Verizon moved to compel arbitration, and the district court denied the motion. "[T]his Court will deny Defendants' motion without prejudice, and order the parties to conduct limited discovery on the issue of arbitrability. Afterwards, Defendants may file a renewed motion to compel arbitration[.]" *Corsi v. Cellco P'ship*, No. CV224621ZNQRLS, 2023 WL 3775320, *3 (D.N.J. June 2, 2023). The parties completed informal discovery through the negotiation of a stipulation of facts. Hattis Decl., ¶ 16. Verizon did not file a renewed motion to compel arbitration. *Ibid.*

On December 21, 2023, the *Corsi* plaintiffs and Verizon asked the district court for a stay of proceedings due to the nationwide settlement. Hattis Decl., ¶ 16. On January 2, 2024, the district court stayed the action through April 1, 2024. *Ibid.*

**The *Allen* Class Action.** On February 27, 2023, counsel filed in the Newark Vicinage of the U.S. District Court for the District of New Jersey the class action captioned *Pamela Allen v. Cellco P'ship*, Case No. 3:23-cv-01138 ("*Allen*").[1] Hattis Decl., ¶ 17.

The *Allen* class was limited to "[a]ll residents of the United States who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an 'Administrative Charge' or 'Administrative and Telco Recovery Charge' within the applicable statutes of limitations, specifically *excluding* citizens of California, New Jersey,

---

[1]   The *Corsi* case and the *Allen* case were ultimately both assigned to Judge Zahid Quraishi in the Trenton Vicinage of the District of New Jersey. Hattis Decl., ¶ 17.

Florida, Hawaii, New York, New Mexico, Oregon, and Washington and any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225." Hattis Decl., ¶ 17 (quoting *Allen* Class Action Complaint, ¶ 116 (emphasis added)). The *Allen* plaintiffs also pleaded subclasses that were each limited to Arizona, Colorado, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, North Carolina, Ohio, Pennsylvania, Texas, Virginia and Wisconsin. Hattis Decl., ¶ 17 (citing *Allen* Class Action Complaint, ¶¶ 117-31).

Verizon moved to compel arbitration, and the parties briefed the motion. Hattis Decl., ¶ 18. In light of the *Corsi* court's denial without prejudice of Verizon's motion to compel arbitration in that case, Verizon withdrew its motion to compel arbitration in the *Allen* case. *Ibid.* The parties completed informal discovery through the negotiation of a stipulation of facts. *Ibid.* Verizon did not file a renewed motion to compel arbitration. *Ibid.*

On August 11, 2023, the *Allen* Complaint was amended to add 23 plaintiffs from 23 additional states. The *Allen* Amended Complaint pleaded a total of 38 state subclasses on behalf of plaintiffs from each of their respective states, specifically: Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, Wisconsin, Wyoming and District of Columbia. Hattis Decl., ¶ 19 (citing *Allen* Amended Class Action Complaint, ¶¶ 138-176).

On December 21, 2023, the *Corsi* plaintiffs and Verizon asked the district court for a stay of proceedings due to the nationwide settlement. Hattis Decl., ¶ 20. On January 2, 2024, the district court stayed the action through April 1, 2024. *Ibid.*

**13,593 Verizon Customers Seeking AAA Arbitrations.** In addition to representing the plaintiffs in the class actions, Plaintiffs' counsel also represents 4,025 Verizon customers who have already submitted arbitration demands to the American Arbitration Association ("AAA") seeking to recover their payments of Verizon's Administrative Charge. Hattis Decl., ¶ 21.

Plaintiffs' counsel also sent dispute notices to Verizon on behalf of an additional 9,514 Verizon customers who likewise intended to file arbitrations with the AAA to recover their payments of the Administrative Charge. *Ibid.* In total, Plaintiffs' counsel represents 13,539 Verizon customers who had decided to pursue their claims against Verizon in arbitration. *Ibid.* Like the Plaintiffs in the class actions, the 13,539 Verizon arbitration claimants allege that Verizon engaged in a deceptive scheme whereby Verizon charged more for its wireless service than it advertised and promised by imposing an inadequately disclosed Administrative Charge on its customer bills, and that Verizon then omitted or misrepresented the existence or true nature of the Administrative Charge on its customer bills to further its scheme. *Ibid.*

On February 22, 2023, an AAA process arbitrator ruled in a proceeding concerning the first group of 1,963 Verizon customers that the so-called "bellwether" provision of the Verizon arbitration clause was not enforceable by the AAA because it would result in extraordinary delays in the resolution of mass claims brought against Verizon, thereby violating the principles of the AAA Consumer Due Process Protocol. Hattis Decl., ¶ 22. On May 26, 2023, the parties agreed to request a stay of the AAA proceedings so that the parties could engage in settlement discussions. *Ibid.*

**The *Esposito* case.** After the nationwide settlement was reached (which involves a $100 million non-reversionary settlement fund), the parties filed in the New Jersey Superior Court of Middlesex County the proceeding captioned *Dean Esposito v. Cellco P'ship*, No. MID-L-006360-23 ("*Esposito*").

