Theodore H. Frank (SBN 196332)
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

M. Frank Bednarz (*pro hac vice* application to be filed shortly)
Hamilton Lincoln Law Institute
1440 W. Taylor St. #1487
Chicago, IL 60607
Voice: (801) 706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TERESA MACCLELLAND, *et al.*, for Themselves, as Private Attorneys General, and on Behalf of All Others Similarly Situated, <br> Plaintiffs, <br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC., <br><br> Defendants. | Case No. 3:21-cv-08592-EMC <br> Hon. Edward M. Chen, Courtroom 5 <br><br> REPLY IN SUPPORT OF INTERVENORS' MOTION TO INTERVENE (Dkt. 89) <br><br> DATE:      April 15, 2024 <br> TIME:      1:30 p.m. |
| ALLISON HAYWARD, PETER HEINECKE, LAWRENCE PRINCE, and WILL YEATMAN, for themselves and on behalf of all others similarly situated, <br> Intervenors/Cross-Plaintiffs, <br> v. <br><br> HATTIS LAW PLLC D/B/A HATTIS & LUKACS, *et al.*, <br> Cross-Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................................iv

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.    Rule 24 entitles intervention here. .......................................................................................2

    A.    The motion is timely. ...............................................................................................2

        1.    The clock did not start on November 15. Settling parties' implicit standard requiring omniscient intervenors is not the law. ...........................................2

        2.    The parties suffer no unfair prejudice from intervention. Intervention does not "jeopardize" the *Esposito* settlement. ..............................................4

    B.    Class Counsel's other arguments on the merits do not defeat intervention. .............................5

        1.    Class Counsel's ripeness argument contradicts their timeliness argument, goes to the merits, and poses no permanent bar to intervention. ...........................5

        2.    Class Counsel owed Intervenor Yeatman a fiduciary duty through the federal *Corsi* and *Allen* complaints. ...........................................6

        3.    Ninth Circuit law requires looking to state supreme court decisions for *Erie* interpretations of state law, and the California Supreme Court recognizes an "unjust enrichment" cause of action. ...........................................6

        4.    Because only this Court has "inherent authority" over the attorneys in *MacClelland*, the *Esposito* settlement's requirement to dismiss this case will impair Intervenors' interests. ...........................................7

    C.    It should go without saying that Class Counsel does not adequately represent class members' interests in recovering against Class Counsel for their inequitable conduct. ...........8

II.   Intervenors may only win relief through a new complaint or equitable action by this Court. Intervention thus promotes judicial efficiency. ...........................................................9

III.  Intervenor's motions and cross-complaint do not offend federalism because Intervenors do not seek to unsettle or relitigate *Esposito* court order. ...........................................10

    A.    Intervenors do not ask this Court to enjoin or countermand state proceedings. ....................10

    B.    *Rooker-Feldman* doctrine neither requires intervenors to file complaints over collateral issues in the same court selected by Class Counsel nor precludes these motions. .................11

C. New Jersey preclusion law does not tie the hands of this Court.................................. 12

IV. The parties did not comply with 28 U.S.C. § 1715's notice requirements, which independently bars any alleged preclusive effect from the *Esposito* litigation.................................................. 13

CONCLUSION.................................................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) .................................................................................................8

*Allen v. V & A Bros.,*
   26 A.3d 430 (N.J. 2011) ......................................................................................................... 12

*Am. Petroleum Inst. v. EPA,*
   683 F.3d 382 (D.C. Cir. 2012) ..................................................................................................6

*Arizona Elec. Power Coop. v. Berkeley,*
   59 F.3d 988 (9th Cir. 1995) .......................................................................................................6

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ...............................................................................................10-11

*Broadsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ......................................................................................7

*Brown v. Duringer L. Grp. PLC,*
   86 F.4th 1251 (9th Cir. 2023) .............................................................................................11-12

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects,*
   309 F.3d 1113 (9th Cir. 2020) ..................................................................................................4

*Ctr. for Biological Diversity v. Lubchenco,*
   No. 09-04087 EDL,
   2010 WL 1038398, 2010 U.S. Dist. LEXIS 36898 (N.D. Cal. Mar. 19, 2010) ...........................7-8

*Chavez v. PVH Corp.,*
   No.: 13-CV-01797,
   2014 WL 6617142, 2014 U.S. Dist. LEXIS 162862 (N.D. Cal. Nov. 20, 2014) ...........................4

*Cohorst v. BRE Props., Inc.,*
   2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) ..............................................................................5

*Cnty. of San Bernardino v. Walsh,*
   158 Cal. App. 4th 533 (2007)....................................................................................................7

*Matter of Coruzzi,*
   472 A.2d 546 (N.J. 1984) ....................................................................................................... 12

*Cox v. RKA Corp.,*
   753 A.2d 1112 (N.J. 2000) .......................................................................................................3

*Crawford v. Equifax Payment Servs.,*
   201 F.3d 877 (7th Cir. 2000).....................................................................................................4

*De Havilland v. FX Networks, LLC,*
   21 Cal. App. 5th 845 (2019) .....................................................................................................7

*Diaz v. Sheppard*,
    85 F.3d 1502 (11th Cir. 1996) ...........................................................................................11-12

*Durkin v. Shea & Gould*,
    92 F.3d 1510 (9th Cir. 1996) ........................................................................ 1, 5, 9, 10, 12

*EEOC v. Activision Blizzard, Inc.*,
    No. 22-55515, 2023 WL 8908774, 2023 U.S. App. LEXIS 34293 (9th Cir. Dec. 27, 2023).........4

*Matter of Estate of Dawson*,
    641 A.2d 1026 (N.J. 1994) ................................................................................................... 12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005).............................................................................................................. 11

