UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TERESA MACCLELLAND, et al., For Themselves, as Private Attorneys General, and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC., <br><br> Defendants. | Case No. 3:21-cv-08592-EMC <br> Hon. Edward M. Chen, Courtroom 5 <br><br> Motion to Intervene (Dkt. 89) <br> Date:   April 15, 2024 <br> Time:   1:30 p.m. <br><br> Motion for Equitable Redistribution (Dkt. 90) <br> Date:   May 9, 2024 <br> Time:   1:30 p.m. |
| ALLISON HAYWARD, PETER HEINECKE, and LAWRENCE PRINCE, <br><br> Intervenor-Plaintiffs and Cross-Plaintiffs, <br><br> v. <br><br> HATTIS LAW PLLC D/B/A HATTIS & LUKACS; DENITTIS OSEFCHEN PRINCE, P.C.; DANIEL HATTIS; PAUL LUKACS; STEPHEN DENITTS; and SHANE PRINCE, <br><br> Cross- Defendants. | Declaration of Theodore H. Frank in Support of Intervenors/Cross-Plaintiffs' Reply Memoranda in Support of their Motion to Intervene (Dkt. 89) and Motion for Equitable Redistribution (Dkt. 90) |

Case No. 3:21-cv-08592- EMC

DECLARATION OF THEODORE H. FRANK                                                                        1

Theodore H. Frank declares as follows pursuant to 28 U.S.C. § 1746:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I am the director of litigation and a co-founder of the Hamilton Lincoln Law Institute. Last week, the U.S. Senate confirmed by voice vote President Biden's nomination of HLLI's other co-founder, Melissa Holyoak, to be one of five FTC Commissioners. I also founded the Center for Class Action Fairness, a predecessor organization that is now a project of HLLI.

3. In opposing Intervenors/Cross-Plaintiffs' motions to intervene, the settling parties propose a *de facto* omniscience standard for measuring the critical date under controlling caselaw—when the proposed intervenors "should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). For example, Class Counsel insists that "Intervenors give no reason for why they failed to take action when the Settlement Agreement was publicly filed in November." Pl. Opp. to Intervention, Dkt. 97 ("POI") at 16-17. Defendants likewise claim that the critical date is November 15, 2023. Def. Opp. to Intervention, Dkt. 96 ("DOI") at 8. Why did the Intervenors, who are ordinary Verizon customers unaffiliated with HLLI, "fail" to notice a filing lodged in Middlesex County, New Jersey? Because it turns out none of them, nor HLLI, nor any non-omniscient entity monitors the courts of all 3,143 counties in the United States just in case one of these filings might pique their interests. Instead, HLLI—like absent class members—depends on notice requirements like 28 U.S.C. §1715 to learn about settlements where class attorneys self-deal or otherwise breach their fiduciary duty. When the settling parties agree to forgo this notice, and even keep judges in the dark by evading directives like N.D. Cal. Loc. R. 3-13, class members and their attorneys cannot discover potentially-objectionable class counsel conduct as quickly as a divine being might be able to.

4. Except on very rare occasions, neither CCAF and HLLI attorneys nor I monitor pending class-action litigation before a motion for preliminary approval of a proposed settlement is filed. There are simply too many class actions pending in the country for this to be a good use of time. The rare exceptions are almost invariably in cases that break into national mainstream news media, such as the Volkswagen Diesel litigation, the Equifax data breach litigation, the NFL concussion litigation, or the Trump University litigation, when journalists ask me for comment upon the pending litigation, and I educate myself about the case to provide

informed analysis. Our process for learning about class-action settlements is *ad hoc*, and could stand to be much more efficient with less duplicated work and fewer missed opportunities, though to be fair HLLI is a non-profit law firm and generally loses attorney time and resources on the objections it brings. We generally learn about class-action settlements either because (1) we receive notice as class members or when class members contact us after receiving a notice (as happened in this case); (2) when state attorneys general's offices contact us about pending settlements they think are problematic; (3) through periodic FOIA requests with state attorneys general offices for copies of 28 U.S.C. §1715 notices they have received, (4) when acquaintances or fans of our work send us news stories or court filings about pending settlements because they think we would be interested; (5) when attorneys or anonymous people (whom I presume to be attorneys) send me information about pending settlements for various reasons, but usually hoping to induce us to litigate the settlement fairness or fee request; (6) when by happenstance one of us sees a news story about a settlement; and (7) through my colleague Adam Schulman's LexisNexis alerts for recent preliminary approval orders in federal court. Because of limited resources, we object to a very small fraction of these settlements. We do not review legal notices in newspapers, except on the rare occasion when we see a large advertisement for notice in the course of reading a newspaper for other reasons; I cannot recall the last time I saw such an advertisement, because I rarely read paper copies of newspapers. Sometimes attorneys tell me about pending settlement negotiations without my soliciting the information from them. The fact of such conversations or communications will not by itself send me looking through the dockets for details about the settlement. On occasion, I will assign a research project to a HLLI attorney to look into the settlement an attorney tells me about, but the vast majority of such leads do not result in an objection or even preparation for representing a class member who would want to object. HLLI currently comprises seven attorneys, whose work covers not just class objections under the Center for Class Action Fairness, but also numerous First Amendment and regulatory challenges. *E.g.*, *Greenberg v. Goodrich*, 593 F. Supp. 3d 174 (E.D. Pa. 2022) (granting preliminary injunction to HLLI client under First Amendment); *Stock v. Gray*, 663 F.Supp.3d 1044 (W.D. Mo. Mar. 22, 2023) (same). We simply cannot track hundreds or thousands of pending putative class action and shareholder derivative cases across the country, and doing so would serve little purpose because it is impossible to know in advance whether a case will settle, whether it will settle objectionably, and whether it would be plausible to represent any class member objector.

