# Exhibit THF-2

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031981997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**CRIDEN & LOVE, P.A.**
**Michael E. Criden, Esq.***
**Lindsey C. Grossman, Esq.**
**7301 SW 57th Court, Suite 515**
**South Miami, FL 33143**
**(305) 357-9000**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.***
**Paul Karl Lukacs, Esq.**
**11711 SE 8th Street, Suite 120**
**Bellevue, WA 98005**
**(425) 233-8650**

**\* Admitted Pro Hac Vice**

**Attorneys for Plaintiffs and the Class**

| | |
|---|---|
| DEAN ESPOSITO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY LAW DIVISION<br><br>DOCKET NO. MID-L-6360-23 |

**PLAINTIFFS' OMNIBUS OPPOSITION TO OBJECTORS' FILING AND REPLY IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………...iii-viii

TABLE OF OBJECTORS/ATTORNEYS………………………………………...ix-x

INTRODUCTION………………………………………………………………...1

THE SMALL NUMBER OF OBJECTIONS AND LARGE NUMBER OF
CLAIMS SHOWS THE SETTLEMENT HAS BEEN VERY WELL RECEIVED
BY THE CLASS AND SUPPORTS APPROVAL…………………………………8

THE OBJECTIONS SHOULD BE OVERRULED…………………………………9

I.     OBJECTIONS TO CLASS ACTIONS OR TO THIS SETTLEMENT IN GENERAL….9

II.    OBJECTIONS TO THE BENEFITS PAID TO THE CLASS UNDER THE
       SETTLEMENT……………………………………………………………11

III.   OBJECTIONS TO ATTORNEYS' FEES AND INCENTIVE AWARDS…………..14

       A.    Objections to the Requested Attorney's Fee Award………………………15

       B.    Objections to the Proposed Incentive Awards to the Named Plaintiffs…………18

IV.    ADDITIONAL OBJECTIONS TO VARIOUS ASPECTS OF THE SETTLEMENT….20

V.     RESPONSE TO SUPPLEMENTAL ISSUES RAISED BY ATTORNEY
       OBJECTIONS……………………………………………………………...24

       A.    Steven F. Helfand Objection………………………………………………24

       B.    Quyen C. Hoang Objection……………………………………………28

             1.    Objections Based on Misinformation…………………………29

             2.    Objections Based on Inapplicable Law…………………………34

             3.    Objections Based on an Underappreciation of the Risks and/or
                   Improper Comparisons…………………………………………...37

             4.    Miscellaneous Other Objections………………………………38

C.     Evan Murphy Objection……………………………………………………40

1.     The "Recycled" Arguments Raised by Mr. Murphy in Support
of the Objection Are Without Merit……………………………………...41

2.     The Additional Arguments Raised by Mr. Murphy Are Without Merit…46

D.     William R. Weinstein Objection………………………………………………51

E.     Scott Zimmermann Objection…………………………………………………53

Conclusion………………………………………………………………………………55

# <u>**TABLE OF AUTHORITIES**</u>

## **CASES**

**Page(s)**

<u>Achey v. Cellco P'ship</u>, 475 N.J. Super. 446 (App. Div. 2023)……………………………passim

<u>Allapattah Servs. Inc. v. Exxon Corp.</u>, 454 F. Supp. 2d 1185 (S.D. Fla. 2006)……………..17, 54

<u>Alves v. Main</u>, 2012 U.S. Dist. LEXIS 171773, at *37 (D.N.J., Dec. 4, 2012)………………8, 22

<u>Barney v. Nova Lifestyle, Inc.</u>, 2022 U.S. Dist. LEXIS 155604, at *16
(C.D. Cal. Aug. 29, 2022)……………………………………………………………………..39

<u>Bentley v. LG Elecs. U.S.A., Inc.</u>, 2020 U.S. Dist. LEXIS 151204 (D.N.J. Aug. 19, 2020)……22

<u>Bernetich, Hatzell & Pascu, LLC v. MRO</u>, Docket No. CAM-L-1271-15………………….…...44

<u>Bernetich, Hatzell & Pascu, LLC v. MRO</u>, 445 N.J. Super. 173, 186 (App. Div. 2016)………..44

<u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 480 (1980)…………………………………..10, 16, 53

<u>Bostick v. Herbalife Int'l of Am., Inc.</u>, 2015 U.S. Dist. LEXIS 83499,
2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015)………………………………………..2, 48

<u>Brown v. Hain Celestial Grp., Inc.</u>, 2016 U.S. Dist. LEXIS 20118, at *28
(N.D. Cal. Nov. 16, 2020)……………………………………………………………………..24

<u>Bryan v. Pittsburgh Plate Glass Co.</u>, 494 F.2d 799, 803 (3d Cir. 1974), <u>cert.</u> <u>denied sub. nom.</u>…8

<u>Celestin v. Avis Budget Grp.</u>, 2020 N.J. Super. Unpub. LEXIS 1515
(App. Div. July 28, 2020)……………………………………………………………………..44

<u>Collins, et al. v. Quincy Bioscience LLC,</u>  2020 U.S. Dist. LEXIS 218673, at *2
(S.D. Fla. Nov. 16, 2020)……………………………………………………………………...24

<u>Cottle v. Plaid Inc.</u>, 340 F.R.D. 356, 374 (N.D. Cal. 2021)………………………………...2, 25

<u>Craftwood Lumber Co. v. Interline Brands, Inc.</u>, Case No. 11-cv-4462 (N.D. Ill.)……………54

<u>Dunleavy v. Nadler</u>, 213 F.3d 454, 463 (9th Cir. 2000)………………………………………19

<u>Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)</u>,
926 F.3d 539, 561 (9th Cir. 2019)……………………………………………………………..42

_Flynn v. N.Y. Dolls Gentlemen's Club_, 2015 U.S. Dist. LEXIS 82772, at \*2-3
(S.D.N.Y. Apr. 27, 2015)……………………………………………………………...43

_Gould v. Alleco, Inc._, 883 F.2d 281, 284 (4th Cir. 1989)……………………………..3, 23, 28, 51

_Grillo v. RCN Telecom Servs., LLC_, Docket No. MER-L-1319-22……………………………18

_Gunter v. Ridgewood Energy Corp._, 223 F.3d 190 (3d Cir. 2000)……………………………34, 35

_Hanrahan v. Britt_, 174 F.R.D. 356, 369 (E.D. Pa. 1997)……………………………………...18

_Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)_,
58 F. Supp. 3d 167, 172 (D. Mass. 2014)……………………………………………………...53

_Hawker v. Consovoy_, 198 F.R.D. 619, 628 (D.N.J. 2001)……………………………………8, 22

_Hayt, Hayt & Landau_, 198 F.R.D. 461, 473 (E.D. Pa. 2000)……………………………………18

_Heller v. Quovadx, Inc._, 245 F. App'x 839, 842 (10th Cir. 2007)……………………3, 23, 29, 51

_In re Anthem, Inc. Data Breach Litig._, 327 F.R.D. 299, 321 (N.D. Cal. 2018)………………2, 48

_In re Apple Inc. Device Performance Litig._,
2021 U.S. Dist. LEXIS 50550, at \*73 (N.D. Cal. Mar. 17, 2021)………………………………25

_In re Capital One Consumer Data Sec. Breach Litig._,
2022 U.S. Dist. LEXIS 234943, at \*22 (E.D. Va. Sep. 13, 2022)………………………………25

_In re Chambers Dev. Secs. Litig._, 912 F. Supp. 852, 863 (W.D. Pa. 1995)……………………..18

_In re Checking Account Overdraft Litig._, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011)……17, 54

_In re Credit Default Swaps Antitrust Litig._, 2016 U.S. Dist. LEXIS 54587,
at \*53 (S.D.N.Y. Apr. 25, 2016)………………………………………………………………53

_In re Diet Drugs Prods. Liab. Litig._, 282 F.3d 220, 241 (3d Cir. 2002)…………………………46

_In re Drexel Burnham Lambert Grp., Inc._, 130 B.R. 910, 923 (S.D.N.Y. 1991),
aff'd, 960 F.2d 285 (2d Cir. 1992)………………………………………………………...3

_In re European Gov't Bonds Antitrust Litig._, 2023 U.S. Dist. LEXIS 114266,
at \*13 (S.D.N.Y. May 16, 2023)………………………………………………………………40

_In re Ikon Office Sols. Inc. Sec Litig._, 194 F.R.D. 166 (E.D. Pa. 2000)………………………...17

_In re Initial Pub. Offering Sec. Litig._, 671 F. Supp. 2d 467 (S.D.N.Y. 2009)…………………...17

In re Ins. Brokerage Antitrust Litig., 297 F.R.D. 136, 155 (D.N.J. 2013)...........................35

In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018).............35

In re Merck & Co., Inc., Vytorin ERISA Litig., 2010 U.S. Dist. LEXIS 12344,
2010 WL 547613, at *13-14 (D.N.J. Feb. 9, 2013)........................................................35

In re Morgan Stanley Data Sec. Litig.,
2022 U.S. Dist. LEXIS 176666, at *5 (S.D.N.Y. Sep. 28, 2022)......................................25

In re NFL Players Concussion Injury Litig., 821 F.3d 410, 447 (3d Cir. 2016)..................27, 36

In re Oil Spill, 295 F.R.D. 112, 138 (E.D. La. 2013)....................................................27

In re Pacific Enterprises Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995).............................36

In re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 302-03 (3d Cir. 2005)............................54

In re SmithKline Beckman Corp. Secs. Litig., 751 F. Supp. 525, 535 (E.D. Pa. 1990)............19

In re Southeastern Milk Antitrust Litig., 2013 U.S. Dist. LEXIS 70163,
2013 WL 2155387, *8 (E.D. Tenn. 2013)...................................................................17

In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,
2024 U.S. Dist. LEXIS 33018, at *27 (E.D. Pa. Feb. 27, 2024).......................................39

In re TFT-LCD [Indirect Purchaser] Antitrust Litig.,
2013 WL 1365900, at *8, n.11 (N.D. Cal. Apr. 3, 2013)...........................................17, 36

In re Tiktok, Inc., Consumer Privacy Litig., 565 F. Supp. 3d 1076, 1094 (N.D. Ill. 2021)...43, 45

In re Tiktok, Inc., Consumer Priv. Litig., 617 F. Supp. 3d 904, 923 (N.D. Ill. 2022).............24

In re Titanium Dioxide Antitrust Litig., 2013 WL 6577029, *1 (D. Md. Dec. 13, 2013)..........17

In re Tracfone Unlimited Serv. Plan Litig., 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015)..........43

In re Tricor Direct Purchaser Antitrust Litig., 2009 U.S. Dist. LEXIS 133251
(D. Del. Apr. 23, 2009).......................................................................................17

In re Vitamins Antitrust Litig., 2001 WL 34312839, at *10, *14 (D.D.C. July 16, 2001).........17

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004)...........................8

In re Yahoo! Inc. Customer Data Sec. Breach Litig., 2020 U.S. Dist. LEXIS 129939,
at *63-64 (N.D. Cal. July 22, 2020)..........................................................................6

Izor v. Abacus Data Sys., 2020 U.S. Dist. LEXIS 239999, at *18 (N.D. Cal. Dec. 21, 2020)....25

Janda v. T-Mobile USA, Inc., 378 F. App'x 705, 707 (9th Cir. 2010)...........................4, 13

Keil v. Lopez, 862 F.3d 685, 697 (8th Cir. 2017)................................................2, 9, 10

Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 251 (2017)...........................43

Lake v. First Nationwide Bank, 900 F. Supp. 726, 736 (E.D. Pa. 1995)...........................18

Lee v. Carter Reed, 203 N.J. 496, 520 (2010)..................................................16

Litman v. Cellco P'shp, 2008 WL 4507573, 2008 U.S. Dist. LEXIS 87570
(D.N.J. Sept. 29, 2008), vacated & remanded, 381 F. App'x 140 (3d Cir. 2010),
cert. granted, vacated & remanded, 563 U.S. 971 (2011) (Verizon petition), cert.
granted, vacated & remanded, 563 U.S. 971 (2011) (Litman cross-petition), on
remand, 655 F.3d 225 (3d Cir. 2011), cert. denied, 565 U.S. 1115 (2012).........................4

Little v. Ambit Energy Holdings, LLC, 2019 U.S. Dist. LEXIS 228211
(D.N.J. Oct. 23, 2019).......................................................................22

Lowden v. T-Mobile USA, Inc., 378 F. App'x 693, 694-95 (9th Cir. 2010)..........................4

MacClelland v. Cellco P'ship, 609 F. Supp. 3d 1024 (N.D. Cal. 2022)......................passim

Machulsky v. Lilliston Ford, Inc., 2008 WL 2788073. at *2 (N.J. Super. App. Div. 2008).......18

McKinnie v. JP Morgan Chase Bank, N.A., 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009).........27

Milliron v. T-Mobile USA, Inc., 2009 U.S. Dist. LEXIS 101201,
2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009)..............................................35

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004).........6

Norcia v. Samsung Telcoms. Am., LLC, 2021 U.S. Dist. LEXIS 135256, at *10
(N.D. Cal. July 20, 2021)....................................................................25

Ortiz v. Canopy Growth Corp., 2022 U.S. Dist. LEXIS 90292 (D.N.J. Feb. 7, 2022).............22

Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999)..............................................49

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974 (1985)..........21, 42

Reid v. RCN Telecom Servs., LLC, Docket No. MER-L-315-22....................................19

Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),
779 F.3d 934, 947 (9th Cir. 2015)……………………………………………………………19

Ripley v. Sunoco, Inc., 287 F.R.D. 300, 325 (E.D. Pa. 2012)……………………………...39

Sabol v. Hydroxatone LLC, 2013 U.S. Dist. LEXIS 202764 (D.N.J. Mar. 28, 2013)…………..23

Schneider v. Chipotle Mexican Grill, Inc., 336 F.R.D. 588, 599 (N.D. Cal. 2020)…………..2, 48

Schwartz v. Avis Rent a Car Sys., LLC, 2016 U.S. Dist. LEXIS 80387,
at *41-43 (D.N.J. June 21, 2016)……………………………………………………………...27

Seale v. Altice USA, Inc., Docket No. MER-L-618-23 (N.J. Super. Ct.)…………...14, 44, 45, 50

Silverman v. Motorola Sols., Inc., 739 F.3d 956, 958 (7th Cir. 2013)…………………………53

Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016)………………24

Stewart v. Apple Inc., 2022 U.S. Dist. LEXIS 139222, at *13 (N.D. Cal. Aug. 4, 2022)……….25

Sypherd v. Lazy Dog Rests., LLC, 2022 U.S. Dist. LEXIS 240138, at *20
(C.D. Cal. Aug. 29, 2022)……………………………………………………………………...39

Tillage v. Comcast, Case No. 17-cv-6477, 2021 U.S. Dist. LEXIS 101821,
2021 WL 2177225 (N.D. Cal., Feb. 15, 2018); 2021 U.S. Dist. LEXIS 133061,
2021 WL 3417940 (N.D. Cal. July 16, 2021)………………………………………………4, 13

Udeen v. Subaru of Am., Inc., 2019 U.S. Dist. LEXIS 172460 (D.N.J. Oct. 4, 2019)…………..23

Vianu v. AT&T Mobility, LLC, No. 3:19-cv-03602 (N.D. Cal.)……14, 32, 34, 37, 38, 39, 50, 51

Weiss v. Mercedes-Benz of N. Am., 899 F. Supp. 1297, 1301 (D.N.J. 1995)…………………..37

Williams v. Sprint/United Mgmt. Co., 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007)…….17

Yedlowski v. Roka Bioscience, Inc., 2016 U.S. Dist. LEXIS 155951, at *41
(D.N.J. Nov. 10, 2016)………………………………………………………………………...37

**STATUTES**

**Page(s)**

N.J. Ct. R. 1:4-8………………………………………………………………………………29

N.J. R.P.C. 3.1………………………………………………………………………………...29

N.J. R.P.C. 3.3………………………………………………………………………...29

Telephone Consumer Protection Act……………………………………………………54

**OTHER**

**Page(s)**

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*,
1 J. Empirical Legal Stud. 27 (2004), at 35………………………………………………...17

