**HATTIS & LUKACS**
Daniel M. Hattis (Bar No. 232141)
Paul Karl Lukacs (Bar No. 197007)
dan@hattislaw.com
pkl@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

**DENITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis (admitted *pro hac vice*)
sdenittis@denittislaw.com
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MACCLELLAND, Et Al.,<br>For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; and VERIZON COMMUNICATIONS INC.,<br><br>Defendants. | Case No. 3:21-cv-08592-EMC<br><br>**STATUS REPORT RE:** *ESPOSITO* **FAIRNESS HEARING**<br><br>**[Applicable To: Opposition To Motion To Intervene (Dkt. No. 98)]**<br><br>[Filed Simultaneously with Declaration of Daniel M. Hattis]<br><br>[Hon. Edward M. Chen]<br><br><u>Hearing on Motion To Intervene</u><br>Date: April 17, 2024<br>Time: 10:00 a.m.<br>Ctrm: Zoom |

# STATUS REPORT

As the Court is aware, the class claims alleged in this *MacClelland* class action (as well as the claims alleged in three other class actions in New Jersey and in 13,593 private arbitrations) are in the process of being settled as part of a nationwide class action settlement agreement that was placed before the New Jersey Superior Court in the proceeding captioned *Dean Esposito v. Cellco Partnership*, Case No. MID-L-006360-23 ("*Esposito*"). This Status Report Re: *Esposito* Fairness Hearing is intended to inform the Court of recent events in the *Esposito* action that are relevant to the Opposition To Motion To Intervene (Dkt. No. 98) that is currently pending before this Court. (Abbreviations and shortened case names used in this Status Report are the same as used previously in these filings.)

## The New Jersey Superior Court Conducted The *Esposito* Fairness Hearing

On March 22, 2024, the New Jersey Superior Court for Middlesex County (by Hon. Ana Viscomi) held the Fairness Hearing and heard argument on the motion for final approval of the settlement agreement in *Esposito*. The complete and certified transcript of the hearing in *Esposito* can be found at **Exhibit A** to the Declaration of Daniel M. Hattis (filed simultaneously herewith).

At the Fairness Hearing, counsel for the provisionally approved settlement class ("Class Counsel") and counsel for Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc. (collectively, "Verizon") each argued that the provisions of the proposed class action settlement agreement (including the $100 million non-reversionary settlement fund) were fair and reasonable and should be granted final approval under New Jersey law (which looks to the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3rd Cir. 1975)). *See* Transcript, pp. 21:6–28:2 (*Girsh* arguments by class counsel), 34:3–35:13 (arguments by Verizon counsel) (Hattis Decl., Ex. A).

Class Counsel argued in favor of a $3,500 incentive award for each named plaintiff. *See* Transcript, pp. 28:3–30:4 (Hattis Decl., Ex. A). Class Counsel argued in favor of an award of attorneys' fees of 33.3% of the $100 million settlement fund. *See* Transcript, pp. 30:5–33:19 (Hattis Decl., Ex. A).

A total of 47 objections to the settlement agreement had been timely filed and were before the New Jersey Superior Court. *See* Transcript, p. 8:12–14 (Hattis Decl., Ex. A). At the hearing, the Superior Court heard arguments from four sets of objectors who criticized the settlement agreement on various grounds. *See* Transcript, pp. 37:18–94:10 (Hattis Decl., Ex. A).

**The New Jersey Superior Court Did Not Make A Substantive Ruling And, Instead, Scheduled A Follow-Up Hearing To Obtain Final Claim Numbers**

The New Jersey Superior Court did not make any substantive ruling from the bench during the hearing and has not issued an order since the hearing. Hattis Decl., ¶ 5. (The Superior Court made non-substantive orders, such as ordering the submission of the most recent version of Verizon's arbitration agreement. *See* Transcript, p. 143:22–24 (Hattis Decl., Ex. A).)