The *Esposito* case was filed in order to achieve a nationwide settlement without prejudicing the plaintiffs' and class members' ability to continue pursuing their earlier-filed class actions against Verizon in the event that the settlement agreement was not ultimately approved. That is why the plaintiffs' counsel asked the courts in *MacClelland*, *Achey*, *Corsi* and *Allen* to stay the actions and to not dismiss them. *See*, *e.g.*, Stipulation And Proposed Order Continuing Status Conference (Dkt. No. 84), at p. 1 ("this civil action should **not** at this time be dismissed") (emphasis in original). In a worst-case scenario for the plaintiffs and class members (denial of final approval of the settlement), the *Esposito* action could be dismissed

without prejudice, and each set of plaintiffs and class members would return to their original cases, ask the respective courts to lift the stay, and proceed with litigation. Rather than being a breach of fiduciary duty, the filing of the *Esposito* case was an example of Class Counsel going above and beyond in order to protect the plaintiffs and the absent class members.

Other concerns also motivated the filing of the *Esposito* case. The settlement agreement needed to be approved by a court in New Jersey, because Verizon is headquartered in New Jersey, and the New Jersey courts can exercise general jurisdiction over Verizon as to claims made by consumers from throughout the country. The *Achey* and *MacClelland* cases are sub-optimal vehicles for a settlement because they are both pending before appellate courts; all parties wanted to stay the two appeals and retain their right to revive the appeals in the event the settlement agreement was not approved. The *Corsi* and *Allen* cases are still at the trial court level, but they are sub-optimal settlement vehicles because, to effectuate a nationwide settlement, dozens of named plaintiffs would have to be amended into either case and then, if the settlement was not approved, amended out of the cases and returned to their original cases. The optimal way to proceed with the nationwide settlement was to file a clean, new, stand-alone civil action as a settlement vehicle—the *Esposito* case.

On December 15, 2023, the New Jersey Superior Court (by Hon. Ana C. Viscomi) granted preliminary approval of the nationwide settlement agreement. *See Esposito* Order Granting Preliminary Approval Of Class Settlement Agreement And Directing Dissemination Of Class Notice ("Preliminary Approval Order") (Exhibit H to Hattis Decl.).

The Superior Court scheduled a Fairness Hearing to occur on March 22, 2024. Preliminary Approval Order, ¶ 16. The opt-out deadline was set for February 20, 2024. *Ibid.*, ¶ 14; *see also* Settlement Website, Home Page, "Important Dates" (https://www.verizonadministrativechargesettlement.com/home). The objection deadline was set for February 26, 2024. *Ibid.*, ¶ 15. *See also* Settlement Website, Home Page, "Important Dates" (https://www.verizonadministrativechargesettlement.com/home).

On January 31, 2024, the plaintiffs' counsel in *Esposito*—now the preliminarily appointed Class Counsel—moved for an award of attorneys' fees from the New Jersey court in

the sum of $33.3 million—an amount comprised of exactly 33.3% of the settlement fund.

Hattis Decl., ¶ 25. The amount requested also equaled the class counsels' lodestar, plus a

lodestar multiplier of 1.945. *Ibid.* As argued at length in the motion for attorneys' fees filed in

*Esposito*, the amount requested is consistent with Third Circuit and New Jersey law. *Ibid.* No

attorneys' fees have been awarded yet. *Ibid.*

Importantly, the Proposed Intervenors did *not* file an opt-out from the settlement and

did *not* file an objection to the settlement. Hattis Decl., ¶ 26. Both of those deadlines have now

passed.[2]

## ARGUMENT

The proposed intervenors have moved for mandatory intervention and, in the

alternative, permissive intervention. The proposed intervenors fail to establish the elements for

either form of intervention. However, as a threshold matter, Plaintiffs will address the fact this

Court lacks jurisdiction.

**I.   After The New Jersey Court Enters An Order Awarding Attorneys' Fees, This Court Will Lack Subject Matter Jurisdiction Over The Claims In The Proposed Complaint-In-Intervention.**

    **A.   This Court Will Lack Subject Matter Jurisdiction Under The *Rooker-Feldman* Doctrine.**

As of the day that this Opposition is being filed, the Motion To Intervene is not ripe

because the New Jersey court has not yet awarded one cent of attorneys' fees. *See* Section

II(B)(1), *infra*. However, as soon as the New Jersey court enters an attorneys' fees order, this

Court will be stripped of subject matter jurisdiction to hear any claims that are a de facto appeal

of the New Jersey order. Under the *Rooker-Feldman* doctrine, once an order is entered in a

state court, an aggrieved party is required to appeal that order within the state appellate system

and, after that, in the U.S. Supreme Court; a party aggrieved by a state court order is not

---

[2]    There is a side show occurring in the *Esposito* action that has no relevance to this motion to intervene, although Proposed Intervenors mention it in their papers. Mot., at pp. 4-5. An attorney named Evan Murphy—referred to as the "independent attorney" in the Proposed Intervenors' papers—has been attempting to extract a portion of the settlement for himself and his purported clients. He has not met with success.