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 64521 (N.D. Cal. July 3, 2008) ...............................6

*Ghirardo v. Antonioli*,
    924 P.2d 996 (Cal. 1996) ......................................................................................................6

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ....................................................................................................6

*Gonzales v. Thomas, Alexander, Forrester & Sorenson, LLP*,
    No. 2:21-cv-03903-FLA,
    2022 WL 17345913, 2022 U.S. Dist. LEXIS 221447 (C.D. Cal. 2022)....................................10-11

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC,
    2010 WL 3743532, 2010 U.S. Dist. LEXIS 104996 (N.D. Cal. Sep. 17, 2010) ...............................6

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    353 P.3d 319 (Cal. 2015) ...................................................................................................6-7

*House v. Akorn, Inc.*,
    No. 17 C 5018,
    2019 WL 2576531, 2019 U.S. Dist. LEXIS 104750 (N.D. Ill. Jun. 24, 2019)...........................6, 9

*Kamilewicz v. Bank of Boston*,
    100 F.3d 1348 (7th Cir. 1996) .........................................................................................11-12

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010).................................................................................................3

*Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*,
    No. 13-cv-00936,
    2013 WL 4734061, 2013 U.S. Dist. LEXIS 125623 (N.D. Cal. Sep. 3, 2013)..............................4

*Mullane v. Central Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..............................................................................................................3

*Nicholson v. Shafe*,
    558 F.3d 1266 (11th Cir. 2009) ........................................................................................... 11

*In re Niles,*
    106 F.3d 1456 (9th Cir. 1997) ...................................................................................5

*Pearson v. Target Corp.,*
    893 F.3d 980 (7th Cir. 2018) ("*Pearson II*") ................................................1, 7, 9

*Pearson v. Target Corp.,*
    968 F.3d 827 (7th Cir. 2020) ("*Pearson III*") ...............................................1, 10-12

*Pension Tr. Fund for Operating Engineers v. Triple A Mach. Shop, Inc.,*
    942 F.2d 1457 (9th Cir. 1991) .................................................................................12

*Perry v. Proposition 8 Off. Proponents,*
    587 F.3d 947 (9th Cir. 2009) ...................................................................................8

*Roberts v. WMC Mortg. Corp.,*
    341 F. App'x 293 (9th Cir. 2009) ...........................................................................11

*Rosenaur v. Scherer,*
    88 Cal. App. 4th 260 (2001)......................................................................................3

*SEC v. First Pac. Bancorp,*
    142 F.3d 1186 (9th Cir. 1998) ................................................................................10

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ..................................................................................2

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)....................................................................................8

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004)....................................................................................2

*United States v. Pitney Bowes,*
    25 F.3d 66 (2d Cir. 1994) ......................................................................................4-5

*Ward v. Taggart,*
    51 Cal. 2d 736, 336 P.2d 534 (1959)......................................................................5-6

*W. Watersheds Project v. Haaland,*
    22 F.4th 828 (9th Cir. 2022) ....................................................................................4

**Constitutional Provisions, Statutes, and Rules**

Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1711 *ff.*...............................10, 13
    28 U.S.C. § 1711(2) ..................................................................................................13
    28 U.S.C. § 1711(6) ..................................................................................................13
    28 U.S.C. § 1715 ................................................................................................2, 13-14
    28 U.S.C. § 1715(b) ..................................................................................................13
    28 U.S.C. § 1715(d) ..................................................................................................13
    28 U.S.C. § 1715(e) ..............................................................................................1, 14

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),
    42 U.S.C. §§ 9601 *ff.*...............................................................................................4

Fed. R. Civ. Proc. 4...................................................................................................................3

Fed. R. Civ. Proc. 23.................................................................................................................8

Fed. R. Civ. Proc. 23(c)............................................................................................................3

Fed. R. Civ. Proc. 23(e)............................................................................................................4

Fed. R. Civ. Proc. 23(f).............................................................................................................8

Fed. R. Civ. Proc. 23(h)............................................................................................................3

Fed. R. Civ. Proc. 24............................................................................................................2, 6

Fed. R. Civ. Proc. 42.................................................................................................................9

Fed. R. Civ. Proc. 60.................................................................................................................9

Full Faith and Credit Clause, U.S. Const. Art. IV, § 1 .......................................................... 12

N.D. Cal. Loc. R. 3-12(a)(1) .....................................................................................................9

N.D. Cal. Loc. R. 3-13 ..............................................................................................................2

U.S. Const. Art. III ...............................................................................................................8, 9

**Other Authorities**

N.D. Cal. Procedural Guidance for Class Action Settlements.............................................. 10

# INTRODUCTION

In *Pearson II*, a class member sought to intervene *after* a class action settlement approval was final and all appeals had been dismissed. *Pearson v. Target Corp.*, 893 F.3d 980, 983 (7th Cir. 2018) (Wood, C.J.). The intervenor sought Rule 60(b) relief and equitable disgorgement against objectors who had profited at the expense of the class through inequitable misuse of class-action settlement procedure. *Id.* at 983-84, 986-87. The Seventh Circuit reversed the district court's denial of intervention and remanded for adjudication of the intervenor's motions, which ultimately prevailed in a later appeal. *Id.* at 987; *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020) ("*Pearson III*"). This case is analogous, and Intervenors ask for similar procedural and equitable relief to what the *Pearson* intervenor obtained—but would prefer to achieve this without two appeals.