5. CCAF is part of a nonprofit and does not attempt to extort money from settling attorneys, but instead files objections only when we think we can prevail against an unfair settlement. Given our limited resources and opportunity costs, we are very selective in which cases we choose to represent class members, and do not get involved with the majority of cases even when we determine a settlement or attorney fee request is objectionable. Thus, we decline to represent the vast majority of unsolicited potential objectors who send us inquiries. I have filed claims in far more class action and derivative settlements than those I have objected to.

6. For all these reasons, we find it most effective to evaluate potential objections only after the most important document for evaluating a potential objection has been filed by the parties—the settlement agreement itself. After learning of a proposed class action settlement, we would only elect to track the suit if the settlement may be potentially objectionable. Usually, we need to see plaintiffs' attorneys' fee request to make this determination, and for those cases we would set a calendar appointment or some other reminder to check the docket following the anticipated filing of the relevant document. This is because a settlement or settlement notice says a fee request will be "up to" a certain amount, and fee requests are, a sizable percentage of the time, smaller than that maximum amount noticed. After an instance several years ago where we wasted scarce resources to draft an objection that we did not file because it was mooted by a fee request more reasonable than the amount listed in the settlement notice, we learned to limit the work we did on any settlement until class counsel filed their fee request.

7. Once we do decide to represent a class member who wishes to object, we would track the docket by LexisNexis CourtLink or by setting an ECF alert until we file an appearance in that case, at which point we would receive regular ECF notice.

8. We generally do not do even this for state court settlements, particularly in states like New Jersey, where no HLLI attorney is admitted. Before an attorney taught one of my colleagues how to do so in February, I do not recall any time an HLLI attorney has accessed electronic filings from New Jersey state courts.

9. The four intervenors we represent did not sign retainer agreements with HLLI until February 17 (Hayward), February 18 (Prince), February 20 (Heinecke), and February 22 (Yeatman). Even if one could impute knowledge of the November 15 filing to HLLI on the false premise that our seven-person law firm is omniscient about every class-action settlement filing in every state and federal court, HLLI's

knowledge cannot be imputed to the Intervenors before we became their agents upon the signing of a retention agreement.

10. Attached as **Exhibit THF-1** is a true and correct copy of the Declaration of Ryan Chumley of Angeion Group, LLC Re: Dissemination of Class Notice & Settlement Administration executed March 7, 2024 and filed in *Esposito et al. v. CellcoP'ship d/b/a Verizon Wireless*, No. MID-L-6360-23, at ID LCV2024614810 (Middlesex Cty. Super. Ct. N.J. Mar. 8, 2024).

11. In federal class actions, the equivalent declaration by the settlement administrator usually verifies compliance with 28 U.S.C. § 1715(b). (I believe there are rare occasions when plaintiffs' or defense attorneys perform the § 1715(b) compliance, and file a separate declaration to that effect, but cannot remember any specific case where that happened.) Neither the Chumley declaration, nor any other filing in *Esposito* identified compliance with Section 1715.

12. Attached as **Exhibit THF-2** is a true and correct copy of Class Counsel's filing in *Esposito* titled "Omnibus Opposition to Objectors' Filings," ID LCV2024616438 (Mar. 8, 2024).

13. On pages 7 and 26-27, Class Counsel trumpets their success and "hard-fought" litigation in *MacClelland* as an example of the hard work they did to reach the settlement resulting in the creation of the *Esposito* lawsuit.

14. On page 31, Class Counsel assures the *Esposito* court that the settlement agreement does not preclude future malpractice suits.

15. On page 35, Class Counsel expressly argues to the *Esposito* court that it should not apply federal law regarding attorneys' fees, and should instead apply New Jersey law that permits higher fees.

16. Attached as **Exhibit THF-3** is a true and correct copy of Class Counsel's February 28 letter brief filed in *Esposito* responding to a February 26 letter filed by attorney Quyen C. Hoang, which attached some of Intervenors' February 23 filings in this case. ID LCV2024535007 (Feb. 28, 2024). On page 2 of that letter, Class Counsel addresses those filings in this case, and tells the *Esposito* court "As these filings are not before this Court, however, Class Counsel will address them in the Northern District of California, where they were filed."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 15, 2024
Houston, Texas

By: */s/ Theodore H. Frank*
      Theodore H. Frank