## TABLE OF OBJECTORS/ATTORNEYS

Aegerter, Jeff……………………………………………………2, 11, 14, 15, 20, 21, 50

Bilky, Allen……………………………………………………2-6, 13, 33, 37, 40-51

Chambers, Connor J……………………………………………………………...2, 21

Ciccia, Aaron…………………………………………………...2-6, 13, 33, 37, 40-51

Droste, Edward X……………………………………………………………2, 14, 15

Dunburg, Amanda…………………………………………………...2-6, 13, 33, 37, 40-51

Felton, Troy…………………………………………………………………2, 9, 10

Fife-Bauman, Amy………………………………………………………………2, 3, 11

Florea, Andrew……………………………………………………2-6, 13, 33, 37, 40-51

Fransham, Robert……………………………………………………………...2, 21

Graves, Kathryn E……………………………………………………………….2, 9

Helfand, Esq., Scott……………………………………...2, 3, 5, 6, 14-16, 24-28

Heisler, Pam…………………………………………………………………...2, 3, 11

Hoang, Esq., Quyen C……………………………………...2, 3, 5, 6, 11-15, 28-40

Hogan, Christopher…………………………………………………………………3, 9

Jackson, Valerie…………………………………………………………………3, 11

Jeffries, Kyle M…………………………………………………………3, 9, 22

Jiang Schrantz, Yujie…………………………………………………………...3

Kennedy, Brian Griffin…………………………………………………3, 14, 15

Kimsey, Erin & Marcus…………………………………………………3, 9, 22

Koss, Frank Joseph…………………………………………………………..3, 14, 15

Lauro, Michael……………………………………………………2-6, 13, 33, 37, 40-51

Lin, George……………………………………………………2, 3, 5, 6, 11-15, 28-40

Mahaney, Richard & Sarah Feldman…………………………………………3, 11, 14, 15

Mobley, Carmeletta……………………………………………………………3, 11

Montes, Carina……………………………………………………………………3

Murphy, Esq., Evan……………………………………………………2-6, 13, 33, 37, 40-51

Nees, George………………………………………………………………...3, 23

Nunez, Christina……………………………………………………2-6, 13, 33, 37, 40-51

Ogburn, Robert……………………………………………………………..3, 14, 15, 22

Oja, Christine & Mark…………………………………………………2, 3, 5, 6, 11-15, 28-40

Orullian, Aaron……………………………………………………………………3, 11, 15

Ott, John & Denese McAlister Ott……………………………………………………3, 11

Perkins, Clay………………………………………………………………………..3, 10

Schoone, Zack……………………………………………2-6, 13, 33, 37, 40-51

Scott, Clint………………………………………………………………………………3, 15

Simpson, Scott……………………………………………2-6, 13, 33, 37, 40-51

Sivilich, Lea Kathleen……………………………………………………………………3, 21

Spiller, Robert M., Jr.……………………………………………………………..3, 23

Starr, Marketta……………………………………………………………………...3, 11

Tang, Linda…………………………………………………2, 3, 5, 6, 11-15, 28-40

Treadwell, Darcie L.…………………………………………………………………………3

Trzcinski, Raymond……………………………………………………3, 9, 10, 22

Watson, Linda……………………………………………………2-6, 13, 33, 37, 40-51

Weinstein, William and Abby Livingston……………………………………2-6, 11, 15, 51, 52

Westlake, Laura…………………………………………………...2-6, 13, 33, 37, 40-51

Whitney, Brian…………………………………………………2-6, 13, 33, 37, 40-51

Williams, Andrew………………………………………………………………………3, 11, 22

Williams, Austin………………………………………………………………3, 11, 15, 22

Williams, Brennan……………………………………………...2-6, 13, 33, 37, 40-51

Zimmermann, Scott……………………………………………2, 3, 6, 15, 19, 53-55

## INTRODUCTION

As set forth in the Motions for Final Approval of Class Action Settlement, for Approval of Award of Attorney Fees and Costs, and for Approval of Incentive Awards for Lead Plaintiffs filed in this matter on January 31, 2024, Class Counsel have spent three years litigating this case to a successful conclusion – a **$100 million, non-reversionary settlement for a nationwide class of 58 million Verizon customers**.  The proposed settlement resolves four putative class actions which are pending in three separate state and federal courts, and which allege 55 consumer fraud and other statutory and common law claims brought by 129 lead Plaintiffs on behalf of 46 statewide sub-classes, as well as 13,539 individual arbitrations.  If approved, this proposed settlement would be one of the largest alleged deceptive fee settlements in history, and one of the largest class action settlements ever in the Superior Court of New Jersey.

This extraordinary result was obtained through a unique, multi-pronged strategy developed and implemented by Class Counsel, which has never before been utilized by any group of lawyers in the country:  Class Counsel filed four class action lawsuits – with lead Plaintiffs and claims covering the entire country – while simultaneously bringing thousands of individual "mass arbitrations."  This strategy put enormous pressure on Verizon not only to defend numerous cases and claims on both a class and individual basis, but also to pay millions of dollars in arbitration filing fees.  Many law firms file class actions.  A few firms file "mass arbitrations."  However, **no** group of attorneys has done both simultaneously, attacking a defendant on multiple fronts and forcing it to make a proverbial "Hobson's choice" – whether to run the risk of fighting in court multiple class actions filed on behalf of all of its customers nationwide (and thereby potentially lose hundreds of millions of dollars if it lost said class claims), or to attempt to impose arbitration on over 13,500 individual claimants (and thereby

1

being faced with the certainty of paying millions in filing fees <u>before</u> any evaluation of the merits). This well-planned and skillfully executed strategy by Class Counsel was a crucial factor in obtaining the significant settlement for which Court approval is now sought.

As of this filing, over **<u>4.7 million class members</u>** (more than 8% of the class) have chosen to actively participate in this settlement by filing a claim.[1] Only 11,923 class members (approximately 0.02% of the class) have elected not to participate in the settlement by opting out.[2] Of equal importance, just **<u>47 purported class members</u> – <u>0.000081% of the class</u> – have objected to any aspect of the settlement; which translates to an objection rate of only <u>1 out of every 1.2 million class members</u>.**

Specifically, a total of 33 objections were filed on behalf of 47 purported class members – <u>i.e.</u>, Verizon account holders who paid the complained-of Administrative Charge. Five objections were filed by current or former attorneys,[3] either for themselves or on behalf their purported clients. The remaining 28 objections were filed by purported class members on their own behalf.[4] Only 6 objectors have indicated an interest in appearing at the final approval

---

[1] This is an admirable claims rate compared to many other approved class settlements. See, e.g., In re Anthem, Inc. Data Breach Litig., 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval with 1.8% claims rate); <u>Schneider v. Chipotle Mexican Grill, Inc.</u>, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was **"on par with other consumer cases"**); <u>Bostick v. Herbalife Int'l of Am., Inc.</u>, 2015 U.S. Dist. LEXIS 83499, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with **"response rate of less than 1%"**); <u>Keil v. Lopez</u>, 862 F.3d 685, 697 (8th Cir. 2017) (class settlement approved with 3% claim rate); <u>see also</u> <u>Cottle v. Plaid Inc.</u>, 340 F.R.D. 356, 374 (N.D. Cal. 2021) (treating favorably a settlement administrator's estimate that a claims rate would be **"between 1% and 4% of the proposed class"**).

[2] At least 8,336 (70%) of these opt-outs were submitted by attorney-objector Evan Murphy, Esq.

[3] The attorney-objectors are Steven F. Helfand and Scott Zimmermann (who each object on their own behalf); William R. Weinstein (who objects for himself and his spouse, Abby Livingston); Quyen C. Hoang (who objects on behalf of George Lin, Linda Tang, Mark Oja, and Christine Oja); and Evan Murphy (who objects on behalf of Allen Bilky, Aaron Ciccia, Amanda Dunburg, Andrew Florea, Michael Lauro, Christina Nunez, Zack Schoone, Scott Simpson, Linda Watson, Laura Westlake, Brian Whitney, and Brennan Williams).

[4] These 28 individual objections were filed by Jeff Aegerter, Connor J. Chambers, Edward X. Droste, Troy Felton, Amy Fife-Bauman, Robert Fransham, Kathryn E. Graves, Pamela Heisler, Christopher

hearing.[5]  Numerous objections are procedurally or substantively improper, in that, inter alia, 7

objectors do not appear to be members of the settlement class;[6] 2 objectors failed to sign their

objections;[7] and 2 attorneys who purport to object on behalf of class members are not admitted to

practice law in New Jersey.[8]  Nevertheless, all objections are addressed herein.

Many of the objections provide no rationale for the stated objection, and the vast majority

cite no caselaw or any other legal authority in support of the issues they raise.  Indeed, only five

objections cite any legal authority whatsoever in support of their contentions, and no objection

cites any applicable controlling or precedential New Jersey caselaw in support thereof.

Perhaps most significantly, most of the objections fail to appreciate the plethora of risks

associated with the continued litigation of these claims.  As a rule, cases against wireless carriers

---

Hogan, Valerie Jackson, Kyle M. Jeffries, Brian Griffin Kennedy, Erin and Marcus Kimsey, Frank Joseph
Koss, Richard Mahaney and Sarah Feldman, Carmeletta Mobley, George Nees, Robert Ogburn, Aaron
Orullian, John and Denese McAlister Ott, Clay K. Perkins, Clint Scott, Lea Kathleen Sivilich, Robert M.
Spiller Jr., Marketta Starr, Raymond Trzcinski, Andrew Williams, and Austin Williams.  Additionally,
Selene Denise Crompton and Darcie L. Treadwell both filed an objection and excluded themselves from
the settlement; thus, pursuant to this Court's Preliminary Approval Order, they will be treated as opt-outs
rather than as objectors.  Yujie Jiang Schrantz and Carina Montes also filed documents that purport to be
objections but contain no actual objection to the settlement, and therefore are not counted as objectors.

[5] These six objectors are attorney-objectors Helfand, Hoang, Murphy, Weinstein, and Zimmermann, as
well as individual objector Marketta Starr.

[6] The settlement administrator has reported that at least six objectors – Amy Fife-Bauman, Pam Heisler,
Erin Kimsey, George Lin, Christine Oja, and Marketta Starr – are not class members.  See Exhibit A to
Declaration of Ryan Chumley ("Chumley Decl.").  Additionally, George Nees has objected on the ground
that he did not pay an Administrative Charge to Verizon and thus is not a class member.  The law is well-
settled that **"non-class members have no standing to object"** to a proposed class settlement.  Gould v.
Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989); Heller v. Quovadx, Inc., 245 F. App'x 839, 842 (10th Cir.
2007) (same); see In re Drexel Burnham Lambert Grp., Inc., 130 B.R. 910, 923 (S.D.N.Y. 1991), aff'd,
960 F.2d 285 (2d Cir. 1992) (**"Only Class members have standing to object to the Settlement of a
class action,"** and **"[o]bjectors who are non-Class members lack standing to object to the fairness,
reasonableness and adequacy of the Settlement."**).

[7] The objectors who failed to sign are Christine Oja and Linda Tang.

[8] Attorneys Quyen C. Hoang and William R. Weinstein are not admitted to practice law in New Jersey,
have not sought pro hac vice admission, and have not sought to appear through local counsel.  Thus, their
appearance in this matter on behalf of their clients is improper.  Nor may attorneys Hoang and Weinstein
object on their own behalf, as they are not class members.  See Exhibit A to Chumley Decl.

and cable companies alleging similar claims involving "junk fees" or deceptive "administrative fees" have not fared well at all, either settling for far less than the settlement achieved here or resulting in no recovery at all for plaintiffs or the class. See, e.g., Tillage v. Comcast, 2021 U.S. Dist. LEXIS 101821, 2021 WL 2177225 (N.D. Cal., Feb. 15, 2018); 2021 U.S. Dist. LEXIS 133061, 2021 WL 3417940 (N.D. Cal. July 16, 2021) (holding similar claims **"are a close question to survive summary judgment"** and ultimately denying class certification); Lowden v. T-Mobile USA, Inc., 378 F. App'x 693, 694-95 (9th Cir. 2010) (affirming dismissal of consumer claim that wireless carrier failed to adequately disclose "Regulatory Programs Fee" when language in the service agreement stated **"Any applicable … taxes, fees or charges imposed on Company as a result of providing the Service or your Unit to you will be added to your charges when imposed or required by law."**); Janda v. T-Mobile USA, Inc., 378 F. App'x 705, 707 (9th Cir. 2010) (dismissal on motion to dismiss affirmed where fees were not included in advertised price but disclosed generally in terms).

In fact, **two objectors have themselves repeatedly failed** to prevail on claims against Verizon with respect to the Administrative Charge at issue here. Specifically, objector Evan Murphy has lost six individual arbitrations against Verizon on the merits. And objector William Weinstein revealed in his objection that he has for 10 years attempted to challenge Verizon's arbitration clause and Administrative Charge, recovering nothing for any of his clients. See Weinstein Objection at 3.[9] Yet all of the objectors either ignore, fail to mention, or fail to acknowledge these crucial facts and onerous challenges.

---

[9] Citing Litman v. Cellco P'shp, 2008 WL 4507573, 2008 U.S. Dist. LEXIS 87570 (D.N.J. Sept. 29, 2008), vacated & remanded, 381 F. App'x 140 (3d Cir. 2010), cert. granted, vacated & remanded, 563 U.S. 971 (2011) (Verizon petition), cert. granted, vacated & remanded, 563 U.S. 971 (2011) (Litman cross-petition), on remand, 655 F.3d 225 (3d Cir. 2011), cert. denied, 565 U.S. 1115 (2012).

Despite this, Class Counsel believes that most of the individual objections were likely filed in good faith – albeit with a basic misunderstanding of class actions in general, of the claims pleaded in Plaintiffs' Complaint, of the procedural history of this litigation, of governing law in New Jersey, and/or of the proposed settlement.  In contrast, many of the attorney objections (which, coincidentally, appear to suffer many of the same misconceptions) appear to arise from a plainly biased agenda and are predicated on misinformation or misstatements of the law.  For example, attorney-objectors Helfand, Hoang, and Murphy baselessly insinuate that the proposed settlement was some sort of "sweetheart" deal that resulted from improper collusion between Class Counsel and Verizon.  Yet, as this Court is well aware from Class Counsel's motions, the procedural history of this case clearly belies this contention. To the contrary, Class Counsel and Verizon have been fighting like proverbial "cats and dogs" for the last three years in four different hotly-contested cases which have resulted, inter alia, in fully briefed arguments currently pending before the New Jersey Supreme Court and the Ninth Circuit Court of Appeals, as well as before the American Arbitration Association ("AAA") in thousands of individual arbitrations.[10]

Similarly, attorney-objectors Helfand and Hoang object to Class Counsel's litigation strategy, and Hoang argues that Class Counsel should have gotten more for the class via the

---

[10] Attorney-objectors Hoang and Weinstein erroneously argue that the time spent by Class Counsel on these AAA arbitrations did not contribute to the proposed settlement.  That is an incorrect contention that belies the objectors' total lack of knowledge of this case and its procedural history.  Class Counsel's strategy to simultaneously pursue litigation in multiple courts, while at the same time pursuing mass arbitrations on behalf of thousands of Verizon customers, was a key factor in bringing Verizon to the negotiating table.  Indeed, through this strategy, Class Counsel was able to secure a ruling from a AAA process arbitrator that the so-called "bellwether" provision of Verizon's arbitration clause violated the AAA's own rules and would not be enforced by AAA; a blow to Verizon that contributed greatly to the proposed settlement.  In fact, in the same month that Class Counsel obtained the published Appellate Division decision in Achey, defeating Verizon's arbitration clause and allowing the Achey action to proceed in court, the AAA billed Verizon the first installment for arbitration fees in the amount of $2.7 million, with a second installment of $2.9 million due approximately 60 days thereafter.

settlement because, <u>inter alia</u>, the appeals pending before the Ninth Circuit Court of Appeals and the New Jersey Supreme Court were certain winners,[11] there was no risk that the proposed nationwide class would not be certified, and Verizon's voluntary payment defense was "laughable" (<u>i.e.</u>, the same defense which was accepted by an arbitrator in at least one of attorney-objector Murphy's cases).