Instead, the Superior Court ordered that a follow-up hearing be held on April 19, 2024, at 10:00 a.m. Eastern Time. *See* Transcript, pp. 144:18–145:10 (Hattis Decl., Ex. A).

The Superior Court wanted to wait until after the April 15th claims deadline had passed before making a final ruling. "The reason why I also want to wait until after April 15 is to get a better sense of, at the end of the day, those that have submitted in to opt in, what is it that they will get . . . . That's important for the Court to know . . . to ultimately determine the fairness of this." Transcript, p. 123:14–25 (Hattis Decl., Ex. A).

The Superior Court wrapped up by stating, "So where do we go from here? So as I indicated, I will not approve the settlement today. I do wish to think, because what the Court must do in application of the *Girsh* factors, *Girsh* being a case out of the 3rd Federal Circuit that the Court must apply, is to determine whether this is fair and reasonable. And without knowing at the end of the day the ultimate payouts, the Court really can't, in all consciousness, make that determination. . . . .

"And this was a hard-fought battle not only here with the *Achey* case that has been up and down to the Appellate Division and now before the Supreme Court, your battle out in California, and I guess you have two other [New Jersey] federal jurisdictions that . . . claims are pending. And the response, though, clearly people receive notice and have responded because the response has been overwhelming. The court is really satisfied that the public is being hurt [*sic*: heard] by the

members who are here today, some that have called the courthouse, left messages on different voicemails, and that have submitted papers that indicated they could not attend. But I mean, we have a lot of single page letters here from folks that have written in. And some that have written in indicated they have no problem with it, they're just writing the Court to let them know." Transcript, pp. 141:8–142:15 (Hattis Decl., Ex. A).

"And we need to give -- although this settlement administrator really works rather quickly, we need to give him a little bit of time after April 15, which is the cutoff date, to let us know where everything stands and to give you time to, I guess, address the Court on the final analysis of where the numbers cut and whether you think it's still a settlement that the Court should approve." Transcript, p. 143:14–21 (Hattis Decl., Ex. A).

In sum, the Superior Court has not yet issued a ruling regarding the class action settlement agreement, the request for incentive payments or the request for attorneys' fees. The Superior Court will hold a further hearing—with an especial interest in the final claims rate numbers—on April 19th.

These events are relevant to the following arguments made in Plaintiffs' Opposition to Motion To Intervene (Dkt. No. 98):

1.  The Proposed Intervenors lack a protectible interest because the claims in the proposed Complaint-In-Intervention (Dkt. No. 89-1) are not ripe. *See* Oppo. to Mot. to Intervene, ECF pp. 22:7–16 (Dkt. No. 98). No attorneys' fees award has been entered in the *Esposito* action, and no such order is expected to be entered as of the date of this Court's hearing (April 17, 2024). Since no attorneys' fees have been awarded, no Potential Intervenors or class members have been harmed under Proposed Intervenors' breach-of-fiduciary-duty theory (because harm is a necessary element of a breach of fiduciary duty claim[1]), and no unjust enrichment has occurred.

---

[1] *See, e.g., Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1164, 1169 (S.D. Cal. 2008).

**The Lin Objectors Pressed Their Objection in New Jersey, Which Included The Identical Breach-Of-Fiduciary-Duty Contention Made By Proposed Intervenors**

Of the 47 objections timely filed with the New Jersey Superior Court, the objection of most relevance to the Motion To Intervene pending before this Court is the objection brought by class members George Lin, Linda Tang, Mark Oja and Christine Oja (collectively, the "Lin Objectors"), who were represented at the Fairness Hearing by their attorney, Quyen C. Hoang, Esq. *See* Transcript, pp. 38:11–64:2 (Hattis Decl., Ex. A).

One of the objections filed by the Lin Objectors is identical to the proposed Complaint-In-Intervention's theory of liability: that Class Counsel breached a fiduciary duty to the class by filing the *Esposito* settlement action in New Jersey state court and by requesting an award of attorneys' fees under the New Jersey standard of 33% instead of the purported Ninth Circuit standard of 25%.