1    allowed to file a de facto appeal in a federal district court, which is what the Proposed

2    Intervenors have done.

3        The *Rooker–Feldman* doctrine bars federal district courts "from exercising subject

4    matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian*

5    *v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). "The purpose of the doctrine is to protect

6    state judgments from collateral federal attack." *Doe & Assocs. Law Offices v. Napolitano*, 252

7    F.3d 1026, 1029 (9th Cir. 2001). "This rule applies even when the state court judgment is not

8    made by the highest state court[.]" *Dubinka v. Judges of Super. Ct. of State of Cal. for County*

9    *of Los Angeles*, 23 F.3d 218, 221 (9th Cir. 1994). A challenge under the *Rooker–Feldman*

10   doctrine is a challenge for lack of subject-matter jurisdiction and may be raised at any time by

11   either party or sua sponte by the court. *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th

12   Cir. 1998).

13       *Rooker–Feldman* "applies only when the federal plaintiff both asserts as her injury legal

14   error or errors by the state court *and* seeks as her remedy relief from the state court judgment."

15   *Kougasian*, 359 F.3d at 1140 (emphasis in original). "However, *Rooker–Feldman* may also

16   apply where the parties do not directly contest the merits of a state court decision  . . . .  A

17   federal action constitutes such a de facto appeal where claims raised in the federal court action

18   are inextricably intertwined with the state court's decision such that the adjudication of the

19   federal claims would undercut the state ruling or require the district court to interpret the

20   application of state laws or procedural rules." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855,

21   859 (9th Cir. 2008) (quotation marks omitted).

22       The *Rooker-Feldman* doctrine forbids what Proposed Intervenors are trying to do: to

23   attack in federal court a state-court order regarding class counsel. In *Epstein v. MCA, Inc.*, 179

24   F.3d 641, 648 (9th Cir. 1999), the Ninth Circuit ultimately held that "the absent class members'

25   due process right to adequate representation is protected not by collateral review, but by the

26   certifying court initially, and thereafter by appeal within the state system and by direct review

27   in the United States Supreme Court."

28

1     Clever litigants will attempt to disguise their de facto appeals as original proceedings by

2 alleging independent wrongful conduct such as conspiracy or collusion (as the Proposed

3 Intervenors do), but courts in this District have not been fooled. In one case, Judge Koh did not

4 allow a litigant to plead around *Rooker-Feldman* by alleging independent wrongful conduct;

5 she held, "Although [Mr.] Tali alleges that the various Defendants, not the state court, caused

6 his injuries, this is a distinction without a difference. Tali's federal allegations of Defendants'

7 purported misconduct are inexorably intertwined with the state court custody decision because

8 adjudication of the federal claims would undercut the state ruling." *Tali v. Liao*, No. 18-CV-

9 00330-LHK, 2018 WL 5816171, *3 (N.D. Cal. Nov. 5, 2018) (quotation marks omitted*). See

10 also Feng v. County of Santa Clara*, No. 19-CV-06877-LB, 2020 WL 2494528, *5 (N.D. Cal.

11 May 14, 2020) (claim alleging, among other things, collusion between court-appointed counsel

12 and state court judge dismissed on *Rooker-Feldman* grounds because litigant "is asking the

13 court to disturb the state court's . . . decision").[3]

14     A litigant's claim of wrongful conduct also fails when the litigant is attempting to

15 convince a federal court to engage in a de facto appeal of a state court order granting final

16 approval to a class action settlement. In *Efreom v. McKee*, 46 F.4th 9, 13 (1st Cir. 2022), "a

17 class-action lawsuit was filed for settlement purposes" in Rhode Island state court—akin to the

18 Plaintiffs' use of *Esposito* as a settlement vehicle; after the state trial and appellate courts

19 granted and affirmed final approval of the class action settlement, aggrieved litigants went to

20 federal court to allege that pension reform statutes enacted as part of the class settlement

21 violated the federal Constitution. The First Circuit affirmed the district court's dismissal,

22 stating, "In attempting to effectively overturn the decisions of the Rhode Island state courts

23 approving the RIPERC class-action settlement, Appellants in Counts I-IV run afoul of this

24 stricture. Because under *Rooker–Feldman* only the Supreme Court of the United States may

---

[3]     This Court's ruling in *Khanna v. State Bar of California*, 505 F. Supp. 2d 633, 640
(N.D. Cal. 2007), *aff'd*, 308 F. App'x 176 (9th Cir. 2009), is not to the contrary. In *Khanna*, the
plaintiff did "not seek, as ultimate relief, an injunction overturning the decision of the
California Supreme Court and reinstating his membership in the bar." Here, Proposed
Intervenors seek, as their ultimate relief, a disgorgement order that would overturn the
attorneys' fees award entered by the New Jersey court.