The motion is timely; demanding intervention in November or December before class notice issued is unreasonable and contradicts the law and common sense. *See* Section I.A.1. While the settling parties try to muddy the matter by repeatedly conflating Intervenors' cross-complaint for Class Counsel's breach of fiduciary duty with issues that the *Esposito* fairness hearing will resolve, the two are separate. There is thus no risk to the *Esposito* settlement from this intervention, and thus no prejudice. *See* Section I.A.2. The settling parties' other arguments against intervention similarly fail. *See* Sections I.B and I.C.

In *Durkin v. Shea & Gould*, the Ninth Circuit held that a district court's adjudication of settlement fairness did not preclude a later lawsuit for legal malpractice against class counsel. 92 F.3d 1510 (9th Cir. 1996). Neither opposition mentions *Durkin*, but both ask this Court to deny the motion on grounds that contradict *Durkin*'s holding. The parties do not dispute Intervenors' argument that *Durkin* permits them to bring this proposed cross-complaint as an independent action or that the suit would be related to this Court under Rule 3-12(a)(1). Intervention is thus desirable for reasons of efficiency, because it permits the Court to act under its inherent authority over the *MacClelland* counsel for actions they've taken relating to *MacClelland* without redundant collateral litigation. *See* Section II. *Durkin* establishes that any resolution in *Esposito* does not have preclusive effect or implicate jurisdiction over the cross-complaint; *Rooker-Feldman* might preclude this complaint in some federal courts, but not in the Ninth Circuit. *See* Section III. And even if *Durkin* were wrong, 28 U.S.C. § 1715(e) independently permits class members to disregard the New Jersey court's order. *See* Section IV.

On February 28, Class Counsel told the *Esposito* court that Hayward's allegations of breach of fiduciary

duty should be addressed in this Court, and the New Jersey court need not trouble itself with it. Declaration of Theodore H. Frank ¶ 16 and Ex. THF-3 at 2. We agree. Proposed Intervenors are entitled to intervention.

## ARGUMENT

**I.      Rule 24 entitles intervention here.**

### A.      The motion is timely.

Everyone agrees that the *Alisal Water* test applies, and no one disputes that the Ninth Circuit holds that "the requirements for intervention are [to be] broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). The Hayward Intervenors filed the motion to intervene and proposed cross-complaint on February 23: three weeks after Class Counsel's motion for fees, and before the objection deadline in *Esposito. Of course* it's timely.

**1.      The clock did not start on November 15. Settling parties' implicit standard requiring omniscient intervenors is not the law.**

The "crucial date" for assessing timeliness is when the proposed intervenors "should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). It is not especially unusual for class counsel to stake out an outsized fee in a class notice, and then rein in the fee request when it is time to justify its figure in a motion to the court. Declaration of Theodore H. Frank ¶ 6. Class Counsel's breach of fiduciary duty came on January 31, when they expressly asked the court to apply New Jersey, rather than Ninth Circuit, law to their fee request.

In a remarkable display of *chutzpah*, the settling parties suggest that the clock should have started ticking on November 15, when they filed the motion for preliminary approval in *Esposito*. Dkt. 96 at 6; Dkt. 98 at 15-16. "Intervenors give no reason for why they failed to take action when the Settlement Agreement was publicly filed in November." Dkt. 98 at 16. But Intervenors did give reason why they didn't take action in November. Dkt. 89 at 3-4, 10-11. To recap: the Settlement Agreement precluded publicity about its existence (Bednarz Decl. (Dkt. 91) Ex. 1 at 38); the parties did not comply with Local Rule 3-13 until 42 days after they filed the new *Esposito* complaint; the parties did not provide statutorily required notice of the settlement to state officials (*see* Section IV below); and the parties did not give class notice until January. And most of all, Class Counsel did not expressly seek to take advantage of the forum-shopping at the expense of the class until January 31. But the settling parties propose a legal standard that effectively requires intervenors to have omniscience over

every filing in the thousands of state and federal courts nationwide and then clairvoyance over what Class Counsel will file months later. This offends both common sense and the law.

Hayward's counsel is flattered that Class Counsel believes his success in challenging abusive class-action-settlement practices imbues him with a Spidey-Sense of instantaneous knowledge of every improper filing in every court in America, but it just ain't so. Frank Decl. ¶¶ 3-6. (Even if Hayward's counsel were omniscient, he is neither a class member nor the intervenor, and his knowledge can't be imputed to his clients until they retained him in February. *Id.* ¶ 9. Whatever superpowers Hayward's counsel has include neither knowledge of the identity of, nor the power of telepathic communication with, affected class members.) The breach of fiduciary duty giving rise to Intervenors' claim did not arise until Class Counsel's January 31 fee motion failed to ask the New Jersey state court to apply Ninth Circuit law. Class Counsel implicitly concede this when they simultaneously argue that the motion should be denied not just because it's supposedly untimely, but because it's *too early* to complain before the New Jersey court rules. Dkt. 98 at 17-18; *see generally* Section I.B.1 below discussing the ripeness question.

Defendants cite no law for their argument to start the clock November 15. The two cases plaintiffs cite (Dkt. 98 at 16) do not create an omniscience standard; both relate to the paradigm of race-notice rules in title offices. *Cox v. RKA Corp.*, 753 A.2d 1112, 1117 (N.J. 2000) (explaining presumption of constructive notice as corollary to state "race-notice" law for instrument recordation); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 276 (2001) (using "public records" to mean documents formally recorded in a public office, such as a land use office).

Not only is there no basis to ascribe the race-notice rule to litigation filings, such a standard contradicts the Federal Rules and blackletter law. Fed. R. Civ. Proc. 4 (requiring service); Fed. R. Civ. Proc. 23(c) (requiring notice to the class); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (class has right to see fee motion before any Rule 23(h) fee objection deadline).