Attorney-objectors Helfand, Hoang, Murphy, Weinstein, and Zimmermann also each object – without citing any controlling authority – that Class Counsel should not receive the requested 33.3% combined award of fees and costs to which they are clearly entitled under New Jersey and Third Circuit law, and that the named Plaintiffs are similarly not entitled to the requested incentive awards.

Regardless of their motivations, these attorney-objectors are effectively swooping in at the eleventh hour and attempting to disrupt an extraordinary settlement benefitting 58 million Verizon customers nationwide, which Class Counsel and the named Plaintiffs obtained for the class after three years and numerous hours of hard-fought litigation.  Except for attorney-objectors Murphy (who has filed 10 individual arbitrations over the past three years, settling one for $400 and losing six) and Weinstein (who claims to have spent the last decade attempting to challenge Verizon's arbitration clause without success), <u>none</u> of the objector-attorneys has ever done anything, nor has any even attempted to do anything, to obtain any benefit or relief for the

---

[11] Despite the objector's boundless (and unwarranted) confidence, no one can predict how the New Jersey Supreme Court or the Ninth Circuit would rule on the pending appeals.  <u>See</u>, <u>e.g.</u>, <u>In re Yahoo! Inc. Customer Data Sec. Breach Litig.</u>, 2020 U.S. Dist. LEXIS 129939, at *63-64 (N.D. Cal. July 22, 2020) (overruling objection to proposed class settlement, stating the objectors ignore that **"further litigation and any subsequent appeal are uncertain"**); <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (approving class settlement, noting: **"Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation."**).  Indeed, the very fact that the New Jersey Supreme Court granted certification of the <u>Achey</u> decision over Class Counsel's objection should be enough to quash any belief that there was no risk to the class in allowing the New Jersey Supreme Court to issue a final ruling.

class. In contrast, Class Counsel and the named Plaintiffs have spent three years fighting

Verizon for – and winning – the monetary and injunctive relief and practice changes obtained via

litigation, arbitration, and this settlement. Notably, Class Counsel, inter alia:

- Obtained a published, precedential opinion before the New Jersey Appellate Division in Achey v. Cellco P'ship, 475 N.J. Super. 446 (App. Div. 2023), which invalidated as unconscionable Verizon's forced arbitration clause and class action waiver for a proposed class of New Jersey customers;

- Obtained a published federal opinion before the Northern District of California in MacClelland v. Cellco P'ship, 609 F. Supp. 3d 1024 (N.D. Cal. 2022), which invalidated as unconscionable Verizon's forced arbitration clause and class action waiver for a proposed class of California customers;

- Won a determination by an AAA process arbitrator that the so-called "bellwether" provision of the Verizon arbitration clause, which limited arbitrations to sequential groups of 10 arbitrations at a time, was not enforceable by the AAA because it would result in extraordinary delays and violate the AAA's own rules;

- Prevailed upon Verizon during the course of this litigation to amend its arbitration clause to remove the allegedly unconscionable provisions and to update the "bellwether process" so that consumers now have the ability to vindicate their rights either in arbitration or in court in a timely manner (rather than having to wait in perpetuity while arbitrations are decided in sequential small batches of 10-at-a-time);

- Compelled Verizon through litigation and via the settlement to amend its description of the complained-of Administrative Charge to accurately disclose to customers the Charge itself, an accurate description of the Charge and its purpose, and the fact that the Charge may be periodically increased;

- Prevailed upon Verizon to remove from its bills the misleading descriptions of the Administrative Charge being a surcharge used "to cover the costs that are billed to us by federal, state or local governments";

- Developed and executed a unique and innovative multi-prong litigation and arbitration strategy which enabled them to successfully defeat Verizon's forced arbitration clause in multiple jurisdictions, permitted class actions to be filed in court, and required Verizon to defend litigation and arbitrations on multiple fronts;

- Ultimately prevailed on Verizon to agree to the proposed settlement for the benefit of all class members; and

- Through the proposed settlement, obtained a $100 million, non-reversionary cash fund for the benefit of the class.

Without the extraordinary efforts of Class Counsel and the named Plaintiffs over the past three years, which efforts are described in detail in Plaintiff's motions, **none of these benefits would have been achieved, and the class would receive nothing**.  Indeed, it is bewildering that any objector – most of whom were completely unaware of the existence of this litigation until they received a notice of settlement one month ago – would purport to know more about and better understand this case than Class Counsel and Plaintiffs, who have lived and breathed this litigation while fighting Verizon over the last three years on behalf of the class.  Only persons with a biased agenda, or those wholly unfamiliar with the procedural history of this matter, the risks involved, and controlling New Jersey law, could possibly argue that this settlement is unreasonable and should not be approved.  For the reasons set forth herein, each objection is without merit and should be overruled.

**THE SMALL NUMBER OF OBJECTIONS AND LARGE NUMBER OF CLAIMS SHOWS THE SETTLEMENT HAS BEEN VERY WELL RECEIVED BY THE CLASS AND SUPPORTS APPROVAL**

To reiterate, 47 total objections out of a class of 58 million members is a remarkably low number of objections, strongly indicating the class's general support of the settlement and weighing heavily in favor of final approval.  See Final Approval Motion at Pt. I.D.2 (pp. 32-34); see also, e.g., Alves v. Main, 2012 U.S. Dist. LEXIS 171773, at *37 (D.N.J., Dec. 4, 2012) (Judge Cavanaugh) (approving a proposed class settlement even though 33% of the class submitted objections); Hawker v. Consovoy, 198 F.R.D. 619, 628 (D.N.J. 2001) (Judge Pisano) (approving class action settlement to which over 240 class members (~0.8%) submitted objections in a class of less than 30,000); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004) (affirming the approval of a proposed class action settlement, referring to 11 objectors out of a class of 12,000 (0.09%) to be a **"small number"** of objectors); Bryan v.

Pittsburgh Plate Glass Co., 494 F.2d 799, 803 (3d Cir. 1974), cert. denied, 419 U.S. 900 (1975)

(affirming class action settlement where 82 members of a class of 452, or almost 20% of the

class, objected).  As indicated by these and other cases cited in Class Counsel's motions, the

relatively low number of objections here, particularly in light of the total class size of 58 million

persons, and the large number of claims strongly support approval of the proposed settlement.

See Keil v. Lopez, 862 F.3d 685, 697 (8th Cir. 2017) (commending class counsel in class

settlement with a 3% claims rate, stating **"even if 97 percent of the class did not exercise their**

**right to share in the fund, <u>their opportunity to do so was a benefit to them</u>"**).

**THE OBJECTIONS SHOULD BE OVERRULED**

Most of the individual objections fall into four basic categories: (1) objections that either

categorically oppose <u>all</u> class actions or generally oppose this settlement; (2) objections that

individual class members did not receive enough money under proposed settlement; (3)

objections to the attorney's fees and incentive awards sought by Class Counsel under the

settlement; and (4) miscellaneous objections to various aspects of the settlement.  Five attorney

objections implicate additional issues and will be addressed separately.  As discussed in detail

below, all objections are without merit and should be overruled.

**I.      OBJECTIONS TO CLASS ACTIONS OR TO THIS SETTLEMENT IN
         GENERAL**

Six objectors – Troy Felton, Kathryn E. Graves, Christopher Hogan, Kyle M. Jeffries,

Erin and Marcus Kimsey, and Raymond Trzcinski – have objected to this settlement on the

ground that class actions in general are a "drain" on businesses, ultimately increase costs to

consumers, and/or only benefit attorneys and not class members.  These general opinions with

respect to public policy concerning the propriety of class actions are not valid objections to the

proposed settlement here.  The proposed settlement can only be evaluated by comparing the

terms being offered in settlement with the potential risks and results if this litigation were to

continue.  These objections make no such comparison, but rather make clear that these

individuals would object to <u>any</u> settlement in <u>any</u> class action out of principle, without regard to

the terms or conditions thereof, simply because they are fundamentally opposed to class actions.

Moreover, such objections run contrary to established authority recognizing the general benefit

of class actions to class members, even when class members choose not to participate therein.

<u>See</u>, <u>e.g.</u>, <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 480 (1980) (**"Their right to share the**

**harvest of the lawsuit** **upon proof of their identity, whether or not they exercise it, <u>is a</u>**

**<u>benefit in the fund created by the efforts of the class representatives and their counsel.</u>"**);

<u>Keil v. Lopez</u>, 862 F.3d 685, 697 (8th Cir. 2017) (commending class counsel in class settlement

with a 3% claims rate, stating **"even if 97 percent of the class did not exercise their right to**

**share in the fund, <u>their opportunity to do so was a benefit to them</u>"**) (emphasis added).

Consequently, these objections should be overruled.

Additionally, three objectors – Troy Felton, Clay K. Perkins, and Raymond Trzcinski –

object in general to this class action settlement based on the merits of the underlying claims.  Mr.

Felton objects that he was properly notified of the Administrative Charge but willingly agreed to

pay it (thus graphically illustrating some of the risks faced by the class in this matter if the

settlement is not approved, both at class certification, on the merits, and at the damages stage).[12]

Mr. Perkins objects on the ground that he does not believe he was overcharged by Verizon.  And

Mr. Trzcinski states that customers could have simply switched to a different carrier if they

believed they were being overcharged.  Again, these objections reflect a fundamental difference

---

[12] Mr. Felton's admission that he willingly paid the Administrative Charge also highlights why Verizon's
voluntary payment doctrine defense would be a significant hurdle for Plaintiffs at the class certification,
merits, and damage stages if this litigation were to continue.  <u>See</u> Final Approval Motion at Pt. I.D.4&5
(pp. 41-43).

of opinion with respect to the merits of this case, and fail to make any comparison between the benefit offered under the settlement and the potential risks and benefits of continued litigation. As such, they are not valid objections to this proposed settlement and must be overruled.

## II.     **OBJECTIONS TO THE BENEFITS PAID TO THE CLASS UNDER THE SETTLEMENT**

Thirteen objections – Jeff Aegerter, Amy Fife-Bauman, Pamela Heisler, Valerie Jackson, Richard Mahaney and Sarah Feldman, Carmeletta Mobley, Aaron Orullian, John and Denese McAlister Ott, Marketta Starr, Andrew Williams, and Austin Williams, as well as attorney-objectors Quyen C. Hoang and William R. Weinstein – complain that the class did not receive enough money under the settlement.  Specifically, Ms. Fife-Bauman and attorneys Hoang and Weinstein assert that $100 million is not enough for the class.  Ms. Heisler complains that the projected payment to individual class members is "not enough."  Ms. Jackson contends that she paid an "enormous amount of money" to Verizon, and Ms. Starr asserts that, aside from the Administrative Charge, Verizon also damaged her credit.  Mr. Aegerter, Mr. Mahaney, Ms. Feldman, Ms. Mobley, and both Mr. Williams appear to simply want more money.  Mr. Orullian and Mr. and Ms. Ott (who in fact filed a claim) complain that they should receive a refund of <u>all</u> the Administrative Charges they paid to Verizon.

These objections fail for several reasons.  First, they fail to account for the practical reality that every settlement is a compromise between parties.  If a defendant had to pay every plaintiff the full amount in controversy, there would be no incentive to settle the case rather than to litigate it fully and proceed to trial.  This is particularly true in a class action with multiple plaintiffs, and even more so in a class action such as this with approximately 58 million class members and hundreds of millions of dollars in alleged actual, statutory, and/or punitive

11

damages at stake.[13]  Indeed, such an enormous class action has rarely if ever settled for full value, which appears to be the outcome these objectors desire.

Second, the objections fail to account for any litigation risks or potential defenses by Verizon.  As explained in Class Counsel's motions, all class members – including these objectors – agreed to a forced arbitration clause and class action waiver with Verizon, which if enforced would require them to arbitrate their claims on an individual basis rather than litigate on a class basis in court.  While Class Counsel were successful in challenging Verizon's arbitration clause and class action waiver in New Jersey and California, those decisions were limited to New Jersey and California class members and were each on appeal to the Ninth Circuit and the New Jersey Supreme Court.  If those decisions were overturned on appeal, it may effectively end the possibility of any class action lawsuits against Verizon.  And even if class members were instead able to arbitrate their individual claims on the merits, their chances of success would be slim as well – as detailed in Class Counsel's motions, every single individual arbitration relating to the Administrative Charge that has been considered on the merits thus far has been decided in Verizon's favor.  These facts certainly devalue every class member's potential claim for damages, as does the fact that Verizon in a contested class action has multiple avenues for defeating and/or significantly weakening class members' claims, not to mention significantly delaying any remedy – via a motion to compel arbitration, a motion to dismiss, at class certification, at the summary judgment stage, at trial, and on multiple appeals.

Even if Class Counsel were to overcome the forced arbitration clause and class action waiver before the Ninth Circuit and the New Jersey Supreme Court, and ultimately for all class members, the claim that Verizon's Administrative Charge is unlawful is far from a "slam dunk"

---

[13] Depending on the damages theory accepted by the Court.

either on the merits of the claim or on class certification.  To the contrary, as set forth in detail in Class Counsel's motions, numerous courts have rejected similar claims either at the motion to dismiss, class certification, and/or summary judgment stage.  <u>See</u> Final Approval Motion at Pt. I.D.4&5 (pp. 36-44); <u>see</u> <u>also</u> <u>Tillage v. Comcast</u>, 2021 U.S. Dist. LEXIS 101821, 2021 WL 2177225 (N.D. Cal., Feb. 15, 2018); 2021 U.S. Dist. LEXIS 133061, 2021 WL 3417940 (N.D. Cal. July 16, 2021) (holding similar claims "are a close question to survive summary judgment" and ultimately denying class certification); <u>Janda v. T-Mobile USA, Inc.</u>, 378 F. App'x 705, 707 (9th Cir. 2010) (dismissal on motion to dismiss affirmed where fees were not included in advertised price but only generally disclosed in terms).

The objectors also ignore Verizon's waiver and voluntary payment defenses (<u>i.e.</u>, that class members received notice of the complained-of Administrative Charge on their first bill but continued to pay the Charge thereafter without protest, thereby implicitly consenting to said Charge, as expressly conceded by class member and objector Felton in his objection (<u>see</u> <u>supra</u> n. 12)).  Although attorney-objector Hoang called this defense "laughable," Class Counsel notes that, in at least one of attorney-objector Murphy's individual arbitrations, the arbitrator accepted this defense, found in Verizon's favor, and dismissed the claimant's case <u>in its entirety</u>.  If Verizon were to prevail on this defense, all class members' claims could similarly be dismissed, or, at best, their damages would be limited to the Administrative Charge they paid during the first month of service – on average, just **$1.95 per line per class member**.  Under the settlement, class members are currently projected to recover, on average, **more than six times** this amount. Such a recovery would be impossible at trial if a court accepted a voluntary payment defense, even if treble damages were awarded.

The voluntary payment defense also increases the risk that a class might not be certified, as some courts would find it to be an individualized question whether or not individuals saw the Administrative Charge on their bills.  See, e.g., Endres v. Wells Fargo Banks, 2008 U.S. Dist. LEXIS 12159, 2008 WL 344204, at *11-12 (N.D. Cal. Feb. 6, 2008) (denying class certification because, inter alia, the voluntary payment doctrine would require individualized inquiries).