In their written objection, the Lin Objectors wrote, "The instant case is a product of four other related cases the seminal one of which was *MacClelland* in the Northern District of California. In the Ninth Circuit, the 'benchmark' for a fee award in a common fund case is 25 percent of the fund achieved. [Citation omitted.] However, Counsel inexplicably files this fifth action in New Jersey strictly for settlement purposes seeking 33.3% of the settlement funds for attorney's fees. In New Jersey, fees most commonly range from 25% to 33.3% of the recovery in common fund cases. [Citation omitted.] Counsel does not provide any explanation as to the need to file the instant settlement case in New Jersey rather than California or simply in the *MacClelland* matter. The only rational explanation is that in California, 33.3% of the common fund for a 'cookie cutter' case such as this would simply NOT be countenanced whereas New Jersey routinely entertains such requests. This one decision alone means the difference of $8,300,000 that could be used for the benefit of the class BUT instead will be used to line Counsel's pocket. Counsel has a fiduciary duty to look out for the interest of the class BEFORE his own and yet this decision is clearly driven by avarice. For this reason, Objectors, request that this Court apply California's 'benchmark' of 25% of the common fund BEFORE applying any

multiplier." Objection of Lin Objectors (filed in this case as Dkt. No. 100-9, ECF pp. 161:12-162:7 of 292) (boldface omitted).

The Lin Objectors continued, "Additionally, this is a 'cookie cutter' case and Counsel's only chance at 33.3% of the common fund was to violate their fiduciary duty by selecting a forum that was most suitable to counsel's avarice rather than in California where the benchmark for fees is 25% which would be beneficial to the class. This factor should weigh against approval." Objection of Lin Objectors (filed in this case as Dkt. No. 100-9, ECF p. 170 of 292) (boldface omitted).

The New Jersey Superior Court has not yet ruled upon this objection (or any other objection). Hattis Decl., ¶ 8.

These events are relevant to the following arguments raised by Plaintiffs' Opposition to Motion To Intervene (Dkt. No. 98):

1. Proposed Intervenors are not so situated that the disposition of this *MacClelland* action may as a practical matter impair or impede their ability to protect their interests. *See* Oppo. to Mot. to Intervene, ECF pp. 23:17–24:23 (Dkt. No. 98). Proposed Intervenors had the opportunity to protect their alleged interests and to make their argument by filing an objection in the *Esposito* case—as the Lin Objectors did—but Proposed Intervenors decided not to.

2. Since the substance of the Lin Objection and the proposed Complaint-In-Intervention are identical (with their twin allegations of forum shopping and breach of fiduciary duty), Proposed Intervenors had a full and fair opportunity to litigate these issues in the New Jersey Superior Court. As such, these issues will be subject to issue preclusion when the Superior Court enters its ruling. *See* Oppo. to Mot. to Intervene, ECF pp. 18:19–20:10 (Dkt. No. 98).[2]

---

[2] The decision in *Durkin v. Shea & Gould*, 92 F.3d 1510 (9th Cir. 1996), on which Proposed Intervenors rely, is inapposite because different sets of issues had been placed before the trial courts for adjudication (p. 1516) and because the "quality, extensiveness, or fairness" of the underlying litigation was in question (pp. 1515, 1516-17). *See Koehler v. Green*, No. CV 4:05-367 JFN, 2006 WL 5605002, *8 (E.D. Mo. Apr. 20, 2006) (distinguishing *Durkin*).

3. Likewise, the *Rooker-Feldman* doctrine will apply if the Superior Court enters a state court order denying the Lin Objection before this Court enters an order granting Proposed Intervenors' motion to intervene (which this Court should not do in any event).