1  invalidate state court civil judgments, we lack jurisdiction over these claims." *Ibid.*, at 20

2  (citation and punctuation omitted).

3       The proposed Complaint-In-Intervention is a de facto appeal that violates the *Rooker-*

4  *Feldman* doctrine. The New Jersey Superior Court is in the processing of deciding the

5  attorneys' fees award, but the Proposed Intervenors want to undercut Class Counsel's

6  attorneys' fees award through the device of having this Court order an accounting and

7  disgorgement. *See* Proposed Order, at ¶¶ 29-32 (Dkt. No. 90-1). Since one of the main

8  responsibilities of the New Jersey court will be to determine a reasonable sum of attorneys'

9  fees, the Proposed Intervenors are baldly asserting that the New Jersey court will err, that they

10 will be injured by the legal error, and that this Court should issue a disgorgement order as relief

11 from the state court's erroneous determination—exactly what *Kougasian* held to be a violation

12 of *Rooker–Feldman*. The relief requested in the proposed Complaint-In-Intervention would

13 undercut the state court ruling—a *Rooker-Feldman* violation according to *Reusser*. An

14 adjudication of the proposed Complaint-In-Intervention would require this Court to interpret

15 the application of state laws or procedural rules regarding class action settlements and

16 attorneys' fees awards—also a *Rooker-Feldman* violation according to *Reusser*. The Proposed

17 Intervenor's fig-leaf allegations of collusion between court-approved Class Counsel and a state

18 court judge are as transparent as those in *Tali* and *Feng*. The Court should deny the motion.

19

20       **B.    The Claims In The Proposed Complaint-In-Intervention Will Be Precluded
               By Issue Preclusion And Full Faith And Credit.**

21       Once the New Jersey court enters an order awarding class action attorneys' fees, the

22 common law of issue preclusion and the statutory Full Faith And Credit Act (28 U.S.C.A. §

23 1738) will bar litigation of the issues raised in the proposed Complaint-In-Intervention.

24       New Jersey's common law of issue preclusion law applies. *See In re: Sasson*, 424 F.3d

25 864, 872 n.4 (9th Cir. 2005) ("In determining whether a party should be estopped from

26 relitigating an issue decided in a prior state court action, the [federal] court must look to that

27 state's law of collateral estoppel."); *Kougasian*, 359 F.3d at 1143 ("A federal court is required

28 under 28 U.S.C. § 1738 to look to the preclusion law of the state court that rendered the earlier

1   judgment or judgments to determine whether subsequent federal litigation is precluded.").

2          Under the federal Full Faith and Credit Act, "a federal court must give to a state-court

3   judgment the same preclusive effect as would be given that judgment under the law of the State

4   in which the judgment was rendered." *Pension Tr. Fund For Operating Engineers v. Triple A*

5   *Mach. Shop, Inc.*, 942 F.2d 1457, 1460 (9th Cir. 1991). The federal Full Faith And Credit Act

6   states in relevant part that state judicial proceedings "shall have the same full faith and credit in

7   every court within the United States . . . as they have by law or usage in the courts of [the] State

8   . . . from which they are taken". 28 U.S.C. § 1738. Additionally, "a judgment entered in a class

9   action, like any other judgment entered in a state judicial proceeding, is presumptively entitled

10  to full faith and credit under the express terms of the Act." *Epstein*, 179 F.3d at 649.

11         Issue preclusion, also known as collateral estoppel, is a "branch of the broader law of

12  res judicata which bars relitigation of *any issue* which was actually determined in a prior action,

13  generally between the same parties, involving a different claim or cause of action." *Tarus v.*

14  *Borough of Pine Hill*, 916 A.2d 1036, 1050 (N.J. 2007) (emphasis in original). "If an issue

15  between the parties was fairly litigated and determined, it should not be relitigated." *First*

16  *Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 423 (N.J. 2007).

17         Issue preclusion bars re-litigation of an issue when: "(1) the issue to be precluded is

18  identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the

19  prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4)

20  the determination of the issue was essential to the prior judgment; and (5) the party against

21  whom the doctrine is asserted was a party to or in privity with a party to the earlier

22  proceeding." *Estate of Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994) (citations omitted).