Divorced from the settling parties' faulty premise, the timeliness cases Verizon cites do not support a finding the Motion is untimely—even if the start date were implausibly November 15, rather than January 31. All involved interventions with delays much longer than 23 days, all had delays longer than even the three-

month limit they assert here, and sometimes much longer than three months.[1]

Twenty-three days from January 31 is *per se* timely absent extraordinary circumstances no one claims. And there's another independent reason why the motion is timely.

### 2. The parties suffer no unfair prejudice from intervention. Intervention does not "jeopardize" the *Esposito* settlement.

"Prejudice to existing parties is the most important consideration in deciding whether a motion for intervention is untimely." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 838 (9th Cir. 2022) (cleaned up). The parties try to confuse the matter by repeatedly conflating Intervenors' cross-complaint for Class Counsel's breach of fiduciary duty with issues that the *Esposito* fairness hearing will resolve, but the two are separate. Intervenors are not objecting to the settlement. And Class Counsel has told the *Esposito* court to ignore Hayward's briefing in this Court. Frank Decl. ¶ 16 and Ex. THF-3. That improper conflation, however, does expose the lack of prejudice. The parties argue that Intervenors should have made their arguments in *Esposito* by the February 26 objection deadline. How can February 23 be prejudicially untimely if the parties are arguing that Hayward should have filed the next week in New Jersey? Intervention thus creates no unfair prejudice to the parties.

The settling parties protest that the settlement administrator sent class notice, but so what?: the cross-complaint does not implicate settlement fairness, and neither seeks to revoke notice nor delay the fairness hearing or any relief to the class. *United States v. Pitney Bowes* (cited in Dkt. 98 at 21), a case involving a CERCLA environment cleanup settlement between the United States and landowners, rather than a class action affecting absent third parties, has nothing to do with the cross-complaint here. 25 F.3d 66 (2d Cir. 1994). *Compare, cf. Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) (Easterbrook, J.) (possibility of merit to Rule 23(e) objection to class action settlement abuse that might and did blow up proposed settlement "cannot

---

[1] *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects*, 309 F.3d 1113, 1117 & 1120 (9th Cir. 2020) (movants "were informed of settlement negotiations with respect to" their interests almost year and a half before seeking intervention); *Chavez v. PVH Corp.*, No.: 13-CV-01797, 2014 WL 6617142, 2014 U.S. Dist. LEXIS 162862, *18 (N.D. Cal. Nov. 20, 2014) (movants sought intervention "more than six months after [they] had actual knowledge" of settlement agreement); *EEOC v. Activision Blizzard, Inc.*, No. 22-55515, 2023 WL 8908774, 2023 U.S. App. LEXIS 34293, *2, *4 (9th Cir. Dec. 27, 2023) (five months); *Morazan v. Aramark Unif. & Career Apparel Grp., Inc.*, No. 13-cv-00936, 2013 WL 4734061, 2013 U.S. Dist. LEXIS 125623, *11 (N.D. Cal. Sep. 3, 2013) (four months).

be called 'prejudice'"; "it is vital that district courts freely allow the intervention of unnamed class members" in that scenario). But even if *Pitney Bowes* were not inapposite, and "jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit," the parties never explain how the cross-complaint jeopardizes the *Esposito* settlement agreement. Nor can they. The intervention merely asks for an equitable adjudication of Class Counsel's inequitable conduct against their clients and the putative federal classes. It is thus distinguishable from *Cohorst* (cited in Dkt. 96 at 4) where the Intervenor sought to block a settlement as inadequate before adjudication. *Cohorst v. BRE Props., Inc.*, 2011 WL 3475274, *6 (S.D. Cal. Aug. 5, 2011), and the other cases the parties cite involving intervenors seeking to block class *settlements*. Verizon in particular thus does not suffer prejudice, as they have no interest in how a court equitably divides the common fund they have already agreed to pay. Any prejudice Class Counsel suffers comes only because the cross-complaint might impose adverse legal consequences for their actions, not from the intervention *qua* intervention.

Indeed, Intervenors would be entitled to file the cross-complaint as a separate action any time within the one-year statute of limitations in California. *Durkin*, 92 F.3d 1510. Intervention simply increases judicial efficiency by not creating that sixth lawsuit after the parties colluded to create a fifth lawsuit, and permits this Court to rule without months or years of collateral litigation because of its inherent authority over the *MacClelland* parties and counsel. *See also* Sections I.B.4 and II. Because there is no prejudice, much less unfair prejudice, from intervention several months before the expiration of the statute of limitations in the cross-complaint, the motion is timely.

## B. Class Counsel's other arguments on the merits do not defeat intervention.

### 1. Class Counsel's ripeness argument contradicts their timeliness argument, goes to the merits, and poses no permanent bar to intervention.

Ironically, given that Class Counsel is arguing that Hayward's motion is untimely because she should have rushed to intervene over 45 days before they issued notice in *Esposito*, they simultaneously argue that intervention is improper because February 23 is *too early*, because the *Esposito* court has not awarded fees. Dkt. 98 at 17. This is wrong. Class Counsel breached their fiduciary duty to the class on January 31. This alone provides a remedy for an accounting and exemplary damages under California law. *E.g.*, *In re Niles*, 106 F.3d 1456, 1461-62 (9th Cir. 1997) (applying California law to recognize accounting remedy) (citing authorities and "[b]asic principles of law"); *see also Ward v. Taggart*, 51 Cal. 2d 736, 740-41, 336 P.2d 534 (1959) ("recovery

is not limited to actual damages" where "fiduciary relationship existed between the parties") (citing cases). The accounting might ultimately demonstrate there are no damages because the *Esposito* court, which should rule before the May hearing on disgorgement, bucks New Jersey precedent and awards fees consistent with what this Court would have done. But that's a question of the merits. In any event, because of the Rule 24 obligation of an intervenor to demonstrate timeliness, lack of ripeness is not a reason to deny intervention, but, at worst, a reason to hold in abeyance any order for an accounting. *Cf. Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 390 (D.C. Cir. 2012) (petition for review of agency rulemaking).