The objectors further ignore that the projected amount of recovery – both individually and for the class as a whole – is in line with recoveries in similar cases.  See, e.g., Vianu v. AT&T Mobility, LLC, No. 3:19-cv-03602 (N.D. Cal.) (court approved a $14 million dollar settlement for a class of California AT&T wireless subscribers who alleged a similar deceptive "administrative fee," wherein each class member who filed a claim would receive a flat $17.25 payment, equating to a similar percentage of recovery attainable at trial); Seale v. Altice USA, Inc., Docket No. MER-L-618-23 (N.J. Super. Ct.) (court approved a nationwide settlement on behalf of 7.7 million consumers who alleged deceptive cable fees, wherein class members who filed a claim would receive a payment of $10 to $27.50, equating to similar percentages of recovery under identical damages theories).

Finally, the objectors are not prejudiced in any way by the proposed class settlement.  If they wished to try and recover from Verizon more money than the settlement provides, or the full amount of damages that they believe they are owed, they were free to opt out of the class settlement and seek those damages on an individual basis either in court or in arbitration. Consequently, these objections must be overruled.

## III.  OBJECTIONS TO ATTORNEYS' FEES AND INCENTIVE AWARDS

Thirteen objections – Jeff Aegerter, Edward X. Droste, Steven F. Helfand, Quyen C. Hoang, Brian Griffin Kennedy, Frank Joseph Koss, Richard Mahaney and Sarah Feldman,

14

Robert Ogburn, Aaron Orullian, Clint Scott, William Weinstein, Austin Williams, and Scott

Zimmermann – assert that the requested attorneys' fees and/or incentive awards are too high.

Mr. Droste, Ms. Feldman, Mr. Koss, Mr. Mahaney, Mr. Ogburn, and Mr. Scott simply claim that

the requested attorneys' fees are excessive.  Mr. Aegerter, Mr. Kennedy, Mr. Orullian, and

attorneys Helfand, Hoang, Weinstein, and Zimmermann argue that both the requested fee award

and the proposed incentive awards are too high.  Mr. Williams objects only to the amount of the

incentive awards.  These objections should be overruled for the reasons set forth below.

A.    **Objections to the Requested Attorney's Fee Award**

Class Counsel have filed their Motion for Approval of Attorney Fees and Costs, which

outlines in great detail both the facts and law which support the 33.3% combined award of fees

and costs requested by Class Counsel under a percentage of the common fund calculation.  As

set forth in that motion, the requested award is clearly supported by New Jersey and Third

Circuit precedent, and that voluminous document will not be re-created herein.  The existence of

this in-depth analysis of applicable legal authority in Class Counsel's fee petition is noted here

merely to offer a contrast to the objections to the fee request, the vast majority of which cite no

legal authority whatsoever in support of the contention that Class Counsel's fee request is too

high.  Even those few objectors who cite cases in support of their arguments – e.g., attorneys

Hoang, Weinstein, and Zimmermann – fail to cite any precedential, applicable, or relevant New

Jersey cases in support thereof.  The reason for this is obvious:  these objections are contrary to

well-established New Jersey and Third Circuit law, as set forth in Class Counsel's fee petition.

The vast majority of these objections blindly assert that Class Counsel's requested fee is

too high in light of the projected amounts that will be paid to each individual class member under

the proposed $100 million settlement.  But such objections are built on a logical fallacy, in that

they overlook the inevitability that, in a case where over 58 million people have each lost a tiny amount of money – the Administrative Charge at issue in this case was, on average, $1.95 per line per month – any attorneys' fees awarded to class counsel who recovers a common fund sufficient to pay some amount of money to every class member will necessarily be much higher than the amount paid to a single class member.  Indeed, class actions were specifically designed to be employed where the dollar loss per individual class member is small.  See, e.g., Lee v. Carter Reed, 203 N.J. 496, 520 (2010) ("**The whole point of a class action is to provide a diffuse group of persons, whose claims are too small to litigate individually, the opportunity to engage in collective action and to balance the scales of power between the putative class members and a corporate entity."**).

Additionally, for many decades attorneys' fees in class actions routinely have been awarded based on a percentage of the common fund recovered for the class as a whole.  See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) ("**this Court has recognized consistently that a [lawyer] who recovers a common fund for the benefit of persons other than himself or his client is entitled to <u>a reasonable attorney's fee from the fund as a whole</u>**") (emphasis added).  Indeed, as recognized by Objector Helfand, Class Counsel's fee petition cites over two dozen instances where New Jersey Superior Court judges and New Jersey District Court judges have awarded fees to class counsel amounting to 33.3% (or more) of a settlement or other common fund recovered for the class.  Nevertheless, this Court is urged to ignore all those many instances and blindly accept the unsupported arguments of objectors who purport to know more about how fees should be awarded in New Jersey class action settlements than this Court and the many other New Jersey state and federal judges who have routinely awarded fees equal to 33.3% of the class fund to class counsel.

Nor do these New Jersey cases stand alone. A veritable parade of so-called "mega-fund" cases have resulted in fees being awarded to class counsel of between 30% and 35% of the class fund recovered. See, e.g., In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (33% fee awarded from $510 million fund); Allapattah Servs. Inc. v. Exxon Corp., 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (31.33% fee from $1.075 billion fund); In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS 25067, 2001 WL 34312839 (D.D.C. July 16, 2001) (34.6% fee from $365 million fund); In re Tricor Direct Purchaser Antitrust Litig., 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) (33% fee of $250 million fund); Williams v. Sprint/United Mgmt. Co., 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (35% fee from $57 million common fund); In re Ikon Office Sols. Inc. Sec Litig., 194 F.R.D. 166 (E.D. Pa. 2000) (30% fee from $111 million fund); In re TFT-LCD [Indirect Purchaser] Antitrust Litig., 2013 WL 1365900, at *8, n.11 (N.D. Cal. Apr. 3, 2013) (30% fee to all counsel including state attorneys from $1.08 billion fund); In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) (30% fee from $410 million fund in case that settled before class certification, with court explaining that **"courts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements"**); In re Vitamins Antitrust Litig., 2001 WL 34312839, at *10, *14 (D.D.C. July 16, 2001) (34% fee awarded from $359 million fund); In re Titanium Dioxide Antitrust Litig., 2013 WL 6577029, *1 (D. Md. Dec. 13, 2013) (33% fee from $163.5 million fund); In re Southeastern Milk Antitrust Litig., 2013 U.S. Dist. LEXIS 70163, 2013 WL 2155387, *8 (E.D. Tenn. 2013) (one-third fee awarded from $158.6 million fund); see also Eisenberg & Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. Empirical Legal Stud. 27 (2004), at 35 (**"Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases."**).

Finally, Class Counsel notes that, while their fee request is based on established law permitting a 33.3% fee award – and specifically <u>not</u> on any lodestar analysis – Class Counsel have performed an enormous amount of work on this case, as detailed in their motions.  Thus, the requested fee is far from a "windfall," but rather would easily satisfy a lodestar "crosscheck" performed by a federal court.  Consequently, these objections must be overruled.

**B.      Objections to the Proposed Incentive Awards to the Named Plaintiffs**

Similarly, the objections to the proposed incentive awards for the named Plaintiffs are without merit and contrary to law.  These objections ignore the huge body of caselaw – including New Jersey cases – which provide that such incentive awards are routine and have been approved in numerous class actions.  <u>See</u>, <u>e.g.</u>, <u>Machulsky v. Lilliston Ford, Inc.</u>, 2008 WL 2788073, at *2 (N.J. Super. App. Div. 2008) (**"Incentive awards to class representatives in class actions are a recognized element of agreements to resolve class actions."**); <u>Fry v. Hayt</u>, 198 F.R.D. 461, 473 (E.D. Pa. 2000) (awarding the named plaintiff an incentive award); <u>Hanrahan v. Britt</u>, 174 F.R.D. 356, 369 (E.D. Pa. 1997) (same); <u>Lake v. First Nationwide Bank</u>, 900 F. Supp. 726, 736 (E.D. Pa. 1995) (awarding an **"allowance for the time that the Lakes spent prosecuting this matter"**); <u>In re Chambers Dev. Secs. Litig.</u>, 912 F. Supp. 852, 863 (W.D. Pa. 1995) (**"it has been this Court's practice to approve such incentive awards if they are reasonable"**).

Nor have the objectors provided any caselaw demonstrating that the amount of the proposed incentive awards – $3,500 for each named Plaintiff – is excessive.  To the contrary, New Jersey courts have approved far larger incentive awards in settlements which recovered far less money for a class.  <u>See</u>, <u>e.g.</u>, <u>Grillo v. RCN Telecom Servs.</u>, Docket No. MER-L-1319-22 (Walcott-Henderson, P.J. Ch.) (approving $15,000 incentive award to each named plaintiff in

18

$11 million class settlement); <u>Reid v. RCN Telecom Servs.</u>, Docket No. MER-L-315-22 (Hurd,

P.J. Cv.) (approving $15,000 incentive award to named plaintiff in $6.65 million settlement).

Indeed, the caselaw shows that a $3,500 incentive award to named plaintiffs who helped secure a

$100 million class settlement fund such as this one is on <u>the low end of approved incentive</u>

<u>award amounts</u>.  <u>See</u>, <u>e.g.</u>, <u>In re SmithKline Beckman Corp. Secs. Litig.</u>, 751 F. Supp. 525, 535

(E.D. Pa. 1990) (approving $5,000 incentive awards to class representatives who helped secure

$22 million class settlement, noting **"the named plaintiffs, through their vigilance, have**

**conferred a monetary benefit on a large class"**); <u>Resnick v. Frank (In re Online DVD-Rental</u>

<u>Antitrust Litig.)</u>, 779 F.3d 934, 947 (9th Cir. 2015) (affirming incentive awards of $5,000 each to

named plaintiffs, stating "**Here, incentive awards are $5,000, an amount we said was**

**reasonable**"); <u>Dunleavy v. Nadler</u>, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive

awards of $5,000 to class representatives in $1.725 million settlement).

Finally, the objectors question the need to have 129 lead Plaintiffs in this matter and

blindly argue that having so many named Plaintiffs is excessive.[14]  However, such objections fail

to appreciate or understand the procedural history of the four constituent actions which are being

settled or Class Counsel's litigation strategy to defeat Verizon's forced arbitration clause, which

ultimately led to the successful resolution of this matter.  When Class Counsel initially filed their

cases (and attempted to file their initial arbitrations), Verizon's arbitration clause contained an

onerous, so-called "bellwether" provision requiring that attorneys who represent 25 or more

clients in matters against Verizon could only file 10 arbitrations at a time.  By naming more than

25 lead Plaintiffs in <u>each</u> of their four class action cases, Class Counsel were able to invoke this

---

[14] Attorney-objector Zimmerman erroneously states that total combined incentive awards represent "almost 5% of the overall $100 million settlement."  This is incorrect.  The incentive award total of $451,500 is in fact equal to just 0.45% of the settlement.

provision against Verizon and argue in response to Verizon's motions to compel arbitrations (1) that the provision was applicable because, on the face of their pleadings, they represented more than 25 potential claimants; and (2) that the provision's limitations were unconscionable. Indeed, this argument – which potentially would have been unavailable to Class Counsel had they not named more than 25 lead plaintiffs in each case – became one of their strongest arguments to defeat Verizon's arbitration clause and class action waiver, as it ultimately permitted them to argue that, if a court were to enforce Verizon's bellwether provision, it would take over one hundred years to resolve the claims of Class Counsel's lead Plaintiffs and arbitration clients. This argument, along with others, enabled Class Counsel to defeat Verizon's arbitration clause before the New Jersey Appellate Division and the District Court for the Northern District of California, to defeat the "bellwether provision" before the AAA, and to pursue litigation in court on behalf of the class. Additionally, Class Counsel needed at least one named Plaintiff for each of their 46 statewide subclasses, to increase their chances of prevailing on class certification should a court fail to certify their proposed nationwide class. Accordingly, Class Counsel's election to have 129 named Plaintiffs in this matter was far from excessive – it was critical to obtaining this nationwide class settlement for which approval is now sought.

## IV.   ADDITIONAL OBJECTIONS TO VARIOUS ASPECTS OF THE SETTLEMENT

Finally, a number of objectors specifically contest various aspects of this proposed settlement. These objections should also be overruled for the reasons forth below.

**Jeff Aegerter** objects that the revised disclosure regarding the complained-of Administrative Charge mandated by the settlement (i.e., the injunctive relief obtained in the settlement) will not be disclosed in the Verizon Customer Agreement in a sufficiently "clear and conspicuous" manner. However, the Federal Trade Commission's "clear and conspicuous" standard referenced by Mr. Aegerter specifically relates to disclosures in online

advertisements.[15]  Here, Verizon's revised disclosure relating to the Administrative Charge will

be in the Verizon Customer Agreement, which is not an online advertisement but rather

constitutes the <u>contract</u> for services between Verizon and its customers.  In any event, the

language will not be hidden, minimized, or obscured, but rather will be plainly stated in the

Customer Agreement.

> **<u>Connor J. Chambers</u>** objects that the settlement does not provide an option for class

members to be paid either by check or by bill credit, and states that if he could receive payment

by check he "would not object."  Yet the settlement does in fact permit class members to receive

payment by check, and there is an option to do so on the online and paper claim forms.  <u>See</u>, <u>e.g.</u>,

Settlement FAQ 9, stating "Settlement payments will be issued … by check or electronic

payment."[16]  Class Counsel has informed Mr. Chambers of this, and Mr. Chambers has in fact

filed a claim but has not yet withdrawn his objection.

> **<u>Robert Fransham</u>** and **<u>Lea Kathleen Sivilich</u>** object that that they are required to

affirmatively opt out of the settlement or be bound thereby.  Ms. Sivilich also claims that this is a

violation of her constitutional rights.  Yet the law is well settled that **"due process requires at a**

**minimum that an absent plaintiff be provided with an opportunity to remove himself from**

**the class by executing and returning an 'opt out' or 'request for exclusion' form to the**

**court."**  <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974 (1985).

Here, both Mr. Fransham and Ms. Sivilich received adequate notice of the settlement and were

provided ample opportunity to opt out.

---

[15] <u>See</u> <u>https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-issues-guidelines-internet-advertising/0005dotcomstaffreport.pdf</u> (last accessed Feb. 23, 2024).

[16] <u>See</u> <u>https://www.verizonadministrativechargesettlement.com/faqs</u> (last accessed Feb. 23, 2024).

**Kyle M. Jeffries**, **Erin and Marcus Kimsey**, **Robert Ogburn**, and **Austin Williams** object that the settlement permits Verizon to continue to impose the Administrative Charge. Yet neither Class Counsel nor Plaintiffs ever alleged that the Administrative Charge itself is or was *per se* illegal. To the contrary, the law is clear that such charges are in fact legal so long as they are properly and truthfully disclosed. Accordingly, Plaintiffs specifically never sought "to regulate the existence or amount" of the Charge, only to require Verizon to disclose the Charge adequately and truthfully, and to refrain from making misrepresentations about the Charge. See, e.g., Complaint at ¶ 13; see also Alves v. Main, 2012 U.S. Dist. LEXIS 171773 (D.N.J. Dec. 4, 2012), at *37 (Judge Cavanaugh) (overruling objections based on **"a fundamental misunderstanding of the underlying purpose of the class action, a lack of knowledge of the ramifications to class members of a court-approved settlement, and unrealistic or overly optimistic expectations"**); Hawker v. Consovoy, 198 F.R.D. 619, 628, n.12 (D.N.J. 2001) (Judge Pisano) (approving class settlement despite over 200 objections and noting that most objections improperly sought relief not sought or available in the case). As set forth in Class Counsel's motions, the proposed settlement accomplishes this goal.