4. The fact that Proposed Intervenors could have done what the Lin Objectors did and filed an objection in the *Esposito* action about Class Counsel's alleged breach of fiduciary duty contradicts Proposed Intervenors' assertions that "[o]nly this Court has the inherent authority over litigants with respect to the breach of fiduciary duty that Class Counsel assumed for itself" and "[n]o other Court but this one has inherent authority over the parties[.]" Reply I.S.O. Mot. To Intervene, ECF p. 14:13–14, 14:16–17 (Dkt. No. 105). The New Jersey Superior Court has authority to rule upon the breach-of-fiduciary-duty objection and is in the process of doing so.

**The Allegation Of Forum Shopping Is Being Litigated In The New Jersey Court**

During the Fairness Hearing, Class Counsel addressed the allegation of forum shopping and explained the reasoning by which the *Esposito* case was filed as a stand-alone settlement vehicle.

Class Counsel stated, "There's been an allegation by one of the objectors [i.e., the Lin Objectors] that we forum shopped here. We have three cases in New Jersey. We litigated the *Achey* case, which was the farthest along of all the cases. We wanted to amend that case to put forth the settlement; however, when class action attorneys have cases in various jurisdictions and forums there's always the possibility of the risk that the Court may not approve it, in which case they go back and litigate all of their cases.

"So no one wanted to disturb the pending Supreme Court case [*Achey*], no one wanted to disturb *MacClelland*, no one wanted to disturb *Corsi* or *Allen* because they were in the process of briefing the arb issue. So the easiest thing was, pick all the plaintiffs and file it in a case here. This is where the *Achey* case was. The *Achey* case has been filed almost as long as the *MacClelland* case, so that is just -- just to dispel that notion, that's why and explains why the *Esposito* case came to be." Transcript, pp. 35:22–36:16 (Hattis Decl., Ex. A).

Verizon's counsel stated: "But why are we here? [¶] Your Honor, Verizon faced a class action in California, the *MacClelland* case. We had class actions in New Jersey State Court

because Verizon is here in New Jersey. And so there was diversity between a New Jersey only class and Verizon. Verizon also had federal cases here in New Jersey. [¶] In our view, the *MacClelland* case [was] not an appropriate vehicle for settlement because it's in California. Verizon wanted to settle in New Jersey. The choice was federal court or state court. Because the New Jersey Supreme Court had accepted review of the Appellate Division's decision, it made sense to us to have a state court settlement because any appeals from a decision the court might make would go up through that system and would end up before the court that would ultimately have to decide the critical issue of whether the Appellate Division got it right or wrong on the arbitration provision." Transcript, p. 34:11–35:4 (Hattis Decl., Ex. A).

Class Counsel also stated that, during settlement talks, Class Counsel had initially approached Verizon with the idea of amending the *Achey* complaint in order to administrate the settlement; however, Verizon was not agreeable to that procedure. "We attempted to amend the *Achey* case and Verizon said, 'We'd rather not,' and so that's why we have this case. Just to let the Court know." Transcript, p. 36:16–19 (Hattis Decl., Ex. A).

**Importantly, the Superior Court agreed that amending the *Achey* complaint was not an ideal way to proceed with the settlement**. "THE COURT: I don't think the [Supreme] Court would've appreciated an amendment to *Achey*." Transcript, p. 37:2–3 (Hattis Decl., Ex. A).

These events are relevant to the arguments discussed above, in particular, that the issues alleged in the proposed Complaint-In-Intervention are actively being litigated in the New Jersey court.[3]

Dated: April 12, 2024            Respectfully submitted,

                                 HATTIS & LUKACS

                                 By: */s/ Paul Karl Lukacs*

---

[3] In the event that this Court grants the Motion To Intervene (which it should not), Plaintiffs will need to discuss with the Court the amount of discovery to be conducted before the hearing of Proposed Intervenors' Motion For Equitable Redistribution, which will probably have to be postponed.

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq. (admitted *pro hac vice*)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Email: sdenittis@denittislaw.com

*Attorneys for Plaintiffs and the Class*