23         All of these criteria are met. The issues raised in the proposed Complaint-In-

24  Intervention are currently being litigated in front of the New Jersey court. The New Jersey

25  Court is currently reviewing: 13 objections that contend that the requested amount of attorneys'

26  fees is too high, 5 objections that contend that a law other than New Jersey law should apply,

27  and 1 objection that contends that the settlement should not have been filed in New Jersey court

28  because this litigation began in the Northern District of California. Hattis Decl., ¶ 27. These are

1   the same issues that Potential Intervenors want this Court to decide.

2          The New Jersey court is expected to have entered an order on Class Counsel's Petition

3   for Attorney's Fees and Costs by the date of the hearing of this Motion. The New Jersey court

4   is also expected to have entered a final order and judgment on the merits by the date of the

5   hearing of this Motion. And Proposed Intervenors are parties to the New Jersey case because

6   they are members of the certified settlement class. *See Devlin v. Scardelletti*, 536 U.S. 1, 10

7   (2002) ("[N]onnamed class members are parties to the proceedings in the sense of being bound

8   by the settlement."); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir.

9   2020) ("Putative class members become parties to an action . . . after class certification."). The

10  Court should therefore deny the Motion due to issue preclusion and Full Faith And Credit.

11  **II.     The Court Should Deny The Request For Mandatory Intervention.**

12         In determining whether intervention as of right is appropriate, the Ninth Circuit applies

13  a four-part test: "(1) the motion must be timely; (2) the applicant must claim a significantly

14  protectable interest relating to the property or transaction which is the subject of the action; (3)

15  the applicant must be so situated that the disposition of the action may as a practical matter

16  impair or impede its ability to protect the interest; and (4) the applicant's interest must be

17  inadequately represented by the parties to the action." *State ex rel. Lockyer v. United States*,

18  450 F.3d 436, 440 (9th Cir. 2006) (internal quotation omitted). The Proposed Intervenors have

19  not established any of these criteria.

20         **A.     The Motion To Intervene Is Not Timely.**

21         In the *Esposito* action, the Settlement Agreement and the motion for preliminary

22  approval were filed on November 15, 2023. Hattis Decl., ¶ 23. Section XI.A. of the publicly

23  filed Settlement Agreement states that Class Counsel would be seeking attorneys' fees of one-

24  third of the settlement fund. "Class Counsel shall file a motion with the Court (which Verizon

25  has agreed not to oppose) requesting an award of attorneys' fees not to exceed thirty-three

26  million three hundred thousand dollars ($33,300,000.00) (i.e., 33.30% of the Settlement Fund),

27  plus reimbursement of their litigation costs (i.e., litigation expenses), with any such amounts

28  awarded payable from the Settlement Fund." Sett. Agr., § XI.A. (Exhibit A to Hattis Decl.).

Consequently, Proposed Intervenors and their counsel were on notice of the attorneys' fees request as of November 15, 2023. *See, e.g., Cox v. RKA Corp.*, 753 A.2d 1112, 1117 (N.J. 2000) ("parties are generally charged with constructive notice of instruments that are properly recorded"); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 276 (2001) ("Interested persons can be charged with constructive notice of the contents of such records.").

The Motion To Intervene is untimely because Proposed Intervenors and their counsel waited 100 days—more than three months—to file the motion. "Timeliness is a flexible concept; its determination is left to the district court's discretion. . . . . Courts weigh three factors in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (quotation marks omitted).

The issues that Proposed Intervenors want to litigate could have been addressed at an earlier and less-critical stage of proceedings. The Fairness Hearing is now days away.

Potential Intervenors have prejudiced the settling class and Class Counsel by delaying their intervention motion until after notices have gone out and settlement administration expenses have been incurred. As of today, email notices have been delivered to 49,038,282 class members and U.S. mail notices have been sent to 9,065,636 class members. Hattis Decl., ¶ 28. Class members have submitted over 4,754,208 claim forms, with a claims deadline of April 15, 2024. *Ibid.* That constitutes prejudice, per *Cohorst v. BRE Props., Inc.*, No. 10CV2666 JM BGS, 2011 WL 3475274, *6 (S.D. Cal. Aug. 5, 2011) (intervention motion not timely because "significant expenses in providing notice to the class have already been incurred. In addition, class members and/or their counsel are working towards preparing for the Final Hearing[.]").

The Proposed Intervenors give no reason for why they failed to take action when the Settlement Agreement was publicly filed in November. The delay is particularly inexcusable in

light of the fact that Proposed Intervenor's counsel is a law firm that specializes almost exclusively in tracking class actions and objecting to class action settlements.[4]

### B.      Proposed Intervenors Do Not Claim A Significantly Protectable Interest Relating To The Subject Of The Action.

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993).