### 2.   Class Counsel owed Intervenor Yeatman a fiduciary duty through the federal *Corsi* and *Allen* complaints.

Class Counsel argues that Yeatman is not a member of the *MacClelland* class, but that is not an argument against intervention here. Yeatman was a putative class member in the initial complaints in *Corsi* and *Allen*, and upon their filing, Class Counsel assumed a fiduciary duty to litigate the cases in his (and the class's) best interest. Class counsel's fiduciary duty attaches "once the class complaint is filed." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995). In other words, the duty does not spring from a certification order, it is an ever present feature of litigating on behalf of even a putative class. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, 2010 U.S. Dist. LEXIS 104996, *11 (N.D. Cal. Sep. 17, 2010) (Chen, J.); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 64521, *44 (N.D. Cal. July 3, 2008) (Chen, J.); *House v. Akorn, Inc.*, No. 17 C 5018, 2019 WL 2576531, 2019 U.S. Dist. LEXIS 104750 (N.D. Ill. Jun. 24, 2019).

### 3.   Ninth Circuit law requires looking to state supreme court decisions for *Erie* interpretations of state law, and the California Supreme Court recognizes an "unjust enrichment" cause of action.

Unjust enrichment is a valid cause of action in California. "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Arizona Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (citation omitted). And on at least two occasions, the California Supreme Court of California has blessed unjust enrichment as a cause of action. In *Ghirardo v. Antonioli*, the court found "a cause of action for unjust enrichment" was "adequately pleaded and proven." 924 P.2d 996, 998 (Cal. 1996). And more recently, *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, allowed a "direct action" "for unjust enrichment." 353 P.3d 319, 327

(Cal. 2015). Plaintiffs' reliance on a lower California state court decision (Dkt. 98 at 18) thus fails.

In any event, Plaintiffs overstate the holdings of the cases they rely on. They at most suggest that unjust enrichment cannot exist as a "stand-alone claim." *Broadsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020); *accord De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2019) ("Because de Havilland's right of publicity and false light claims fail, her unjust enrichment claim fails as well."). But Intervenor Yeatman's unjust enrichment claim is brought alongside his claims that Class Counsel breached their fiduciary duty to the class. The restitution sought here has always been available in California. *See, e.g.*, *Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty, and is a logical extension of the principle that … fiduciaries cannot profit by a breach of their duty.").

### 4. Because only this Court has "inherent authority" over the attorneys in *MacClelland*, the *Esposito* settlement's requirement to dismiss this case will impair Intervenors' interests.

Only this Court has the inherent authority over litigants with respect to the breach of fiduciary duty that Class Counsel assumed for itself by filing the *MacClelland* complaint. Following final approval in *Esposito* and the time for any appeals in New Jersey, the parties agreed in the settlement to dismiss *MacClelland* with prejudice. Bednarz Decl. Ex. 1 at 32. No other Court but this one has inherent authority over the parties, and the resolution of *this* action terminates *that* means of redress, absent later intervention and a Rule 60 motion. Dkt. 90 at 14-16. Thus Verizon incorrectly asserts that "intervenors cannot show that their interests will be impaired by this litigation." Dkt. 96 at 8. Without *Pearson II*-style intervention and a *Pearson III*-style motion for equitable relief, intervenors will have to go through the burden of independent litigation. It might be years before resolution, at which time, the putative class of claimants will have been dispersed, and it will be difficult to get them the money to which they are equitably entitled. Even aside from the burdens of multiplicative full-fledged litigation that could instead be resolved by motion practice in *MacClelland*, that is an impaired interest.

Even if this were not so, the requirement flagged by Verizon applies only to intervention as right, as their parenthetical commentary admits. *Id.* Permissive intervention may be granted even if resolution of the original action would not impair or impede intervenors' interests. *Cf. Ctr. for Biological Diversity v. Lubchenco,*

No. 09-04087 EDL, 2010 WL 1038398, 2010 U.S. Dist. LEXIS 36898, at *17, *31 (N.D. Cal. Mar. 19, 2010) (finding that resolution would not impair interest, but granting permissive intervention limited to remedies phase so as to not delay ongoing litigation). As explained below in Section II, permissive intervention serves the purpose of judicial efficiency where, as here, the Intervenors have independent jurisdictional basis for intervention. Rather than requiring this Court to adjudicate a motion to dismiss, a class certification motion, a possible Rule 23(f) appeal, discovery disputes, cross-motions for summary judgment, this Court can simply exercise its inherent authority with one or two hearings and resolve this matter expeditiously. That is reason enough for intervention.