**Erin and Marcus Kimsey**, **Robert Ogburn**, and **Raymond Trzcinski** object that opt-outs and/or objections were required to be mailed. Yet courts routinely order that opt-outs and objections must be submitted by mail or filed with the court, just as this Court did in its Preliminary Approval Order. See, e.g., Ortiz v. Canopy Growth Corp., 2022 U.S. Dist. LEXIS 90292 (D.N.J. Feb. 7, 2022) (permitting claims to be filed electronically, but requiring opt outs and objections to be mailed or filed); Bentley v. LG Elecs. U.S.A., Inc., 2020 U.S. Dist. LEXIS 151204 (D.N.J. Aug. 19, 2020) (same); Little v. Ambit Energy Holdings, LLC, 2019 U.S. Dist. LEXIS 228211 (D.N.J. Oct. 23, 2019) (requiring opt outs and objections to be mailed or filed);

Udeen v. Subaru of Am., Inc., 2019 U.S. Dist. LEXIS 172460 (D.N.J. Oct. 4, 2019) (same);

Sabol v. Hydroxatone LLC, 2013 U.S. Dist. LEXIS 202764 (D.N.J. Mar. 28, 2013) (same).

**George Nees** objects that he received a class notice but is not a class member and never

paid an Administrative Charge to Verizon; thus, he seeks to be removed from the class list.  Such

an "objection" is a nullity because persons who are not class members have no standing to object

to a proposed class action settlement.  See Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir.

1989) (**"non-class members have no standing to object"** to a proposed class settlement);

Heller v. Quovadx, Inc., 245 F. App'x 839, 842 (10th Cir. 2007) (**"non-class members have no

standing to object"**).  Nevertheless, Class Counsel has contacted the Claims Administrator

Angeion Group and has asked that Mr. Nees's name be removed from the class list.

**Robert M. Spiller, Jr.** objects that the Settlement Agreement does not quantify either the

amount of litigation expenses that will be sought by Class Counsel or the total amount of

Incentive Awards that will be paid.  These exact amounts, however, are set forth in Class

Counsel's motions which are posted on the settlement website.  Specifically, Counsel's Motion

for Attorneys' Fees and Costs petitions the Court for an award of 33.3% of the Settlement Fund,

**inclusive** of any and all costs incurred (i.e., no additional costs will be sought).  And Counsel's

Motion for Incentive Award seeks an award of $3,500 to each of the 129 named Plaintiffs (total

of $451,500 in incentive awards).  Mr. Spiller also objects that these expenses and awards should

be deducted from the attorneys' fees.  As noted above, all litigation costs will in fact be paid

from the fee award, although the incentive awards will not.  As set forth in Pt. III.B., supra,

incentive awards are routinely awarded in class action settlements, and the awards requested here

fall well within the range of those typically awarded by courts in this state.

Accordingly, all of the foregoing objections should be overruled.

## V.   RESPONSE TO SUPPLEMENTAL ISSUES RAISED BY ATTORNEY OBJECTIONS

### A.   Steven F. Helfand Objection

Stephen F. Helfand has filed an objection on behalf of himself.  Mr. Helfand is a disbarred attorney who lost his license to practice law for, inter alia, misconduct committed during a prior objection to a prior class action settlement.[17]  See Exhibit A, 10/8/19 Order of the State Bar Court of Cal. at 4, finding that Mr. Helfand **"dishonestly sought to mislead a judge, thereby committing an act involving moral turpitude in willful violation of section 6106."**[18] Courts have repeatedly described Mr. Helfand as a "serial" objector who is well known for filing groundless objections to class action settlements.  See, e.g., In re Tiktok, Inc., Consumer Priv. Litig., 617 F. Supp. 3d 904, 923 (N.D. Ill. 2022) (noting **"a number of courts have referred to Helfand as a 'serial objector,' who has been disbarred for, among other things, filing groundless objections to proposed class action settlements"**); Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1260 n.11 (C.D. Cal. 2016) (overruling objections by Mr. Helfand and referring to him as **"Steven Helfand, another known serial objector"**); Brown v. Hain Celestial Grp., Inc., 2016 U.S. Dist. LEXIS 20118, at *28 (N.D. Cal. Nov. 16, 2020 ) (Exhibit C) (noting that the court **"finds that Helfand -- a 'serial objector' who, other courts have found, falsely claimed to have purchased products, so he could file objections"**); Collins v. Quincy

---

[17] Mr. Helfand's statement at pages 14-15 of his submission to this Court, where he tells this Court that he was disbarred for drug and alcohol problems, is clearly not entirely truthful.  As the disbarment order attached as Exhibit A at page 4 hereto plainly shows, Mr. Helfand was disbarred for willfully violating several RPC's during a prior class settlement objection in the Spann v. J.C. Penney, including a finding that he **"dishonestly sought to mislead a judge, thereby committing an act involving moral turpitude…"** (emphasis added)  See also In re Tiktok, Inc., Consumer Priv. Litig., 617 F. Supp. 3d 904, 923 (N.D. Ill. 2022), noting that Mr. Helfand was disbarred for misconduct relating to a prior objection to a class action settlement, with the federal judge stating specifically **"the Court notes that a number of courts have referred to Helfand as a 'serial objector,' who has been disbarred for, among other things, filing groundless objections to proposed class action settlements."**) (emphasis added).

[18] All the exhibits referenced herein are attached to the Declaration of Stephen P. DeNittis which is being filed concurrently.

24

Bioscience LLC,  2020 U.S. Dist. LEXIS 218673, at *2 (S.D. Fla. Nov. 16, 2020) (Exhibit B)

(striking an objection by Mr. Helfand, and describing him as: **"Steven F. Helfand, an attorney**

**who lost his license to practice law in California and who district court judges have**

**described as a 'serial' objector to class action settlements…"**).

As of 2020, Mr. Helfand himself admitted that he had objected to more than 50 class

action settlements.  See Collins, 2020 U.S. Dist. LEXIS 218673, at *16 (Exhibit B) (**"By his own**

**estimation, Helfand has filed '[p]robably, like, 50' objections to class action settlements,**

**'[i]t might have been more,' but he doesn't 'have a list.'"**).  Since 2020, Mr. Helfand has

continued this behavior, filing objections to numerous class action settlements which were

overruled by the relevant courts.  See, e.g., In re Morgan Stanley Data Sec. Litig., 2022 U.S.

Dist. LEXIS 176666, at *5 (S.D.N.Y. Sep. 28, 2022) (requiring class action objector Steven

Helfand to post $25,000 bond to appeal approval of class action settlement over his objection);

Cottle v. Plaid Inc., 2022 U.S. Dist. LEXIS 128967, at *27 (N.D. Cal. July 20, 2022) (overruling

class settlement objections by objector Steven Helfand); Norcia v. Samsung Telcoms. Am., LLC,

2021 U.S. Dist. LEXIS 135256, at *10 (N.D. Cal. July 20, 2021) (noting that **"only a single**

**objection was filed by Steven Helfand"** and overruling that objection); In re Capital One

Consumer Data Sec. Breach Litig., 2022 U.S. Dist. LEXIS 234943, at *22 (E.D. Va. Sep. 13,

2022) (overruling class settlement objections by Steven Helfand); Stewart v. Apple Inc., 2022

U.S. Dist. LEXIS 139222, at *13 (N.D. Cal. Aug. 4, 2022) (overruling class settlement

objections by Steven Helfand); Izor v. Abacus Data Sys., 2020 U.S. Dist. LEXIS 239999, at *18

(N.D. Cal. Dec. 21, 2020) (noting that **"A single objection was filed by Steven Helfand"** and

overruling objection); In re Apple Inc. Device Performance Litig., 2021 U.S. Dist. LEXIS 50550,

at *73 (N.D. Cal. Mar. 17, 2021) (overruling objections by Steven Helfand, noting: **"Steven Helfand ('Helfand') objects to almost everything"**).

With regard to the specifics of Mr. Helfand's objection in the case at bar, Class Counsel submit that he is continuing the pattern established in the aforementioned cases. Each of his "cookie cutter" objections is without merit and is based on a misunderstanding and/or misstatement of the procedural history of the case at bar, of the claims pleaded, of governing law in New Jersey, or of the proposed settlement. Helfand's objections to the attorneys' fees and incentive awards sought here are addressed in Pt. III, <u>supra</u>.

Mr. Helfand also objects to the fact that Defendant Verizon has agreed not to object to Class Counsel's petition seeking fees and costs equal to 33.3% of the Settlement Fund; what Mr. Helfand calls a "clear sailing" provision. This objection, like his others, is wholly without merit. As a factual matter, Mr. Helfand's insinuation – without a shred of evidence – that this is some sort of "sweetheart" settlement and/or that Class Counsel and Verizon have some sort of "cozy" relationship that amounts to collusion is farcical given the procedural history of the four constituent cases and thousands of arbitration claims being settled. As the Court is already well aware from Class Counsel's motions, the procedural history of these cases shows that Class Counsel and Verizon have been fighting vigorously for the last three years in four different hotly-contested cases in both state and federal court. That lengthy and vigorous litigation has led to, <u>inter alia</u>: (1) a published, precedential New Jersey Appellate Division opinion in <u>Achey v. Cellco P'ship</u>, 475 N.J. Super. 446 (App. Div. 2023); (2) a published federal opinion in <u>MacClelland v. Cellco P'ship</u>, 609 F. Supp. 3d 1024 (N.D. Cal. 2022); (3) a grant of certification by the New Jersey Supreme Court in <u>Achey</u>; (4) a pending and fully-briefed argument currently pending before the New Jersey Supreme Court in <u>Achey</u>; (5) a pending and fully-briefed appeal

before the Ninth Circuit Court of Appeals in <u>MacClelland</u>; and (6) a decision by an AAA process arbitrator finding Verizon's "bellwether" arbitration provision to be in violation of the AAA's own rules and thus unenforceable by the AAA.  These efforts have resulted in one of the largest deceptive fee settlements ever obtained in the country, and one of the largest class action settlements ever reached in the Superior Court of New Jersey.  Even this Court has found in its Preliminary Approval Order that the Settlement Agreement was a product of arms' length negotiations.  Only someone who has no familiarity whatsoever with the contentious procedural history of these constituent matters could possibly argue that Class Counsel and Verizon are overly friendly with each other and/or that they are somehow colluding to the detriment of the class.

Mr. Helfand's argument also fails as a matter of law.  Verizon's decision not to object to Class Counsel's fee petition is irrelevant because it is the Court – not Verizon – who will decide what fees should be awarded in this matter.  Moreover, Mr. Helfand has not cited any New Jersey cases (or any cases whatsoever) which criticize in any way a provision wherein a defendant agrees not to object to a class counsel's fee petition at or below a certain amount.  Indeed, even federal courts have refused to bar such provisions.  <u>See</u>, <u>e.g.</u>, <u>In re NFL Players Concussion Injury Litig.</u>, 821 F.3d 410, 447 (3d Cir. 2016) (Third Circuit refused to adopt rule barring so-called clear sailing provisions in class action settlement agreements, noting that numerous cases **"have approved agreements containing such clear-sailing clauses"**); <u>In re Wawa, Inc. Data Sec. Litig.</u>, 85 F.4th 712, 725–26 (3d Cir. 2023) (while deserving evaluation, clear sailing provision are **"not an automatic bar to settlement approval"**); <u>In re Oil Spill</u>, 295 F.R.D. 112, 138 (E.D. La. 2013) (**"numerous cases, including cases decided by this Court, have approved agreements containing such clear-sailing clauses"**); <u>McKinnie v. JP Morgan</u>

27

Chase Bank, N.A., 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (**"Finally, a defendant in a class action settlement has no obligation to oppose the fee petition submitted by class counsel. Thus, the fact that the proposed settlement includes these terms does not render it inherently unfair."**); see also Schwartz v. Avis Rent a Car Sys., LLC, 2016 U.S. Dist. LEXIS 80387, at *41-43 (D.N.J. June 21, 2016), overruling objection to class action settlement, stating:

> **"Mr. Ray's objection to the 'clear sailing clause' – in which Defendants have agreed not to dispute an award of fees up to $3,050.00 – is undermined by recent Third Circuit precedent holding that such clauses are permissible… the Court rejects Mr. Ray's objection to the 'clear sailing clause.'" (emphasis added)**

Consequently, Mr. Helfand's objections must be overruled.

### B.    Quyen C. Hoang Objection

Attorney Quyen C. Hoang has filed an objection on behalf of purported class members George Lin, Linda Tang, Mark Oja, and Christine Oja.  At the outset, Class Counsel notes that Attorney Hoang is not admitted to practice law in New Jersey, and has not filed a motion to appear pro hac vice in this matter.[19]  Thus, Attorney Hoang's objections on behalf of his purported clients are not properly before this Court.  Further, Attorney Hoang makes no objection on Hoang's own behalf;[20] nor could Hoang, as the claims administrator has informed Class Counsel that Attorney Hoang is not a member of the settlement class.  See Exhibit A to Chumley Decl.[21]  Moreover, two of Attorney Hoang's purported clients for whom Hoang has

---

[19] Indeed, in a letter to this Court dated March 1, 2024, Attorney Hoang specifically declined to seek admission pro hac vice or to obtain local counsel.

[20] See, e.g., Hoang Objection at 1 (identifying Hoang as **"Attorney for Plaintiffs and Objectors George Lin, Linda Tang, Mark Oja, Christine Oja"** and further stating that **"Class Members GEORGE LIN, LINDA TANG, MARK OJA, CHRISTINE OJA who OBJECTS"** to the settlement) (emphasis added).

[21] Attorney Hoang is not on the class member list.  See id.  Although Attorney Hoang repeatedly has claimed to be a former Verizon customer and even has produced an email from Verizon referencing a former Verizon account, it is likely that Attorney Hoang either (a) was not the holder of the Verizon

filed objections – George Lin and Christine Oja – also are not class members.  See id.  As set forth above, these "objections" are a nullity because persons who are not class members have no standing to object to a proposed class action settlement.  See Gould, 883 F.2d at 284 (**"non-class members have no standing to object"** to a proposed class settlement); Heller, 245 F. App'x at 842 (**"non-class members have no standing to object"**).  Moreover, purported objector Linda Tang has neither submitted any contact information nor signed her objection, as required by this Court's Preliminary Approval Order.  Thus, at most, only the objection of Mark Oja – to the extent he elects to object individually – is even arguably before this Court.

Attorney Hoang's 74-page tome objects to numerous aspects of the settlement.  Many of these objections are based on misinformation.  Others are based on inapplicable law, on a complete underappreciation of the litigation risks involved, and/or on improper comparisons to other unaffiliated class actions.  All of these objections should be overruled.

### 1.    Objections Based on Misinformation

Many of Attorney Hoang's objections are based on a patent misunderstanding – or worse, a deliberate misinterpretation – of the procedural history of this litigation and/or of the proposed settlement.  A simple call to Class Counsel could have easily corrected most of these misconceptions, but Attorney Hoang did not attempt to contact Counsel prior to filing this objection, apparently choosing instead to waste the time of the Parties and this Court.  Indeed, several of Attorney Hoang's unfounded objections are so egregious that they amount to violations of N.J. Rule Civ. P. 1:4-8 (prohibiting frivolous litigation) and N.J. Rules of Prof.

---

account, (b) had a Verizon business account, or (c) had a pre-paid account, any of which would exclude Attorney Hoang as a class member and would explain why Attorney Hoang is not in the class data. Additionally, Attorney Hoang claims to have received a class notice, but cannot produce said notice because the relevant "email system" mysteriously "crashed" – even though Attorney Hoang was somehow able to produce a 5-year-old email from the same, "crashed" cloud-based email system referencing the former Verizon account, and there have been no public reports of any recent "crashes" of either of Attorney Hoang's cloud-based email servers.

Conduct 3.1 and 3.3 (prohibiting unmeritorious claims and requiring candor toward the tribunal).[22] Such objections are easily overruled.  Specifically:

Attorney Hoang objects that Class Counsel's motions were untimely because they were due on January 29, 2024, "45 days after the 'Notice date' of 12/15/23."  They were not.  In fact, the Notice Date was January 16, 2024 – the last day of the 30-day period after the preliminary approval date of December 15, 2023 that was not a Sunday or legal holiday – and Class Counsel's motions were timely filed 15 days thereafter, on January 31, 2024.