#### 1.      The Proposed Intervenors Lack A Protectable Interest Because The Motion Is Not Ripe.

Unless and until the New Jersey Superior Court enters an order awarding attorneys' fees to Class Counsel—which the Superior Court has not done yet—the Motion To Intervene is premature, and Proposed Intervenors have no protectible interest. *See Silver v. Babbitt*, 166 F.R.D. 418, 431 (D. Ariz. 1994), *aff'd*, 68 F.3d 481 (9th Cir. 1995) (denying motion for lack of ripeness; intervenor had no significantly protectible interest in designated trust lands before the government designated those lands to be trust lands). (And then, after the New Jersey court enters its order, review by this Court will be forbidden by the *Rooker-Feldman* doctrine, issue preclusion and the Full Faith And Credit statute. *See* Section I, *supra*.)

#### 2.      Proposed Intervenor Will Yeatman Lacks A Protectible Interest Because He Is Not A Member Of the California Class Alleged In This *MacClelland* Case.

The proposed class alleged in this *MacClelland* case is limited to California consumers (*see* Second Amended Complaint, ¶ 501 (defining class) (Dkt. No. 58)). While Proposed Intervenor Will Yeatman is a member of the settlement class in *Esposito*, he is not a resident of California (*see* Hattis Decl., ¶ 29), is therefore not a member of the proposed *MacClelland* class, and thus has no interest to protect in this Court. The Motion To Intervene should be denied as to him. *See Carroll v. Wells Fargo & Co.*, No. 15-CV-02321-EMC, 2016 WL 3951650, *1 (N.D. Cal. July 22, 2016) ("Intervention as of right is improper as to seven out of

---

4       The Hamilton Lincoln Law Institute, which is the successor to the Center for Class Action Fairness, describes itself as an entity that "represent[s] consumers and shareholders pro bono against abusive class action settlements[.]" HLLI website https://hlli.org/.

the ten proposed intervenors because the seven do not have a significant protectable interest in

*Carroll* – i.e., they could not be members of the *Carroll* class if certified."). *See also Lee v. The*

*Pep Boys-Manny Moe*, No. 12-cv-05064-JSC, 2016 WL 324015 (N.D. Cal. Jan. 27, 2016)

(indicating that proposed intervenor might not have a significant protectable interest because he

"is arguably not even a putative member of Plaintiff's proposed UCL class").

### 3. The Proposed Intervenors Lack A Protectible Interest In Their Non-Existent "Unjust Enrichment" Cause Of Action.

A court may deny a motion to intervene if the proposed Complaint-In-Intervention fails

to state a claim. *See, e.g., Forthoffer v. Fore*, 804 F. App'x 688, 689 (9th Cir. 2020) (affirming

denial of motion to intervene to plead loss of consortium, which is not a standalone cause of

action under federal law in the Ninth Circuit).

The proposed Complaint-In-Intervention's Second Cause of Action for "Unjust

Enrichment" does not state a claim. "Unjust enrichment is not a cause of action." *De Havilland*

*v. FX Networks, LLC*, 21 Cal.App.5th 845, 870 (2018). "[C]ourts have consistently dismissed

stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132

(N.D. Cal. 2020) (collecting cases).[5]

### C. The Proposed Intervenors Are Not So Situated That The Disposition Of The Action May As A Practical Matter Impair Or Impede Their Ability To Protect Their Interest.

The Proposed Intervenors are not so situated that the disposition of this *MacClelland*

action may as a practical matter impair or impede their ability to protect their interest for the

simple reason that they had the opportunity to obtain relief by filing objections in the *Esposito*

case or, in the alternative, by opting out of the settlement entirely. *See, e.g., Carroll*, 2016 WL

3951650, at *1; *Zepeda v. Paypal, Inc.*, No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, *6

(N.D. Cal. April 23, 2014), *objections overruled*, 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014)

---

[5]     This Opposition will not be addressing the sufficiency of the Complaint-In-Intervention's First Cause of Action for breach of fiduciary duty. Those arguments are reserved. The many substantive infirmities and false factual allegations within the breach of fiduciary duty cause of action will be addressed in the Opposition to the Motion For Equitable Distribution and, if the Motion To Intervene is granted, in challenges to the Complaint-In-Intervention.

("If the class is certified and Putative Intervenors are members of the class, then Putative Intervenors do have means to protect their interests. That is, they may object to the settlement during the hearings on motions for preliminary or final approval, or they may opt out of the class and pursue their claims separately.").