> **C.    It should go without saying that Class Counsel does not adequately represent class members' interests in recovering against Class Counsel for their inequitable conduct.**

In a dispute over the propriety of where and how they filed an unopposed motion for fees, Plaintiffs make the disingenuous claim that they adequately represent the Intervenors' view on their conduct. Dkt. 98 at 25-26. This is, once again, *chutzpah*. Intervenors seek to equitably redistribute money from any unjust enrichment Class Counsel will receive to the class. Class Counsel not only does not represent Intervenors' interest, they affirmatively oppose it. Both in this Court (Dkt. 99), and in *Esposito*, where Class Counsel both argues for applying New Jersey law to the disadvantage of Intervenors and against the *Esposito* court addressing allegations of breach of fiduciary duty. Frank Decl. ¶¶ 15-16 & Exs. THF-2 and THF-3. Intervenors obviously do not "share the same ultimate objective" as the parties moving for the fee award. Dkt. 98 at 25 (citing *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009)). Counsel asserts matter-of-factly that "Plaintiffs and the class members [] possess the identical interests and the same ultimate goal as do Proposed Intervenors: to obtain the best settlement for the class." Dkt. 98 at 25. But, once again, Intervenors do not challenge the *settlement*, only Class Counsel's unjust enrichment from it. *E.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003) (noting "inherent tensions" between class and class counsel over fees). This conflict justifies the considerable role Article III courts play in the approval process under Rule 23. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). It is laughable to suggest Class Counsel can adequately advocate for Intervenors' position on whether Class Counsel has acted inequitably.

**II.    Intervenors may only win relief through a new complaint or equitable action by this Court. Intervention thus promotes judicial efficiency.**

A reason to grant permissive intervention is that it would promote judicial efficiency. As discussed in Section I.A.2, *Durkin* permits Intervenors to bring their proposed cross-complaint as a new independent action any time this year. It would then be assigned to this Court under Local Rule 3-12(a)(1), and the new complainants would then move to consolidate cases under Fed. R. Civ. Proc. 42. But this Court already has inherent authority in *MacClelland* over the proposed cross-defendants. *E.g.*, *Akorn*, 2019 U.S. Dist. LEXIS 104750. (*Akorn* denied intervention because it held the proposed intervenor lacked Article III standing as a mere shareholder of the extorted corporation, but ultimately ordered on its own motion the equitable disgorgement the intervenor sought under its inherent authority over the inequitable conduct of putative class counsel.) *See generally* Dkt. 90 (discussing equitable authority and citing cases). An exercise of inherent authority in *MacClelland* to benefit the nationwide class as Intervenors request avoids multiplication of proceedings and adjudication of an entire set of pretrial proceedings including Rule 12 motions and class certification. But exercise of inherent authority in *MacClelland* can happen only in *MacClelland*, and intervention is the most efficient means to do that—unless the Court wishes to act on its inherent authority *sua sponte* without the benefit of adversary presentation.

That Intervenors are not seeking separate recovery against Verizon does not preclude permissive intervention. *Contra* Dkt. 98 at 22. In *Pearson II*, the intervenor sought nothing against the defendants, or even against Class Counsel, but asked the district court in the *resolved* class action to reopen the case to adjudicate an equitable claim against objectors who had benefited at the expense of the class by acting in bad faith. 893 F.3d at 983-84. The Seventh Circuit agreed that denial of intervention was improper and remanded for adjudication of the intervenor's motions, rather than requiring a new independent lawsuit. The argument for intervention as a matter of efficiency is stronger here, because *MacClelland* has not been dismissed and there is no need to decide a Rule 60 motion. Similarly, intervention is routine when the press wishes to unseal documents in a lawsuit of public interest. Because non-parties cannot make motions, intervention for that limited purpose is the procedural mechanism to permit this, even though the press is not seeking recovery against the defendant. Intervenors seek to intervene for the limited purpose of seeking equitable relief from Class Counsel for the putative *MacClelland*, *Corsi*, and *Allen* classes. That can be through the pending motion (Dkt. 90) or through the

proposed cross-complaint.

## III.    Intervenor's motions and cross-complaint do not offend federalism because Intervenors do not seek to unsettle or relitigate *Esposito* court order.

The parties devote many pages in their responses to argue—incorrectly—that this Court cannot rule on Intervenors' motion for disgorgement because the *Esposito* court will rule on the fee award's reasonableness. This is wrong. The parties never cite *Durkin*, which resolves this issue against them. As in Section I.A.2 above, the parties' various jurisdictional and preclusion arguments all draw the same false equivalency between an *Esposito* ruling and Intervenors' motion. (As noted, Plaintiffs recognize the distinction in *Esposito*. Frank Decl. Ex. THF-3 at 2.) While the cases are related, they are distinct, and this litigation's equities give this Court ample jurisdiction and authority to order disgorgement.

### A.    Intervenors do not ask this Court to enjoin or countermand state proceedings.

The parties misrepresent Intervenors' motions in their response brief as a "de facto appeal." Dkt. 98 at 10; *see also* Dkt. 96 at 9-10. Not so. The question before the *Esposito* court—whether the award requested by Class Counsel is a "reasonable fee" for their services under New Jersey law—is a "separate issue" from whether the parties' "conduct"—filing the settlement proposal in a new action in New Jersey state court and asking for fees under New Jersey law—damaged the class. *Gonzales v. Thomas, Alexander, Forrester & Sorenson, LLP*, No. 2:21-cv-03903-FLA, 2022 WL 17345913, 2022 U.S. Dist. LEXIS 221447, *24 (C.D. Cal. 2022). As *Gonzales* observed in summarizing *Durkin*'s holding, "a determination that settlement was 'fair and equitable' does not necessarily mean that the representation was competent" or that counsel's conduct did not damage complainant. *Id.* (citing 92 F.3d at 1516).