Attorney Hoang also compares this case to others previously filed by Class Counsel, arguing that it is nothing more than a "cookie cutter" copy of those cases.  It is not.  To the contrary, this is – without exception – the largest, most complex class action on which any Class Counsel has ever worked.  In order to reach the nationwide settlement for which final approval is sought here, Class Counsel not only had to fully vet (and design a strategy to prevail on) the merits of the case (i.e., the legality of Verizon's practices concerning its Administrative Charge), they had to do so under the law of all 50 states.  And before even litigating the merits, Class Counsel had to defeat an arbitration clause that purported to require each of the nearly 58 million class members to arbitrate their claims on an individual basis – in three different courts, on multiple appeals, and before the AAA.  To defeat Verizon's arbitration clause, Class Counsel had to develop and implement a detailed, multi-pronged arbitration and litigation strategy involving 129 lead Plaintiffs representing 46 putative statewide classes in four separate class actions and over 13,500 arbitration claimants, which forced Verizon to hire multiple large, "blue-

---

[22] N.J. Ct. R. 1:4-8 requires, inter alia, that all legal contentions be either warranted by existing law or a non-frivolous argument for the modification thereof, and that factual allegations have evidentiary support. Attorney Hoang's objections are not and do not.  N.J. R.P.C. 3.1 prohibits arguments that are not based in fact and law, and N.J. R.P.C. 3.3 prohibits false statements of fact and requires disclosure of all relevant legal authority.  Attorney Hoang's objections do not comply with these rules.  Of course, as noted above, Attorney Hoang is not admitted to practice law in New Jersey, and thus these objections technically are not properly before this Court.

chip" law firms to fight these claims simultaneously on multiple fronts.  And only after three years of hard-fought, contentious litigation and multiple wins in court and in arbitration were Class Counsel able to prevail on Verizon to enter into the proposed $100 million nationwide settlement for which approval is sought here – and which happens to be the largest settlement Class Counsel has ever acquired for their clients.  Indeed, this is far from a "cookie cutter" case.

Attorney Hoang further objects that the Settlement Agreement is illegal because it prohibits future malpractice lawsuits in violation of the California and New Jersey Rules of Professional Conduct.  It does not.  The Agreement specifically prevents only claims of abuse of process and malicious prosecution and/or for attorneys' fees, costs, or sanctions between the parties.  See Settlement Agreement Pt. IX.C.

Additionally, Attorney Hoang objects that the Settlement Agreement is "illegal" because it permits Verizon to continue to enforce its Customer Agreement, which the MacClelland and Achey courts found to be unconscionable and void in its entirety.  They did not.  To the contrary, the Northern District of California in MacClelland and the New Jersey Appellate Division in Achey found **only** Verizon's arbitration clause and class action waiver to be unconscionable and unenforceable, not the entire Customer Agreement.  And both of those decisions were pending appeal before the Ninth Circuit Court of Appeals and the New Jersey Supreme Court, respectively.  Moreover, during the course of this litigation, Verizon has (repeatedly) changed the arbitration clause and class action waiver that the MacClelland and Achey courts found to be unconscionable, and those provisions are no longer in the Verizon Customer Agreement.  See Motion for Attorney's Fees at 2; DeNittis Decl. at ¶ 10.

Based on the same basic misinterpretation of MacClelland and Achey, Attorney Hoang objects that New Jersey and California class members are giving up their right to cancel their

31

"illegal" Verizon Customer Agreements via the proposed settlement, and moreover are giving up

"billions" in future claims against Verizon arising from that "illegal" contract. They are not.

Again, neither the <u>MacClelland</u> nor the <u>Achey</u> court found the entire Verizon Customer

Agreement to be unconscionable and void, only the arbitration clause and class action waiver

(which, again, is no longer present in the Customer Agreement due to Verizon's repeated

changes thereof as a result of the efforts of Class Counsel).

Attorney Hoang objects to the settlement release as both illegal and in conflict with the

Court-approved notice of settlement based on the misconception that the release as set forth in

the Settlement Agreement prohibits all future claims against Verizon. It does not. Rather, the

release clearly prohibits only those claims **"that were or reasonably could have been alleged**

**in this Action … arising from or relating to the Administrative Charge."** Settlement

Agreement at ¶ IX.B. Thus, the release does <u>not</u> prohibit any future lawsuits against Verizon

<u>except</u> those that relate to the Administrative Charge as it presently exists (<u>i.e.</u>, which were or

could have been alleged in this case). If Verizon were to change its current practices regarding

the Administrative Charge, then class members could bring claims relating to those changed

practices because such claims regarding Verizon's <u>future practices could not have been alleged</u>

<u>in this matter</u>. See <u>Vianu v. AT&T Mobility LLC</u>, 2022 WL 16823044, at *9 (N.D. Cal. Nov. 8,

2022) (overruling similar objection to an identical release, finding that **"the release does not**

**protect AT&T for any hypothetical future change to the administrative fee"**).

Attorney Hoang also objects to the settlement as unfair to the California and New Jersey

"subclasses," based on the misconception that such subclasses exist. They do not. Rather, this

Court certified a <u>nationwide</u> settlement class (with no subclasses), of which all class members

are being treated equitably under the proposed settlement. Class members who feel that they are

entitled to and/or might be able to obtain a higher payment from Verizon on an individual basis have been provided adequate notice and ample opportunity to opt out of the settlement.

Attorney Hoang further objects to Class Counsel's lodestar hours – that they are excessive, that most time was billed by partners, and that too much time was spent on arbitration clients – based on the misconception that Class Counsel are seeking attorneys' fees based on their lodestar.  They are not.  To the contrary, Class Counsel are seeking a fee award solely under a percentage of the common fund calculation pursuant to well-established New Jersey law.

Indeed, the only reason Class Counsel even provided the Court with their lodestar hours was to demonstrate that the requested fee is not a windfall and that they would be entitled to such a fee even under a lodestar "cross check" used by federal courts (but not required under New Jersey law).  Further, as set forth in their fee petition, Class Counsel is comprised of three small firms with a combined total of just twelve attorneys, only two of whom are associates; thus, pushing a majority of the workload down to associates as Hoang suggests was simply not possible here.  Moreover, signing up and vetting thousands of clients to pursue individual arbitrations against Verizon was absolutely crucial to Class Counsel's litigation strategy and the nationwide class settlement ultimately achieved, in that, inter alia, it added significant pressure to Verizon, it forced Verizon to litigate on multiple fronts, it raised the possibility that Verizon would be forced to pay millions in arbitration filing fees, and it enabled Class Counsel to obtain a very favorable and consequential determination by an AAA process arbitrator that Verizon's "bellwether" provision violated the AAA's own rules and could not be enforced by the AAA.  Thus, contrary to Attorney Hoang's misplaced contentions, Class Counsel's arbitration clients were far from "cannon fodder."  Indeed, the six arbitration losses cited in Class Counsel's motions were clients of attorney-objector Murphy, not of Class Counsel.

33

Finally, Attorney Hoang objects that the injunctive relief obtained for the class by Class Counsel is merely illusory.  It is not.  To the contrary, Class Counsel obtained through litigation and the settlement significant and impactful injunctive relief and practice changes for the class. For example, Class Counsel prevailed upon Verizon through litigation to amend its arbitration clause no less than <u>four times</u>, with each amendment resulting in a clause more favorable to class members than the former, and ultimately to remove altogether the unconscionable restriction that only 10 "bellwether" arbitrations could be filed and heard at a time for perpetuity with no ability to opt out (and which, if found enforceable, would have precluded most class members from recovering any relief from Verizon during their lifetime).  Also, Class Counsel prevailed upon Verizon through litigation and the settlement to amend its description of the complained-of Administrative Charge to accurately disclose to customers the Charge itself, an accurate and complete description of the Charge and its purpose, and the fact that the Charge may be periodically increased by Verizon.  Further, Class Counsel prevailed upon Verizon to remove from its bills the misleading description of the Administrative Charge being a surcharge used "to cover the costs that are billed to us by federal, state or local governments," and to update the definition of the Charge on its website.  All of these benefits were obtained and bestowed on all class members solely through the efforts of Class Counsel, and they are far from illusory.[23]

## 2. <u>Objections Based on Inapplicable Law</u>

Additional objections by Attorney Hoang reflect a misunderstanding or misinterpretation of applicable law.  Indeed, Attorney Hoang cites <u>no New Jersey law</u> to support any argument,

---

[23] It is also worth noting that the Northern District of California approved a class settlement involving similar claims against AT&T regarding an administrative charge wherein <u>no</u> practice changes were obtained.  <u>See</u> <u>Vianu v. AT&T Mobility, LLC</u>, No. 3:19-cv-03602 (N.D. Cal.).

but rather repeatedly relies on federal standards – <u>even when they conflict with well-established New Jersey law</u>.  Specifically:

Attorney Hoang objects that it is "outrageous" that Class Counsel did not justify their requested fee under the factors enumerated in the Third Circuit opinion <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190 (3d Cir. 2000).  Yet consideration of the Third Circuit's <u>Gunter</u> factors is not and has never been a prerequisite for an award of attorney fees in New Jersey state court.  Nevertheless, all of the <u>Gunter</u> factors have in fact been addressed <u>ad</u> <u>nauseum</u> in Class Counsel's motions, and an impartial evaluation of Class Counsel's fee request in light of these factors would support the requested award.

Attorney Hoang also objects to Class Counsel's attorney fee request on the ground that it exceeds California's purported federal "benchmark" of 25%.  But California law is not controlling here, and, as noted above and in Class Counsel's motions, New Jersey courts routinely grant an attorney fee award equal to one third of a settlement fund.  As have countless state and federal courts around the country – including California federal courts.  <u>See</u> <u>supra</u> Pt. III.  Indeed, in one of the cases cited by Attorney Hoang, the New Jersey District Court <u>specifically overruled</u> a similar objection that a 33% fee award should be reduced to 25%, finding that such awards are **"regularly … found acceptable."**  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving attorney fee award equal to 33% of settlement fund over an objection that the fee should be reduced to 25%, noting **"This percentage has regularly been found acceptable in common fund settlements in this District."**) (citing, <u>e.g.</u>, <u>In re Merck & Co., Inc., Vytorin ERISA Litig.</u>, 2010 U.S. Dist. LEXIS 12344, 2010 WL 547613, at *13-14 (D.N.J. Feb. 9, 2013) (awarding attorney fee of 33%, plus expenses, from the common fund); <u>Milliron v. T-Mobile USA, Inc.</u>, 2009 U.S. Dist. LEXIS

101201, 2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009) (approving attorney fee of 33 1/3%, plus expenses, on common fund amount of $13.5 million)).

Moreover, even California federal courts have awarded fees in excess of 25% in class action settlements, including in "mega-fund" cases. See, e.g., In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (holding that **"a fee award of one-third is within the range of awards in this [Ninth] Circuit,"** granting a one-third fee of a $105 million fund, and citing with approval In re Pacific Enterprises Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995), which had affirmed a California District Court award of 33%); In re TFT-LCD [Indirect Purchaser] Antitrust Litig., 2013 WL 1365900, at *8, n.11 (N.D. Cal. Apr. 3, 2013) (30% fee to all counsel including state attorneys from $1.08 billion fund).

Attorney Hoang further objects that this settlement should be reviewed under a "heightened scrutiny" standard, and that the so-called "clear sailing" provision is evidence of collusion.  But again, Attorney Hoang cites no New Jersey law for these propositions, but rather relies solely on federal law primarily from the Ninth Circuit, which is not controlling here. Indeed, as set forth above, even the Third Circuit has refused to bar clear sailing provisions in class action settlements.  See supra Pt. V.A., citing In re NFL Players Concussion Injury Litig., 821 F.3d 410, 447 (3d Cir. 2016).

Attorney Hoang seems to be under the misimpression that this nationwide class action belongs in California, and that the proposed nationwide settlement should be evaluated under California and Ninth Circuit law, simply because approximately 12% of the class might reside in California.  Such a proposition is, frankly, preposterous.  While Class Counsel did file a single case in California on behalf of California residents only, Class Counsel filed three cases in New Jersey (not including this omnibus settlement complaint) – one in state court and two in federal

court – not only on behalf of New Jersey residents, but <u>on behalf of all Verizon customers</u>

<u>nationwide (excluding California)</u>.  And the majority of this litigation took place in New Jersey –

while the <u>MacClelland</u> appeal was pending before the Ninth Circuit, Class Counsel won an

appeal before the New Jersey Appellate Division in <u>Achey</u>, briefed Verizon's appeal of <u>Achey</u>

before the New Jersey Supreme Court, and defeated Verizon's motion to compel arbitration in

the District of New Jersey with respect to multiple putative state subclasses.  Indeed, Class

Counsel focused the litigation in New Jersey because Verizon is headquartered in and a citizen

of New Jersey; thus, to the extent the law of any one state might be applicable to a nationwide

class of Verizon consumers, it would be <u>the law of New Jersey, **not** California</u>.

### 3. <u>Objections Based on an Underappreciation of the Risks and/or Improper Comparisons</u>

Attorney Hoang also objects to the $100 million common fund recovered in the

settlement as far too small based in part on the (incredible) misconception that there is essentially

<u>no risk whatsoever</u> to continued litigation – neither on appeal in <u>Achey</u> or <u>MacClelland</u>, at the

class certification stage, nor at trial on the merits.  Attorney Hoang also describes Verizon's

voluntary payment defense – the same defense which was accepted by an AAA arbitrator to

dismiss one of attorney-objector Murphy's arbitrations – as "laughable."  Whether arising from

overconfidence, misunderstanding, or simple ignorance, it is this objection that is laughable.  As

explicitly recognized by former Chief Judges John W. Bissell and Freda L. Wolfson of the

District of New Jersey, two jurists who clearly are far more experienced than Hoang, **"[t]he**

**risks surrounding a trial on the merits are <u>always considerable</u>."**  <u>Yedlowski v. Roka</u>

<u>Bioscience, Inc.</u>, 2016 U.S. Dist. LEXIS 155951, at *41 (D.N.J. Nov. 10, 2016) (citing <u>Weiss v.</u>

<u>Mercedes-Benz of N. Am.</u>, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (emphasis added)).  This is

particularly true in the case of a putative nationwide class action such as this one, with threshold issues currently pending two appeals.

Attorney Hoang further objects to the settlement fund as undervalued, and to the individual awards as insufficient, based on a comparison of this settlement with that in another case involving Class Counsel, <u>Vianu v. AT&T Mobility LLC</u>, Case No. 19-cv-3602-LB (N.D. Cal. Nov. 8, 2022).  But such an "apples and oranges" comparison is improper for many reasons. For one, this is a nationwide class action with 58 million class members, while <u>Vianu</u> brought claims on behalf of a state-wide class <u>less than one-tenth</u> the size of this one.  This case is inordinately more complex, as Class Counsel may have had to seek certification of 50 state-wide subclasses and litigated liability and damages under the laws of 50 states, whereas the claims of all <u>Vianu</u> class members were unquestionably governed by California law.  Unlike <u>Vianu</u>, this case also necessitated a complex, multi-pronged attack via both litigation and arbitration, and through multiple cases and multiple appeals. This included preparing for the prosecution of more than 13,500 individual arbitrations before the AAA and potentially having to pay more than one million dollars in AAA filing fees.  All of these issues combined to form a significantly greater risk than was ever present in <u>Vianu</u>.  Indeed, Class Counsel's co-counsel in <u>Vianu</u> – a large and well-respected plaintiff's class action firm – declined to participate in this aggressive multi-pronged undertaking, specifically because of the significant risks involved.  Despite all these challenges, Class Counsel achieved a much larger, nationwide class settlement in a significantly riskier, far more complex case – attaining here a settlement fund that was more than 7x higher than what was paid in <u>Vianu</u>.  And the monetary amounts that class members are projected to receive under this settlement are comparable to <u>Vianu</u> – $11.80 for the average claimant here, as compared to $17.25 for every class member in <u>Vianu</u>.  In fact, class members who receive the

maximum projected payment of $18.99 under this settlement will be receiving <u>more</u> than any class member received in <u>Vianu</u>.