The Proposed Intervenors could have presented their arguments to the New Jersey court (as other objectors did; *see* Hattis Decl. ¶¶ 27–28). But, for reasons that remain unfathomable, Proposed Intervenors did not file an objection in the New Jersey court and did not opt out of the settlement; by failing to do so, they doomed their intervention motion. *See, e.g., O'Connor v. Uber Technologies, Inc.*, No. 13-CV-03826-EMC, 2016 WL 4400737, *1 (N.D. Cal. Aug. 18, 2016) (denying intervention; "had the settlement been preliminary approved, they could object to final approval, or opt out of the class and pursue their claims separately"); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011) ("Intervention is not necessary here to protect the proposed intervenors' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties. . . . The proposed intervenors' interests in this action can be fully protected at the fairness hearing for final approval of the settlement."); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 263–64 (D. Del. 2002) ("the court provided every class member who did not opt out with the opportunity to present argument or evidence of the unfairness of the settlement in writing and/or orally at the fairness hearing. . . . Intervention at this stage of the litigation would serve no purpose except to potentially delay implementation of the settlement agreement."); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976) ("the ability to opt out precludes the Intervenors from satisfying the impairment-of-interest test").[6]

---

[6]     The closest that Proposed Intervenors come to explaining why they did not file an objection in the New Jersey court is because "New Jersey state courts have previously rubber-stamped a 33.3% fee request in an earlier judge-shopped settlement." Mot. at p. 9:1-4 (Dkt. No. 89). The allegation of "rubber-stamping" is a calumny upon the New Jersey Superior Court in question, and Potential Intervenor should withdraw the baseless and scurrilous accusation.

**D.      The Proposed Intervenor's Interest Are Not Inadequately Represented By The Parties To The Action.**

Potential Intervenors cannot establish this element—that their interest is inadequately represented by the parties to the action—because the New Jersey court already determined that Class Counsel are adequate representatives when the court provisionally appointed them Class Counsel. "The Court finds that Plaintiffs and proposed Settlement Class Counsel have adequately represented, and will continue to adequately represent, the Settlement Class." Preliminary Approval Order, ¶¶ 4, 6 (Exhibit H to Hattis Decl.). Yet again, Potential Intervenors are running afoul of the *Rooker-Feldman* doctrine, issue preclusion and Full Faith And Credit by asking this Court to overrule a finding of the New Jersey court. *See Epstein*, 179 F.3d at 648.

The adequacy of representation by Class Counsel is bolstered by the presumption imposed by law that counsel is adequate. "The most important factor to determine whether a proposed intervenor is adequately represented by a present party to the action is how the [intervenor's] interest compares with the interests of existing parties. Where the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a compelling showing to the contrary." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009) (citations and punctuation omitted).

The parties—that is to say, Plaintiffs and the class members—possess the identical interests and the same ultimate goal as do Proposed Intervenors: to obtain the best settlement for the class. As a part of that, every class member has an interest in his or her attorneys' fees being in a reasonable amount. As it happens, 13 objections have been filed in *Esposito* that criticize the amount of attorneys' fees that may be awarded to Class Counsel. Hattis Decl., ¶ 27. These objections will be reviewed by the New Jersey court at the Fairness Hearing—at which time the New Jersey court will again vet the adequacy of Class Counsel and further protect the Proposed Intervenors' interests. And, of course, if Proposed Intervenors were so concerned

1   about the adequacy of Class Counsel, they could have filed objections (or opted out) in the

2   New Jersey court.

3       Proposed Intervenors are asking this Court to review in isolation whether they will be

4   prejudiced by inadequate counsel. But this Court should also weigh the undeniable fact that

5   "jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit."

6   *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994). Plaintiffs, the settling class

7   and Verizon litigated for years in multiple New Jersey courts and in this Court before

8   negotiating a $100 million non-reversionary settlement (with the assistance of retired federal

9   magistrate Jay C. Gandhi). Potential Intervenors and their interests were more than adequately

10  represented in this process.

11  **III.     The Court Should Deny The Request For Permissive Intervention.**

12      In determining whether permissive intervention is appropriate, the Ninth Circuit applies

13  a three-part test. "An applicant who seeks permissive intervention must prove that it meets

14  three threshold requirements: (1) it shares a common question of law or fact with the main

15  action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over

16  the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (internal

17  citation omitted).

18      **A.     The Proposed Intervenors Do Not Share A Common Question Of Law
19             Or Fact With The Main Action.**

20      A person seeking permissive intervention must establish, among other factors, that he or

21  she "has a claim or defense that shares with the main action a common question of law or fact."

22  Fed.R.Civ.P. 24(b)(1)(B). "The language of the rule makes clear that if the would-be

23  intervenor's claim or defense contains no question of law or fact that is raised also by the main

24  action, intervention under Rule 24(b)(2) must be denied." *Kootenai Tribe of Idaho v. Veneman*,

25  313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds*, *Wilderness Society v. U.S.*

26  *Forest Service*, 630 F.3d 1173 (9th Cir. 2011).