Intervenors proceed before this Court to equitably reallocate funds secured through breach of the fiduciary duty to them. "Disgorgement is designed to deprive a wrongdoer of unjust enrichment"—not an adjudication of reasonableness. *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998). Intervenors' motions seek an accounting and disgorgement to remedy the class's lost settlement funds if and when *Esposito* approves Class Counsel's fee motion under New Jersey law thanks to selecting a forum less favorable to the *MacClelland* class. *Cf. Pearson III*, 968 F.3d at 837. The New Jersey court and case law lacks pro-class protections like CAFA, this district's Guidance, and Ninth Circuit precedent like *Bluetooth*, something counsel has noticed

and exploited before at the expense of their clients. Dkt. 90 at 23; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

**B.**   ***Rooker-Feldman*** **doctrine neither requires intervenors to file complaints over collateral issues in the same court selected by Class Counsel nor precludes these motions.**

Plaintiffs vastly overstate *Rooker-Feldman* doctrine in claiming that "once an order is entered in a state court, an aggrieved party is required to appeal [] within the state appellate system and, after that," the U.S. Supreme Court. Dkt. 98 at 15-16. That assertion omits a critical phrase: *Rooker-Feldman* only bars hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered *before the district court proceedings commenced*." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). But this litigation long predates the *Esposito* hearings, let alone judgment, that will decide the reasonableness of counsel's fees under New Jersey law. Parallel state and federal litigation does not trigger *Rooker-Feldman* "simply by the entry of judgment in state court." *Id.* at 292. Thus *Rooker-Feldman* "will not bar subject matter jurisdiction where a plaintiff initiates the federal lawsuit before the state court proceedings have ended." *Nicholson v. Shafe*, 558 F.3d 1266, 1275, 1276 (11th Cir. 2009) (federal suit brought after jury verdict but before state-court appeal decided); *see also Roberts v. WMC Mortg. Corp.*, 341 F. App'x 293, 294 (9th Cir. 2009).

But there's more: As stated above, Intervenors seek equitable disgorgement of attorneys' fees based on the parties' and counsel's duplicitous refiling, (*see* Section I.A), not a "de facto" appeal of those fees' reasonableness. Dkt. 98 at 17. For *Rooker-Feldman* to apply in this circuit, the relevant district court must seek "review and rejection of" the state court judgments. *Brown v. Duringer L. Grp. PLC*, 86 F.4th 1251, 1254 (9th Cir. 2023). The *Esposito* court will address reasonableness under New Jersey law. But Intervenors do not contest the resolution under New Jersey law; they challenge whether *asking the New Jersey court to apply New Jersey law* was a breach of fiduciary duty. Thus, if this Court rules for Intervenors, it can equitably redistribute the unjustly obtained fees while leaving any reasonableness judgment in *Esposito* intact because these are "separate issues." *Gonzales*, 2022 U.S. Dist. LEXIS 221447 at *24; *see also Pearson III*, 968 F.3d at 837.

Yes, there is a circuit split where some pre-*Exxon* courts agree with Intervenors and the Ninth Circuit, and some agree with Class Counsel's *Rooker-Feldman* position. *Compare Diaz v. Sheppard*, 85 F.3d 1502 (11th Cir.

1   1996), *with Kamilewicz v. Bank of Boston*, 100 F.3d 1348, 1353 (7th Cir. 1996) (Easterbrook, J., dissenting from

2   denial of rehearing *en banc*) (citing *Durkin* and *Diaz*). Intervenors believe the Ninth Circuit and Judge

3   Easterbrook are correct that a breach-of-fiduciary-duty action against Class Counsel in a second court is not

4   seeking review of a state court's fairness hearing decision. Class Counsel can seek Supreme Court review of

5   the circuit split, but this Court is bound by *Durkin*.

6        *Rooker-Feldman* holds "narrow ground" and applies in "limited circumstances." *Brown*, 86 F.4th at 1253.

7   And in this Circuit, where plaintiffs brought their first-filed action, this scenario is not one of those instances.

8   ### C.  New Jersey preclusion law does not tie the hands of this Court.

9        New Jersey law will govern whether this Court lends preclusive effect to the *Esposito* court's fee ruling

10  because of the Full Faith and Credit Clause. *Pension Tr. Fund for Operating Engineers v. Triple A Mach. Shop, Inc.*,

11  942 F.2d 1457, 1460 (9th Cir. 1991). To have any preclusive effect, an issue must, among other things not in

12  dispute here, be "identical to the issue decided in the prior proceeding," "actually [be] litigated there," and "the

13  party against whom the doctrine is asserted" must be "a party to or in privity with a party to the earlier

14  proceeding." *Matter of Estate of Dawson*, 641 A.2d 1026, 1034-35 (N.J. 1994). But the parties cannot prove *any*

15  of these three elements, and thus their preclusion defense fails. *See generally* Dkt. 98 at 19-20.

16       The *Esposito* court will adjudicate the fee request's reasonableness under New Jersey law, while

17  Intervenors' disgorgement motion concerns the parties' and their lawyers' forum-shopping to deprive the

18  *MacClelland* class from the advantages of this Court. *E.g.*, *Pearson III*, 968 F.3d at 837. These are "separate

19  issues," *Gonzales*, 2022 U.S. Dist. LEXIS 221447 at *24, and thus Intervenors' disgorgement motion is not

20  "identical" to what's being litigated in *Esposito*. *Dawson*, 641 A.2d at 1034-35. By extension, the issue of the

21  parties' forum-shopping won't "actually be litigated" in *Esposito*. And Class Counsel asked that it not be. Frank

22  Decl. Ex. THF-3 at 2.

23       Even if the Court disagrees, it should still refuse to give *Esposito* any preclusive effect because issue

24  preclusion is an equitable doctrine "not to be applied if there are sufficient countervailing interests." *Matter of*

25  *Coruzzi*, 472 A.2d 546, 568 (N.J. 1984) (declining to give collateral estoppel effect to a judge's bribery conviction

26  given "unique nature of [the] proceedings"). In other words, New Jersey courts do not preclude litigating an

27  issue when it would be "unfair to do so." *Allen v. V & A Bros.*, 26 A.3d 430, 444 (N.J. 2011). Because it would

28

be a textbook injustice if Class Counsel could evade this Court's jurisdiction and breach their fiduciary duty to the class, the Court should grant intervention and review the merits of Intervenors' claim.