### 4.      **Miscellaneous Other Objections**

Attorney Hoang objects that the Court-approved class notice was insufficient because it was not sent by SMS text, as it was in <u>Vianu</u>.  Again, this objection is contravened by the weight of authority, as well as this Court's finding in its Preliminary Approval Order that email notice is the "best notice practicable" and constitutes "due and sufficient notice."  In any event, the current claim rate of over 8% in this matter is comparable to the 10% claim rate in <u>Vianu</u>, particularly considering that the class size in this matter is more than 10x larger than in <u>Vianu</u>.

Attorney Hoang also objects to the claims process as too costly and complex, arguing that class payments should have been distributed automatically via bill credit.  This objection ignores the reality that bill credits are less appetizing to class members, are inapplicable to former customer class members, and would require significant "hands-on" implementation by Verizon. Further, automatic payouts with no claim process would result in participating class members receiving a far lower cash benefit.  Regardless, this objection reflects a fundamental difference of opinion with respect to the administration of the settlement fund acquired for the class, and fails to make any comparison between the benefit offered under the settlement and the potential risks and benefits of continued litigation.  Moreover, the use of claim forms in distribution of approved class action settlements is ubiquitous.  <u>See</u>, <u>e.g.</u>, <u>In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig</u>., 2024 U.S. Dist. LEXIS 33018, at *27 (E.D. Pa. Feb. 27, 2024) (granting final approval to class action settlement, noting: **"The Claims Administrator will provide a separate, individualized claim form (the 'Claim Form') for each class member."**); <u>Ripley v. Sunoco, Inc</u>., 287 F.R.D. 300, 325 (E.D. Pa. 2012) (granting

approval to proposed class action settlement that required submission of claim form stating **"the**

**Claim Form shall be mailed to all Class Members along with the Notice described above."**);

Barney v. Nova Lifestyle, Inc., 2022 U.S. Dist. LEXIS 155604, at *16 (C.D. Cal. Aug. 29, 2022)

**("Requiring class members to download, complete, and submit a claim form is**

**reasonable."**); Sypherd v. Lazy Dog Rests., LLC, 2022 U.S. Dist. LEXIS 240138, at *20 (C.D.

Cal. Aug. 29, 2022) (approving class settlement which provided relief to **"to all participating**

**class members who complete the claim form"**); In re European Gov't Bonds Antitrust Litig.,

2023 U.S. Dist. LEXIS 114266, at *13 (S.D.N.Y. May 16, 2023) (**"Settlement Class Members**

**who wish to receive a distribution from the Net Settlement Fund must complete and submit**

**a Claim Form"**).

For these reasons, all of Attorney Hoang's objections are without merit and should be

overruled.

### C.    Evan Murphy Objection

Attorney Evan Murphy has filed an objection on behalf of Allen Bilky, Aaron Ciccia,

Amanda Dunburg, Andrew Florea, Michael Lauro, Christina Nunez, Zack Schoone, Scott

Simpson, Linda Watson, Laura Westlake, Brian Whitney, and Brennan Williams.  As the Court

will recall, Mr. Murphy spent the last three months repeatedly assuring Class Counsel and this

Court that he and his purported clients had no objection to the substance of the proposed class

settlement itself and that they had no wish to prevent approval of the settlement. During that

time, he repeatedly stated to the Court in writing – and on the record on February 16, 2024

during oral argument on his motion to intervene – that the only concern Mr. Murphy and his

purported clients had vis-à-vis the proposed settlement was that they wanted to get Mr. Murphy's

purported clients excluded from the proposed settlement so they could pursue arbitration with

Verizon.  See Murphy's Reply in Support of Intervention at 6 (stating **"Proposed Intervenors do not seek to intervene to object to the substantive terms of the settlement (i.e., how much money is going to which plaintiffs) …"**) (emphasis added).  Indeed, as of today, Mr. Murphy has filed over 8,000 opt outs from the settlement class on behalf of his purported clients.

But despite his prior representations about not having any objection to the substance of the proposed class settlement itself, Mr. Murphy has now filed such an objection to the proposed settlement on behalf of 12 of his purported clients.  For the reasons which follow, that objection is wholly without merit.

       1.    **The "Recycled" Arguments Raised by Mr. Murphy in Support of the Objection Are Without Merit**

Most of Mr. Murphy's "objections" to the class settlement amount to little more than a "recycled" version of the same arguments he made in his prior motions to intervene and to stay the action and compel arbitration; both of which were denied by this Court on February 16, 2024.  Indeed, Mr. Murphy himself admits this on page 6 of his objection: **"The proposed settlement should be disapproved for the reasons set forth in the Intervenors Brief in Support of Motion to Intervene, Intervenors' Petition to Stay Class Action and Compel Arbitration, and their Reply Brief in Support of Motion to Intervene and Petition to Stay Class Action, all of which are incorporated herein by reference."** Class counsel submits that Murphy's "repeat" of these arguments should now be rejected for the same reasons they were rejected by the Court in his two prior motions.

Specifically, Murphy argues that: (1) the Verizon arbitration clause is an enforceable contract (despite the published precedential ruling to the contrary by the Appellate Division in Achey v. Cellco P'ship, 475 N.J. Super. 446, 459 (App. Div. 2023)); (2) that somehow the FAA or other law prevents a class action settlement from settling claims that the defendant asserts may

41

be governed by an arbitration clause; and (3) that Mr. Murphy's clients somehow were prevented from opting out of the class and/or were deprived of the opportunity to opt-out and arbitrate their claims. All of these arguments are without merit.

First, Mr. Murphy simply refuses to accept the undisputed fact that the New Jersey Appellate Division has already issued a published precedential opinion which held that, under general contract law principles, the Verizon arbitration clause was not an enforceable contract to arbitrate <u>because there was a lack of mutual assent and therefore no valid contract to arbitrate was formed</u>.  <u>See</u> <u>Achey v. Cellco P'ship</u>, 475 N.J. Super. 446, 459 (App. Div. 2023) **("Ultimately, we find that the 'cumulative effect' of the various unconscionable terms renders the arbitration agreement 'unenforceable for lack of mutual assent.'").**[24] The central premise of Mr. Murphy's objection, however, is that the Verizon arbitration clause <u>is</u> an enforceable contract. Thus, Mr. Murphy is asking this New Jersey Superior Court not only to ignore – but actually overrule – the Appellate Division ruling in <u>Achey</u>.  Mr. Murphy instead wants this Court to hold that his clients are being deprived of their supposed contractual "right" to enforce as valid a contract to arbitrate when the Appellate Division has already ruled in a published precedential opinion that no such arbitration contract was formed.

Second, the FAA has utterly no application to this proposed class action settlement. Again, the New Jersey Appellate Division has already ruled in its published precedential opinion in <u>Achey</u> that the Verizon arbitration clause is unenforceable in its entirety. <u>See</u> <u>Achey</u>, 475 N.J.

---

[24] To the extent that Mr. Murphy argues that the published precedential New Jersey Appellate Division opinion in <u>Achey</u> can only be applied to class members from New Jersey, he is incorrect as a matter of law. The United States Supreme Court itself has held that a court overseeing a multistate class action is free to apply the substantive law of a single state to the entire class. <u>See</u> <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 823 (1985). <u>See also</u> <u>Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)</u>, 926 F.3d 539, 561 (9th Cir. 2019) (**"a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class."**). Nor does Mr. Murphy argue that the contract law of any other state is materially different than the general contract law applied by the New Jersey Appellate Division opinion in <u>Achey</u>.

Super. at 459.  As such, as a matter of law, there is no valid arbitration clause in the Verizon

customer agreement. Therefore, the FAA has nothing to do with the proposed settlement.  <u>See</u>,

<u>e.g.</u>, <u>Kindred Nursing Ctrs. Ltd. P'ship v. Clark</u>, 581 U.S. 246, 251 (2017) (holding that the FAA

does not prevent state courts from invalidating arbitration clauses on contract law grounds,

stating:  **"A court may invalidate an arbitration agreement based on 'generally applicable**

**contract defenses' like fraud or unconscionability"**).

　　　　Nor is Mr. Murphy correct when he argues that a class action settlement may not be

approved if there is an arbitration clause involved in the case and/or there are unresolved issues

as to whether the arbitration clause is valid. Indeed, Murphy's argument flies in the face of both

the law and reality. Numerous class actions have been approved where there was an arbitration

clause involved and where the validity of that arbitration clause remains in dispute. <u>See</u>, <u>e.g.</u>, <u>In</u>

<u>re Tiktok, Inc., Consumer Privacy Litig.</u>, 565 F. Supp. 3d 1076, 1094 (N.D. Ill. 2021) (granting

approval of class action settlement in a case that involved an arbitration clause, stating: **"The**

**Arbitration Claimants' suggestion that the entire Settlement Agreement violates the FAA**

**by abrogating Defendants' arbitration agreements with opt-in class members is equally**

**meritless."**); <u>In re Tracfone Unlimited Serv. Plan Litig.</u>, 112 F. Supp. 3d 993, 999 (N.D. Cal.

2015) (granting final approval to a proposed class action settlement, with the court specifically

noting that one of the risks that weighed in favor of approval was that: **"TracFone filed motions**

**to compel arbitration in each of the consumer cases pursuant to a contractual arbitration**

**clause in its Terms & Conditions that contains a class action waiver."**). Indeed, in <u>Flynn v.</u>

<u>N.Y. Dolls Gentlemen's Club</u>, 2015 U.S. Dist. LEXIS 82772, at *2-3 (S.D.N.Y. Apr. 27, 2015),

a federal court granted final approval to a proposed class action settlement where the settlement

class itself was defined in terms of those consumers who had signed an arbitration clause, with

43

the court specifically stating:   **"[T]he Court grants final approval of the settlement memorialized in the Settlement Agreement"** on behalf of a settlement class defined as **"All individuals on payroll at New York Dolls Gentlemen's Club … including any individual who has signed an 'Arbitration Agreement' or any other agreement containing an arbitration clause."** (emphasis added). Accordingly, there is no rule of law that prevents a court from approving a class action settlement simply because the case involves an arbitration clause and/or the enforceability of an arbitration clause is disputed.

In fact, the New Jersey Superior Court has also regularly approved class action settlements in cases where there was an arbitration clause. For example, the existence of the disputed consumer arbitration clause was at the heart of the appeal decided by the Appellate Division in Celestin v. Avis Budget Grp., 2020 N.J. Super. Unpub. LEXIS 1515 (App. Div. July 28, 2020), yet the New Jersey Superior Court later approved a class action settlement of all claims in that same case. See Exhibit D, August 25, 2021 Order Granting Final Approval in Celestin v. Avis, No. MER-L-0102-19 (Judge Kassel). Likewise, the existence and validity of the disputed consumer arbitration clause was at the heart of the appeal decided by the Appellate Division in Bernetich, Hatzell & Pascu, LLC v. MRO, 445 N.J. Super. 173, 186 (App. Div. 2016), yet the New Jersey Superior Court later approved a class action settlement of all claims in that same case. See Exhibit E, May 9, 2017 Order Granting Final Approval in Bernetich, Hatzell & Pascu, LLC v. MRO, No. CAM-L-1271-15 (Judge Kassel). Similarly, in Seale v. Altice USA Inc., Docket No. MER-L-618-23 (Judge McLaughlin), the New Jersey Superior Court granted final approval of a class settlement in a case where consumers had signed a purported arbitration clause whose validity was challenged. See Exhibit F, October 13, 2023 Order Granting Final Approval in Seale v. Altice USA, Inc., Docket No. MER-L-618-23.

Finally, Mr. Murphy erroneously argues that the opt-out procedures set forth in this Court's Preliminary Approval Order are overly burdensome and/or that his clients were somehow deprived of their right to opt-out and pursue arbitration. These arguments are without merit and contrary to both law and the undisputed facts. The Court's Preliminary Approval Order contained a clear opt-out procedure allowing any class member – including those purportedly represented by Mr. Murphy – who wanted to do so to exclude themselves from the class and the settlement. See 12/15/23 Preliminary Approval Order at ¶ 14. Thus, any of Mr. Murphy's purported clients who wished to pursue their claims in arbitration against Verizon had ample opportunity to do so. **Indeed, nothing demonstrates this better than the fact that Mr. Murphy's purported clients submitted over 8,000 opt out requests before the expiration of this Court's February 20, 2024 deadline.** The fact that over 8,000 of Mr. Murphy's clients were able to take advantage of the opt out procedure in the Court's Preliminary Approval Order graphically illustrates that the opt-out procedures were not burdensome, and proves that no one has stopped Mr. Murphy's purported clients from excluding themselves from the settlement to attempt to  pursue arbitration of their claims with Verizon if they wished to do so.

Nor did this Court's refusal to allow Mr. Murphy to do one mass opt-out of behalf of all his purported clients make the settlement unfair or unreasonable. It is commonplace for courts to reject attempts by lawyers to do a "mass" opt out of their purported clients from a class action settlement, and to instead require that each class member submit a signed opt-out request. See In re Tiktok, Inc., Consumer Privacy Litig., 565 F. Supp. 3d 1076, 1092-93 (N.D. Ill. 2021):

> **"Just as the requirements of notice and opportunity to opt out are designed to protect the due process rights of individual class members, courts have recognized that 'opting out is an individual right' that 'must be exercised individually.'… In fact, courts have frequently rejected the very sort of 'attempts by lawyers to opt out class members**

**en masse'** that counsel for the Arbitration Claimants ask the Court to
approve here" (emphasis added)

See also In re Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 241 (3d Cir. 2002), affirming that:

> **"[L]awyers could not effect mass opt outs of all of their clients with the
> filing of a single notice, holding that 'opting out is an individual right
> and it must be exercised individually.' ...it was clearly within the
> court's discretion to turn away attempts by lawyers to opt out class
> members en masse"** (emphasis added)

### 2.   The Additional Arguments Raised by Mr. Murphy Are Without Merit

In addition to "recycling" the arguments previously rejected by this Court in his prior

motions, Mr. Murphy has made a perfunctory attempt to raise some new arguments in support of

the objection. Specifically, despite previously telling the Court that he and his purported clients

had no problem with the substantive terms of the proposed settlement, Mr. Murphy now claims

that: (1) the class notice was misleading because it told class members they might receive "up to

$100"; (2) the release under the proposed settlement is too broad; and (3) the proposed

settlement does not individually tailor awards for each class member. For the reasons outlined,

below, these objections are without merit and should be overruled.

Mr. Murphy's argument that the class notice misled class members by stating that they

could obtain awards of "up to $100" is without merit and ignores the full text of the notice itself.

Mr. Murphy appears to argue that class members understand the phrase "up to $100" to actually

mean that they would receive "no less than $100" – which is the exact opposite of what the

phrase actually means, as the words "up to" clearly denote an upper limit on the award as

opposed to the minimum (i.e., a ceiling, not a floor). More importantly, Mr. Murphy fails to note

that class members were told repeatedly – at least 5 times – that the upper limit of $100 per class

member would be reduced pro rata depending on the number of claims submitted. Specifically:

(1) The first email notice to the class stated: **"your settlement payment may be up to
$100.00 for your account, but the final amount may be lower depending on** how

long you were a Verizon subscriber and **how many Settlement Class Members file valid claim**" (emphasis added);

(2) The reminder notice sent to class members similarly stated: "**your settlement payment may be up to $100.00 for your account, but the final amount may be lower depending on** how long you were a Verizon subscriber and **how many Settlement Class Members file valid claim**" (emphasis added);

(3) The long form class notice stated under the heading **"How much will the payments be?"** that "**If you file a valid claim by the deadline and are eligible for a payment, your payment may be up to $100.00 for your account, but the final amount may be lower depending on how** long you were a Verizon subscriber and **how many Settlement Class Members file valid claims"** (emphasis added), and then goes on to explain the consequences if the number of claims and other court approved expenses exceed the amount available to pay claims by stating: **"then the payments made to the Settlement Class Members who filed valid claims will be decreased from the initial allocated amount on a pro-rata basis"** (emphasis added);

(4) The class claim form states immediately above the signature section: "**Your Settlement Payment may be up to $100.00 for your Verizon account, but the final amount may be lower depending on** how long you were a Verizon subscriber and **how many Settlement Class Members file valid claims"** (emphasis added), and then goes on to explain that if the number of claims and other court approved expenses exceed the amount available to pay claims **"then the payments made to the Settlement Class Members who filed valid claims will be decreased from the initial allocated amount on a pro-rata basis"** (emphasis added); and

(5) The settlement website states: "**Your Settlement Payment may be up to $100.00 for your Verizon account, but the final amount may be lower depending on** how long you were a Verizon subscriber and **how many Settlement Class Members file valid claims**" and goes on to explain that **"If the Settlement Fund is not sufficient to pay all the filed valid claims … then the payments made to the Settlement Class Members who filed valid claims will be decreased from the initial allocated amount on a pro-rata basis"** (emphasis added).