27      None of the claims raised by Proposed Intervenors has been raised in the main action,

28  which, for purposes of the Motion, is this *MacClelland* action. The parties are not even the

same. Proposed Intervenors want to sue Class Counsel—who are not parties to this action (although most are counsel of record to Plaintiffs)—on a proposed crossclaim that alleges causes of action never seen before in this litigation. At no time in this action did Plaintiffs or Verizon or anyone else bring a claim against Class Counsel for breach of fiduciary duty or unjust enrichment. To the extent that a court is adjudicating the propriety of filing a settlement vehicle action in New Jersey or requesting attorneys' fees of 33.3%, those issues were never raised in this action (and are being litigated in New Jersey). This Court should deny the motion because "[t]he intervention rule is . . . not intended to allow the creation of whole new lawsuits by the intervenors." *Donnelly*, 159 F.3d at 412.

## B.     The Motion Is Not Timely.

For the reasons stated in Section II(A), *supra*, with regard to mandatory intervention, the request for permissive intervention is also untimely.

## C.     This Court Does Not Have An Independent Basis For Jurisdiction Over The Proposed Intervenor's Claims.

One jurisdictional aspect of the Complaint-In-Intervention is puzzling. Proposed Intervenors want this Court to redistribute a specific pot of money—the attorneys' fees awarded by the New Jersey court. But none of the proposed Defendants-In-Intervention (Class Counsel) currently holds that money. At this moment, all of the monies at issue are being held by either the class action administrator Angeion Group or by Verizon. Yet Proposed Intervenors are not alleging any claims against Angeion Group (which is headquartered in Pennsylvania) or Verizon (which is headquartered in New Jersey) or seeking any remedy from them. The Complaint-In-Intervention alleges the existence of a *res* that is located outside of California, but the proposed pleading contains no allegations as to how this Court would have jurisdiction over the *res*. The Complaint-In-Intervention therefore fails to provide an independent jurisdictional basis for what it really wants to control—the pot of money.

That being said, regardless, the Court lacks jurisdiction over the Proposed Complaint-In-Intervention due to the *Rooker-Feldman* doctrine, the law of issue preclusion and the Full Faith And Credit statute.

1

2

**D.      This Court Can And Should Deny The Motion For Intervention Even If Potential Intervenors Satisfy The Three-Part Test.**

3

Even if a proposed intervenor establishes the existence of all three elements of

4

permissive intervention, a court may still in its discretion deny the motion. *See Venegas v.*

5

*Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) ("The existence of a common question of law or fact

6

does not automatically entitle an applicant to intervene. Rather, Rule 24(b) necessarily vests

7

discretion in the district court to determine the fairest and most efficient method of handling a

8

case[.]").

9

"The question essential to determining whether intervention should be permitted is

10

whether it would 'unduly delay or prejudice the adjudication of the rights of the original

11

parties.'" *Oregon Environmental Council v. Oregon Dep't of Environmental Quality*, 775 F.

12

Supp. 353, 359 (D. Or. 1991) (quoting Fed.R.Civ.P. 24(b)(2)).

13

As has been explained in detail above, intervention would unduly delay and prejudice

14

the adjudication of the rights of the original parties, who are the Plaintiffs and the class

15

members and Verizon. Proposed Intervenors filed their Motion at the busiest and most

16

inopportune time in the *Esposito* proceedings. The class action settlement process is well

17

underway, with class members having thus far submitted over 4,754,208 claims, and counsel

18

are assiduously preparing for the Fairness Hearing.

19

If Proposed Intervenors wanted to have their say in court, they could have filed an

20

objection in the New Jersey court. They chose not to. The Court should not allow them to

21

disrupt this action and the nationwide $100 million settlement.

22

<u>**CONCLUSION**</u>

23

For the reasons stated, the Court should deny the Motion To Intervene.

24

25

26

27

28

OPPOSITION TO MOTION TO INTERVENE
CASE NO. 3:21-CV-08592-EMC

Dated: March 8, 2024                    Respectfully submitted,

                                        HATTIS & LUKACS

                                        By: /s/ Paul Karl Lukacs

                                        Paul Karl Lukacs (SBN 197007)
                                        HATTIS & LUKACS
                                        936 Woodlawn Drive
                                        Thousand Oaks, CA 91360
                                        Tel: (805) 233-8062
                                        FAX: (425) 412-7171
                                        pkl@hattislaw.com

                                        Daniel M. Hattis (SBN 232141)
                                        HATTIS & LUKACS
                                        11711 SE 8th Street, Suite 120
                                        Bellevue, WA 98005
                                        Telephone: (425) 233-8650
                                        Facsimile: (425) 412-7171
                                        Email: dan@hattislaw.com

                                        Stephen DeNittis, Esq. (admitted *pro hac vice*)
                                        DENITTIS OSEFCHEN PRINCE, P.C.
                                        5 Greentree Centre, Suite 410
                                        525 Route 73 N.
                                        Marlton, New Jersey 08057
                                        Telephone: (856) 797-9951
                                        Facsimile: (856) 797-9978
                                        Email: sdenittis@denittislaw.com

                                        *Attorneys for Plaintiffs and the Class*