## IV.   The parties did not comply with 28 U.S.C. § 1715's notice requirements, which independently bars any alleged preclusive effect from the *Esposito* litigation.

The parties never contend that they provided the notice that 28 U.S.C. § 1715 requires. And the *Esposito* settlement administrator's declaration in that case discussing notice, unlike the standard declaration in a typical settlement of a federal class action, omits any discussion of § 1715 notice. Frank Decl. ¶¶ 10-11 and Ex. THF-1.

The parties skirt the plain language of the statute when they make identical arguments why § 1715 does not apply. A "'class action' under CAFA is defined as a class action that is 'filed in a district court of the United States' or 'removed to a district court of the United States.' 28 U.S.C. § 1711(2)," while "*Esposito* was filed in state court." Dkt. 99 at 20-21; *accord* Dkt. 96 at 3. But Plaintiffs prove exactly why this argument fails: as their own brief states, "Plaintiffs and other claimants and Verizon agreed to a nationwide class settlement that, if approved, would resolve this *MacClelland* action." Dkt. 98 at 4-5; *accord* Stipulation, Dkt. 84 at 2 (the *Esposito* settlement "would resolve" *MacClelland* and two other class actions filed in federal district court). The Settlement itself says that it settles *MacClelland*, and creates affirmative duties upon Plaintiffs to take actions in *MacClelland*. *E.g.*, Settlement § X.D (attached as Bednarz Decl. Ex. 1, Dkt. 91-1). *MacClelland* was "filed in a district court of the United States," and is thus unquestionably a § 1711(2) "class action." The *Esposito* settlement is "an agreement regarding a class action [*i.e.*, *MacClelland*] that is subject to court approval and that, if approved, would be binding on some or all class members," and is thus a "proposed settlement" under 28 U.S.C. § 1711(6). Section 1711(6) doesn't require the court approval to be federal court approval. The parties don't dispute that the *Esposito* Settlement is subject to court approval; they don't dispute that the Settlement is regarding *MacClelland*; they don't dispute (and indeed affirmatively argue) that the Settlement is intended to be binding on class members. Nor can they. Section 1715 applies.

The parties complain that Hayward cites no precedent for § 1715 enforcement. So what? It's a question of first impression; the parties cite no precedent that Hayward is incorrect. And the plain language of the statute is dispositive: it requires a particular type of notice of a proposed settlement "regarding" a class action "filed in a district court of the United States." The parties don't dispute that they did not issue such § 1715(b) notice or that the failure to comply with § 1715(b) has consequences. Under § 1715(d), the *Esposito* state court

1    is without power to act to approve the settlement, and, even if it so acts *ultra vires*, *Esposito* class members are

2    entitled to "refuse to comply with" any such order. 28 U.S.C. § 1715(e).

3        Nothing the *Esposito* court does has any bearing on the separate breach-of-fiduciary-duty action

4    Intervenors bring, beyond the measure of damages to which Intervenors and the class would be entitled. *See*

5    Section III above. But 28 U.S.C. § 1715 also provides independent grounds why any decision in *Esposito* is

6    without collateral effect on Intervenors and the Class.[2]

7                                        **CONCLUSION**

8        Intervenors thus request that this Court grant their Motion to Intervene as a matter of right. In the

9    alternative, Intervenors request that this Court grant their permissive Motion to Intervene.

10   Dated: March 15, 2024                          Respectfully submitted,

11                                                  */s/ Theodore H. Frank*
                                                    Theodore H. Frank (SBN 196332)
12                                                  HAMILTON LINCOLN LAW INSTITUTE
                                                         CENTER FOR CLASS ACTION FAIRNESS
13                                                  1629 K Street NW, Suite 300
                                                    Washington, DC 20006
14                                                  Voice: 703-203-3848
                                                    Email: ted.frank@hlli.org
15

16                                                  M. Frank Bednarz (*pro hac vice* application to be filed shortly)
17                                                  HAMILTON LINCOLN LAW INSTITUTE
                                                         CENTER FOR CLASS ACTION FAIRNESS
18                                                  1440 W. Taylor St. #1487
                                                    Chicago, IL 60607
19                                                  Voice: (801) 706-2690
                                                    Email: frank.bednarz@hlli.org
20

21                                                  *Attorneys for Intervenors*

22

23   _____

24   [2] Indeed, it's a separate breach of fiduciary duty of Class Counsel for them to argue that *Esposito* binds
     any of the members of the putative classes covering 49 states in three federal class actions. It's in the class's
25   best interests to have Section 1715(e) rights to both be allowed to make a claim on the *Esposito* common fund
     and be free from a release. Intervenors understand why Verizon wants that release to be binding; applying the
26   plain language of § 1715 exposes Verizon to liability that they were previously willing to pay $100 million to
     settle. Why is Class Counsel also arguing against the class's interests—other than to maximize the chance they
27   will face no consequence for the breach of fiduciary duty in seeking a larger fee award in New Jersey state court
     than to which they would be legally entitled in the first-filed action in this Court?
28

<u>PROOF OF SERVICE</u>

I hereby certify that on this day I electronically filed this Reply Memorandum in support of Intervention using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 15th of March, 2024.

<u>/s/ Theodore H. Frank</u>
Theodore H. Frank