These repeated, clear statements to the class prove that Mr. Murphy's assertion that class members were not told clearly that there could be a <u>pro rata</u> reduction of the $100 maximum award is completely without merit.

Mr. Murphy also asserts – without any basis and in direct contradiction of the facts – that Class Counsel somehow intended the statement that class members could get "up to $100" to mislead class members. In fact, the language "up to $100" was based on an expected claim rate

47

of between 1% and 3% based on the average claim rates in similar class actions. See, e.g., In re Anthem, Inc. Data Breach Litig., 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval with 1.8% claims rate); Schneider v. Chipotle Mexican Grill, Inc., 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was **"on par with other consumer cases"**); Bostick v. Herbalife Int'l of Am., Inc., 2015 U.S. Dist. LEXIS 83499, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with **"response rate of less than 1%"**). Class Counsel's experience in the hundreds of class actions they have litigated over the last several decades confirms the finding in these cases that a claim rate of less than 3% is typical in large class actions. At such a typical claim rate, many class members would have received $100 and none would have experienced a pro rata reduction.

Here, the claim rate (currently) is slightly more than 8%. That is a high claim rate which shows how favorably the class received the proposed settlement. The most likely reasons for such an unexpectedly high claim rate are: (1) the settlement of this case was a national news story which was the subject of massive press coverage, including articles in the New York Times and USA Today and other national press organs; and (2) so many class members approved of the settlement and wanted to be a part of it. Mr. Murphy, who appears to have been tangentially involved in only one prior class action, may not understand that predicting a claim rate in a class action is difficult, even for Class Counsel who have collectively litigated as lead counsel or co-lead counsel over 300 class actions in the last three decades. Class Counsel are happy that so many class members chose to participate in the settlement, but at the same time wish that a pro rata reduction had not been needed.  Nevertheless, the basic math that led to the proposed settlement has not changed. The only way to potentially have gotten Verizon to pay more money would have been to take the risk of arguing before the New Jersey Supreme Court and Ninth

Circuit with the hope that both courts would sustain the rulings regarding the invalidity of the arbitration clause at issue (despite the courts' ability to instead delegate the issue of arbitrability to the arbitrator or to simply sever any particular provisions they found offensive), and then to go on to win class certification, then obtain liability verdicts on behalf of the class, and then sustain those verdicts through final appeal; a process which is fraught with risk and would likely take the better part of a decade to complete. Since Mr. Murphy has not sought to actually litigate any of his clients' claims in court, perhaps he simply does not appreciate that risk (although he should, considering his track record in arbitration). Class Counsel continue to believe that the potential risks in this matter are enormous and that, given that risk, the proposed settlement is by far the best outcome for the class as a whole.

Mr. Murphy also argues that the proposed class settlement is deficient because it does not provide an individually-tailored cash award to each class member. No case cited by Mr. Murphy or known to Class Counsel actually requires this.[25] Nevertheless, contrary to what Murphy asserts, the formula for calculating class member awards under the proposed settlement actually is tailored to each class member, in that each class member is allotted a base award – based on the fact that the average class members has 2.5 lines – and then receives additional money for each month they were a Verizon customer during the class period. Thus, awards to class members are individually tailored, in that class members with a longer term of service (and who paid more monthly fees) will get more than those with shorter terms of service.  Apportioning

---

[25] Mr. Murphy's sole citation is to Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), but his reliance on this case is seriously misplaced. In Ortiz, the types of damages sought by two groups of class members were mutually incompatible, being divided between those with current asbestos personal injury claims (who wanted a large immediate cash payout) and those with future claims (who wanted any funds recovered to be protected from future inflation). Id. at 856. In the case at bar, there is no such conflict among class members. All class members are suing for past payments of a monthly fee that averaged $1.95. The only variation in damages is the number of months a class member paid the fee in question (which is already accounted for in the proposed settlement) and the number of lines each class member had (for which the class-wide average of 2.5 lines per account is used).

awards for each class member to perfectly reflect the exact amount of actual charges paid by each class member, as Mr. Murphy suggests, would be extremely difficult based on Verizon's records and was not feasible for this settlement.[26]  In addition, Courts have approved allocations in similar cases where there was far less tailoring of class member payouts, or none at all. See Vianu v. AT&T Mobility, LLC, No. 3:19-cv-03602 (N.D. Cal.) (court approved settlement providing each class member with a flat $17.25 payment in case alleging a similar deceptive administrative fee); Seale v. Altice USA, Inc., Docket No. MER-L-618-23 (N.J. Super. Ct.) (court approved a nationwide settlement on behalf of 7.7 million consumers who alleged deceptive cable fees, wherein class members who filed a claim would receive a payment of $10 to $27.50).

Finally, Mr. Murphy argues that the settlement release is "too broad" because it waives future claims.  As explained above, it does no such thing.  See supra Pt. V.B.1.  To the contrary, the release does not prohibit any future lawsuits against Verizon except those that relate to the Administrative Charge as it presently exists, and, if Verizon changed those practices, class members would be free to challenge any "different" or new practices not at issue in this action. See, e.g., Vianu v. AT&T Mobility LLC, 2022 WL 16823044, at *9 (N.D. Cal. Nov. 8, 2022) (overruling similar objection to an identical release, finding that **"the release does not protect AT&T for any hypothetical future change to the administrative fee"**).

For all these reasons, Mr. Murphy's objections must be overruled.

**D.   William R. Weinstein Objection**

Attorney William R. Weinstein objects on behalf of himself and his spouse Abby Livingston.  Mr. Weinstein is not admitted to practice law in New Jersey, nor has he filed a

---

[26] A similar objection made by individual objector Jeff Aegerter should be overruled for the same reasons.

motion to appear <u>pro</u> <u>hac</u> <u>vice</u> in this matter; thus, his objection on behalf of his spouse is not properly before this Court.  Additionally, Mr. Weinstein concedes that he is not a Verizon account holder and thus is not a member of the settlement class; consequently, he has no standing to object on his own behalf.  <u>See</u> <u>Gould</u>, 883 F.2d at 284 (**"non-class members have no standing to object"** to a proposed class settlement); <u>Heller</u>, 245 F. App'x at 842 (**"non-class members have no standing to object"**).  Thus, at most, only the objection of Mr. Weinstein's spouse, class member Abby Livingston, is properly before this Court and may be considered.

Nevertheless, all of Mr. Weinstein's objections previously have been addressed in detail herein.  The amount of the settlement fund is decidedly reasonable in light of the numerous risks of continued litigation, not to mention the significant cost and delay associated with discovery, motion practice, trial, and potential appeals.  <u>See</u> <u>supra</u> Pt. II; Pt. V.B.3.  Indeed, no one can appreciate the plethora of risks more than Mr. Weinstein, who, by his own admission, has <u>tried and failed for 10 years</u> to challenge Verizon's arbitration clause and Administrative Charge at issue here.  <u>See</u> Weinstein Obj. at 3 (Weinstein **"pursued … challenges to Verizon's arbitration agreement in connection with the administrative charge … over the next decade, <u>albeit unsuccessfully.</u>"**).  In light of this record, it is bewildering that Mr. Weinstein is now criticizing Class Counsel's <u>$100 million settlement on the very issues for which he was able to recover nothing</u> for his clients.

Further, the individual awards are in fact individually tailored to class members, in that the base payment arises from the fact that the average class member has 2.5 lines, and the total payment is increased for each month the class member maintained service with Verizon during the class period.  Thus, class members with a longer term of service <u>will</u> receive larger individual awards.  <u>See</u> <u>supra</u> Pt. V.C.2.  Moreover, an automatic settlement payment to each class member,

without any prerequisite filing of a claim form, would significantly lower the payments to class members and further would change the entire structure of the settlement, and thus is an improper objection.  In any event, courts routinely approve claims-made class settlements.  See supra Pt. V.B.4.  Additionally, the requested award of attorneys' fees is supported by New Jersey law, as are the incentive awards to the named Plaintiffs.  Mr. Weinstein's objections are based on the misconception that Class Counsel are seeking a fee award based on their lodestar – they are not – and ignores the fact that naming 129 lead Plaintiffs was a critical element to Class Counsel's successful litigation strategy to defeat Verizon's arbitration clause.  See supra Pt. III.

Finally, the Court-approved class notices were not deceptive, but rather clearly stated, inter alia, that class members were eligible to receive "up to" $100.  See supra Pt. V.C.2.  And the settlement release is not overbroad, but rather limits only claims relating to the current practices concerning the Administrative Charge; to the extent Verizon changes its practices regarding the Charge, any future claims regarding those changed practices are not prohibited. See supra Pt. V.B.1.  Consequently, each of Mr. Weinstein's objections must be overruled.

### E.      Scott Zimmermann Objection

Retired attorney Scott Zimmerman objects on his own behalf.  Mr. Zimmermann, who also has filed a claim under the settlement, objects that the incentive awards and attorneys' fees sought by Class Counsel are too high.  These objections are largely addressed above.  See supra Pt. III.  In short, Mr. Zimmermann objects that Class Counsel named too many lead Plaintiffs. As explained above, however, naming more than 25 lead Plaintiffs in each of their four class actions was a crucial element of the successful litigation strategy that enabled Class Counsel to defeat Verizon's arbitration clause twice in court.  See id.  And Mr. Zimmermann's objection to the fee request includes both a critique of Class Counsel's lodestar hours and a suggestion that

they should have used more associates.  But Class Counsel's fee request <u>does not seek fees under a lodestar calculation, but rather seeks a fee award under a percentage of the common fund</u> calculation pursuant to well-established New Jersey law.  <u>See id.</u>  Further, as set forth above and in their fee petition, Class Counsel is comprised of three small firms with a combined total of just twelve attorneys, <u>only two of whom are associates</u>; thus, pushing a majority of the workload down to associates was not possible.  Mr. Zimmermann also recklessly assumes that the settlement amount was "the direct result of the number of class members and not … class counsel's efforts," but this is simply not true.  Indeed, as detailed in Counsel's motions and as explained herein, **but for Class Counsel's efforts, the class would receive nothing.**  <u>See Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 480 (1980) (**"Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, <u>is a benefit in the fund created by the efforts of the class representatives and their counsel.</u>"**) (emphasis added).

Finally, Mr. Zimmermann asks that Class Counsel's fees be reduced to $20 million pursuant to a "sliding scale," under which the percentage of recoverable attorneys' fees decreases as the value of a settlement increases.  Significantly, Mr. Zimmermann cites no New Jersey authority in support of this argument, nor does he cite any cases from the Third Circuit.  Rather, Mr. Zimmerman relies primarily on a single unreported, 9-year-old case[27] from the Northern District of Illinois in which <u>Mr. Zimmermann's own requested fee award of 30%</u> of a $40 million settlement in a (routine and far less complex) Telephone Consumer Protection Act ("TCPA") class action <u>was reduced to 23.75%.</u>  In reducing Mr. Zimmerman's fee award, the

---

[27] The three other cases Mr. Zimmermann cites do not support his objection in any way, shape or form. <u>See Silverman v. Motorola Sols., Inc.</u>, 739 F.3d 956, 958 (7th Cir. 2013) (<u>refusing</u> to reduce fee award equal to 27.5% of $200 million settlement fund); <u>In re Credit Default Swaps Antitrust Litig.</u>, 2016 U.S. Dist. LEXIS 54587, at *53 (S.D.N.Y. Apr. 25, 2016) (sliding scale set forth in retainer agreement); <u>Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)</u>, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (awarding 28% of a $325 million fund).

district court relied on two studies from 2010 (i.e., 14 years ago) that compiled and analyzed fee

awards in class action settlements between 1993 and 2008 (i.e., between 16 and 21 years ago),

and which Mr. Zimmermann also cites here.  Notably, in his motion for reconsideration of the

court's sua sponte reduction of his fee request, Mr. Zimmermann sharply criticized the very

studies he cites here as "not useful" because, inter alia, they included reversionary settlements

(which this case is not), and he cited authority for the proposition that **"the normal rate of**

**compensation in the market is 33.33% of the fund recovered."**  See Exhibit G, Mr.

Zimmermann's Brief in Support of Motion to Amend Judgment in Craftwood Lumber Co. v.

Interline Brands, Inc., Case No. 11-cv-4462 (N.D. Ill.).  Accordingly, Mr. Zimmermann's

objection here is belied by his arguments previously made in an attempt to salvage his own fee

request, and appears to be nothing more than proverbial "sour grapes" directed at Class Counsel.

Notwithstanding the foregoing, Mr. Zimmermann's objection fails to cite or even

mention the litany of courts – including the Third Circuit itself – that have expressly rejected the

proposition that a fee award based on a percentage of a common fund must be reduced as the

fund increases.  See, e.g., In re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 302-03 (3d Cir. 2005)

**("[T]here is no rule that a district court must apply a declining percentage reduction in**

**every settlement involving a sizeable fund."**); In re Checking Account Overdraft Litig., 830 F.

Supp. 2d 1330, 1367 (S.D. Fla. 2011) (refusing to reduce fee award from 30% of $410 million

common fund, finding that **"courts nationwide have repeatedly awarded fees of 30 percent or**

**higher in so-called 'megafund' settlements"**); Allapattah Servs., Inc. v. Exxon Corp., 454 F.

Supp. 2d 1185, 1213 (S.D. Fla. 2006) (awarding 31.5% fee from $1.06 billion fund, and

declining to reduce fee award as fund grows because it would cause attorneys to settle too early),

finding that:

> **"Such an approach also fails to appreciate the immense risks
> undertaken by attorneys in prosecuting complex cases in which there is
> a great risk of no recovery.  Nor does it give significant weight to the
> fact that 'large attorneys' fee[s]' serve to motivate capable counsel to
> undertake these actions.**
>
> **While some reported cases have advocated decreasing the percentage
> awarded as the gross class recovery increases, <u>that approach
> is antithetical to the percentage of the recovery method adopted by the
> Eleventh Circuit …, the whole purpose of which is to align the interests
> of Class Counsel and the Class by rewarding counsel in proportion to
> the result obtained.  By not rewarding Class Counsel for the additional
> work necessary to achieve a better outcome for the class, the sliding
> scale approach creates the perverse incentive for Class Counsel to settle
> too early for too little.</u>"** (emphasis added)

<u>See</u> <u>also</u> <u>supra</u> Pt. III, listing numerous so-called "mega cases" in which courts have awarded

fees in amounts greater than 30% of the gross common fund.  Consequently, Mr. Zimmerman's

objections are without merit and must be overruled.

**<u>CONCLUSION</u>**

For the foregoing reasons, in addition to those set forth in Class Counsel's motions, all

objections should be overruled and the proposed nationwide class settlement in the case at bar

should be granted final approval.

Dated:  March 8, 2024                    DeNITTIS OSEFCHEN PRINCE, P.C.

By: _____

Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: josefchen@denittislaw.com
Email: sprince@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*

55

Paul Karl Lukacs, Esq.
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

CRIDEN & LOVE, P.A.
Michael E. Criden, Esq. *
Lindsey C. Grossman, Esq.
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
Email: mcriden@cridenlove.com
Email: lgrossman@cridenlove.com

* Admitted Pro Hac Vice

*Attorneys for Plaintiffs and the Certified Class*